# Ex. B

CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation (OIL)
U.S. Department of Justice
EREZ REUVENI
Assistant Director, District Court Section
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20530
Telephone: (202) 307-4293
Fax: (202) 305-7000

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GRACE, et al., | Case No. 18-cv-1853-EGS |
| Plaintiffs, | |
| vs. | **Declaration of Daniel Bible** |
| JEFFERSON B. SESSIONS, III, Attorney General of the United States, et al., | |
| Defendants. | |

### DECLARATION OF DANIEL BIBLE

I, Daniel Bible, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Field Office Director for the San Antonio, Texas, Field Office within the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations

(ERO). The San Antonio Field Office area of responsibility covers the 54 southernmost counties in Texas, including the Rio Grande Valley. As Field Office Director, I oversee all ICE ERO operations in support of agency enforcement and removal efforts for the San Antonio area of responsibility.

2. I have been employed with ICE and the former Immigration and Naturalization Service since 1998 when I was hired as an Immigration Agent in Huntsville, Texas. From 2001-2006, I served as a Deportation Officer in Oakdale, Louisiana. In 2006, I was promoted to the position of Supervisory Detention and Deportation Officer (SDDO) in San Francisco, California. During my tenure as SDDO, I was responsible for supervisory oversight of two fugitive operations teams, the non-detained section, and the alternatives to detention section. In 2009, I was promoted to the position of Assistant Field Office Director (AFOD) for the Washington Field Office. During my tenure as AFOD, I had supervisory oversight of SDDOs in charge of the criminal alien program, the 287(g) program, the Field Office's command center, the violent criminal alien section, and two fugitive operations teams. In 2012, I was promoted to the position of Deputy Field Office Director (DFOD) for the New York Field Office. From June 2015 to June 2016, I served as the Field Office Director in the Salt Lake City Field Office. I have been in my current position since June 2016. I am a member of the Senior Executive Service, and I report directly to Acting Assistant Director David Jennings.

3. This declaration is based upon my personal knowledge, information obtained from other individuals employed by ICE, and information obtained from DHS records.

4. At approximately 8:39am central daylight time (CDT) on August 8, 2018, I received an email from ICE Acting Deputy Executive Associate Director

(Deputy EAD) Corey Price informing me that he had agreed to stay the removal of Carmen and her minor daughter, J.A.C.F,[1] collectively referred to as a singular "Carmen" for purposes of this declaration. Deputy Assistant Director Christopher Cronen was also included in the address list on the email. I interpreted his email to mean that Carmen must not be removed without prior approval from Mr. Price. At that time, Carmen had already been scheduled for removal to El Salvador via a charter flight on August 9, 2018. I have learned that the agreement to temporarily stay Carmen's removal was made because of this pending litigation.

5. At approximately 8:52am CDT, I forwarded the email from Deputy EAD Price to Acting San Antonio DFOD Jacob Castro and San Antonio Chief of Staff Adrian Ramirez, writing "Make sure this FAMU is not removed." "FAMU" is an internal ICE designation used to identify alien family units consisting of parent(s) and their minor child(ren). DFOD Castro acknowledged receipt of the message at 9:09am CDT. I interpreted his response to mean that DFOD Castro had received my email and would take appropriate action to ensure my instruction that Carmen must not be removed was communicated to appropriate staff and included in appropriate databases.

6. At approximately 9:09am CDT, DFOD Castro forwarded the email thread to Assistant Field Office Director (AFOD) Richard Hunt, stating "Richard, Make sure this FAMU is not removed. Thanks."

7. At approximately 9:20am CDT, AFOD Richard Hunt forwarded the email thread to Deportation Officers (DOs) Jerry Rivera and Christopher Wilson stating in large red print, "DO NOT REMOVE." AFOD Hunt's email further

---

[1] For purposes of this declaration, and to safeguard Plaintiffs' privacy, they are identified using the pseudonyms they provided in their court filings. Internal ICE communications clearly identified Plaintiffs by name and A-Number.

included instructions to notify proper channels of the canceled removal plans until further guidance and notification was given. Supervisory Detention and Deportation Officers (SDDOs) Gerardo Aguilar and Luis Rodriguez and DFOD Castro were copied on this email. The email was sent marked "high importance" and with read receipt confirmation. AFOD Hunt later confirmed to me that he had received read receipt confirmations from all recipients.

8. At approximately 10:15am CDT, I logged into ICE's ENFORCE Alien Removal Module (EARM) to look up the cases and make sure a banner was put into the system indicating that they should not be removed. EARM is an online system of record which retains case information for the detention and removal process. In appropriate circumstances, the system utilizes markers on a case header to clearly identify important facts, such as whether a stay of removal is in place or if an alien is otherwise subject to a hold on removal.

