# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

GRACE, *et al.*                         )
                                        )
            Plaintiffs,                 )
                                        )
v.                                      )          Civil Action No. 1:18-cv-01853-EGS
                                        )
JEFFERSON BEAUREGARD                    )
SESSIONS III, in his official           )
capacity as Attorney General of         )
the United States, *et al.*,            )
                                        )
            Defendants.                 )
_____)

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

By: */s/ Erez Reuveni*
EREZ REUVENI
Assistant Director, Office of Immigration Litigation
U.S. Department of Justice, Civil Division
450 5th Street NW
Washington, DC 20530
Tel. (202) 307-4293
Erez.R.Reuveni@usdoj.gov

JOSEPH DARROW
CHRISTINA GREER
JOSHUA S. PRESS
Trial Attorneys

Dated: September 12, 2018              *Attorneys for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

BACKGROUND .............................................................................................................2

I.     Expedited Removal and the Credible Fear Process ...........................................2

II.    U.S. Asylum Law ..............................................................................................4

III.   *Matter of A-R-C-G-*............................................................................................6

IV.   *Matter of A-B-* ..................................................................................................7

V.    USCIS's PM to Asylum Officers Regarding *A-B-* .......................................10

VI.   Procedural Background ...................................................................................11

STANDARD OF REVIEW ...........................................................................................12

ARGUMENT.................................................................................................................13

I.     The Court Lacks Jurisdiction over Plaintiffs' Claims .....................................14

       A.   Plaintiffs cannot use section 1252(e)(3) to challenge any aspect of *A-B-* or the
           USCIS PM generally implementing it ...............................................................14

           1.   *A-B-* is not a policy implementing 8 U.S.C. § 1225(b)(1) ........................14

           2.   Plaintiffs lack standing to challenge the USCIS PM ................................18

       B.   Even if Plaintiffs can invoke section 1252(e)(3) as to *A-B-*, nearly all of their
           claims are time-barred and therefore also not redressable ...................................23

       C.   Plaintiffs lack standing to request that Defendants parole Plaintiffs who have been
           removed back into the Country for new credible fear proceedings .....................25

II.    Plaintiffs' APA Challenge to *A-B-* Fails as a Matter of Law (Count I) .....................25

       A.   The Attorney General's precedent decisions are entitled to *Chevron* deference ..26

       B.   *A-B-* is a reasonable interpretation of the immigration laws .................................4

           1.   The decision to overrule *A-R-C-G-* is reasonable ...................................27

|  | 2. | All other aspects of *A-B-* are reasonable or have nothing to do with credible fear policies or are reasonable in any event | 29 |

|  | C. | The USCIS PM is a reasonable exercise of USCIS's authority to provide interpretive guidance to its employees - | 32 |

**III.**   **Plaintiffs' Separation-of-Powers Claim Fails as a Matter of Law (Count II)** ........... **34**

**IV.**   **Plaintiffs' Due Process Claim Fails as a Matter of Law (Count III)** ........................ **36**

**CONCLUSION** ................................................................................................. **38**

**CERTIFICATE OF SERVICE** ......................................................................... **40**

# TABLE OF AUTHORITIES

## CASE LAW

*Al-Fara v. Gonzales,*
    404 F.3d 733 (3d Cir. 2005) .............................................................................38

*Al-Ghorbani v. Holder,*
    585 F.3d 980 (6th Cir. 2009) ...........................................................................26

*Alhaj v. Holder,*
    576 F.3d 533 (6th Cir. 2009) ...........................................................................30

*Am. Bioscience, Inc. v. Thompson,*
    269 F.3d 1077 (D.C. Cir. 2001) .......................................................................12

*Am. Immigration Lawyers Ass'n v. Reno,*
    (AILA), 18 F. Supp. 2d 38 (D.D.C. 1998) *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000)..........2, 18, 37

*Arent v. Shalala,*
    70 F.3d 610 (D.C. Cir. 1995).............................................................................13

*Ark Initiative v. Tidwell,*
    749 F.3d 1071 (D.C. Cir. 2014) ........................................................................19

*Arpaio v. Obama,*
    797 F.3d 11 (D.C. Cir. 2015)............................................................................23

*Barajas-Romero v. Lynch,*
    846 F.3d 351 (9th Cir. 2017) ...........................................................................30

*Bolante v. Keisler,*
    506 F.3d 618 (7th Cir. 2007) ...........................................................................25

*Borja v. INS,*
    175 F.3d 732 (9th Cir. 1999) ...........................................................................30

*Canas-Segovia v. INS,*
    970 F.2d 599 (9th Cir. 1992) .............................................................................5

*Castillo-Arias v. U.S. Att'y Gen.,*
    446 F.3d 1190 (11th Cir. 2006) ........................................................................27

*Castro v. DHS,*
    835 F.3d 422 (3d Cir. 2016) cert. denied sub nom., 137 S. Ct. 1581 (2017) ...........................37

*Chiayu Chang v. USCIS*,
   254 F. Supp. 3d 160 (D.D.C. 2017) .................................................34

*Children's Hosp. Ass'n of Tex. v. Azar*,
   300 F. Supp. 3d 190 (D.D.C. 2018) .................................................27

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) .................................................13

*Crespin-Valladares v. Holder*,
   632 F.3d 117 (4th Cir. 2011) .................................................29

*Czerkies v. U.S. Dep't of Labor*,
   73 F.3d 1435 (7th Cir. 1996) .................................................34

*Davila-Mejia v. Mukasey*,
   531 F.3d 624 (8th Cir. 2008) .................................................26

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008) .................................................19

*Delta Const. Co. v. EPA*,
   783 F.3d 1291 (D.C. Cir. 2015) .................................................22

*Doe v. Holder*,
   736 F.3d 871 (9th Cir. 2013) .................................................29

*Duarte-Salagosa v. Holder*,
   775 F.3d 841 (7th Cir. 2014) .................................................30

*Dugdale v. US*,
   *CBP*, 2015 WL 2124937 (D.D.C. May 6, 2015) .................................................18

*Ejonga v. Rosenstein*,
   No. 17-cv-2813, 2018 U.S. Dist. LEXIS 77381, at *2 (D.D.C. May 3, 2018) .................................................18

*Envtl. Def. Fund, Inc. v. Costle*,
   657 F.2d 275 (D.C. Cir. 1981) .................................................13

*F.C.C. v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) .................................................13

*Fatin v. INS*,
   12 F.3d 1233 (3d Cir. 1993) .................................................26

iv

*Fund for Animals v. Norton*,
   512 F. Supp. 2d 49 (D.D.C. 2007) ......................................................................13

*Galina v. INS*,
   213 F.3d 955 (7th Cir. 2000) ........................................................ 10, 24, 29, 30

*Garcia v. Att'y Gen. of U.S.*,
   632 F.3d 117, 665 F.3d 496 (3d Cir. 2011) .........................................................29

*Gathungu v. Holder*,
   725 F.3d 900 (8th Cir. 2013) ...............................................................................29

*Gonzales v. Oregon*,
   546 U.S. 243 (2006) ..............................................................................................32

*Gonzalez v. U.S. Att'y Gen.*,
   820 F.3d 399 (11th Cir. 2016) .............................................................................27

*Gonzalez-Posadas v. Att'y Gen. of U.S.*,
   781 F.3d 677 (3d Cir. 2015) ................................................................................30

*Hernandez-de la Cruz v. Lynch*,
   819 F.3d 784 (5th Cir. 2016) ...............................................................................27

*Hor v. Gonzales*,
   400 F.3d 482 (7th Cir. 2005) ...............................................................................10

*I.N.S. v. Aguirre-Aguirre*,
   526 U.S. 415 (1999) ........................................................................................*passim*

*INS v. Cardoza-Fonseca*,
   480 U.S. 421 (1987) ......................................................................................17, 26

*INS v. Elias-Zacarias*,
   502 U.S. 478 (1992) ......................................................................................5, 30

*INS v. Pangilinan*,
   486 U.S. 875 (1988) ..............................................................................................25

*Jutus v. Holder*,
   723 F.3d 105 (1st Cir. 2013)................................................................................30

*Kaspersky Lab, Inc. v. DHS*,
   311 F. Supp. 3d 187 (D.D.C. 2018) ...................................................................22

*Khalili v. Holder*,
    557 F.3d 429 (6th Cir. 2009) ............................................................................29

*Kiyemba v. Obama*,
    555 F.3d 1022 (D.C. Cir. 2009) ....................................................................25, 37

*Krastev v. INS*,
    292 F.3d 1268 (10th Cir. 2002) ........................................................................29

*Kucana v. Holder*,
    558 U.S. 233 (2010) ..........................................................................................25

*Lee v. U.S. Citizenship and Immigration Servs.*,
    592 F.3d 612 (4th Cir. 2010) ............................................................................18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..........................................................................................19

*Marin-Portillo v. Lynch*,
    834 F.3d 99 (1st Cir. 2016)................................................................................30

*Martinez-Galarza v. Holder*,
    782 F.3d 990 (8th Cir. 2015) ............................................................................30

*Matul-Hernandez v. Holder*,
    685 F.3d 707 (8th Cir. 2012) ............................................................................30

*Melnik v. Sessions*,
    891 F.3d 278 (7th Cir. 2018) ............................................................................30

*Menjivar v. Gonzales*,
    416 F.3d 918 (8th Cir. 2005) ............................................................................29

*Mingo Logan Coal Co. v. EPA*,
    829 F.3d 710 (D.C. Cir. 2016)..........................................................................28

*Morales v. Sessions*,
    860 F.3d 812 (5th Cir. 2017) ............................................................................30

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29, (1983)............................................................................................13

*Mucaj v. Holder*,
    469 F. App'x 31 (2d Cir. 2012) ........................................................................30

*Nat'l Ass'n of Clean Air Agencies v. EPA*,
    489 F.3d 1221 (D.C. Cir. 2007) ..........................................................................26

*Nat'l Auto. Dealers Ass'n v. F.T.C.*,
    864 F. Supp. 2d 65 (D.D.C. 2012) ......................................................................12

*\*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005) ....................................................................................*passim*

*\*Negusie v. Holder*,
    555 U.S. 511 (2009) ............................................................................................26

*Ngugi v. Lynch*,
    826 F.3d 1132 (8th Cir. 2016) ............................................................................27

*Orellana v. Sessions*,
    722 F. App'x 443 (6th Cir. 2018) ......................................................................28

*Orellana-Monson v. Holder*,
    685 F.3d 511 (5th Cir. 2012) ..............................................................................26

*Pacas-Renderos v. Sessions*,
    691 F. App'x 796 (4th Cir. 2017) ......................................................................27

*Pagayon v. Holder*,
    675 F.3d 1182 (9th Cir. 2011) ............................................................................30

*Paiz-Morales v. Lynch*,
    795 F.3d 238 (1st Cir. 2015)...............................................................................27

*Paloka v. Holder*,
    762 F.3d 191 (2d Cir. 2014) ...............................................................................27

*\*Petit v. U.S. Dep't of Educ.*,
    675 F.3d 769 (D.C. Cir. 2012) ............................................................................35

*\*Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*,
    43 F. Supp. 3d 28 (D.D.C. 2014) .......................................................................32

*Quinteros-Mendoza v. Holder*,
    556 F.3d 159 (4th Cir. 2009) ..............................................................................30

*Rafeedie v. INS*,
    880 F.2d 506 (1989) ............................................................................................37

*Ramos-Lopez v. Holder,*
  563 F.3d 855 (9th Cir. 2009) .............................................................26

*Rasul v. Myers,*
  563 F.3d 527 (D.C. Cir. 2009) ...........................................................37

*Rel. Mezei,*
  345 U.S. 206 (1953) ...........................................................................37

*\*Renal Physicians Ass'n v. U.S. Dep't of Health and Human Servs.,*
  489 F.3d 1267 (D.C. Cir. 2007) ....................................... 21, 22, 23, 24

*Reyes v. Lynch,*
  842 F.3d 1125 (9th Cir. 2016) ...........................................................27

*Rivera-Barrientos v. Holder,*
  666 F.3d 641 (10th Cir. 2012) ...........................................................26

*Rizal v. Gonzales,*
  442 F.3d 84 (2d Cir. 2006) .................................................................29

*Rodas-Orellana v. Holder,*
  780 F.3d 982 (10th Cir. 2015) .......................................................27, 30

*Ruiz v. U.S. Att'y Gen.,*
  440 F.3d 1247 (11th Cir. 2006) .....................................................29, 30

*Rumierz v. Gonzales,*
  456 F.3d 31 (1st Cir. 2006)..................................................................17

*S.E.R.L. v. Att'y Gen.,*
  894 F.3d 535 (3d Cir. 2018) ....................................................26, 27, 34

*Sagastume v. Holder,*
  490 F. App'x 712 (6th Cir. 2012) .......................................................28

*\*San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n,*
  789 F.2d 26 (D.C. Cir. 1986)..............................................................13

*Sanchez v. U.S. Att'y Gen.,*
  392 F.3d 434 (11th Cir. 2004) ...........................................................30

*Sanchez-Robles v. Lynch,*
  808 F.3d 688 (6th Cir. 2015) .............................................................30

*Savchuck v. Mukasey,*
    518 F.3d 119 (2d Cir. 2008) ...................................................................................17

*Scatambuli v. Holder,*
    558 F.3d 53 (1st Cir. 2009)....................................................................................26

*Scenic Am., Inc. v. U.S. D.O.T.,*
    836 F.3d 42 (D.C. Cir. 2016) .................................................................................21

*Shehu v. Att'y Gen. of U.S.,*
    482 F.3d 652 (3d Cir. 2007) ..................................................................................30

*Shehu v. Gonzales,*
    443 F.3d 435 (5th Cir. 2006) .................................................................................29

*Sok v. Mukasey,*
    526 F.3d 48 (1st Cir. 2008).....................................................................................29

*Tesfamichael v. Gonzales,*
    469 F.3d 109 (5th Cir. 2006) .................................................................................29

*Tex. Children's Hosp. v. Azar,*
    315 F. Supp. 3d 322 (D.D.C. 2018) ......................................................................33

*Texas v. EPA,*
    726 F.3d 180 (D.C. Cir. 2013) ..............................................................................22

*Thuri v. Ashcroft,*
    380 F.3d 788 (5th Cir. 2004) .................................................................................30

*TI Fed. Credit Union v. DelBonis,*
    72 F.3d 921 (1st Cir. 1995)....................................................................................28

*Transp. Workers Union of Am. v. TSA,*
    492 F.3d 471 (D.C. Cir. 2007) ..............................................................................21

*Trudeau v. FTC,*
    456 F.3d 178 (D.C. Cir. 2006) ..............................................................................18

*Ucelo-Gomez v. Mukasey,*
    509 F.3d 70 (2d Cir. 2007) ...............................................................................27, 30

*\*Ukrainian-Am. Bar Ass'n, Inc. v. Baker,*
    893 F.2d 1374 (D.C. Cir. 1990) ..........................................................................2, 37

*United States ex rel. Knauff v. Shaughnessy,*
   338 U.S. 537 (1950) ...................................................................................25

*United States v. Kwai Fun Wong,*
   135 S. Ct. 1625 (2015) ..............................................................................18

*United States v. Miller,*
   822 F.2d 828 (9th Cir. 1987) .....................................................................28

*Ursack, Inc. v. Sierra Interagency Black Bear Grp.,*
   639 F.3d 949 (9th Cir. 2011) .....................................................................34

*Vahora v. Holder,*
   707 F.3d 908 (7th Cir. 2013) .....................................................................29

*Vatulev v. Ashcroft,*
   354 F.3d 1207 (10th Cir. 2003) .................................................................30

*Velasquez v. Sessions,*
   866 F.3d 188 (4th Cir. 2017) ...............................................................27, 30

*W-G-A- v. Sessions,*
   --- F.3d ---, 2018 WL 3979276 (7th Cir. Aug. 21, 2018)...........................27

*West v. Lynch,*
   845 F.3d 1228 (D.C. Cir. 2017) .................................................................22

*Xian Tong Dong v. Holder,*
   696 F.3d 121 (1st Cir. 2012).......................................................................17

*Zaldana Menijar v. Lynch,*
   812 F.3d 491 (6th Cir. 2015) .....................................................................27

*Zetino v. Holder,*
   622 F.3d 1007 (9th Cir. 2010) ...................................................................30

## ADMINISTRATIVE DECISIONS

*Matter of A-B-,*
   27 I. & N. Dec. 316 (A.G. 2018) ........................................................*passim*

*Matter of A-R-C-G-,*
   26 I. & N. Dec. 388 (BIA 2014) ........................................................ 2, 7,  27, 30

x

*Matter of A-T-,*
  24 I. & N. Dec. 617 (BIA 2008) ...................................................................24

*Matter of A-T-,*
  25 I. & N. Dec. 10 (BIA 2009) ............................................................ 9, 24, 32

*\*Matter of Acosta,*
  19 I. & N. Dec. 211 (BIA 1985) ................................................... 4, 5, 6, 29

*Matter of C-A-,*
  23 I. & N. Dec. 951 (BIA 2006) ............................................................ 6, 30

*Matter of C-T-L-,*
  25 I. & N. Dec. 341 (BIA 2010) ...................................................................30

*Matter of E-L-H-,*
  23 I. & N. Dec. 814 (BIA 2005) ...................................................................34

*Matter of Fajardo Espinoza,*
  26 I. & N. Dec. 603 (BIA 2015) ...................................................................35

*\*Matter of Gonzalez,*
  16 I. & N. Dec. 134 (BIA 1977) ............................................................33, 35

*Matter of J-B-N- & S-M-,*
  24 I. & N. Dec. 208 (BIA 2007) ............................................................5, 31

*Matter of J-F-F-,*
  23 I. & N. Dec. 912 (A.G. 2006) ...................................................................17

*Matter of J-S-,*
  24 I. & N. Dec. 520 (A.G. 2008) ...................................................................17

*Matter of L-E-A-,*
  27 I. & N. Dec. 40 (BIA 2017) .......................................................................5

*\*Matter of M-E-V-G-,*
  26 I. & N. Dec. 227 (BIA 2014) ............................................................6, 9

*Matter of Marroquin-Garcia,*
  23 I. & N. Dec. 705 (A.G. 2005) ...................................................................17

*Matter of McMullen,*
  17 I. & N. Dec. 542 (BIA 1980) .....................................................................4

*Matter of Pula*,
   19 I. & N. Dec. 467 (BIA 1987) ..................................................................10, 32

*Matter of R-A-*,
   22 I. & N. Dec. 906 (BIA 1999) ....................................................................6, 10

*Matter of T-Z-*,
   24 I. & N. Dec. 163 (BIA 2007) ...........................................................................4

*Matter of V-T-S-*,
   21 I. & N. Dec. 792 (BIA 1997) ........................................................................30

*Matter of W-G-R-*,
   26 I. & N. Dec. 208 (BIA 2014) ...........................................................................9

*\*Matter of W-Y-C- & H-O-B-*,
   27 I. & N. Dec. 189 (BIA 2018) ...............................................................9, 24, 31

*\*Matter of Waldei*,
   19 I. & N. Dec. 189 (BIA 1984) .................................................................23, 33

## STATUTES

5 U.S.C. § 706(2)(A)-(C) ..............................................................................13

8 U.S.C. § 1101 ............................................................................................14

8 U.S.C. § 1101(a)(42) ..................................................................................4

8 U.S.C. § 1103(a) .................................................................................*passim*

8 U.S.C. § 1103(a)(1) ...............................................................2, 4, 11, 26

8 U.S.C. § 1103(a)(43) ..................................................................................1

8 U.S.C. § 1103(g)(2) .............................................................................8, 26

8 U.S.C. § 1151-1382 ..................................................................................17

8 U.S.C. § 1158 ...................................................................... 1, 4, 11, 14,

8 U.S.C. § 1158(b)(1) ...........................................................................10, 32

8 U.S.C. § 1158(b)(1)(B) ............................................................................15

8 U.S.C. § 1158(b)(1)(B)(i) ..................................................................................4, 5

8 U.S.C. § 1182(d)(5)(A) .......................................................................................25

8 U.S.C. § 1225(b) ......................................................................................... 1, 3, 14

8 U.S.C. § 1225(b)(1)...................................................................................... 14, 37

8 U.S.C. § 1225(b)(1)(A)(ii) ...................................................................................3

8 U.S.C. § 1225(b)(1)(a)(1)(i) .................................................................................3

8 U.S.C. § 1225(b)(1)(a)(1)(iii) ...............................................................................3

8 U.S.C. § 1225(b)(1)(B)(ii) .............................................................................3, 38

8 U.S.C. § 1225(b)(1)(B)(iii)(I) ...............................................................................3

8 U.S.C. § 1225(b)(1)(B)(iii)(III) .......................................................................3, 22

8 U.S.C. § 1225(b)(1)(B)(v) ..........................................................................*passim*

8 U.S.C. § 1225(b)(1)(C)...................................................................................3,

8 U.S.C. § 1229a..................................................................................................3

8 U.S.C. § 1229a(c)(4)(A)(ii) ......................................................................... 10, 32

8 U.S.C. § 1231...................................................................................................38

8 U.S.C. § 1231(b)(3)...................................................................................... 15, 37

8 U.S.C. § 1252...................................................................................................16

8 U.S.C. § 1252(a) ..............................................................................................18

8 U.S.C. § 1252(a)(2)(A)(iii) ........................................................................... 3, 12

8 U.S.C. § 1252(a)(2)(B)......................................................................................25

8 U.S.C. § 1252(a)(2)(B)(ii) .................................................................................25

8 U.S.C. § 1252(a)(4) ..........................................................................................38

8 U.S.C. § 1252(a)(5)...........................................................................................17

8 U.S.C. § 1252(b)(9)................................................................................17, 38

8 U.S.C. § 1252(e)..........................................................................................18

8 U.S.C. § 1252(e)(3).......................................................................1, 14, 16, 37

8 U.S.C. § 1252(e)(3)(A)................................................................................15

8 U.S.C. § 1252(e)(3)(B)....................................................................17, 18, 23

## PUBLIC LAW

Pub. L. No. 105-277.......................................................................................38

Pub. L. No. 109-13..........................................................................................5

## FEDERAL REGULATIONS

8 C.F.R. § 103.10(b).................................................................................11, 22

8 C.F.R. § 103.3(c)...........................................................................1, 21, 22, 24

8 C.F.R. § 208.9(b) .................................................................................11, 31, 33

8 C.F.R. § 208.18............................................................................................36

8 C.F.R. § 208.30(d)........................................................................................33

8 C.F.R. § 208.30(e)..........................................................................................3

8 C.F.R. § 208.30(e)(1)....................................................................................33

8 C.F.R. § 208.30(e)(2)....................................................................................33

8 C.F.R. § 208.30(e)(4)....................................................................................11

8 C.F.R. § 1003.1............................................................................................21

8 C.F.R. § 1003.1(d)(1)......................................................................................4

8 C.F.R. § 1003.1(g)...................................................................................11, 23

8 C.F.R. § 1003.1(g)-(h)..................................................................................15

8 C.F.R. § 1003.1(h)............................................................................................................4

8 C.F.R. § 1003.1(h)(1) ...............................................................................................8, 26

8 C.F.R. § 1003.42............................................................................................................3

8 C.F.R. § 1003.42(f) ........................................................................................................3

8 C.F.R. § 1208.17..........................................................................................................36

8 C.F.R. § 1208.18..........................................................................................................36

8 C.F.R. § 1208.30(g).....................................................................................................23

8 C.F.R. § 1208.30(g)(2).................................................................................................22

8 C.F.R. § 1208.30(g)(2)(iv)(A) .......................................................................................3

## FEDERAL REGISTER NOTICES

65 Fed. Reg. 76, 588 ........................................................................................................7

69 Fed. Reg. 48,877-01 ....................................................................................................3

## LEGISLATIVE HISTORY

H.R. Conf. Rep. No. 109-72..............................................................................................5

**INTRODUCTION**

Plaintiffs are eleven inadmissible aliens apprehended at or near the border who unsuccessfully claimed fear of persecution and are now subject to final expedited-removal orders. Invoking 8 U.S.C. § 1252(e)(3)—which gives this Court jurisdiction to hear challenges to policies, procedure, or guidance "implement[ing]" the expedited removal system—Plaintiffs challenge the Attorney General's recent decision clarifying the law on asylum claims under 8 U.S.C. § 1158, *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018) (*A-B-*), as applied to their credible fear proceedings, and United States Citizenship and Immigration Services' (USCIS) July 11, 2018 Policy Memorandum (PM), which is interpretive guidance informing its line officers how to apply *A-B-*. Plaintiffs contend that *A-B-* and the PM create "new credible fear policies" that violate the Immigration and Nationality Act (INA) and Administrative Procedure Act (APA) (Count I), the separation of powers (Count II), and the Fifth Amendment's Due Process Clause (Count III).

The Court should grant summary judgment to Defendants on all counts.

To start, the Court lacks jurisdiction over Plaintiffs' challenges to *A-B-* and the PM. Section 1252(e)(3) provides jurisdiction to review written policies, procedure, or guidance "implement[ing]" the *expedited removal system*. The Attorney General's decision in *A-B-* interprets the *asylum* statute, 8 U.S.C. § 1158, and the definition of a refugee, 8 U.S.C. § 1103(a)(43). It does not implement the expedited removal system, 8 U.S.C. § 1225(b); and the USCIS PM does nothing more than inform line officers of that change. Plaintiffs' attack on the USCIS PM also adds nothing: because asylum officers, like all immigration officers, must apply the Attorney General's binding decisions, *see* 8 U.S.C. § 1103(a); 8 C.F.R. § 103.3(c), any relief directed at the PM would not cure Plaintiffs' alleged injuries, because immigration officers and judges would still have to apply *A-B-* to all immigration proceedings, including credible fear proceedings. In any event, virtually all of Plaintiffs' claims are time-barred. Section 1252(e)(3)(B) limits this Court's jurisdiction to challenges to the expedited removal system brought within "60 days after the date the challenged" policy was implemented. But aside from overruling a recent Board of Immigration Appeals (BIA) decision, *A-B-* otherwise restates long-standing, preexisting law. That law cannot be challenged through section 1252(e)(3). And because the USCIS PM

1

simply restates *A-B-*, Plaintiffs cannot challenge it because an order from this Court invalidating the PM would not change applicable law, and thus not redress Plaintiffs' alleged injuries.

Besides these threshold problems, each claim fails as a matter of law for other reasons. Plaintiffs' APA claim (Count I) fails because *A-B-* is a sound decision that is entitled to *Chevron* deference in all respects. *A-B-*'s overruling of the BIA's prior decision in *Matter of A-R-C-G-*, 26 I. & N. Dec. 388 (BIA 2014) (*A-R-C-G-*) is a reasonable application of the Attorney General's authority over the immigration laws, *see* 8 U.S.C. § 1103(a)(1), and every other aspect of *A-B-* Plaintiffs challenge relies on preexisting law that itself has already been accorded *Chevron* deference by numerous courts. The USCIS PM similarly merits deference—it likewise merely reaffirms preexisting asylum laws or is otherwise reasonable. Plaintiffs' separation-of-powers claim (Count II) fails too. Plaintiffs contend that USCIS has instructed line officers to ignore binding circuit precedent. Compl. ¶¶ 9, 90-92. But consistent with Supreme Court precedent in *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005), the PM merely and correctly instructs asylum officers to follow binding precedent from the Attorney General unless and until contrary binding authority from an Article III court holds otherwise. Finally, Plaintiffs' due process claim (Count III) has previously been rejected by this Court and the D.C. Circuit. Aliens, like Plaintiffs, who seek initial admission to the United States "cannot avail themselves of the protections of the Fifth Amendment to guarantee certain procedures with respect to their admission." *Am. Immigration Lawyers Ass'n v. Reno* (*AILA*), 18 F. Supp. 2d 38, 60 (D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000) (collecting cases); *see, e.g.*, *Ukrainian-Am. Bar Ass'n, Inc. v. Baker*, 893 F.2d 1374, 1382 (D.C. Cir. 1990).

For these reasons, the Court should grant Defendants summary judgment.

## **BACKGROUND**[1]

## I.   **Expedited Removal and the Credible Fear Process**

Plaintiffs' claims concerning the credible fear standard arise in the context of the

---

[1] The record, USCIS001-346, consists entirely of the PM, statutes, administrative decisions, and caselaw. *A-B-* and the PM, discussed below, appear in the record at USCIS015-34 and USCIS001-10 respectively. Many of the statues and cases cited below are part of the record as well. *See* USCIS000035-346. For ease of reference, Defendants cite to these legal authorities using the

"expedited removal" provisions codified at 8 U.S.C. § 1225(b). The expedited removal procedures apply to certain aliens who apply for admission at a port of entry and do not have a valid visa, and to persons who entered between ports of entry unlawfully, are found within 100 miles of a border, and who cannot establish that they are lawfully present or have been in the United States for at least 14 days. 8 U.S.C. § 1225(b)(1)(a)(1)(i) & (iii); Designating Aliens for Expedited Removal, 69 Fed Reg. 48877-01 (Aug. 11, 2004). Such aliens are subject to immediate removal from the United States unless they express a fear of returning to the country of removal. *Id.* If the alien "indicates either an intention to apply for asylum . . . or a fear of persecution," the immigration officer inspecting the alien must refer the alien for a credible fear interview by an asylum officer. *Id.* § 1225(b)(1)(A)(ii).

If the officer determines that the alien "has a credible fear of persecution [or torture]," the officer refers the alien to removal proceedings under 8 U.S.C. § 1229a, in which an alien may apply for asylum, withholding of removal, deferral of removal, or any other relief or protection for removal for which she may be eligible. *Id.* § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(e). "Credible fear of persecution" means "that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum." *Id.* § 1225(b)(1)(B)(v).

If the asylum officer finds that the alien does not have a credible fear of persecution or torture, the alien may seek review before an immigration judge (IJ). *Id.* § 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1003.42. If the IJ disagrees, the alien is referred to removal proceedings under 8 U.S.C. § 1229a to raise their asylum claim. If an IJ agrees that the alien lacks a credible fear, the decision is not subject to further review by the BIA or an Article III court. *Id.* §§ 1225(b)(1)(C), 1252(a)(2)(A)(iii), 1252(e)(2); 8 C.F.R. § 1003.42(f). In that instance, the alien must be "removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I); 8 C.F.R. § 1208.30(g)(2)(iv)(A). "[N]o court shall have jurisdiction to review . . . the *application of*" section 1225(b)(1), including the credible fear determination, "to individual aliens" in any

---

relevant case or statutory citation rather than the record citation, but cite to the record, denoted as AR followed by page number, when referring to the PM. *See* Local Rule 7(h)(2).

circumstance. *Id.* § 1252(a)(2)(A)(iii) (emphasis added).

**II.     U.S. Asylum Law**

Under the INA, an alien physically present in the United States may obtain asylum if she carries her burden of demonstrating that she is a "refugee," and otherwise demonstrates that they warrant a favorable exercise of discretion. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(B)(i). A refugee is someone who: (1) has suffered persecution (or has a well-founded fear of persecution) (2) on account of (3) one of five specific protected grounds—race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1101(a)(42). These requirements set apart those fleeing general conditions of strife or crime from those fleeing the kind of harm that asylum addresses. *See, e.g.*, *Matter of Acosta*, 19 I. & N. Dec. 211, 222-223 (BIA 1985); *Matter of McMullen*, 17 I & N Dec. 542, 544-45 (BIA 1980).

Congress has explicitly provided the Attorney General with authority to give the ambiguous terms in the INA, including the asylum statute (8 U.S.C. § 1158), "concrete meaning through a process of case-by-case adjudication." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999). Specifically, under 8 U.S.C. § 1103(a)(1), Congress provided that "determination and ruling by the Attorney General with respect to all questions of law shall be controlling" and it gave him the power to exercise this authority through "review of administrative determinations in immigration proceedings." While retaining ultimate decision-making authority, the Attorney General has vested the BIA with power to issue precedent decisions on the "proper interpretation and administration of the [INA] and its implementing regulations." 8 C.F.R. § 1003.1(d)(1), (h). Over several decades, the BIA and the Attorney General have exercised this interpretative authority to give concrete meaning to the asylum statute.

In keeping with the understanding that asylum involves a breach of the relationship between the refugee and his country, the term "persecution" imports a governmental role. *Matter of T-Z-*, 24 I. & N. Dec. 163, 171 (BIA 2007). The government must be responsible for the harm, either by its own action or by allowing actions of private parties the government is unwilling and unable to control. *Matter of McMullen*, 17 I. & N. Dec. 542, 544-45 (BIA 1980).

The persecution must be "on account of," meaning have a "nexus" with, a protected

ground—an applicant must prove that the persecutor was or will be motivated by one of the five protected grounds listed in the statute. *INS v. Elias-Zacarias*, 502 U.S. 478, 483 & n.2 (1992). Under *Elias-Zacarias*, persecution on account of a protected ground is not merely harm that has a causal nexus or "connection" with the protected ground, but requires a showing, direct or circumstantial, that the persecutor knew and cared about the applicant's protected trait, and indeed that he chose to act because he believed the victim had the protected characteristic. *See, e.g.*, H.R. Conf. Rep. No. 109-72, at 162 (2005) (Conference Report for REAL ID Act) (citing *Canas-Segovia v. INS*, 970 F.2d 599, 601 (9th Cir. 1992)). Once the applicant has established that the persecutor was motivated to some extent by one of the specific protected grounds, if the persecutor is also motivated by other, non-protected grounds, a mixed-motive analysis is necessary to decide whether the protected ground is sufficiently important to give rise to an asylum claim. In the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, Title 1, 119 Stat. 302-03, Congress adopted a motive standard that requires the applicant to prove that a protected ground "was or will be at least *one central reason* for persecuting the applicant." REAL ID Act sec. 101(a), *codified at* 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis added). The BIA has interpreted the statutory "one central reason" standard to mean that, where there is both a protected ground motive and another motive that is a not a protected ground, the protected-ground motive must be more than incidental, tangential, or subordinate to the persecutor's motivation to persecute the applicant. *See Matter of J-B-N- & S-M-*, 24 I. & N. Dec. 208, 212-13 (BIA 2007); *see also Matter of L-E-A-*, 27 I. & N. Dec. 40, 43-47 (BIA 2017) (further refining "one central reason" analysis).

The applicant must also establish the existence (or perceived existence) of a protected ground—his race, religion, nationality, political opinion, or membership in a particular social group. The fifth ground, membership in a particular social group, is the focus of the Attorney General's decision in *A-B-*. Over thirty years ago, in *Matter of Acosta*, 19 I. & N. Dec. 211 (BIA 1985), the BIA held that the "particular social group" ground must be premised on "immutable characteristics," meaning groups of persons who share a common trait that "either is beyond the power of an individual to change or is so fundamental to individual identity or conscience that it ought not be required to be changed." *Acosta*, 19 I&N Dec. at 233. This can include characteristics

"such as sex, color, or kinship ties," or depending on the circumstances, "a shared past experience such as former military leadership or land ownership." *Id.* at 233. After *Acosta*, the BIA interpreted "immutable characteristics" broadly, to include many past acts or experiences, because history cannot be changed and therefore anything a person has done or experienced could be characterized as an immutable characteristic. *See Matter of C-A-*, 23 I. & N. Dec. 951, 958 (BIA 2006).

In response to the concern that this broad reading of the immutable-characteristics test was making "particular social group" a catch-all for victims of any kind of crime, the BIA supplemented and clarified its interpretation of "particular social group" through several cases over several years. In *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (BIA 2014), the BIA synthesized this caselaw to arrive at a framework for identifying particular social groups that existed as discrete and socially salient groupings in their society. Under *Matter of M-E-V-G-*, an applicant claiming membership in a "particular social group" must establish that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question. *Id.* at 237. For a group to be particular, it "must be defined by characteristics that provide a clear benchmark for determining who falls within the group." *Id.* at 239. To be "socially distinct," "it must be perceived as a group by society." *Id.* at 240. And a particular social group must exist independently of the harm on which the asylum claim was based. *Id.* at 236 n.11, 243.

## III.   *Matter of A-R-C-G-*

One context in which the "particular social group" and motive questions have loomed large is asylum claims based on domestic violence. The questions of whether or when domestic violence can be the basis for an asylum claim has been considered since at least 1999, when the BIA decided *Matter of R-A-*, 22 I. & N. Dec. 906 (BIA 1999). There, the BIA denied an asylum claim by an applicant who asserted that her husband had abused her on account of her membership in a particular social group defined as "Guatemalan women who have been involved intimately with Guatemalan male companions, who believe that women are to live under male domination." *Id.* The BIA held that R-A-'s claim failed for lack of a cognizable particular social group, because there was no evidence that anyone in Guatemalan society would have perceived the claimed group

to exist within that society. *Id.* at 918. The BIA determined R-A-'s claim also failed because there was no proof that her husband was motivated in any part by her membership in that group, since there was no reason to think her husband knew that such a group existed or thought of her as a member. *Id.* at 918, 921. In 2001 the Attorney General vacated it in anticipation of a regulation addressing the relevant issues was forthcoming.[2] Years passed, but no regulation ever came about.

Then in 2014, the BIA issued *Matter of A-R-C-G-*, 26 I. & N. Dec. 388 (BIA 2014), a decision purporting to resolve the unanswered questions about domestic violence. Similar to *R-A-*, *A-R-C-G-* involved another domestic violence case from Guatemala—with the applicant relying on a particular social group of "married women in Guatemala who are unable to leave their relationship." 26 I. & N. Dec. at 389-90. This time, in contrast to *R-A-*, the BIA accepted DHS's concession that the proposed group was indeed a "particular social group" and the husband was motivated by the applicant's membership in the group. *Id.* at 388-89. However, instead of analyzing the claim in accord with the generally applicable frameworks developed for analyzing claimed "particular social groups," the BIA relied primarily on a stipulation by the parties that "married women in Guatemala who are unable to leave their relationship" qualified as a particular social group in Guatemala. 26 I. & N. Dec. 388. Rather than requiring any evidence that Guatemalan society recognized this specific group as a discrete, socially salient group within the country or culture, the BIA simply remarked that the individual terms of "married," "women" and "unable to leave the relationship" were terms with meanings in Guatemalan society, and that Guatemala had a culture of "machismo and family violence." *Id.* at 393-94. As for the nexus or motive requirement, which the BIA had considered a key failing of the claim in *R-A-*, the BIA in *A-R-C-G-* simply accepted the parties' stipulation that A-R-C-G- satisfied the nexus requirement. *Id.* at 395.

---

[2] The Commissioner of the former Immigration and Naturalization Service (INS) referred the decision to the Attorney General for review. In the meantime, the INS issued a notice of proposed rulemaking to "provide[] guidance on the definitions of 'persecution' and 'membership in a particular social group,' as well as what it means for persecution to be 'on account of' a protected characteristic in the definition of a refugee" and to "restate[ ] that gender can form the basis of a particular social group." *Asylum and Withholding Definitions*, 65 Fed. Reg. 76,588 (Dec. 7, 2000).

IV.     *Matter of A-B-*

On June 11, 2018, the Attorney General issued *A-B-*, which overruled *A-R-C-G-*. *Matter of A-B-*, 27 I. & N. Dec. 316. A-B- was an alleged victim of domestic violence who claimed that she was a member of a particular social group consisting of "El Salvadoran women who are unable to leave their domestic relationships where they have children in common" with their partners. 27 I. & N. Dec. at 321. The IJ denied A-B-'s claim, finding that she was not credible, that her group was not cognizable, and that she did not prove that her group was a central reason for her persecution or that the government of El Salvador was unable or unwilling to help her. *Id.* The BIA reversed the IJ's decision and ordered the IJ to grant asylum. *Id.* The BIA rejected the IJ's credibility determination and ruled that A-B-'s particular social group was substantially similar to that recognized in *A-R-C-G-* and was therefore valid, that the IJ erred in finding that A-B- was not a member of the group because she could leave her husband, that A-B- established that the abuse was on account of her membership in the group, and that the El Salvadoran government was unable or unwilling to protect her. *Id.*

On March 7, 2018, the Attorney General certified the case to himself, *see* 8 U.S.C. § 1103(g)(2); 8 C.F.R. § 1003.1(h)(1), and requested additional briefing from the parties and amici on the question of "whether, and under what circumstances, being a victim of private criminal activity constitutes a cognizable 'particular social group' for purposes of an application for asylum or withholding of removal." *Matter of A-B-*, 27 I. & N. Dec. at 317.

The Attorney General issued his decision on June 11, 2018, overruling *A-R-C-G-* as wrongly decided. *Id.* at 333. In the decision he explained the failings of the BIA's decision in *A-R-C-G-* and reiterated the requirements for asylum under U.S. law.

First, the Attorney General reversed the BIA's determination that A-B-'s proposed social group was cognizable because it was similar to the one in *A-R-C-G-*. He held that *A-R-C-G-* should not have been issued as a precedential decision because the BIA had failed to perform the rigorous analysis necessary to decide whether the "particular social group" there was legally cognizable; instead, the BIA had relied primarily on the parties' stipulations and had "performed only a cursory analysis of the three factors required to establish a particular social group." *Id.* at 331. Regarding

particularity, he faulted the BIA for looking at each term individually rather than in the aggregate, to decide whether the combination of terms described a discrete group in the society. *Id.*. He further noted that the BIA did not engage with its own requirements for particularity—namely, that a group cannot be "amorphous, overbroad, diffuse, or subjective" and that it must be "defined by characteristics that provide a clear benchmark for determining who falls within the group." *Id.* at 335 (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. at 239). Regarding social distinction, the Attorney General wrote that the BIA was wrong to rely on evidence regarding Guatemala's "culture of machismo and family violence" and problematic enforcement of domestic violence laws, which did nothing to prove that the group of "married women in Guatemala who are unable to leave their relationship" was recognized as a distinct social grouping in that country.[3] *Id.* at 336. The Attorney General also faulted the BIA for recognizing the group in *A-R-C-G-* as a "particular social group," even though it did not exist independently of the persecution claimed. *Id.* at 334-035 (citing *Matter of M-E-V-G-*, 26 I. & N. Dec. at 232, 236 n.11, 243; *Matter of W-G-R-*, 26 I. & N. Dec. 208, 215 (BIA 2014)). The term "unable to leave their relationship" appeared to mean that the women were unable to leave because of the harm suffered or feared from the abuser, which was the very persecution on which the claim was based. *Id.* at 335.

Second, the Attorney General reminded the BIA of the motive requirement. He concluded that in *A-R-C-G-* the BIA had erred in simply accepting the parties' stipulation that there was a nexus between the abuse committed by A-R-C-G-'s husband and her membership in her proposed social group. *Id.* at 338. The Attorney General stressed the requirement that membership in the particular social group must be a central reason for the persecution. *Id.* at 337-39, 343-45. In A-R-C-G-'s case, and then again in A-B-'s case, the BIA failed to point to evidence that the abusers were aware of and cared about the victims' membership in the particular social groups they posited. *Id.* at 339, 343.

Third, the Attorney General reiterated the importance of the governmental role in

---

[3] The Attorney General also reiterated the BIA's procedural rule that asylum applicants in immigration court must delineate their particular social group before the IJ. 27 I. & N. Dec. at 344 (citing *Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. 189, 190-91 (BIA 2018); *Matter of A-T-*, 25 I. & N. Dec. 4, 10 (BIA 2009)).

determining whether the applicant has established persecution. He used multiple formulations of the existing standard: the government was unwilling or unable "to protect," *id.* at 317, 319, 321, 340, 343, 344; "unwilling or unable to prevent" misconduct, *id.* at 318, 337-38; unwilling or unable "to control," *id.* at 320, 330, 331, 337; "unable or unwilling to help," *id.* at 321; and the government "condone[d]" or showed "complete helplessness," *id.* at 337. For the later formulation, the Attorney General cited the Seventh Circuit's decisions in *Galina v. INS*, 213 F.3d 955, 958 (7th Cir. 2000), and *Hor v. Gonzales*, 400 F.3d 482, 485 (7th Cir. 2005)*,* which had stated the standard in those terms. *Id.* at 337.

Fourth, *A-B-* reminded the BIA, IJs, and asylum officers that asylum is a discretionary form of relief and that the applicant bears the burden of establishing not only statutory eligibility but also that she merits asylum as a matter of *discretion*. 8 U.S.C. §§ 1158(b)(1), 1229a(c)(4)(A)(ii). Citing long-standing BIA precedent, *Matter of Pula*, 19 I. & N. Dec. 467 (BIA 1987), the Attorney General discussed factors informing the exercise of discretion and reminded "all asylum adjudicators that a favorable exercise of discretion is a discrete requirement for the granting of asylum and should not be presumed or glossed over solely because an applicant otherwise meets the burden of proof for asylum eligibility." *Matter of A-B-*, 27 I. & N. Dec. at 345 n.12.

Fifth, the Attorney General recognized the long-standing tension between claims based on common crime, including domestic violence or gang violence, and the requirements for making a claim for asylum. Citing prior authority, the Attorney General noted that "in practice such claims are unlikely to satisfy the statutory grounds for proving group persecution that the government is unable or unwilling to address." *Id.* at 320, 338 (citing, e.g., *Matter of R-A-*, 22 I. & N. Dec. at 920-23). However, the Attorney General did not "decide that violence inflicted by non-governmental actors may never serve as the basis for an asylum [claim]." *Id.* at 320.

Finally, the Attorney General remanded A-B-'s case to the BIA to determine whether A-B- satisfies the particular social group requirement in light of his decision in *A-B-*.

## V.     USCIS's PM to Asylum Officers Regarding *A-B-*

On July 11, 2018, one month after the Attorney General published *A-B-*, USCIS issued the PM providing guidance to USCIS officers adjudicating asylum claims and conducting credible

fear interviews "for determining whether a petitioner is eligible for asylum or refugee status in light of the Attorney General's decision." AR001. As the PM notes, decisions by the Attorney General—although issued by a different cabinet-level department—bind officers and employees of DHS, which includes USCIS. AR002 (citing 8 U.S.C. § 1103(a)(1); 8 C.F.R. §§ 103.10(b), 1003.1(g)). The PM advised USCIS's asylum officers that *A-B-* overruled *A-R-C-G-*. AR001-2. It summarized *A-B-*'s discussion of the pre-existing requirements for a particular social group to be cognizable, including: that applicants "must present facts that clearly identify the proposed particular social group"; the three *M-E-V-G-* requirements; and the prerequisite that the group be defined independently of the persecution. AR003-5. The PM also relays *A-B-*'s discussion regarding: the applicant's burden to show that the government is unable or unwilling to protect her if the persecutor is a private actor; the necessity of the applicant's membership in a particular social group being one central reason for the alleged harm; and the separate inquiry into discretion. AR005-8.

Although not discussed in *A-B-*, the PM separately addressed which circuit court's law asylum officers should follow when conducting credible fear interviews. AR008-9. The PM states that asylum officers conducting credible fear interviews must factor the standards announced in *A-B-* into their determination of whether an alien has a credible fear of persecution based on membership in a particular social group, and it also reminds officers: (1) that "[c]redible fear means a "significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under [8 U.S.C. § 1158]," AR004 (citing 8 U.S.C. § 1225(b)(1)(B)(v)); (2) that "interviews are to be conducted in a nonadversarial manner with the purpose to elicit all relevant and useful information bearing on the applicant's eligibility for asylum" (citing 8 C.F.R. § 208.9(b)), and that officers must "consider whether the alien's case presents novel or unique issues that merit consideration in a full hearing before an immigration judge," AR008-9 (quoting 8 C.F.R. § 208.30(e)(4)).

## VI.    Procedural Background

Plaintiffs are aliens with no prior ties or connections to this country who were apprehended

at a port of entry or shortly after crossing the border illegally. Each was issued an order of expedited removal but claimed a credible fear of persecution. Each Plaintiff asserted that they would suffer persecution on account of their membership in particular social groups defined generally by domestic or gang violence. Compl. ¶¶ 2-3, 15-24. An asylum officer reviewed each of their credible fear claims and found them wanting in light of *A-B-*. An IJ reviewed that finding *de novo*, but affirmed the asylum officer's decision. They are now subject to final orders of expedited removal (or have been removed subject to such orders prior to initiation of this suit). *Id.*

Plaintiffs thereafter filed this suit. Plaintiffs do not—and cannot—challenge the merits of their expedited removal orders. *See* 8 U.S.C. § 1252(a)(2)(A)(iii), (e)(2). Instead, they invoke section 1252(e)(3) and purport to raise "systemic" challenges to *A-B-* and the USCIS PM. They assert that *A-B-* and the PM create "new credible fear policies" that violate: the INA and the APA because the INA requires that Plaintiffs be able to present claims for asylum premised on membership in a particular social group defined by domestic or gang violence (Count I); the separation of powers by instructing asylum officers to apply the *A-B-* to credible fear determinations, and to apply the law of the Circuit where the alien is detained to the extent such law is not inconsistent with *A-B-* (Count II); and the Due Process Clause of the Fifth Amendment because arriving aliens like Plaintiffs have (Plaintiffs contend) a constitutional right to raise asylum claims and other claims for relief premised on their membership in particular social groups defined by domestic or gang violence (Count III). Compl. ¶¶ 6-11, 44-51, 86-96.

Defendants now move for summary judgment.

## STANDARD OF REVIEW

Because Plaintiffs challenge agency action through record review, the usual summary judgment procedures do not apply. "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is

supported by the administrative record and is otherwise consistent with the APA standard of review." *Nat'l Auto. Dealers Ass'n v. F.T.C.*, 864 F. Supp. 2d 65, 72 (D.D.C. 2012).

Under those standards, a court sets aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C). That review is "highly deferential," and begins with the assumption that "agency action is presumptively valid," *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981), so "the party challenging an agency's action . . . bears the burden of proof" concerning the unlawfulness of agency action. *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 37 (D.C. Cir. 1986). The Court is "not empowered to substitute its judgment for that of the agency," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), and the "Court's role is limited to ensuring that the agency has adequately explained the facts and policy concerns it relied on, and that the facts have some basis in the record." *The Fund for Animals v. Norton*, 512 F. Supp. 2d 49, 53 (D.D.C. 2007) (Sullivan, J.). The agency's decisions need provide only "a rational connection between the facts found and the choice made," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, (1983), whether the agency announces new policies or changes prior policies, *see F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009). The familiar two-step *Chevron* framework applies. *See Arent v. Shalala*, 70 F.3d 610, 616 (D.C. Cir. 1995).

## ARGUMENT

The Court should grant Defendants summary judgment on all counts. The Court lacks jurisdiction to review the Attorney General's *A-B-* decision, and Plaintiffs lack standing to challenge any aspect of the USCIS PM relying on that decision. Even if the Court had jurisdiction, *A-B-* is entitled to *Chevron* deference. Moreover, the only aspect of *A-B-* relevant to credible fear proceedings that is arguably "new" is the Attorney General's reversal of *A-R-C-G-*, a four-year-old BIA split decision that was itself controversial when issued. The Attorney General carefully and thoroughly explained his reversal, and that decision is reasonable and not subject to second-guessing by Plaintiffs. Every other aspect of *A-B-* rests on established, long-standing BIA and

13

circuit precedent. Finally, because the USCIS PM merely provides interpretive guidance concerning *A-B-* to line officers, it too warrants deference, and the sole aspect of it that is arguably new—USCIS's instruction concerning what law to apply to credible fear screenings—is based on long-standing BIA precedent and is otherwise reasonable.

## I.     The Court Lacks Jurisdiction over Plaintiffs' Claims

Plaintiffs' challenge to what they allege to be "new credible fear" policies in fact are primarily a challenge to *A-B-*, and therefore fail at the threshold. First, section 1252(e)(3) does not authorize challenges to decisions of the BIA or the Attorney General interpreting provisions of immigration law that have nothing to do with 8 U.S.C. § 1225(b). *A-B-* interprets the term "particular social group," which appears in another provision of the INA, 8 U.S.C. §§ 1101, 1158, and may not be challenged through section 1252(e)(3). Moreover, because Plaintiffs may not challenge *A-B-*, they lack Article III standing to challenge every part of the USCIS PM that implements *A-B-*. The guidance in the PM does not injure them. And they cannot show causation or redressability: even if the Court invalidates the PM, *A-B-* will remain binding authority that USCIS officers would be required to apply. And even if any aspect of *A-B-* could be challenged through section 1252(e)(3), only challenges to one aspect of that decision—the decision to overrule *A-R-C-G-*—would not be time barred under section 1252(e)(3). Every other aspect of *A-B-* reaffirms preexisting law, and that law has been on the books for far more than 60 days. Finally, to the extent Plaintiffs ask this Court to order the Defendants to allow them to enter the country to seek new proceedings, the Court lacks authority to issue such an order.

A.     Plaintiffs cannot use section 1252(e)(3) to challenge any aspect of *A-B-* or the USCIS PM generally implementing it

Because *A-B-* is not a decision to implement 8 U.S.C. § 1225(b), Plaintiffs cannot challenge it through section 1252(e)(3), and therefore also lack standing to challenge any aspect of the USCIS PM implementing *A-B-*.

1.     *A-B-* is not a policy implementing 8 U.S.C. § 1225(b)(1)

Invoking 8 U.S.C. § 1252(e)(3), Plaintiffs challenge alleged new credible fear policies implemented by the Attorney General through *A-B-*. Compl. ¶¶ 45-47, 50, 61-79, 89, 96. Section 1252(e)(3) does not give this Court jurisdiction over any challenge to *A-B-*. That statute supplies

jurisdiction only over challenges to regulations, procedures, or directives that implement 8 U.S.C. § 1225(b)(1)—the expedited-removal statute. *A-B-* is none of those things and does not implement expedited removal procedures under section 1225(b)(1). Rather, it is a decision issued under the Attorney General's long-standing statutory and regulatory authority to make "determination[s] and ruling[s] with respect to all questions of [immigration] law," 8 U.S.C. § 1103(a), and to certify cases to himself for review and issue binding decisions, 8 C.F.R. §§ 1003.1(g)-(h), including the standards for receiving asylum under 8 U.S.C. § 1158 and withholding of removal under 8 U.S.C. § 1231(b)(3). *A-B-* does not implement expedited removal procedures under section 1225(b)(1). So the bulk of Plaintiffs' challenge fails at the threshold.

The statutory text bars jurisdiction. Titled "Judicial review of orders under section 1225(b)(1)," section 1252(e) provides:

> Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of . . . (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3)(A). *A-B-* and the PM to the extent it implements *A-B-* falls outside this narrow grant of jurisdiction.

First, *A-B-* does not "implement" section 1225(b)(1). Indeed, it does not address expedited removal at all. Rather, *A-B-* addresses section 1158—the asylum statute. *A-B-* addresses the meaning of persecution on account of "membership in a particular social group" for purposes of qualifying for asylum under 8 U.S.C. § 1158(b)(1)(B). 27 I. & N. Dec. at 318. It clarifies that "[g]enerally, claims by aliens pertaining to domestic violence or gang violence perpetrated by non-governmental actors will not qualify for asylum." *Id.* at 320. A footnote in *A-B-* does observe that few claims pertaining to domestic or gang violence would show a credible fear of persecution, because a credible fear requires showing a "significant possibility" that the applicant "could establish eligibility for asylum under section 1158." *Id.* at 320 n.1 (citing 8 U.S.C. § 1225(b)(1)(B)(v)). But that footnote simply recognizes the logical consequence of applying the

proper framework under section 1158 for determining whether a proposed "particular social group" is cognizable. *A-B-* does not address or alter the definition of credible fear—and it does not "implement" section 1225(b). Allowing aliens to challenge BIA and Attorney General asylum and CAT decisions simply because such decisions, as most do, collaterally impact credible fear determinations or because DHS issues field guidance apprising asylum officers of significant developments in the law would be to countenance an end-run around Congress's careful limitations on judicial review in 8 U.S.C. § 1252.

Second, *A-B-* is not "a regulation" or a written "policy directive," "policy guideline," or "written procedure." 8 U.S.C. § 1252(e)(3). Rather, *A-B-* is an administrative *adjudication* in a removal case certified to the Attorney General under 8 U.S.C. § 1103(a), which describes the Attorney General (and the BIA's) authority in terms of issuing "*rulings* on questions of law" arising under the INA in connection with review of administrative determinations in immigration proceedings. *See* 8 U.S.C. § 1103(a) (emphasis added); *see also I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999). Had Congress intended for Attorney General (or BIA) decisions under section 1103(a) to be subject to collateral review under section 1252(e)(3) it could have easily added the term "rulings" to the list of terms triggering review under section 1252(e)(3).

The distinction is analogous to one reflected in this Court's decision in *AILA*. There this Court reviewed, under the authority conferred by section 1252(e)(3), certain "summary removal procedures" issued to implement section 1225(b)(1). *See* 199 F.3d at 1356. The regulations and policies at issue pertained to *expedited-removal procedures*, not *substantive expedited-removal outcomes*. This makes sense: section 1225(b)(1) dictates *procedures* for screening and removing aliens, but nowhere does it define the *substantive content* of the eligibility for relief from removal that the procedures screen for—that it is a function of other parts of the INA. *See* 8 U.S.C. § 1225(b)(1)(B)(v) (defining "credible fear of persecution" by reference to whether the alien can establish "eligibility for asylum under *section 1158*") (emphasis added). Plaintiffs claim that *A-B-* alters substantive outcomes. Section 1252(e)(3) does not authorize review of such changes. Further, *A-B-* did not alter the procedural burden constituting "credible fear"—it still means a "significant possibility" of establishing entitlement to asylum, *see id.*, but merely provided

examples of factual scenarios unlikely to, not categorically incapable of, meeting that bar. 27 I. & N. Dec. at 320 & n.1. Again, this Court has no jurisdiction.

Indeed, Congress has provided a separate and well-suited mechanism for judicial review of claims like those here. Congress has provided for review of agency determinations regarding the asylum standard exclusively through the petition-for-review process. "Judicial review of all questions of law and fact, *including interpretation and application of constitutional and statutory provisions*, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter [*i.e.*, 8 U.S.C. §§ 1151-1382] shall be available only in judicial review of a final [administrative removal] order" through a petition for review to the federal courts of appeals. 8 U.S.C. § 1252(b)(9); *see id.* § 1252(a)(5). As the USCIS PM indicates, through this process, the courts of appeals may issue opinions applying *A-B-*, although none have done so yet. Indeed, the courts of appeals do address the Attorney General's interpretation of the asylum provisions of the INA through section 1252's petition for review process.[4] Thus, Congress provided the petition for review process, and not a challenge under section 1252(e)(3), as the exclusive means to challenge decisions of the BIA or the Attorney General in individual immigration cases. Indeed, the alien in A-B- utilized precisely this process, filing a petition for review, which was dismissed by the Fourth Circuit as premature because the Attorney General remanded A-B-'s case to the BIA for further proceedings.

The operation of the statute of limitations under section 1252(e)(3) makes it all the more apparent that Congress did not intend that an interpretation of the asylum standard in administrative or immigration court adjudications constitutes a new implementation of section 1225(b)(1). Challenges to directives or guidelines implementing section 1225(b)(1) "must be filed

---

[4] *See, e.g.*, *Xian Tong Dong v. Holder*, 696 F.3d 121, 125 (1st Cir. 2012) (examining on petition for review alien's challenge to Attorney General's interpretation of spousal eligibility for refugee status based on forced abortion in *Matter of J-S-*, 24 I. & N. Dec. 520 (A.G. 2008), and noting four other circuits having done the same); *Savchuck v. Mukasey*, 518 F.3d 119, 124 (2d Cir. 2008) (addressing and deferring to Attorney General's standard for eligibility for protection under the United Nations' Convention Against Torture articulated in *Matter of J-F-F-*, 23 I. & N. Dec. 912 (A.G. 2006)); *Rumierz v. Gonzales*, 456 F.3d 31, 40 (1st Cir. 2006) (addressing Attorney General's construal of effect of expungement of state conviction under *Matter of Marroquin-Garcia*, 23 I. & N. Dec. 705 (A.G. 2005)).

no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure . . . is first implemented." 8 U.S.C. § 1252(e)(3)(B). Courts and agencies regularly and properly interpret the asylum statute in the course of case-by-case adjudication. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 448 (1987) ("There is obviously some ambiguity in a term like 'well-founded fear' which can only be given concrete meaning through a process of case-by-case adjudication"); *see also Matter of A-B-*, 27 I. & N. Dec. at 318-19 (describing multiple cases in which the BIA and Attorney General have interpreted and redefined "particular social group" starting in 1985). It would be incongruent to hold that Congress, which made clear its desire to limit challenges to the expedited removal system in 8 U.S.C. § 1252(a) and (e), *see* Stay Opp. at 21, would provide plaintiffs a new 60-day opportunity to challenge new interpretations of sections 1158(b)(1)(B) and 1231 every time the BIA, the Attorney General, or a federal court analyzes the meaning of "particular social group." Indeed, Congress was so intent on limiting the period that plaintiffs could challenge expedited removal policies that it made the 60-day limitation period jurisdictional, *see AILA*, 18 F. Supp. 2d at 47, *aff'd*, 199 F.3d at 1357; *Dugdale v. US CBP*, 2015 WL 2124937, at *1 (D.D.C. May 6, 2015), *aff'd*, 672 F. App'x 35 (D.C. Cir. 2016) ("the D.C. Circuit affirmed the [*AILA*] Court's determination that Section 1252(e)(3)(B)'s 60–day requirement is jurisdictional rather than a traditional limitations period"), and such jurisdictional limitations are to be accorded strict effect. *Cf. United States v. Kwai Fun Wong,* 135 S. Ct. 1625, 1631 (2015).

Finally, for all the same reasons, the USCIS PM instructing asylum officers regarding *A-B-*'s clarification of the substantive law governing asylum or withholding of removal does not "implement" section 1225(b)(1) provisions regarding credible fear determinations or expedited removal orders. To the extent the PM instructs line officers to apply the law of the circuit the alien is detained in if not contrary to *A-B-* can be challenged, that claim is addressed below.[5]

---

[5] Plaintiffs cannot rely on the APA as an independent means of evading section 1252's limitations on judicial review. *See, e.g., Lee v. U.S. Citizenship and Immigration Servs.*, 592 F.3d 612, 619 (4th Cir. 2010) (holding that alien could not avoid preclusion of judicial review of discretionary USCIS adjustment-of-status adjudication by seeking to mount APA-based *ultra vires* challenge the underlying adjustment-of-status regulations); *see also Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006) ("[The APA] is not a jurisdiction-conferring statute.").

2.      Plaintiffs lack standing to challenge the USCIS PM

Because Plaintiffs cannot challenge any aspect of *A-B-* through section 1252(e)(3), they lack Article III standing on all claims directed at the USCIS PM that rest on *A-B-*, which is a threshold "defect in subject matter jurisdiction.'" *Ejonga v. Rosenstein*, No. 17-cv-2813, 2018 U.S. Dist. LEXIS 77381, at *2-3 (D.D.C. May 3, 2018) (Sullivan, J.). To demonstrate standing, a plaintiff must show: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "Standing is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). Plaintiffs cannot make this showing. They cannot demonstrate injury to a legally protected interest on several of their theories of injury. And they cannot show causation and redressability for the PM at all.

Plaintiffs assert that the PM injures them because it: (1) instructs line officers "to deny virtually all credible fear claims based on domestic violence or gang-related harms"; (2) changes the "showing for failure of government protection that such applicants must prove at the credible fear stage to establish eligibility for asylum based on fear of harm by non-governmental actors"; (3) "impose[s] a heightened, erroneous standard for proving that persecution is 'on account of' (or has a 'nexus' to) a protected ground for asylum"; (4) "impose[s] an inappropriate burden on credible fear applicants to articulate and provide precise evidence identifying the specific particular social group that forms the basis for their persecution"; (5) "direct[s] asylum officers to exercise 'discretion' to deny eligible applicants, even though the only question at the threshold credible fear stage is legal eligibility and not discretion"; and (6) "instruct[s] asylum adjudicators making credible fear determinations to disregard contrary court of appeals precedents and to apply only the case law in the circuit where the credible fear applicant is detained." Compl. ¶ 51.

*First*, theories (4), (5), and (6) fail right away because none establishes an injury in fact. To demonstrate an injury in fact, Plaintiffs must "set forth by affidavit or other evidence specific

19

facts" demonstrating "an invasion of a legally protected interest which is [] concrete and particularized." *Lujan*, 504 U.S. at 560, 561. Neither theory (4) nor (5)—requiring "credible fear applicants to articulate and provide precise evidence identifying the[ir] specific particular social group" and "direct[ing] asylum officers to exercise 'discretion' to deny eligible applicants"— affects credible fear procedures at all. *A-B-* makes clear that delineation requirement (the target of theory (4)) applies only in full removal proceedings—not expedited removal proceedings. *A-B-* by its terms limits any evidentiary requirement to appearances "*on the record and before the immigration judge.*" 27 I & N. Dec. at 344 (emphasis added). Credible fear proceedings occur before an *asylum officer*. As for theory (5), the PM is clear that the "discretion" that asylum officers may exercise applies only "once an officer has determined that an applicant is eligible for asylum." AR007; *accord Matter of A-B-*, 27 I. & N. Dec. at 345 n.12 ("a favorable exercise of discretion is a discrete requirement for the granting of asylum"). Theories (4) and (5) thus do not assert any legally protected interest in credible fear proceedings, because they do not apply to those proceedings.

Theory (6)—that the PM instructs line officers "to disregard contrary court of appeals precedents and to apply only the case law in the circuit where the credible fear applicant is detained"—also fails to allege an injury in fact. Plaintiffs rely on USCIS training materials for this claim, asserting they have a right to "asylum officers [being] trained that where circuit courts disagree on an issue of law, generally the interpretation most favorable to the applicant is used." Compl. ¶ 70 (citing Refugee, Asylum, and International Operations Directorate Officer Training Asylum Officer Training Course ("RAIO Training Course"), Credible Fear of Persecution and Torture Determinations (Feb. 13, 2017) at 17). But Plaintiffs have no legally protected interest in agency training materials that create no rights for Plaintiffs or obligations for USCIS. And the training materials themselves provide that asylum officers will apply the circuit law most favorable to the applicant only if "there is no DHS or Asylum Division policy or guidance on the issue." *Id.* (RAIO Training Course at 17 (emphasis in original)). This language carving out any DHS policy to the contrary cannot create for Plaintiffs a legally protected interest in USCIS applying the law most favorable to them in their credible fear proceedings.

*Second*, Plaintiffs cannot demonstrate traceability for any aspect of the USCIS PM that implements *A-B-*. None of their six theories can be traced to the PM. The injury for each is traceable instead to *A-B-* (theories (1)-(5)) or binding Supreme Court precedent (theory (6)). Where a party challenges government action that is itself caused by different government action, that party "needs to show that . . . invalidating [the challenged government action] will be reasonably likely to cause the [defendants] to" change the different government action. *Renal Physicians Ass'n v. U.S. Dep't of Health and Human Servs.*, 489 F.3d 1267, 1276 (D.C. Cir. 2007). Accordingly, as to theories (1)-(5), Plaintiffs must show a causal connection between the PM and *A-B-*, such that invalidating the PM would be reasonably likely to change Plaintiffs' eligibility for positive credible fear. *See id.* But that showing is impossible, because *A-B-*, which sets the relevant asylum standard governing Plaintiffs' credible fear claim and cannot be challenged through section 1252(e)(3), would be unaffected by any order of this Court. Under long-standing statutory and regulatory authority, *A-B-* "serve[s] as [a] precedent[] in all proceedings involving the same issue(s)," 8 C.F.R. § 103.3(c), and "[e]xcept as the[] decision[] may be modified or overruled by later precedent decisions, [it is] binding on all [agency] employees in the administration of the Act." *Id. A-B-* thus is controlling regarding USCIS's assessment of credible-fear claims. *See* 8 U.S.C. § 1103(a), (g)(2); 8 C.F.R. § 1003.1. So the PM's "credible fear policies" are not the cause of any of Plaintiffs' alleged injuries. *A-B-* is. And that decision cannot be challenged through section 1252(e)(3), so Plaintiffs cannot show traceability. *See, e.g.*, *Renal Physicians Ass'n*, 489 F.3d at 1276; *Scenic Am., Inc. v. U.S. D.O.T.*, 836 F.3d 42, 52 (D.C. Cir. 2016) ("we cannot assume, without more, that vacating the Guidance would eliminate" the underlying injury); *Transp. Workers Union of Am. v. TSA*, 492 F.3d 471, 475 (D.C. Cir. 2007) (no standing because absent regulatory event, actual injury complained of would happen anyway). Plaintiffs cannot show that their credible fear proceedings "will be altered or affected by the agency activity [they] seek to overturn," because eliminating the PM's implementation of *A-B-* does not and cannot prevent USCIS officers from continuing to apply *A-B-*.

For similar reasons, theory (6)—that the PM instructs asylum officers to apply the law of the circuit the alien is detained in if it is not inconsistent with *A-B*—fails too. The harm alleged

there is not caused by USCIS, but instead Supreme Court precedent, which provides that agency decisions trump "prior judicial construction of a statute" as a general rule. *See Brand X*, 545 U.S. at 982. The PM just informs line officers of their obligations under *Brand X*; that case, and not the PM, is thus the cause of any injury under theory (6).

   *Third*, because the relief Plaintiffs seek boils down to a demand that *A-B-* not be applied to them, the relief from the USCIS PM will not redress their injuries. On the PM, Plaintiffs ask this court to: (1) declare the "new credible fear policies . . . contrary to law," (2) vacate "the new credible fear policies," (3) "enjoin[] Defendants from continuing to apply the new credible fear policies," and (4) "enjoin Defendants from removing Plaintiffs without first providing each of them with a new credible fear process" that does not apply the new credible policies. Compl. Prayer for Relief, ¶¶ a-c, e. None of this relief redresses the injuries that Plaintiffs attribute to USCIS, which all boil down to claims that *A-B-* should not have been applied to their credible fear proceedings. *Id.* ¶ 70. Because Plaintiffs cannot challenge *A-B-*, their first five alleged injury theories (which they concede stem from *A-B-*) are not "redress[able] by a favorable decision" because invalidating the PM will not provide them with any of the relief they seek. *See West v. Lynch*, 845 F.3d 1228, 1237 (D.C. Cir. 2017). Indeed, "[i]t is a well-established principle that a plaintiff cannot demonstrate redressability when its lawsuit challenges only one of two government actions that both independently produce the same alleged harm." *Kaspersky Lab, Inc. v. DHS*, 311 F. Supp. 3d 187, 219 (D.D.C. 2018). If "the undoing of the [challenged] governmental action will not undo the harm" caused by separate government action "because the new status quo is held in place by other forces," Plaintiffs' claims are not redressable because none of the relief they request will cure their alleged injuries. *Renal Physicians Ass'n*, 489 F.3d at 1277; *see Delta Const. Co. v. EPA*, 783 F.3d 1291, 1296 (D.C. Cir. 2015) ("even were we to vacate the EPA standards, the NHTSA standards would still increase the price of vehicles"); *Texas v. EPA*, 726 F.3d 180, 198 (D.C. Cir. 2013) (vacating the challenged rules "would not redress the State petitioners' injury," which was separately caused by a statute). Invalidating the PM does not redress Plaintiffs alleged injuries tied to *A-B-* because the INA and its implementing regulations—in provisions Plaintiffs

do not and cannot challenge—require USCIS to apply *A-B-*. 8 U.S.C. § 1103(a); 8 C.F.R. § 103.3(c).

*A-B-* also applies when IJs review credible fear determinations. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1208.30(g)(2). An IJ conducting such a review must also follow precedent issued by the BIA and the Attorney General. *See* 8 C.F.R. §§ 103.10(b), 1003.1(g). So regardless of whether they succeed in challenging USCIS's PM, an IJ, when reviewing Plaintiffs' credible fear denials would still be required by law to apply *A-B-*. For this additional reason, Plaintiffs cannot demonstrate redressability on their first five injury theories.[6]

*Finally*, for the same reasons that Plaintiffs' allegation that the USCIS PM's instruction to line officers to apply the law of the circuit the alien is detained in and to not apply circuit authority contrary to *A-B-* lacks traceability, it also lacks redressability. Vacating the PM will not cure Plaintiffs' injuries, because asylum officers will still, under *Brand X*, have to follow *A-B-*. 545 U.S. at 982. And vacating the PM will not prevent asylum officers from applying the law of the circuit in which plaintiff is detained, because BIA authority requires that result, *see, e.g.*, *Matter of Waldei*, 19 I. & N. Dec. 189 (BIA 1984), and because the training materials to which Plaintiffs refer do not require USCIS officers to take any specific action, so the effect of vacating the PM is speculative. *Renal Physicians Ass'n*, 489 F.3d at 1277 (finding no redressability where Plaintiffs fail to demonstrate consistent with the relevant burden of proof that the relief plaintiffs seek will "make it likely, rather than speculative" that the agency would not continue to cause them the alleged harm); *accord Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (similar).

For these reasons, Plaintiffs lack standing and the case must be dismissed.

B.     Even if Plaintiffs can invoke section 1252(e)(3) as to *A-B-*, nearly all of their claims are time-barred and therefore also not redressable

Even if Plaintiffs could challenge *A-B-* through section 1252(e)(3)—and even if they could overcome the Article III hurdles described above—all but one of Plaintiffs' allegations against *A-*

---

[6] *A-B-* does not alter the review provisions at issue, which were last amended in 2009. *See* 8 C.F.R. § 1208.30(g). Plaintiffs do not purport to challenge these review provisions, nor could they, given that nearly nine years have elapsed since their promulgation. *See* 8 U.S.C. § 1252(e)(3)(B). Rather they challenge "credible fear policies," which exist, if at all and as discussed, only under the authority of DHS and USCIS.

*B-* and the PM would be time-barred. Plaintiffs assert *A-B-* has implemented a litany of changes to asylum law "in multiple interrelated ways." Compl. ¶ 51. But as discussed, *infra* Part II.B., only one aspect of *A-B-* is in fact new: the reversal of *A-R-C-G-*. As explained below, every other alleged change has been the state of law for far more than 60 days.

Plaintiffs challenge the condoned/complete helplessness formulation of the unable-or-unwilling-to-control standard, *see* PI Memo at 11-14; Compl. ¶¶ 8, 56-58, but that language is not new. The Seventh Circuit used it in 2000, *see Galina*, 213 F.3d at 958, and many other courts have done so since to articulate the universally accepted governmental role requirement for asylum. *See Ayor v. Holder*, S. Ct. Dkt. No. 13-10039, Brief for Respondent in Opposition (explaining this); *see also infra* Part II.B.2.

The nexus standard discussed and applied in *A-B-* is also rooted in long-standing U.S. asylum law. The Attorney General did not announce a new standard in *A-B-*, but instead applied the motive requirement announced by the Supreme Court in *Elias-Zacarias* in 1992. 27 I. & N. Dec. at 338-39; *see infra* Part II.B.2. *A-B-* also acknowledged the "one central reason" mixed-motive requirement, *see* 27 I. & N. Dec. at 317, 319 (twice), 320, 321, 323, 330, 332, 338, 339, 343, that Congress adopted in the 2005 REAL ID Act.

Finally, the requirement of "exact delineation" Plaintiffs challenge is also older than 60 days. *See* Compl. ¶¶ 61-62; PI Memo at 27-29. The BIA first announced it in 2008, concluding that "the applicant must initially identify the particular social group or groups in which membership is claimed." *Matter of A-T-*, 24 I. & N. Dec. 617, 623 n.7 (BIA 2008). The BIA repeated it again in 2009, *Matter of A-T-*, 25 I. & N. Dec. at 10, and reinforced and clarified it on January 19, 2018. *See Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. at 191.

Thus, all but one of aspect of their claims about *A-B-*'s alleged changes to asylum law are time-barred. And for the reasons discussed in Part I.A.2, Plaintiffs lack standing to challenge any of these alleged changes to asylum law because, regardless of whether the Court can enjoin the USCIS PM's reference to these binding precedents, they would still exist and USCIS officers would still have to follow them. *See, e.g.*, 8 U.S.C. § 1103(a); 8 C.F.R. § 103.3(c); *Renal Physicians Ass'n*, 489 F.3d at 1276. Plaintiffs could thus challenge (at most) *A-B-*'s reversal of *A-*

*R-C-G-* (discussed below) and aspects of the USCIS PM that implement credible fear policies beyond *A-B-*, namely "instruct[ing] asylum adjudicators making credible fear determinations to disregard contrary court of appeals precedents and to apply only the case law in the circuit where the credible fear applicant is detained," Compl. ¶ 51 (also discussed below).

> C. **Plaintiffs lack standing to request that Defendants parole Plaintiffs who have been removed back into the Country for new credible fear proceedings**

Plaintiffs also seek an order requiring Defendants "to parole those Plaintiffs [who have already been removed] into the United States for the duration of [new] credible fear and/or removal proceedings." Compl., Prayer for Relief ¶ d. Plaintiffs lack standing to raise this claim because the Court lacks authority to order that Plaintiffs be paroled or released into the United States. *See, e.g.*, *Kiyemba v. Obama*, 555 F.3d 1022, 1028 (D.C. Cir. 2009). That is because the power to admit or exclude aliens is a sovereign prerogative vested in the political branches, and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950). As the D.C. Circuit explained in reversing a district court's order requiring the United States to release an alien into the country, courts lack authority to "compel[] the Executive to release [aliens] into the United States outside the framework of the immigration laws." *Kiyemba*, 555 F.3d at 1028. This request for relief is thus not redressable.[7]

## II. **Plaintiffs' APA Challenge to *A-B-* Fails as a Matter of Law (Count I)**

On top of these jurisdictional hurdles, Plaintiffs' claims fail on the merits. *A-B-* is entitled to *Chevron* deference because it reasonably interprets statutory language that Congress has

---

[7] To the extent Plaintiffs suggest the court may order the Government to "parole" them into the country under 8 U.S.C. § 1182(d)(5)(A), that authority "is granted in the exclusive discretion of the Secretary of Homeland Security." *Id.* at 1031. The INA is quite clear that decisions to grant or not grant parole are therefore not subject to judicial review by any Court. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *Kucana v. Holder*, 558 U.S. 233, 237 (2010) ("§ 1252(a)(2)(B) applies . . . to . . . determinations made discretionary by statute"); *Bolante v. Keisler*, 506 F.3d 618, 621 (7th Cir. 2007) (§ 1252(a)(2)(B)(ii) precludes judicial review of DHS parole determinations). And because § 1182(d)(5)(A) reserves the authority to grant parole to the Secretary of Homeland Security exclusively, the Court cannot equitably attempt to exercise the same authority. *INS v. Pangilinan*, 486 U.S. 875, 883 (1988) ("[I]t is well established that courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." (alterations omitted)).

instructed the Attorney General or his designees to interpret. And because the USCIS PM merely provides interpretive guidance to asylum officers who must apply *A-B-*, the PM is entitled to deference too. Finally, any part of the PM not derived from *A-B-* (the part on applying circuit authority) is also entitled to deference—it applies Supreme Court precedent.

A.    The Attorney General's precedent decisions are entitled to *Chevron* deference

The Attorney General's decision in *A-B-* is entitled to *Chevron* deference when interpreting ambiguous statutory text. "It is well settled that principles of *Chevron* deference are applicable to [the INA]." *Negusie v. Holder*, 555 U.S. 511, 516 (2009). "Congress has charged the Attorney General with administering the INA, and a 'ruling by the Attorney General with respect to all questions of law shall be controlling.'" *Id.* (quoting 8 U.S.C. § 1103(a)(1)). This delegation authorizes the Attorney General to fill in the interstices of the INA with interpretive decisions having the force and effect of law and thus warranting *Chevron* deference. *See Nat'l Ass'n of Clean Air Agencies v. EPA*, 489 F.3d 1221, 1229 (D.C. Cir. 2007). Although the Attorney General has delegated to the BIA "discretion and authority conferred upon the Attorney General by law in the course of considering and determining cases before it," *Negusie*, 555 U.S. at 517, he retains authority to "review such administrative determinations in immigration proceedings," 8 U.S.C. § 1103(g)(2), and to certify cases to himself to decide legal issues in the first instance. *See* 8 C.F.R. § 1003.1(h)(1). In both circumstances, the BIA and the Attorney General "should be accorded *Chevron* deference [when they] give[] ambiguous statutory terms concrete meaning through a process of case-by-case adjudication." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999). So when the Attorney General (or the BIA) interprets ambiguous statutory language, he is entitled to deference. *See, e.g.*, *id.*; *Cardoza-Fonseca*, 480 U.S. at 448-449. That is especially so in the "immigration context . . . , for executive officials exercise especially sensitive political functions that implicate questions of foreign relations." *Negusie*, 555 U.S. at 517.

The language the Attorney General interpreted in *A-B-*, the meaning of the phrase "particular social group" as part of the asylum standard is ambiguous. *See Fatin v. INS*, 12 F.3d 1233, 1238 (3d Cir. 1993) (Alito, J.) (noting that meaning of this term is so ambiguous that "[b]oth courts and commentators have struggled to define [it]," and "[r]ead in its broadest literal sense, the

phrase is almost completely open-ended").[8] Thus, Plaintiffs cannot prevail at *Chevron* step one, because they cannot "show that the statute **unambiguously** forecloses the agency's interpretation.'" *Children's Hosp. Ass'n of Tex. v. Azar*, 300 F. Supp. 3d 190, 206 (D.D.C. 2018) (Sullivan, J.) (emphasis in original). Accordingly, *A-B-* must be evaluated under *Chevron* step two, and must be upheld so long as it "is based on a permissible construction of the statute," *Aguirre-Aguirre*, 526 U.S. at 424.

      B.      *A-B-* is a reasonable interpretation of the immigration laws

      *A-B-* satisfies *Chevron* step two. *A-B-* is a reasonable interpretation of the immigration laws: it reasonably reverses a prior decision and otherwise reasonably affirms and clarifies pre-existing law. The decision is a permissible construction of the statute and subject to deference.

      1.      The decision to overrule *A-R-C-G-* is reasonable

      The sole affirmative change to immigration law that *A-B-* implements is overruling the BIA's decision in *A-R-C-G-*. That was reasonable, as the Attorney General's analysis makes clear. As discussed previously, in *A-R-C-G-*, the BIA accepted party concessions and agreement "on the existence of harm rising to the level of past persecution, the existence of a valid particular social group, and the issue of nexus under the particular facts of [the] case." *Matter of A-R-C-G-*, 26 I. & N. Dec. at 390. While the BIA provided brief explanations as to how the group satisfied the three *M-E-V-G-*[9] requirements—immutability, particularity, and social distinction—it did so only

---

[8] Courts universally agree that "particular social group" is ambiguous. *See, e.g.*, *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 549 (3d Cir. 2018); *Orellana-Monson v. Holder*, 685 F.3d 511, 520 (5th Cir. 2012); *Rivera-Barrientos v. Holder*, 666 F.3d 641, 648 (10th Cir. 2012); *Al-Ghorbani v. Holder*, 585 F.3d 980, 991, 994 (6th Cir. 2009); *Ramos-Lopez v. Holder*, 563 F.3d 855, 858-62 (9th Cir. 2009); *Scatambuli v. Holder*, 558 F.3d 53, 59-61 (1st Cir. 2009); *Davila-Mejia v. Mukasey*, 531 F.3d 624, 628-29 (8th Cir. 2008); *Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73-74 (2d Cir. 2007) (per curiam); *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1197-98 (11th Cir. 2006).

[9] Every circuit court to have considered the question has deferred to *M-E-V-G-* and *W-G-R-*. *See Reyes v. Lynch*, 842 F.3d 1125, 1137 (9th Cir. 2016), cert. denied, 138 S. Ct. 736 (2018); *Paiz-Morales v. Lynch*, 795 F.3d 238, 243 (1st Cir. 2015); *Paloka v. Holder*, 762 F.3d 191, 195-96 (2d Cir. 2014); *S-E-R-L-*, 894 F.3d at 540; *Velasquez v. Sessions*, 866 F.3d 188, 198 (4th Cir. 2017) (Wilkinson, J., concurring); *Pacas-Renderos v. Sessions*, 691 F. App'x 796 (4th Cir. 2017); *Hernandez-de la Cruz v. Lynch*, 819 F.3d 784, 787 n.1 (5th Cir. 2016); *Zaldana Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015); *Ngugi v. Lynch*, 826 F.3d 1132, 1138-39 (8th Cir. 2016); *Rodas-Orellana v. Holder*, 780 F.3d 982, 991-96 (10th Cir. 2015); *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 404-06 (11th Cir. 2016); *cf. W-G-A- v. Sessions*, --- F.3d ---, 2018 WL 3979276, at *5 (7th

through the lens of an issue already decided and by referring to evidence that was not probative of the conclusions for which it was offered. *See id.* at 392-95. Additionally, because the group was defined by the woman's ability to leave the relationship—and that inability might result from the husband's use of threats and violence—*A-R-C-G-* allowed a particular social group to be defined by the harm feared, contrary to the rule reiterated in *Matter of M-E-V-G-. Id.* at 389. And the BIA did not explain the nexus decision at all, except by referring to the stipulation. *Id.* at 395.

In *A-B-* the Attorney General carefully canvassed these errors, concluding that "[b]ecause of DHS's multiple concessions, the BIA performed only a cursory analysis of the three factors required to establish a particular social group." 27 I. & N. Dec. at 331. That conclusion is supported by well-established law: "[p]arties may not stipulate to the legal conclusions to be reached by the court." *TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995); *accord United States v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987); *Sagastume v. Holder*, 490 F. App'x 712, 715-16 (6th Cir. 2012).

The BIA's abdication was all the more impermissible because it designated *A-R-C-G-* as precedential, and thus a binding interpretation of the meaning of particular social group, even though the group there did not meet the *M-E-V-G-* criteria. The result was to create a loophole, whereby applicants whose proposed groups would not meet the *M-E-V-G-* standards could simply argue that their group was similar to the one in *A-R-C-G-*, and therefore had to be cognizable. Not surprisingly, applicants sought to expand the *A-R-C-G-* model beyond its original parameters to fit other types of relationships, such as where the relationship was not consensual or the applicant was a child abused by a family member. *See, e.g.*, *Orellana v. Sessions*, 722 F. App'x 443 (6th Cir. 2018) (court agreed that "children who were unable to leave their families" is not particular and essentially encompasses all children). Because the *A-R-C-G-* model was essentially unreasoned, there was no principled way to say which groups fit within it and which did not. *A-R-C-G-*'s carve-out thus introduced an exception that would eventually swallow the rule of *M-E-V-G-*.

The Attorney General's decision to require the agency to return to the "rigorous analysis"

---

Cir. Aug. 21, 2018) (reserving question).

required by *M-E-VG-* is both well-reasoned and explains the basis for the change. *See Mingo Logan Coal Co. v. EPA*, 829 F.3d 710, 713 (D.C. Cir. 2016) (explaining that change in policy is lawful so long as agency "adequately explain[s] its decision"). Nothing more is required under *Chevron* to require this Court to defer to the Attorney General. *See Aguirre-Aguirre*, 526 U.S. at 424.

2. All other aspects of *A-B-* are reasonable or have nothing to do with credible fear policies or are reasonable in any event

Aside from overruling *A-R-C-G-*, *A-B-* did not change U.S. asylum law and in fact reinforces long-standing principles regarding the requirements for proving persecution and nexus, the procedures for asserting a particular social group claim in immigration court (not credible fear interviews), and the exercise of discretion in asylum adjudications (again, not in credible fear interviews).[10]

Notably, Plaintiffs do not quarrel with the principle that persecution refers to action by the government or by private parties the government is unable or unwilling to control, *see Matter of Acosta*, 19 I. & N. Dec. at 222, which has been universally accepted.[11] Instead, Plaintiffs allege that language in *A-B-* providing that "[t]he applicant must show that the government *condoned* the private actions 'or at least demonstrated a *complete helplessness* to protect the victim,'" 27 I. & N. Dec. at 337 (quoting *Galina*, 213 F.3d at 958) (emphasis added), is a more demanding standard that is inconsistent with the long-standing "unable or unwilling to control" standard. *See* PI Memo at 11; Compl. ¶¶ 8, 56-58. Plaintiffs are wrong: *A-B-* does not set forth a new, substantively distinct standard. The "condoned" or completely helplessness" language, used in published decisions of the Fifth, Seventh, and Eighth Circuits,[12] is a familiar articulation of the BIA's well-established "unable or unwilling to control" standard. Indeed, in September 2014, the

---

[10] Plaintiffs agree that discretion does not apply to credible fear determinations. Compl. ¶ 64.

[11] *See, e.g.*, *Sok v. Mukasey*, 526 F.3d 48, 53 (1st Cir. 2008); *Rizal v. Gonzales*, 442 F.3d 84, 92 (2d Cir. 2006); *Garcia v. Att'y Gen. of U.S.* 632 F.3d 117, 665 F.3d 496, 503 (3d Cir. 2011); *Crespin-Valladares v. Holder*, 632 F.3d 117, 128 (4th Cir. 2011); *Tesfamichael v. Gonzales*, 469 F.3d 109, 113 (5th Cir. 2006); *Khalili v. Holder*, 557 F.3d 429, 436 (6th Cir. 2009); *Vahora v. Holder*, 707 F.3d at 908 (7th Cir.); *Gathungu v. Holder*, 725 F.3d 900, 906 (8th Cir. 2013); *Doe v. Holder*, 736 F.3d 871, 877-878 (9th Cir. 2013); *Krastev v. INS*, 292 F.3d 1268, 1275 (10th Cir. 2002); *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) (per curiam).

[12] *See. e.g.*, *Shehu v. Gonzales*, 443 F.3d 435, 437 (5th Cir. 2006); *Menjivar v. Gonzales*, 416 F.3d 918, 921 (8th Cir. 2005); *Galina*, 213 F.3d at 958.

Department of Justice explained to the Supreme Court that the "complete helplessness" language does not modify the existing unable or unwilling to control standard. *See Ayor v. Holder*, S. Ct. Dkt. No. 13-10039, Brief for Respondent in Opposition.[13]

Plaintiffs are also wrong to assert that *A-B-* applies a "revised nexus standard." *See* PI Memo at 24. In *A-B-*, the Attorney General reminded adjudicators of the bedrock principle that nexus requires a showing that the persecutor knows and cares that the applicant has the protected characteristic. *See Elias-Zacarias*, 502 U.S. at 482-83 & n.2. The BIA and the courts have long held that asylum claims based on purely personal disputes[14] or financial or other common crime[15] do not establish that the persecutor was motivated by a protected ground. The admonition in *A-B-* that adjudicators must require proof of motive was only necessary because the BIA in *A-R-C-G-* had erroneously accepted the parties' stipulation instead of requiring such proof. *See* 26 I. & N. Dec. at 395.

---

[13] As explained in the Government's *Ayor* brief, the "condoned/complete helplessness" language was first used by the Seventh Circuit's *Galina* decision in 2000, 213 F.3d at 958. The Court in *Galina* did not view itself as adopting a new standard, but instead relied on established precedent applying the unwilling or unable standard. *Ayor* Brief at 9-10; *see* 213 F.3d at 958 (citing *Borja v. INS*, 175 F.3d 732, 735 n.1 (9th Cir. 1999)). *A-B-* in turn treats the different formulations as equivalent: the Attorney General quotes *Galina* when using the "condoned" or "complete helplessness" formulation, 27 I. & N. Dec. at 337, but also uses the "unwilling or unable" language on the same page, and even within the same paragraph. *Id.*

[14] *See, e.g.*, *Matter of C-T-L-*, 25 I. & N. Dec. 341, 349 (BIA 2010), *disagreed with on other grounds*, *Barajas-Romero v. Lynch*, 846 F.3d 351, 359 (9th Cir. 2017); *Matter of C-A-*, 23 I. & N. Dec. at 958-59; *Marin-Portillo v. Lynch*, 834 F.3d 99, 101 (1st Cir. 2016); *Mucaj v. Holder*, 469 F. App'x 31, 33 (2d Cir. 2012); *Gonzalez-Posadas v. Att'y Gen. of U.S.*, 781 F.3d 677, 685 (3d Cir. 2015); *Velasquez*, 866 F.3d at 196; *Thuri v. Ashcroft*, 380 F.3d 788, 793 (5th Cir. 2004) (per curiam); *Alhaj v. Holder*, 576 F.3d 533, 538 (6th Cir. 2009); *Duarte-Salagosa v. Holder*, 775 F.3d 841, 846 (7th Cir. 2014); *Martinez-Galarza v. Holder*, 782 F.3d 990, 993-94 (8th Cir. 2015); *Pagayon v. Holder*, 675 F.3d 1182, 1191 (9th Cir. 2011) (per curiam); *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209-10 (10th Cir. 2003); *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 438 (11th Cir. 2004).

[15] *See, e.g.*, *Matter of V-T-S-*, 21 I. & N. Dec. 792, 798-99 (BIA 1997); *Jutus v. Holder*, 723 F.3d 105, 111 (1st Cir. 2013); *Ucelo-Gomez*, 509 F.3d at 73-74; *Shehu v. Att'y Gen. of U.S.*, 482 F.3d 652, 657 (3d Cir. 2007); *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164 (4th Cir. 2009); *Morales v. Sessions*, 860 F.3d 812, 815 (5th Cir. 2017); *Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015); *Melnik v. Sessions*, 891 F.3d 278, 287-88 (7th Cir. 2018); *Matul-Hernandez v. Holder*, 685 F.3d 707, 712-13 (8th Cir. 2012); *Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010); *Rodas-Orellana*, 780 F.3d at 993; *Ruiz*, 440 F.3d at 1258.

Plaintiffs contend that *A-B-* ignored the "one central reason" mixed-motive test, PI Memorandum at 25, but in fact the Attorney General repeatedly referred to the "one central reason" standard. *See* 27 I. & N. Dec. at 317, 319 (twice), 320, 321, 323, 330, 332, 338, 339, 343. *A-B-* also relied on the existing BIA decision in *Matter of J-B-N- & S-M* in describing the "one central reason" mixed-motive standard: "Reasons incidental, tangential, or subordinate to the persecutor's motivation will not suffice." *Id.* at 338 (citing *Matter of J-B-N- & S-M-*, 24 I. & N. Dec. at 214). Moreover, *A-B-* does not state that violence by a person with a relationship with the victim can never be motivated by a protected ground. *See id.* at 338-39 ("When private actors inflict violence based on a personal relationship with a victim, then the victim's membership in a larger group *may well* not be 'one central reason' for the abuse.") (emphasis added).

Although *A-B-* recognized the "one central reason" mixed-motive standard, the actual nexus holdings in *A-B-* concerned the more basic question of what happens when the applicant fails to prove that a protected ground was a motive at all. *See id.* at 339 (in *A-R-C-G-*, "the [BIA] cited no evidence that [A-R-C-G-'s] husband attacked her because he was aware of, and hostile to, 'married women in Guatemala who are unable to leave their relationship.'") & 343 (in A-B-'s case, the BIA cited no evidence that the husband "knew any such social group existed"). So *A-B-*'s actual nexus holdings are that neither A-R-C-G- nor A-B- established that her putative particular social group was a motive at all for her abuser, and thus both failed the basic motive requirement of *Elias-Zacarias*. Thus, the Attorney General did not revise the nexus standard, but simply went back to basics on a long-standing requirement the BIA neglected in *A-R-C-G-*.

*Third*, two issues Plaintiffs raise are not applicable here at all given they have nothing to do with credible fear, and, regardless, also pre-exist *A-B-*. The requirement that an asylum applicant "delineate" her particular social group does not apply outside adversarial removal proceedings. In *Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. at 190, where the BIA recently reaffirmed the requirement, it relied on the adversarial nature of removal proceedings as supporting the requirement. Credible fear and asylum interviews before USCIS are not adversarial in nature, *see* 8 C.F.R. § 208.9(b), and there is no requirement that an applicant in those circumstances delineate her group like in such adversarial proceedings. While the Attorney General discussed the

31

requirement in *A-B-*, he did not indicate any intention that it be applied outside the adversarial removal context, limiting his language to proceedings "on the record and before the immigration judge". *See* 27 I. & N. Dec. at 344. Furthermore, the requirement itself is not new as it was first announced in 2009 in *Matter of A-T-*, 25 I. & N. Dec. at 10, and was recently reinforced and clarified in January 2018 in *Matter of W-Y-C- & H-O-B-*.

*A-B-* also does not purport to require asylum officers to consider discretion as part of a credible fear determination. A positive exercise of discretion is required for a *final* grant of asylum by statute, 8 U.S.C. §§ 1158(b)(1), 1229a(c)(4)(A)(ii), and the considerations for the exercise of that discretion have been the law of the land since at least 1987. *See Matter of Pula*, 19 I. & N. Dec. 467. The Attorney General's reminder to immigration officers in no way requires that asylum officers conducting credible fear interviews must consider discretion when making determinations, and the USCIS PM contains no such requirement.

Plaintiffs' arguments concerning *A-B-* thus do not come close to showing that the Attorney General's decision was unreasonable or otherwise not entitled to deference.

C.      The USCIS PM is a reasonable exercise of USCIS's authority to provide interpretive guidance to its employees

Because *A-B-* is entitled to *Chevron* deference in all respects, Plaintiffs' claims concerning the USCIS PM must also fail. First, as Plaintiffs concede, the USCIS PM tracks *A-B-* in all but one respect. Compl. ¶¶ 47-48. The only "new" guidance Plaintiffs identify is an instruction to officers to apply the "case law of the relevant federal circuit court, to the extent that those cases are not inconsistent with *Matter of A-B-*," and apply the law of the "circuit where the alien is physically located during the credible fear interview." AR008-9; *see* Compl. ¶ 48. Given that concession, every other aspect of the USCIS PM should be upheld. Where an agency issues interpretive guidance to employees concerning how to apply binding authority that essentially mirrors that authority without adding any substantive requirements to it, the guidance is entitled to deference. *See, e.g.*, *Gonzales v. Oregon*, 546 U.S. 243, 268-69 (2006); *Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 36-37 (D.D.C. 2014) (courts "afford some deference to a non-binding agency interpretation of its guiding statute to the extent the interpretation has the power to persuade"). And as already noted, every aspect of *A-B-* other than

32

the reversal of *A-R-C-G-* is well-established and long-standing. *See supra* Part I.B.

As to the portions of the PM that specifically refer to *credible fear*, the PM follows existing law and past USCIS practice by instructing asylum officers on two principles: (1) "Credible fear means a 'significant possibility,' taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under section 208," AR008 (citing 8 U.S.C. § 1225(b)(1)(B)(v)), and the applicant bears the burden of demonstrating that credible fear, *id.* at 3; and (2) the officer is to conduct the interview in a non-adversarial manner, with the purpose of eliciting all relevant information bearing on eligibility, *id.* at 4 n.2 (citing 8 C.F.R. § 208.9(b)). Credible-fear interviews have always been conducted in this manner and pre-existing USCIS guidance on credible fear determinations also acknowledged both these principles, which are consistent with the governing regulation, and therefore reasonable. *See* 8 C.F.R. § 208.30(e)(1) & (2); RAIO Training Course at 13 (cited in Compl., ¶ 70, *available at* https://www.aila.org/File/DownloadEmbeddedFile/70907) ("The applicant bears the burden of proof to establish a credible fear of persecution or torture."); *see also* 8 C.F.R. § 208.30(d); Credible Fear Training Materials at 13.

Finally, as to the only "new" aspect of the PM that Plaintiffs identify—the instruction of which circuit's law should be applied and how asylum officers "should . . . apply the case law of the relevant federal circuit court, to the extent that those cases are not inconsistent with *Matter of A-B-*," AR008, the agency is still entitled to deference. *See Tex. Children's Hosp. v. Azar*, 315 F. Supp. 3d 322, 338 (D.D.C. 2018) (Sullivan, J.). First, the choice of applicable circuit authority based on the geographical location of the removal proceedings is in no way a change from past practice and has long been the agency's standard approach. *See, e.g.*, *Matter of Gonzalez*, 16 I. & N. Dec. 134, 135-36 (BIA 1977); *Matter of Waldei*, 19 I. & N. Dec. 189. Second, if the PM in fact presents a change in how USCIS determines what circuit law to apply, it would by definition be a novel interpretation of the INA that no circuit court has yet had an opportunity to review, so would be subject to *Chevron* deference because an agency's later, reasonable interpretation of an ambiguous statute is owed *Chevron* deference even when the Supreme Court (much less, circuit

courts) has given an earlier interpretation of the statute. *See Brand X*, 545 U.S. at 982-83. *Brand X* "allows the [agency] to change its statutory interpretation and still be entitled to full deference from Article III courts . . . . All that is required is that the agency provide a reasoned explanation' for its interpretation." *S.E.R.L.*, 894 F.3d at 555. USCIS has done just that by explaining the basis for its decision: "Because an asylum officer cannot predict with certainty where DHS will file a Notice to Appear or Notice of Referral to Immigration Judge, and because there may not be removal proceedings if the officer concludes the alien does not have a credible fear or reasonable fear and the alien does not seek review from an IJ, the asylum officer should faithfully apply precedents of the BIA and, if necessary, the circuit where the alien is physically located during the credible fear interview." AR009. No more is required.

Plaintiffs' preferred interpretation of this ambiguous law is that USCIS must reflexively apply the circuit law "most favorable to the applicant." Even assuming that this interpretation is reasonable (and putting aside how unworkable and unclear the "most favorable" standard is), Plaintiffs cannot explain why *USCIS's* interpretation is *not* reasonable, as is their burden, so this claim fails.

## III. Plaintiffs' Separation-of-Powers Claim Fails as a Matter of Law (Count II)

Plaintiffs assert that the USCIS PM "instructs asylum adjudicators making credible fear determinations to disregard contrary court of appeals precedents [to *A-B-*] and to apply only the case law in the circuit where the credible fear applicant is detained." Compl. ¶ 51; *see also id.* ¶¶ 65-72, 90-92. According to Plaintiffs, this instruction unlawfully usurps the role of Article III courts and violates the separation of powers. *Id.* ¶¶ 90-92.[16] They are wrong on both points.

First, Plaintiffs are wrong that the PM usurps federal courts' authority. The USCIS PM instructs as follows:

When conducting a credible fear or reasonable fear interview, an asylum officer

---

[16] Count II is redundant of Plaintiffs' APA claim and should be dismissed for that reason. *See* Compl. ¶ 92 ("The new credible fear policies violate the separation of powers . . . and are arbitrary and capricious and contrary to law under the APA."); *see, e.g.*, *Ursack, Inc. v. Sierra Interagency Black Bear Grp.*, 639 F.3d 949, 955 (9th Cir. 2011); *Czerkies v. U.S. Dep't of Labor*, 73 F.3d 1435, 1433 (7th Cir. 1996) (en banc); *cf. Chiayu Chang v. USCIS*, 254 F. Supp. 3d 160, 162 (D.D.C. 2017).

must determine what law applies to the applicant's claim. The asylum officer should apply all applicable precedents of the Attorney General and the BIA, *Matter of E-L-H-*, 23 I&N Dec. 814, 819 (BIA 2005), which are binding on all immigration judges and asylum officers nationwide. The asylum officer should also apply the case law of the relevant federal circuit court, to the extent that those cases are not inconsistent with *Matter of A-B-*. *See, e.g.*, *Matter of Fajardo Espinoza*, 26 I&N Dec. 603, 606 (BIA 2015).

AR008. This language implements the Supreme Court's decision in *Brand X*: *Chevron* deference must be applied to an agency's interpretation of ambiguous statutory provisions, even where a court has previously issued a contrary decision and believes that its construction is the better one, provided that the agency's interpretation is reasonable. 545 U.S. at 982. The sole exception to this rule is narrow: "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference *only if* the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Id.* (emphasis added). Unless and until a court holds that any aspect of an agency's interpretation of a statute is contrary to the clear and the unambiguous terms of that statute, the agency's interpretation is entitled to deference. *See Petit v. U.S. Dep't of Educ.*, 675 F.3d 769, 791 (D.C. Cir. 2012). The USCIS PM's instruction—that officers "should also apply the case law of the relevant federal circuit court, to the extent that those cases are not inconsistent with *Matter of A-B-*"—is a straightforward application of *Brand X*. *See* 545 U.S. at 982; *Petit*, 675 F.3d at 791.

Second, Plaintiffs are wrong that USCIS violates separation-of-powers principles by instructing its line officers to apply the law of the circuit in which an alien is detained during their credible fear interview. Compl. ¶¶ 69-72. This argument boils down to the assertion that the separation of powers entitles Plaintiffs to have the most favorable law to them from *any* court of appeals. *Id.* ¶ 70. This claim conflicts with binding law. *See, e.g.*, *Matter of Gonzalez*, 16 I. & N. Dec. at 136 ("we are bound by the court's ruling in those cases arising within" the circuit in which the case arises). And it is absurd. An alien detained in the Fifth Circuit (as Plaintiffs here are) is no more entitled to have the law of another Circuit govern their asylum proceedings than a criminal facing trial in the District of Columbia is entitled to pick what Circuit's law he would prefer to govern his criminal trial. Both claims have no basis in law.

Plaintiffs also argue that the requirement that asylum officers apply the law of the circuit

in which the alien is detained is a "dramatic change in policy" because "for years, asylum officers have been trained that where circuit courts disagree on an issue of law, 'generally the interpretation most favorable to the applicant is used.'" *Id.* (quoting RAIO Training Course at 17). But the cited materials actually provide that "where there is . . . disagreement among the United States Circuit Courts of appeal as to the proper interpretation of a legal issue," or "the claim otherwise raises an unresolved issue of law; **and**" "there is no DHS or Asylum Division policy or guidance on the issue," then, and only then, will "the interpretation most favorable to the applicant" be "used when determining whether the applicant meets the credible fear standard." *Id.* (emphasis in original). Plaintiffs ignore the clear exception for "DHS or Asylum Division policy or guidance," which, of course, the USCIS PM is. Even if a separation-of-powers claim can be made to turn on whether an agency explained the reasoning behind a change in its policy, USCIS explained clearly the basis for the change at pages 8-9 of the PM. *See supra* Part II.C. That explanation is reasonable and because there is no clear statutory language in the INA requiring that asylum officers treat credible fear proceedings as nothing more as a one-way ratchet by allowing asylum applicants to demand USCIS apply the most favorable law to them, no more is required. *See, e.g.*, *Brand X*, 545 U.S. at 986 (2005) ("we defer at step two to the agency's interpretation so long as the construction is" reasonable).

**IV.    Plaintiffs' Due Process Claim Fails as a Matter of Law (Count III)**

Plaintiffs contend in Count III that the "new credible fear policies . . . have violated Plaintiffs' right to due process by foreclosing their claims regardless of their individual facts or merits; by applying an unlawful, more burdensome legal standard to Plaintiffs' claims; and by depriving them of a meaningful opportunity to establish their potential eligibility for asylum and related relief." Compl. ¶ 96. They claim to "have protected interests in applying for asylum, withholding of removal, and [CAT][17] relief upon a showing that meets the applicable standards, and in not being removed to a country where they face serious danger and potential loss of life." *Id.*, ¶ 94. Based on their purported liberty interest in applying for asylum under standards they

---

[17] CAT refers to the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment. *See* 8 C.F.R. §§ 208.18, 1208.17, 1208.18.

prefer, they assert a right to credible fear hearings under the regime that existed prior to *A-B-* and the USCIS PM. *Id.*, Prayer for Relief, ¶¶ d-e. These claims are baseless.[18]

First, as this Court has already concluded in the context of a section 1252(e)(3) lawsuit brought by indistinguishable plaintiffs challenging regulations and written policies implementing 8 U.S.C. § 1225(b)(1), aliens seeking admission "cannot avail themselves of the protections of the Fifth Amendment to guarantee certain procedures with respect to their admission." *AILA*, 18 F. Supp. 2d at 60 (collecting cases). That remains the law in this Circuit. *See, e.g.*, *Kiyemba*, 555 F.3d at 1026 ("the due process clause does not apply to aliens without property or presence in the sovereign territory of the United States"); *Rasul v. Myers*, 563 F.3d 527, 531 (D.C. Cir. 2009) (alien "seeking admission" with "no previous significant voluntary connection with the United States" lacks due process rights with respect to their admission); *Ukrainian-Am.*, 893 F.2d at 1382 (similar); *Rafeedie v. INS*, 880 F.2d 506, 520 (1989) (similar).

Second, even if the Due Process Clause applied to Plaintiffs, their claim would fail. Plaintiffs must point to a cognizable liberty interest before they may assert any right to additional process. But "an applicant for initial entry has no constitutionally cognizable liberty interest in being permitted to enter the United States." *Rafeedie*, 880 F.2d at 520. That Plaintiffs seek asylum does not matter: an "unadmitted alien" "seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application," including on asylum claims. *See Ukrainian-Am.*, 893 F.2d at 1382; *AILA*, 18 F. Supp. 2d at 60 (similar).

As to Plaintiffs' due process assertions with respect to withholding of removal and CAT, as aliens seeking initial admission, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy v. United States ex. Rel. Mezei*, 345 U.S. 206, 212 (1953); *AILA*, 18 Supp. 2d at 59. On withholding and CAT, the INA thus provides all process that Plaintiffs are due, and they cannot invoke the Fifth Amendment to force the Court to provide more process. *See, e.g.*, *Castro v. DHS*, 835 F.3d 422, 445-46 (3d Cir. 2016) (collecting cases), *cert. denied sub nom.*, 137 S. Ct. 1581 (2017) (aliens like Plaintiffs "cannot

---

[18] Like Count II, Count III is redundant of Plaintiffs' APA claim: it alleges that the credible fear policies at issue are contrary to law and violate their rights under the INA. *See* Compl. ¶ 94.

invoke the Constitution . . . in an effort to force judicial review beyond what Congress has already granted them").

The INA specifies that the only enforceable rights under 8 U.S.C. § 1231(b)(3), providing for withholding of removal, or under the CAT, providing for withholding or deferral of removal based upon the threat of torture, are available in removal proceedings or in a petition for review from those proceedings, *see* 8 U.S.C. § 1252(a)(4), which an alien seeking asylum at the border is placed in if he makes the threshold showing of a credible fear of persecution or torture, *see* 8 U.S.C. § 1225(b)(1)(B)(ii). The limited federal district court review over expedited removal at section 1252(e)(3) applies only to actions implementing section 1225(b)(1), and, as explained, does not address section 1158 or 1231 or any provisions providing substantive relief or protection from removal. Outside of section 1252(e)(3) review and removal proceedings, Congress has barred federal district courts from hearing claims for relief from removal related to these claims for relief: "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the [CAT]." 8 U.S.C. § 1252(a)(4); *see also id.* § 1252(b)(9); Pub. L. No. 105-277, div. G., tit. XXII, 112 Stat. 2681, 2681-822 (codified in a note to 8 USC 1231).[19] Thus, Plaintiffs have no constitutional basis to claim entitlement to apply for withholding or CAT protection outside of the process Congress instructed the agencies to provide: first in credible fear interviews and then in removal proceedings if the threshold showing of eligibility is made. *See* 8 U.S.C. § 1225(b)(1)(B)(ii). Their due process claim must fail on this basis as well.

Accordingly, the Defendants are entitled to summary judgment on Count III.

## **CONCLUSION**

For these reasons, the Court should grant summary judgment to Defendants.

[19] The international agreements addressing the United States' non-refoulement obligations—which are implemented in U.S. law as withholding of removal at 8 U.S.C. § 1231—and the CAT are not self-executing and are applicable only in the immigration procedures created by Congress or by regulation. *See, e.g., Al-Fara v. Gonzales*, 404 F.3d 733, 743 (3d Cir. 2005).

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

By: /s/ *Erez Reuveni*
EREZ REUVENI
Assistant Director, Office of Immigration Litigation
U.S. Department of Justice, Civil Division
450 5th Street NW
Washington, DC 20530
Tel. (202) 307-4293
Erez.R.Reuveni@usdoj.gov

JOSEPH A. DARROW
CHRISTINA GREER
JOSHUA S. PRESS
Trial Attorneys

*Attorneys for Defendants*

Dated: September 12, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 12, 2018, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the District of Columbia by using the appellate CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

By:  */s/ Erez Reuveni*
      EREZ REUVENI
      Assistant Director
      United States Department of Justice
      Civil Division