**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GRACE, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) |
| | ) |
| JEFFERSON BEAUREGARD SESSIONS III, | ) |
| Attorney General of the United States, *et al.*, | ) No. 1:18-cv-01853 (EGS) |
| | ) |
| *Defendants*. | ) |
| | ) |
| | ) |
| | ) |

**Plaintiffs' Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment, Pursuant to L.R. 7(h)**

| The Credible Fear Policies | |
|---|---|
| 1. On June 11, 2018, Defendant Sessions issued a written decision in *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018). USCIS000015-34, *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018); Declaration of Sarah Mujahid ("Mujahid Decl."), Exh. A. | |
| 2. As set forth in *Matter of A-B-*, Defendant Sessions articulated new legal formulations or rules which apply explicitly to credible fear cases, particularly focusing on claims relating to domestic violence and gang violence. USCIS000015-34, *Matter of A-B-*, 27 I&N Dec. 316. | |
| 3. In *Matter of A-B-*, Defendant Sessions specifically stated that few claims pertaining to domestic or gang violence by non-governmental actors could qualify for asylum or satisfy the credible fear standard. USCIS000015-34, 17, 32, *Matter of A-B-*, 27 I&N Dec. at 320 & n.1 (addressing "the legal standard to determine whether an alien has a credible fear of persecution," and citing 8 U.S.C. § 1225(b)(1)(B)(v)). | |
| 4. In the course of articulating new legal | |

1

| | |
|---|---|
| formulations or rules applicable to credible fear claims, *Matter of A-B-* did not purport to alter settled legal standards governing such claims. USCIS000015-34, 16, *Matter of A-B-*, 27 I&N Dec. at 317 (applicants must "satisfy established standards"). | |
| 5.  *Matter of A-B-* applies to immigration judges reviewing negative credible fear determinations. Def. Opp. to Stay Mot., *Zelda v. Sessions*, No. 1:18-cv-01966-EGS, Doc. 13, at 1; USCIS000017, 32, *Matter of A-B-*, 27 I&N Dec. at 320 & n.1. | |
| 6.  On June 13, 2018, United States Citizenship and Immigration Services ("USCIS") issued a written Interim Guidance from John L. Lafferty to USCIS Asylum Division staff, instructing asylum officers to apply new policies relating to *Matter of A-B-* in credible fear interviews.  USCIS000011-14, Asylum Division Interim Guidance – Matter of A-B-, 27 I&N Dec. 316 (A.G. 2018), June 13, 2018 (hereinafter "USCIS Interim Guidance"). | |
| 7.  On July 11, 2018, USCIS issued final written guidance instructing asylum officers to apply new policies relating to *Matter of A-B-* when making credible fear determinations. USCIS000001-10, USCIS Policy Memorandum, Guidance for Processing Reasonable Fear, Credible Fear, Asylum, and Refugee Claims in Accordance with *Matter of A-B-*, July 11, 2018 (PM-602-0162) (hereinafter "USCIS Guidance" or "Guidance"). | |
| 8.  The USCIS Guidance provides that the "Authority" for its issuance includes the expedited removal statute, 8 U.S.C. § 1225, and its implementing regulations at 8 C.F.R. §§ 235 and 208.  USCIS000001, USCIS Guidance at 1. | |
| 9.  In addition to instructing asylum officers to apply new policies relating to *Matter of A-B-* in credible fear proceedings, the USCIS Guidance further mandates that in making credible fear determinations, USCIS asylum officers shall ignore all federal court of appeals case law that is inconsistent with *Matter of A-B-*, and even then consider only the law of the circuit where the applicant is physically located during | |

| | |
|---|---|
| her credible fear interview.  USCIS000008-9, USCIS Guidance at 8-9. | |
| **Defendants' Prior Policies** ||
| 10. The Department of Homeland Security has previously recognized that individuals fearing domestic violence could potentially make out viable asylum claims.  *See, e.g.*, *Matter of A-B-*, 27 I&N Dec. at 319 (explaining DHS position in *Matter of A-R-C-G-*); ABROP0368-409, DHS Br., *Matter of A-B-* (Apr. 20, 2018); *see also, e.g.*, ABROP1052-1084, DHS Br., *Matter of L-R-* (Apr. 13, 2009) (taking position that cognizable social group may be defined by gender, nationality, and relationship status, including "[nationality] women in domestic relationships who are unable to leave" or "[nationality] women who are viewed as property by virtue of their positions within a domestic relationship"); DHS Br., *Matter of R-A-* (Feb 19, 2004), Second Declaration of Sarah Mujahid ("2d Mujahid Decl."), Exh. 3. | |
| 11. DHS's predecessor agency issued gender guidelines supporting the validity of women's asylum claims, which DHS itself has since followed. *Memorandum from Phyllis Coven, INS Office of International Affairs to all INS Asylum Officers and HQASM Coordinators, Considerations for Asylum Officers Adjudicating Asylum Claims for Women* (May 26, 1995), cited in 72 Interpreter Releases 771 (June 5, 1995), 2d Mujahid Decl., Exh. 1; DHS, Asylum Officer Basic Training Course, Female Asylum Applications and Gender-Related Claims (2009) (citing *id.*), 2d Mujahid Decl., Exh. 2. | |
| 12.     Prior to *Matter of A-B-*, USCIS had recognized that in determining whether the "unable or unwilling to control" standard for persecution by non-governmental actors was met, the proper inquiry is whether the applicant's home government will take "measures that reduce the risk of claimed harm below the well-founded fear threshold."  Asylum Officer Basic Training, Female Asylum Applicants & Gender-Related Claims at 21 (Dec. 5, 2002), Mujahid Decl., Exh. E. | |
| 13. Prior to *Matter of A-B-*, USCIS had | |

explained that in determining whether the "unable or unwilling to control" standard for persecution by non-governmental actors was met, "the asylum officer should consider whether the government takes reasonable steps to control the infliction of harm or suffering and whether the applicant has reasonable access to the existing state protection." Asylum Officer Basic Training, Female Asylum Applicants & Gender-Related Claims at 21 (Dec. 5, 2002), Mujahid Decl., Exh. E.

14. USCIS has previously recognized that asylum officers making credible fear determinations must "evaluate the entire scope of harm experienced by the applicant to determine if he or she was persecuted, taking into account the individual circumstances of each case." Refugee, Asylum, and International Operations Directorate Officer Training Course ("RAIO"), Credible Fear of Persecution and Torture Determinations, at 25, 28 (Feb. 13, 2017), Mujahid Decl., Exh. F ("2017 Credible Fear Training").

15. Prior to *Matter of A-B-*, USCIS had taken the position that issues that "require complex legal and factual analyses" are "more appropriately considered in a full hearing before an immigration judge" than at the credible fear stage. Refugee, Asylum, and International Operations Directorate Officer Training Course ("RAIO"), Credible Fear of Persecution and Torture Determinations, at 37 (Feb. 13, 2017), Mujahid Decl., Exh. F ("2017 Credible Fear Training"); *see also id.* at 24 ("a full asylum hearing provides the appropriate venue to evaluate whether or not the applicant merits a favorable exercise of discretion to grant asylum").

16. USCIS has previously acknowledged that "circuit court opinions are binding on the BIA, immigration judges and asylum officers located within that circuit court's jurisdiction." Asylum Officer Basic Training, Reading Caselaw at 3 (January 9, 2006), Mujahid Decl., Exh. G ("Reading Caselaw); RAIO Training Course, Reading and Using Case Law at 10, 15 (Apr.,

| | |
|---|---|
| 2012), Mujahid Decl., Exh. H. | |
| 17. Under prior USCIS policy concerning the application of circuit court precedents, "generally the interpretation most favorable to the applicant is used when determining whether the applicant meets the credible fear standard." Refugee, Asylum, and International Operations Directorate Officer Training Course ("RAIO"), Credible Fear of Persecution and Torture Determinations, at 17, 47 (Feb. 13, 2017), Mujahid Decl., Exh. F ("2017 Credible Fear Training"); RAIO Training Course, Credible Fear (Feb. 28, 2014), at 16, Mujahid Decl., Exh. I; RAIO Training Course, Credible Fear of Persecution and Torture Determinations (Apr. 14, 2006), at 14, Mujahid Decl., Exh. J. | |
| 18. Prior to *Matter of A-B-* and the USCIS Interim and Final Guidances, many applicants in cases involving domestic violence and gang violence could pass credible fear and establish eligibility for asylum. Jamil Decl. ¶¶ 7-8. | |
| 19. The credible fear policies reflected in *Matter of A-B-* and the USCIS Interim and Final Guidance are a change from past policy. Nasr Decl. ¶¶ 6, 8-10 (stating that new policy against domestic violence and gang related claims, new circuit law policies, new "condoned" or "complete helplessness" policy, and new nexus are a departure from past USCIS policy and practice); *see also* Jamil Decl. ¶¶ 7-8, 9, 12, 13; *supra* Pl. Facts 10-17. | |
| **Background Regarding Lack of Impartiality & Violation of Due Process** | |
| 20. In October 2017, speaking to the Executive Office for Immigration Review, Defendant Sessions expressed his apparent view that the "particular social group" ground for asylum protection should not be included in the statute, stating that our asylum laws "are meant to protect those who because of characteristics like their race, religion, nationality, or political opinions cannot find protection in their home countries," and omitting mention of the "membership in a particular social group" ground for asylum. Attorney General Jefferson Beauregard Sessions III, Remarks to the Executive Office for Immigration Review, Falls | |

5

| | |
|---|---|
| Church, VA (Oct. 12, 2017), 2d Mujahid Decl., Exh. 4; *see also* ABROP1586-1631, *Matter of A-B-* Amicus Brief of Innovation Law Lab, at ABROP1622-1629. | |
| 21. At the same time, Defendant Sessions complained that other claims–which he deemed "insubstantial," "vague," and "subjective" –have "swamped our system." He also stated that the asylum system "is currently subject to rampant abuse and fraud." Attorney General Jefferson Beauregard Sessions III, Remarks to the Executive Office for Immigration Review, Falls Church, VA (Oct. 12, 2017), 2d Mujahid Decl., Exh. 4; *see also* ABROP1586-1631, *Matter of A-B-* Amicus Brief of Innovation Law Lab, at ABROP1622-1629. | |
| 22. Defendant Sessions has explicitly stated his goal to "elevate the threshold standard of proof in credible fear interviews." Attorney General Jefferson Beauregard Sessions III, Remarks to the Executive Office for Immigration Review, Falls Church, VA (Oct. 12, 2017), 2d Mujahid Decl., Exh. 4. | |
| 23. The same day he issued *Matter of A-B-*, Defendant Sessions told an audience of immigration judges that "the vast majority of the current asylum claims are not valid." Attorney General Jefferson Beauregard Sessions III, Remarks to the Executive Office for Immigration Review Legal Training Program, Washington, D.C. (June 11, 2018), 2d Mujahid Decl., Exh. 5. | |
| 24. Defendant Sessions also reminded the audience of immigration judges that they are "subject to such supervision and shall perform such duties as the Attorney General shall prescribe." Attorney General Jefferson Beauregard Sessions III, Remarks to the Executive Office for Immigration Review Legal Training Program, Washington, D.C. (June 11, 2018), 2d Mujahid Decl., Exh. 5. | |
| 25. Defendant Nielsen has been explicit about her goal of heightening the credible fear standard, stating on January 16, 2018, that "we must tighten case processing standards, including the 'credible-fear' standard[.]" Secretary Kirstjen M. Nielsen, Department of Homeland | |

| | |
|---|---|
| Security, Testimony at Hearing Before the Senate Committee on Judiciary (Jan. 16, 2018), 2d Mujahid Decl., Exh. 7. | |
| 26. On June 11, 2018, the same day that Defendant Sessions issued *Matter of A-B-*, a group of 16 former Immigration Judges and Board of Immigration Appeals members issued a public statement calling the *Matter of A-B-* decision "an affront to the rule of law" and stating that "[a]s former judges, we understand that in order to be fair, case law must develop through a process of impartial judicial analysis applying statute, regulations, case law, and other proper sources to the facts of the case."  Retired Immigration Judges and Former Members of the Board of Immigration Appeals Statement in Response to Attorney General's Decision in *Matter of A-B-*, June 11, 2018, 2d Mujahid Decl., Exh. 8. | |
| 27. On July 30, 2018, a group of 15 former Immigration Judges and Board of Immigration Appeals members issued a public statement raising their concerns about actions by the Executive Office of Immigration Review that they described as the "[l]atest [a]ttack on [j]udicial [i]ndependence" of immigration judges.  Retired Immigration Judges and Former Members of the Board of Immigration Appeals Statement in Response to Latest Attack on Judicial Independence," July 30, 2018 (expressing concern that EOIR "removed [a] case from the docket of a capable immigration judge in order to ensure an outcome that would please its higher-ups"), 2d Mujahid Decl., Exh. 9 | |
| 28. In a September 10, 2018 speech to the Executive Office of Immigration Review, Attorney General Sessions stated that the "asylum system has been abused for years to the detriment of the rule of law" and instructed the immigration officers that it was their "duty to carry out" *Matter of A-B*. Attorney General Jefferson Beauregard Sessions III, Remarks to the Largest Class of Immigration Judges in History for the Executive Office for Immigration Review, Falls Church, VA (Sept. 10, 2018), 2d Mujahid Decl., Exh. 6. | |

7

| | |
|---|---|
| 29. Immigration judges and asylum officers have interpreted *Matter of A-B* and the USCIS Guidance as a signal to deny asylum claims related to domestic violence and gang violence. *See* Jamil Decl. ¶¶ 8, 11; Nasr Decl. ¶ 5. | |
| 30. The new credible fear policies create an appearance of bias: For example, the New York Times publicly reported that Immigration Judge Amiena Khan, speaking as the executive vice president of the National Association of Immigration Judges, has said the union views recent new Justice Department policies, including *Matter of A-B*, as an attempt to turn immigration judges from neutral arbiters into law enforcement agents enacting Trump Administration policies. Liz Robins, *In Immigration Courts, It Is Judges vs. Justice Department*, New York Times, (Sept. 7, 2018), 2d Mujahid Decl., Exh. 14; *see also id.* (reporting a statement from a former supervising IJ in New York that the DOJ office that oversees immigration judges was "absolutely" sending "a signal to the New York judges to adhere faithfully to what the attorney general's program is"); Seth Freed Wessler, *'When I Say I'm Complicit, This Is What I Mean*, Topic (Sept. 2018), 2d Mujahid Decl., Exh. 15 (reporting that asylum officers had related that "inside their field offices, a new level of suspicion has taken hold, a 'guilty till proven innocent' disposition toward asylum seekers"); *id.* (publicly reporting that asylum officer who conducts credible fear interviews had stated that "at the end of the day, you represent a system that is not being fair, not providing any fairness to these individuals"). | |
| 31. Immigration judges do not have lifetime appointments. They are subject to the supervision of the Attorney General and can be terminated by the Department of Justice. Jamil Decl. ¶ 11; 8 U.S.C. 1101(b)(4); 8 C.F.R. § 1001.1(i). | |
| 32. Immigration judges are also subject to performance evaluations and case completion quotas. Jamil Decl. ¶ 11; Executive Office of Immigration Review, *EOIR Performance Plan: Adjudicative Employees*, 2d Mujahid Decl., Exh. | |

| | |
|---|---|
| 16; Joel Rose, *Justice Deparment Rolls Out Quotas for Immigration Judges*, NPR, (Apr. 3, 2018), 2d Mujahid Decl., Exh. 17. | |
| 33. Immigration Judges fear that they will lose their jobs if they grant asylum claims related to domestic violence and gang violence, in contravention of the new credible fear policies. Jamil Decl. ¶ 11; Liz Robins, *In Immigration Courts, It Is Judges vs. Justice Department*, New York Times, (Sept. 7, 2018), 2d Mujahid Decl., Exh. 14 (reporting a statement from a former supervising IJ in New York that the DOJ office that oversees immigration judges was "absolutely" sending "a signal to the New York judges to adhere faithfully to what the attorney general's program is"). | |
| 34. Asylum officers are employees of USCIS and are subject to termination or other adverse employment actions. Nasr Decl. ¶ 5; 8 C.F.R. § 1.2; 8 C.F.R. § 2.1. | |
| 35. Asylum officers fear that they will face professional repercussions if they grant asylum claims related to domestic violence and gang violence, in contravention of the new credible fear policies. Nasr Decl. ¶ 5; *see also* Seth Freed Wessler, *'When I Say I'm Complicit, This Is What I Mean*, Topic (Sept. 2018), 2d Mujahid Decl., Exh. 15 (reporting asylum officer as stating that "we have a lot of eyes on us. It makes people scared. They don't want to lose their jobs"). | |
| 36. Plaintiffs Cindy, A.P.A., Carmen, J.A.C.F., Gina, Grace, Mina, and Mona had already entered the United States before they were arrested by immigration authorities. *See* Cindy Decl. ¶ 3; Carmen Decl. ¶ 4; Gina Decl. ¶ 4; Grace Decl. ¶ 3; Mina Decl. ¶ 3; Mona Decl. ¶ 3 | |
| 37.  Immigration attorneys and service providers have reported that since the issuance of *Matter of A-B-*, the pass rate for credible fear determinations has dropped noticeably, especially for claims of domestic violence and gang violence.  Declaration of Ruby L. Powers; Declaration of Allegra Love; Declaration of Jodi Goodwin. | |

| **Background from *Matter of A-B-*** | |
|---|---|
| 38. Ms. A.B.'s asylum applications were based on more than a decade of physical, sexual, and emotional abuse at the hands of her ex-husband in El Salvador. ABROP0502-12 (A.B. Suppl. Decl.); ABROP0301-03 (A.B. Decl.); ABROP0028-31 (BIA Dec.). | |
| 39. A significant causal factor of domestic violence, across cultures, is gender inequality. ABROP0732-35 (Lemon Decl.); ABROP0646-47 (Menjivar Decl.); ABROP697-700 (Bayona Decl.). | |
| 40. Domestic violence is no mere "personal" dispute, but rather is based on gender discrimination arising from sociocultural, legal, and historical factors. *See, e.g.*, ABROP0732 (Lemon Decl.) ("Cross-cultural studies also confirm that domestic violence occurs because of gender inequality predicated on hierarchical and distinct gender roles"); *id.* at 0734 ("[R]igid acceptance of men's entitlement to superiority and control over family members is among the leading risk factors for intrafamilial violence within a society."); *id.* at 0735 ("The male batterer is motivated by a firm belief in male privilege, which expresses itself in an expectation that men and women conform to traditional and rigid gender roles. . ."); ABROP0647 (Menjivar Decl.) ("Women [in El Salvador] face this abuse because of their gender . . ."); ABROP0695-96 (Bayona Decl.) ("[P]atriarchal norms, arising from cultural origins, perpetuate the dominance of men over women in economic, legal, political, and social relationships. . . .women who violate gender roles, disobey men, or assert their independence are thought to deserve punishment."); *see also* ABROP0746-47 (Lemon Decl.); ABROP0646, 50 (Menjivar Decl.); ABROP0698 (Bayona Decl.). | |
| 41. Abusive partners may not recognize their victim's right to end the relationship. ABROP0741-42 (Lemon Decl.); ABROP0651 (Menjivar Decl.); ABROP0695 (Bayona Decl.). | |
| 42. A woman's inability to leave an abusive relationship results from a variety of factors | |

10

| | |
|---|---|
| independent of the feared domestic abuse, including the social inequality of women, discriminatory cultural norms, family and community pressures to stay in a relationship, and use of children as leverage, as well as an abuser's refusal to accept a woman's right to terminate the relationship. *See, e.g.*, ABROP0742 (Lemon Decl.) (noting inability to leave is created by abuser's views and need to "reassert his dominance"); ABROP0647 (Menjivar Decl.) ("Deep-seated sociocultural practices assign these women in abusive relationships unequal status . . ."). | |
| 43. The Salvadoran government may not be able to effectively protect women from domestic violence. ABROP0647-52 (Menjivar Decl.); ABROP0700-05 (Bayona Decl.); ABROP0938 (2016 Dep't of State Human Rights Report); ABROP0959-60 (UN Comm. On Elimination of Discrimination against Women: Concluding Observations on the Combined Eighth and Ninth Period Reports of El Salvador); ABROP1001-03 (Report of the Special Rapporteur on Violence against Women, its causes and consequences: Follow-Up mission to El Salvador). | |
| 44. Gender inequality is prevalent in El Salvador. ABROP0645-46 (Menjivar Decl.); ABROP0694-96 (Bayona Decl.); ABROP0974 (*Impunity and Multisided Violence in the Lives of Latin American Women*); ABROP0991 (Report of the Special Rapporteur on Violence against Women, its causes and consequences: Follow-Up mission to El Salvador). | |
| 45. Most asylum seekers are unrepresented throughout the credible fear process. ABROP1220-23 (USCIRF Report); ABROP1110-12 (WRC Report). | |
| 46. All relevant details may not be elicited during the credible fear interview process, including because of trauma often suffered by asylum seekers. *See, e.g.*, ABROP0623 (Declaration of Stuart Lustig) ("Lustig Decl."), at ¶ 8 (explaining that border interviews of asylum seekers that "occur in settings such as jails or detention centers" can trigger trauma reactions that make disclosing details difficult); | |

11

| | |
|---|---|
| *see also* ABROP0624-25. | |
| **Harms and the Balance of Equities** | |
| 47. The Plaintiffs fear that they would or will be gravely injured or killed in their home countries. Grace Decl. ¶¶ 22-23; Carmen Decl. ¶¶ 2-3, 28-29; Mina Decl. ¶¶ 2, 18-19; Mona Decl. ¶¶ 2, 21-22; Gio Decl. ¶¶ 2-3, 35-38 ; Gina Decl. at ¶¶ 2-3, 18, 22; Maria Decl. ¶¶ 2, 19-20; Nora Decl. ¶¶ 1, 20-21 ; Cindy Decl. ¶¶ 2, 37, 40-41 | |
| 48. Each of the Plaintiffs was issued a negative credible fear determination and/or expedited removal order after June 11, 2018, and after the new credible fear policies relating to *Matter of A-B-* were implemented. Grace Decl. ¶ 4; Carmen Decl. ¶ 4; Mina Decl. ¶ 4; Mona Decl. ¶ 4; Gio Decl. ¶ 5; Gina Decl. ¶ 4; Maria Decl. ¶ 4; Nora Decl. ¶ 2; Cindy Decl. ¶ 3. | |
| 49. Plaintiffs and others like them who are subjected to expedited removal could potentially be removed to countries where their lives or safety are at risk. Grace Decl. ¶¶ 22-23; Carmen Decl. ¶¶ 2-3, 28-29; Mina Decl. ¶¶ 2, 18-19; Mona Decl. ¶¶ 2, 21-22; Gio Decl. ¶¶ 2-3, 35-38 ; Gina Decl. ¶¶ 2-3, 18, 22 ; Maria Decl. ¶¶ 2, 19-20; Nora Decl. ¶¶ 1, 20-21 ; Cindy Decl. ¶¶ 2, 37, 40-41; UNHCR, *Women on the Run*, at 2 (2015), Mujahid Decl., Exh. K; UNHCR, *Children on the Run* (2014), Mujahid Decl., Exh. L; Amnesty International, *El Salvador 2017/2018,* Mujahid Decl., Exh. M; Geneva Declaration on Armed Violence and Development, "Lethal Violence against Women and Girls," *Global Burdens of Armed Violence 2015: Every Body Counts*, at 94, Mujahid Decl., Exh. N; U.S. Dep't of State Overseas Sec. Advisory Council, *El Salvador 2018 Crime & Safety Report ,* Mujahid Decl., Exh. O; Rashida | |

| | |
|---|---|
| Manjoo, *Report of the Special Rapporteur on Violence Against Women, Its Causes and Consequences* ¶¶ 9, 82 (Mar. 31, 2015), Mujahid Decl., Exh. P; Center for Gender & Refugee Studies and National University of Lanús, *Childhood and Migration in Central and North America: Causes, Policies, Practices and Challenge*s (Feb. 2015), Mujahid Decl., Exh. Q; Joint Declaration of Shannon Drysdale Walsh, Cecilia Menjívar, and Harry E. Vanden ("Honduras Decl.") ¶ 44; Joint Declaration of Cecilia Menjívar and Harry E. Vanden ("El Salvador Decl.") ¶ 36; Joint Declaration of Cecilia Menjívar, M. Gabriela Torres, and Harry E. Vanden ("Guatemala Decl.") ¶¶ 33-34. | |
| 50. Reports have found that numerous migrants from Central America who were deported from the United States have suffered brutal harms, including death, after returning to their home countries. Sibylla Brodzinsky & Ed Pilkington, *US Government Deporting Central American Migrants to Their Deaths*, THE GUARDIAN (Oct. 12, 2015) (discussing academic study), Mujahid Decl., Exh. R; Elizabeth Kennedy, American Immigration Council, *No Childhood Here: Why Central American Children are Fleeing Their Homes*, at 5 (July 1, 2014), Mujahid Decl., Exh. S; Nicholas Kristof, *We're Helping Deport Kids to Die*, N.Y. Times (July 16, 2016, Mujahid Decl., Exh. T. | |
| 51. Plaintiffs and other individuals may be at risk of harm from gang violence, which is widespread in some Central American countries. UNHCR, *Guidance Note on Refugee Claims Relating to Victims of Organized Gangs*, ¶¶ 1-2, 47, 53 (March, 2010), 2d Mujahid Decl., Exh. 10; UNHCR, *Eligibility Guidelines for Assessing the International Protection Needs of Asylum-Seekers from El Salvador*, at 7, 8, 10, 12, 18 (March, 2016), 2d Mujahid Decl., Exh. 11; UNHCR, *Eligibility Guidelines for Assessing the International Protection Needs of Asylum-Seekers from Honduras*, at 6, 10-11, 12-13, 18 (July 27, 2016), 2d Mujahid Decl., Exh. 12; UNHCR, *America Country of Origin Series: Guatemala Background Paper*, at 24, 26 (Oct. | |

| | |
|---|---|
| 2013), 2d Mujahid Decl., Exh. 13; Honduras Decl. ¶¶ 37-40; El Salvador Decl. ¶¶ 32-35; Guatemala Decl. ¶ 22. | |
| 52. Gangs in Central America may target certain individuals for violence based on any of the protected grounds for asylum – race, nationality, religion, political opinion, or membership in a particular social group. UNHCR, *Guidance Note on Refugee Claims Relating to Victims of Organized Gangs*, ¶¶ 32, 33, 34-44, 45-51 (March, 2010), 2d Mujahid Decl., Exh. 10; UNHCR, *Eligibility Guidelines for Assessing the International Protection Needs of Asylum-Seekers from El Salvador*, at 29-42 (March, 2016), 2d Mujahid Decl., Exh. 11; UNHCR, *Eligibility Guidelines for Assessing the International Protection Needs of Asylum-Seekers from Honduras*, at 45-64 (July 27, 2016), 2d Mujahid Decl., Exh. 12; UNHCR, *America Country of Origin Series: Guatemala Background Paper*, at 43-62 (Oct. 2013), 2d Mujahid Decl., Exh. 13; Honduras Decl. ¶ 42-43; El Salvador Decl. ¶¶ 34-35; Guatemala Decl. ¶¶ 12-14. | |
| 53. Governments in Central America may be ineffective at protecting individuals from violence perpetrated by gangs. UNHCR, *Guidance Note on Refugee Claims Relating to Victims of Organized Gangs*, ¶¶ 25, 27 (March, 2010), 2d Mujahid Decl., Exh. 10; UNHCR, *Eligibility Guidelines for Assessing the International Protection Needs of Asylum-Seekers from El Salvador*, at 5-6, 17, 20-26 (March, 2016), 2d Mujahid Decl., Exh. 11; UNHCR, *Eligibility Guidelines for Assessing the International Protection Needs of Asylum-Seekers from Honduras*, at 7, 9, 36-40 (July 27, 2016), 2d Mujahid Decl., Exh. 12; UNHCR, *America Country of Origin Series: Guatemala Background Paper*, at 26, 31, 35 (Oct. 2013), 2d Mujahid Decl., Exh. 13; Honduras Decl. ¶¶ 38-41; El Salvador Decl. ¶ 37; Guatemala Decl. ¶¶ 22-25. | |
| 54. Plaintiffs and other individuals may be at risk of harm from domestic violence and other gender-based violence, which is widespread in | |

| | |
|---|---|
| some Central American countries. Honduras Decl. ¶¶ 17-20, 44; El Salvador Decl. ¶¶ 10-13 Guatemala Decl. ¶¶ 11, 15-16. | |
| 55. Intimate partners and other perpetrators of domestic violence or other gender-based violence may target their victims based on any of the protected grounds for asylum – race, nationality, religion, political opinion, or membership in a particular social group. Honduras Decl. ¶¶ 21-24, 26-27; El Salvador Decl. ¶¶ 13-20; Guatemala Decl. ¶¶ 14, 17-21. | |
| 56. Governments in Central America may be ineffective at protecting individuals from domestic violence and other gender-based violence. *See, e.g.*, ABROP0647-52 (Menjivar Decl.); ABROP0700-05 (Bayona Decl.); ABROP0938 (2016 Dep't of State Human Rights Report); ABROP0959-60 (UN Comm. On Elimination of Discrimination against Women: Concluding Observations on the Combined Eighth and Ninth Period Reports of El Salvador); ABROP1001-03 (Report of the Special Rapporteur on Violence against Women, its causes and consequences: Follow-Up mission to El Salvador); Honduras Decl. ¶¶ 29-36; El Salvador Decl. ¶¶ 21-31; Guatemala Decl. ¶¶ 22-32. | |