9. At that time, there was no indication in EARM that a stay or hold was in effect. Ordinarily, the Deportation Officer assigned to the case would be responsible for putting notification in EARM of a stay or hold. Five minutes later, at approximately 10:20am CDT, I spoke to DFOD Castro in my office to confirm that he notified the supervisors at the South Texas Family Residential Facility (STFRC) in Dilley, Texas, that Carmen was not to be removed. He replied in the affirmative.

10. Initial investigation suggests that the inadvertent removal may have been the result of confusion caused by an unrelated informal pause in the removal of Carmen during an administrative process occurring at the same time. ERO often extends an informal temporary stay, or hold, on removal pending consideration by U.S. Citizenship and Immigration Services (USCIS) of a request for reconsideration of a negative credible fear assessment. In this case, an attorney representing Carmen for administrative immigration matters

submitted a request to USCIS to reconsider the negative credible fear determination on August 8, 2018. A comment in EARM references this request; however a formal hold was not entered. In this case, two parallel procedures both resulted in agreements to temporarily halt removal. It appears that when a DO learned of the completion of the USCIS process, he understood that the informal pause had been lifted and the family could be removed. The DO appears to have gone through normal procedures, overlooked the impediment to removal at issue here, failed to document the stay relating to this litigation, and continued with removal procedures without verifying the information with AFOD Hunt.

11. At approximately 10:22am CDT on August 9, 2018, a *pro bono* attorney located in Dilley, TX notified AFOD Hunt that Carmen had been removed.

12. At approximately 10:23am CDT, AFOD Hunt checked the EARM database, which reflected that Carmen was not in custody at STFRC. EARM did not reflect that a stay or hold was in place at that time.

13. At approximately 10:24am CDT, AFOD Hunt contacted ICE Air Operations in San Antonio, TX. SDDO Roland Pastrano advised AFOD Hunt that Carmen was aboard a charter flight that had departed to El Salvador at 9:28am CDT. AFOD Hunt immediately instructed SDDO Pastrano that Carmen was not to depart the aircraft upon arrival in El Salvador and that she was to be immediately returned to the United States.

14. At approximately 10:34am CDT, AFOD Hunt contacted DFOD Castro by telephone and advised him that Carmen was inadvertently put on the removal flight. AFOD Hunt further informed DFOD Castro that actions had already been initiated to return Carmen to the United States.

15. At approximately 11:15am CDT, independent of the events described in paragraphs 11-14, HQ Domestic Operations Unit Chief Nikita Baker emailed

my Chief of Staff, Adrian Ramirez, and requested to know whether Carmen had been removed from the United States. Mr. Ramirez responded at approximately 11:19am CDT, advising that Air Operations had already been contacted, that Carmen would remain on the aircraft for return to the United States, and that officers from San Antonio would meet the aircraft in Houston and return Carmen to STFRC.

16. At approximately 1:32pm CDT, Deputy Assistant Director Christopher Cronen contacted me and informed me that a federal judge had issued an order that Carmen be immediately returned to the United States. By that time my staff had already taken actions to ensure that Carmen was immediately returned to the United States.

17. At approximately 2:10pm CDT, the return flight departed El Salvador with Carmen on board. Carmen remained on the aircraft at all times and did not disembark in El Salvador.

18. At approximately 5:02pm CDT, the return flight landed at George Bush International Airport in Houston, TX. Officers with the ERO Houston Field Office assumed custody of Carmen, pending arrival of officers from ERO San Antonio for transportation to STFRC.

19. At approximately 6:45pm CDT, officers from ERO San Antonio assumed custody of Carmen and departed Houston via ground transportation. Carmen was not physically restrained at any time during the process.

20. At approximately 12:20am on August 10, 2018, Carmen arrived at STFRC in Dilley, TX.

21. Following this unacceptable incident, I ordered a comprehensive review of removal procedures in the San Antonio Field Office to identify gaps in oversight of the process. In the interim, and until permanent changes are implemented, all files for cases involving stays of removal, holds on removal,

or any management-directed impediment to removal, have been relocated from general file rooms into AFOD offices. Computer indices have been updated to reflect that transfer and/or removal of any alien with a stay of removal, hold on removal, or any other management-directed impediment to removal will require direct concurrence from the Field Office Director after consultation with ERO headquarters.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of August 2018, in San Antonio, TX.

*[signature]*

Daniel Bible
Field Office Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement