# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GRACE, *et al.*,<br><br>        *Plaintiffs*,<br><br>    v.<br><br>JEFFERSON BEAUREGARD SESSIONS III,<br>Attorney General of the United States, *et al.*,<br><br>        *Defendants*. | No. 1:18-cv-01853 (EGS) |

## MEMORANDUM IN SUPPORT OF MOTION TO CONSIDER EVIDENCE OUTSIDE OF THE ADMINISTRATIVE RECORD

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................. 1

II. Argument ..................................................................................................................... 2

    a) This Court Should Consider Extra-Record Evidence Of Defendants' Prior Policies ...... 2

    b) This Court Ought To Consider Evidence Outside Of The Administrative Record With Respect To The Remainder of Plaintiffs' Case .............................................................. 7

        i) This Court Should Consider Evidence Supporting Plaintiffs' Due Process Claim ...... 7

        ii) This Court Should Consider Evidence Supporting Plaintiffs' Request For Injunctive Relief. ........................................................................................................................ 9

III. Conclusion ................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Carlsson v. U.S. Citizenship & Immigration Services*,
 2:12-CV-07893-CAS, 2015 WL 1467174 (C.D. Cal. Mar. 23, 2015) .......................................... 6

*Chesapeake Climate Action Network v. Exp.-Imp. Bank of the United States*,
8 F. Supp. 3d 208 (D.D.C. 2015) ................................................................................................ 6, 9

*Children's Hosp. Ass'n of Texas v. Azar*,
300 F. Supp. 3d 190 (D.D.C. 2018) ............................................................................................. 12

*Comcast Corp. v. FCC*,
600 F.3d 642 (D.C. Cir. 2010) ....................................................................................................... 4

*Commercial Drapery Contractors, Inc. v. United States*,
967 F. Supp. 1 (D.D.C. 1997) ........................................................................................................ 9

*Eco Tour Adventures, Inc. v. Zinke*,
249 F. Supp. 3d 360 (D.D.C. 2017) ............................................................................................. 12

*Esch v. Yeutter*,
876 F.2d 976 (D.C. Cir. 1989) ..................................................................................................... 12

*Hill Dermaceuticals, Inc. v. U.S. Food & Drug Admin.*,
CIV.A. 11-1950 RCL, 2012 WL 5914516 (D.D.C. May 18, 2012) ............................................ 12

*Nat'l Ass'n for the Advancement of Colored People v. Trump*,
298 F. Supp. 3d 209 (D.D.C. 2018) ............................................................................................... 6

*Nat'l Min. Ass'n v. Jackson*,
856 F. Supp. 2d 150 (D.D.C. 2012) ........................................................................................... 3, 5

*Nat'l Med. Enterprises, Inc. v. Shalala*,
826 F. Supp. 558 (D.D.C. 1993) .................................................................................................... 9

*Oceana, Inc. v. Pritzker*,
126 F. Supp. 3d 110 (D.D.C. 2015) ............................................................................................... 4

*Pac. Shores Subdivision, California Water Dist. v. U.S. Army Corps of Engineers*,
448 F. Supp. 2d 1 (D.D.C. 2006) ................................................................................................... 3

*Rydeen v. Quigg*,
748 F.Supp. 900 (D.D.C. 1990) .......................................................................................... 9

*Safari Club Int'l v. Jewell,*
111 F. Supp. 3d 1 (D.D.C. 2015) ....................................................................................... 3

*Sierra Club v. U.S. Dep't of Agric., Rural Utilities Serv.,*
841 F. Supp. 2d 349 (D.D.C. 2012) ................................................................................. 10

*The Cape Hatteras Access Pres. All. v. U.S. Dept. of Interior,*
667 F. Supp. 2d 111 (D.D.C. 2009) ................................................................................... 3

*United Student Aid Funds, Inc. v. Devos,*
237 F. Supp. 3d 1 (D.D.C. 2017) .................................................................................. 3, 6

## I. Introduction

In conjunction with Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and Plaintiffs' Cross Motion for Summary Judgment, Plaintiffs respectfully request that the Court consider the evidence attached to that Motion and to Plaintiffs' Motion for a Preliminary Injunction (Docs. 10-2 through 10-7, Docs. 12-1 through 12-8).[1] Although Administrative Procedure Act ("APA") challenges are normally limited to the Administrative Record, courts have acknowledged numerous circumstances in which consideration of additional evidence is appropriate, including: where extra-record evidence is necessary to enable judicial review of whether the government has impermissibly departed from a prior policy, and where plaintiffs have brought claims in addition to their APA claim. Because both of these circumstances are present in this case, consideration of Plaintiffs' evidence, much of which has already been submitted to the Court in connection with Plaintiffs' Motion for a Preliminary Injunction, is proper.

*First,* in evaluating the merits of their APA claims, Plaintiffs request the Court review certain prior policies of Defendants that are not part of the administrative record. Defendants insist that *Matter of A-B-* and the subsequent guidance largely reaffirmed prior law. *See* Doc. No. 57-1, Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Def. MSJ") at 23-25, 29-31. However, the existence of prior government policies disproves this contention and demonstrates that the policies are inconsistent with prior agency positions and therefore constitute an unlawful, *sub silentio* change in policy. Because evidence concerning these prior policies is absent from the administrative record, consideration of extra-record

---

[1] *See* Fed.R.Civ.P. 65(a)(2) (providing for consolidation of preliminary injunction motions with the merits, and indicating that evidence submitted in support of the preliminary injunction motion need not be repeated).

evidence is necessary in order to effectively review the parties' arguments on this issue. Indeed, Defendants themselves refer to extra record material concerning prior policies. *See* Def. MSJ at 20, 33, 36. Consideration of evidence concerning prior policies is justified under well-recognized exceptions to the general rule limiting review to the Administrative Record, including the Defendants' failure to adequately explain their decision and Defendants' failure to consider all relevant factors.

*Second*, Plaintiffs' case is not confined to APA claims. Plaintiffs have also brought a due process claim and must additionally show that the standard for a permanent injunction is met. Courts routinely consider evidence outside of the administrative record when evaluating claims or elements that are distinct from an APA claim. With respect to Plaintiffs' due process claim, Plaintiffs respectfully request that the Court consider evidence that the new policies deprive them of the kind of individualized determination they are due under law, namely one that does not have the appearance of partiality and/or bias. To show that they are entitled to an injunction, Plaintiffs have submitted evidence regarding the conditions in the countries to which they would be returned absent injunctive relief and the specific violence they are fleeing. Plaintiffs' country conditions evidence is also relevant to the public interest factor, as it supports the conclusion that the public interest is served by ensuring that noncitizens are not wrongfully removed to countries where they face grave harms.

## II.     Argument
### a)     This Court Should Consider Extra-Record Evidence Of Defendants' Prior Policies

As an initial matter, Plaintiffs note that they do not seek to supplement the Administrative Record certified by Defendants; instead Plaintiffs request that the Court consider evidence that is outside the Administrative Record for the reasons explained in this motion. Whether to consider

2

extra-record evidence with respect to an APA claim is a different inquiry than whether to supplement an administrative record, and is subject to different standards. *See Safari Club Int'l v. Jewell,* 111 F. Supp. 3d 1, 4-5 (D.D.C. 2015) ("Supplementing the administrative record in an APA case means adding material to the volume of documents the agency considered, while admitting extra-record evidence means adding material outside of or in addition to the administrative record that was not necessarily considered by the agency.").[2]

Although evaluation of the merits of an APA claim is normally limited to the administrative record, the D.C. Circuit recognizes at least four exceptions where the court may consider extra-record evidence:

> (1) when the agency failed to examine all relevant factors; (2) when the agency failed to explain adequately its grounds for its decision; (3) when the agency acted in bad faith; or (4) when the agency engaged in improper behavior.

*Nat'l Min. Ass'n*, 856 F. Supp. 2d at 156–57; *see also The Cape Hatteras Access Pres. All.*, 667 F. Supp. 2d at 115 (recognizing four circumstances in which extra-record evidence may be considered).

"Underlying all of these exceptions is the assessment that 'resort to extra-record information [is necessary] to enable judicial review to become effective.'" *Nat'l Mining Ass'n*, 856 F. Supp. 2d at 157 (citation omitted); *see also United Student Aid Funds, Inc. v. Devos,* 237 F. Supp. 3d 1, 4 (D.D.C. 2017) ("[T]he D.C. Circuit has consistently stated that where the district

---

[2] *See also Pac. Shores Subdivision, California Water Dist. v. U.S. Army Corps of Engineers*, 448 F. Supp. 2d 1, 5–6 (D.D.C. 2006) (noting that "Defendants appear to have conflated the act of supplementing the record with permitting consideration of extra-record evidence," and explaining the difference between the two); *Nat'l Min. Ass'n v. Jackson*, 856 F. Supp. 2d 150, 156–57 (D.D.C. 2012) (distinguishing between supplementing the administrative record and extra-record review); *The Cape Hatteras Access Pres. All. v. U.S. Dept. of Interior*, 667 F. Supp. 2d 111, 114-15 (D.D.C. 2009) (similar).

court cannot determine from the administrative record whether the agency complied with its procedural obligations, the district court may consider extra-record evidence.").

Here, consideration of the extra-record evidence proposed by Plaintiffs is necessary to enable judicial review of Plaintiffs' claim that *Matter of A-B-* and the subsequent guidance constitutes a departure from prior government policies, which the government unlawfully changed *sub silentio*. *Comcast Corp. v. FCC*, 600 F.3d 642, 659 (D.C. Cir. 2010); Pl. MSJ at Background Part C; Pl. MSJ at Parts I.B.2., II.A.1., II.B.a., II.F., II.G.2. [3] Defendants dispute Plaintiffs' argument that the challenged policies depart from prior ones, and argue that the challenged policies are not even new.[4] However, evidence concerning the prior policies is not part of the administrative record, and therefore this dispute cannot be evaluated without review of extra-record evidence.

---

[3] Plaintiffs have also submitted the Declaration of Deborah Anker. This declaration, which details the history and contemporaneous understanding of the Refugee Act and common understandings of various facets of credible fear and asylum law, is not a factual declaration. Therefore, Plaintiffs do not believe that it falls under the typical limits of APA review. However, to the extent the Court believes otherwise, Plaintiffs submit that the declaration is properly considered as extra-record evidence to demonstrate both the existence of prior polices and to show that Defendants failed to consider all relevant factors. *See Oceana, Inc. v. Pritzker*, 126 F. Supp. 3d 110, 112–14 (D.D.C. 2015) (finding expert declaration helpful in enabling judicial review to become effective). Additionally, to the extent the Court finds that the Anker Declaration is not properly before the Court as extra-record evidence, Plaintiffs request that the Court treat the declaration as an *amicus curiae* brief.

[4] *See* Def. MSJ at 1 (contending that "*A-B-* otherwise restates long-standing, preexisting law"); *id.* at 2 (arguing that "every other aspect of *A-B-* Plaintiffs challenge relies on preexisting law"); *id.* at 2 (contending that USCIS Guidance "likewise merely reaffirms preexisting asylum laws"); *id.* at 11 (claiming that USCIS Guidance "summarized *A-B-*'s discussion of the pre-existing requirements"); *id.* at 13-14 (arguing that "Every other aspect of *A-B-* rests on established, longstanding" law); *id.* at 14 (asserting that USCIS Guidance "is based on long-standing" law); *id.* at 14 (arguing that the challenged policies have "been on the books for far more than 60 days"); *id.* at 23-25 (contending that nearly every challenge brought by Plaintiffs is time-barred because the challenged policies have been "the state of the law for far more than 60 days"); *id*. at 29 (contending that *A-B-* generally "reinforces long-standing principles"); *id.* at 29 (contending that *A-B-* "does not set forth a new" standard).

4

The Court's need to review extra-record evidence arises both because the government did not consider all relevant factors—namely, it did not consider that its decision constituted a departure from prior policy—and because the government has not adequately explained its justification for departing from prior policies. *Nat'l Min. Ass'n*, 856 F. Supp. 2d at 156–57. For example, Defendants' new policies set forth a standard that asylum applicants must show that the government was "completely helpless" to prevent instances of private violence. Plaintiffs have submitted evidence that this new "complete helplessness" policy is a departure from the prior policy that instructs asylum officers to consider whether the government "takes *reasonable* steps to control the infliction of harm or suffering." Doc. 10-3, Declaration of Sarah Mujahid in Support of Preliminary Injunction (hereinafter "Mujahid Decl."), Exh. E, Asylum Officer Basic Training, Female Asylum Applicants & Gender-Related Claims at 21 (Dec. 5, 2002). Defendants' challenged policies fail to even acknowledge the existence of this prior policy, let alone justify a departure from it, and the administrative record fails to include documentation of this prior policy.

The propriety of extra-record review of the prior policies is confirmed by Defendants' repeated reference in their Summary Judgment Motion to some of the prior policy material Plaintiffs now seek to put in evidence. *See* Def. MSJ at 20 (referencing Refugee, Asylum, and International Operations Directorate Officer Training Course ("RAIO"), Credible Fear of Persecution and Torture Determinations (Feb. 13, 2017)); *id.* at 33 (same); *id.* at 36 (same). Defendants made such references even though the referenced material is not in the administrative record, noting that Plaintiffs already cited the material in their Complaint.

Under similar circumstances, where review of extra-record evidence is necessary to evaluate a change from a prior policy, courts have acknowledged that extra-record review is

appropriate. *See Devos,* 237 F. Supp. 3d at 4-5 (considering extra-record evidence where "[t]he

administrative record in this case sheds no light on two factual issues central to resolving

whether the Dear Colleague Letter announced a 'new rule' in a manner that satisfies the APA.");

*cf. Nat'l Ass'n for the Advancement of Colored People v. Trump,* 298 F. Supp. 3d 209, 240 n.24

(D.D.C. 2018), *adhered to on denial of reconsideration*, 315 F. Supp. 3d 457 (D.D.C. 2018)

(considering extra-record evidence to demonstrate that the government had failed to take into

account reliance on prior policy); *Carlsson v. U.S. Citizenship & Immigration Services*, 2:12-CV-

07893-CAS, 2015 WL 1467174, at \*12 (C.D. Cal. Mar. 23, 2015) (permitting discovery into

change in prior policy).

   Moreover, this Court may evaluate evidence of the prior policies in connection with

Defendants' standing arguments.  Defendants argue that Plaintiffs lack standing to challenge the

new policies because they merely reaffirm prior law and are therefore more than 60-days old.

Def. MSJ at 23-25.  Plaintiffs' extra-record evidence of prior policies is relevant to show that the

challenged policies are in fact new, and may be considered for this reason as well.  *Chesapeake*

*Climate Action Network v. Exp.-Imp. Bank of the United States*, 78 F. Supp. 3d 208, 217 (D.D.C.

2015) ("[P]laintiffs may submit extra-record evidence to establish standing.").

   Therefore, in order to effectively evaluate Plaintiffs' argument that Defendants have

impermissibly departed from prior policy *sub silentio*, it is appropriate for the Court to consider

the extra-record evidence put forth by Plaintiffs, which consists of government training manuals,

memoranda, and a government brief demonstrating the existence of prior policies,[5] and

---

[5]These materials include the following exhibits that were appended to Plaintiff's
preliminary injunction motion: DHS, Asylum Officer Basic Training Course, Female Asylum
Applications and Gender-Related; Asylum Officer Basic Training, Female Asylum Applicants &
Gender-Related Claims (Dec. 5, 2002), attached as Exhibit E to Mujahid Decl.; Refugee,

declarations from a retired Immigration Judge and a former Asylum Officer explaining that

*Matter of A-B-* and the subsequent guidance marks a change in policy.[6]

**b)    This Court Ought To Consider Evidence Outside Of The Administrative Record With Respect To The Remainder of Plaintiffs' Case**

i)    *This Court Should Consider Evidence Supporting Plaintiffs' Due Process Claim*

Plaintiffs' case is not limited to its APA claims. Rather, Plaintiffs also argue that the new policies deprive Plaintiffs of the due process they are owed under law by encouraging blanket denials of gang violence and domestic violence claims and depriving Plaintiffs of a neutral adjudicator in their credible fear cases. *See* Pl. MSJ at Part II.A.2. In support of this claim, Plaintiffs have submitted public statements from Defendants showing that the new policies were issued against a backdrop of increased pressure on asylum officers and immigration judges to increase their rates of denial of asylum claims, including at the credible fear stage—without regards to the merits of the individual facts.[7] Additionally, evidence including statements from

---

Asylum, and International Operations Directorate Officer ("RAIO") Training Course, Credible Fear of Persecution and Torture Determinations (Feb. 13, 2017), attached as Exhibit F to Mujahid Decl.; Asylum Officer Basic Training, Reading Caselaw (January 9, 2006), attached as Exhibit G to Mujahid Decl.; RAIO Training Course, Reading and Using Case Law (Apr., 2012), attached as Exhibit H to Mujahid Decl.; RAIO Training Course, Credible Fear (Feb. 28, 2014), attached Exhibit I to Mujahid Decl., Exh. I; RAIO Training Course, Credible Fear of Persecution and Torture Determinations (Apr. 14, 2006) attached as Exhibit J to Mujahid Decl.

    The materials also include the following three exhibits that are appended to Plaintiffs' summary judgment motion and opposition: *Memorandum from Phyllis Coven, INS Office of International Affairs to all INS Asylum Officers and HQASM Coordinators, Considerations for Asylum Officers Adjudicating Asylum Claims for Women* (May 26, 1995), cited in 72 Interpreter Releases 771 (June 5, 1995), attached as Exhibit 1 to Second Declaration of Sarah Mujahid ("2d Mujahid Decl."); DHS, Asylum Officer Basic Training Course, Female Asylum Applications and Gender-Related Claims (2009), attached as Exhibit 2 to 2d Mujahid Decl.; DHS Br., *Matter of R-A-* (Feb 19, 2004), attached as Exhibit 3 to 2d Mujahid Decl.

[6] Declaration of Rebecca Jamil ("Jamil Decl."); Declaration of Ethan Nasr ("Nasr Decl.").

[7] These materials include the following sources that were cited in Plaintiffs' Complaint, at ¶¶ 75-78: Attorney General Jefferson Beauregard Sessions III, Remarks to the Executive

7

prior immigration judges and asylum officers and the declarations of the former Immigration Judge and Asylum Officer, discussed *supra*, should be considered with respect to Plaintiffs' due process claim because they show that the new policies will be interpreted as a directive to, or create improper pressure on, adjudicators to deny gang-violence and domestic violence claims.[8] Plaintiffs also submit declarations from immigration attorneys[9] which show that the new policies have had their intended effect: credible fear interview rates have plummeted, and asylum officers have become increasingly dismissive of credible fear claims relating to domestic violence and gang violence.[10]

---

Office for Immigration Review, Falls Church, VA (Oct. 12, 2017), attached as Exhibit 4 to 2d Mujahid Decl.; Attorney General Jefferson Beauregard Sessions III, Remarks to the Executive Office for Immigration Review Legal Training Program, Washington, D.C. (June 11, 2018), attached as Exhibit 5 to 2d Mujahid Decl.; Secretary Kirstjen M. Nielsen, Department of Homeland Security, Testimony at Hearing Before the Senate Committee on Judiciary (Jan. 16, 2018), attached as Exhibit 7 to 2d Mujahid Decl.

The materials include one additional source that was not available until earlier this month: Attorney General Jefferson Beauregard Sessions III, Remarks to the Largest Class of Immigration Judges in History for the Executive Office for Immigration Review, Fall River, VA (Sept. 10, 2018), attached as Exhibit 6 to 2d Mujahid Decl.

[8] In addition to two declarations (*see* Jamil Decl.; Nasr. Decl.), Plaintiffs submit six exhibits concerning improper pressure or the appearance of bias: Retired Immigration Judges and Former Members of the Board of Immigration Appeals Statement in Response to Attorney General's Decision in *Matter of A-B-*, June 11, 2018, attached as Exhibit 8 to 2d Mujahid Decl.; Retired Immigration Judges and Former Members of the Board of Immigration Appeals Statement in Response to Latest Attack on Judicial Independence, July 30, 2018, attached as Exhibit 9 to 2d Mujahid Decl.; Liz Robins, *In Immigration Courts, It Is Judges vs. Justice Department*, New York Times, Sept. 7, 2018, attached as Exhibit 14 to 2d Mujahid Decl.; Seth Freed Wessler, *'When I Say I'm Complicit, This Is What I Mean*, Topic (Sept. 2018), *available at* https://www.topic.com/when-i-say-i-m-complicit-this-is-what-i-mean, attached as Exhibit 15 to 2d Mujahid Decl.; Executive Office of Immigration Review, *EOIR Performance Plan: Adjudicative Employees*, attached as Exhibit 16 to 2d Mujahid Decl.; Joel Rose, *Justice Department Rolls Out Quotas for Immigration Judges*, NPR, Apr. 3, 2018, attached as Exhibit 17 to 2d Mujahid Decl.

[9] Declaration of Ruby L. Powers; Declaration of Allegra Love; Declaration of Jodi Goodwin.

[10] Plaintiffs also rely on Plaintiffs' own declarations, submitted in support of Plaintiff's preliminary injunction motion, in support of their arguments concerning due process, Pl. MSJ at

Because Plaintiffs' due process claim is distinct from their APA claim, this Court is not limited by the administrative record in considering the claim, and review of Plaintiffs' evidence is appropriate. *Commercial Drapery Contractors, Inc. v. United States*, 967 F. Supp. 1, 3 (D.D.C. 1997), *aff'd*, 133 F.3d 1 (D.C. Cir. 1998) ("The authority to examine plaintiffs' due process claims is independent of the APA and such an examination requires an independent assessment of the facts and the law.") (citations omitted); *Nat'l Med. Enterprises, Inc. v. Shalala*, 826 F. Supp. 558, 565 n.11 (D.D.C. 1993), *aff'd*, 43 F.3d 691 (D.C. Cir. 1995) ("In reviewing a constitutional claim to an agency's decision, a court "may make an independent assessment of the facts and the law" and "may consider additional affidavits which were not before the agency upon administrative review.") (citing *Rydeen v. Quigg*, 748 F.Supp. 900 (D.D.C.1990), *aff'd without op.*, 937 F.2d 623 (Fed. Cir.1991), *cert. denied* 502 U.S. 1075 (1992)).

ii)   *This Court Should Consider Evidence Supporting Plaintiffs' Request For Injunctive Relief.*

Plaintiffs seek a permanent injunction to vacate the challenged policies and enjoin Defendants from continuing to apply the new credible fear policies to credible fear determinations, interviews, or hearings issued or conducted by asylum officers or immigration judges. In addition, Plaintiffs seek an injunction to vacate Plaintiffs' expedited removal orders and enjoin Defendants from removing Plaintiffs without first providing them either a new credible fear process or full immigration court removal proceedings. For Plaintiffs who have

---

Part II.A.2., as well as in their standing arguments, Pl. MSJ at Part I.B.1 (citing Pl. Facts 47-49). *See* Declaration of Grace; Declaration of Carmen; Declaration of Mina; Declaration of Mona; Declaration of Gio; Declaration of Gina; Declaration of Maria; Declaration of Nora; Declaration of Cindy. *See also Chesapeake Climate Action Network*, 78 F. Supp. 3d at 217 (D.D.C. 2015). As discussed below, Plaintiffs' declarations are also relevant to the injunction factors concerning irreparable harm and public interest.

9

been removed from the United States, Plaintiffs also request that the Court parole them back into the country for new credible fear proceedings or full immigration court removal proceedings.

In order to demonstrate entitlement to a permanent injunction, Plaintiffs must show, amongst other things, that Plaintiffs have suffered or will suffer irreparable injury, and that the public interest would not be disserved by a permanent injunction. *Sierra Club v. U.S. Dep't of Agric., Rural Utilities Serv.,* 841 F. Supp. 2d 349, 356 (D.D.C. 2012) (citation omitted).

To meet this burden, Plaintiffs submit evidence that they will suffer irreparable harm if forced to return to their home countries, and that the public interest would be disserved for this reason. *See* Pl. MSJ at Part III.B. This evidence includes declarations from Plaintiffs themselves, previously submitted in support of their preliminary injunction motion, which establish the specific harms they are fleeing in their home countries.[11] Plaintiffs have additionally submitted reports from the United Nations High Commissioner for Refugees and news articles, which were already submitted in support of Plaintiffs' preliminary injunction motion, as well as a few additional reports and declarations regarding the dangerous conditions present in Plaintiffs' home countries, especially for women.[12] This evidence also serves to

---

[11] Declaration of Grace; Declaration of Carmen; Declaration of Mina; Declaration of Mona; Declaration of Gio; Declaration of Gina; Declaration of Maria; Declaration of Nora; Declaration of Cindy.

[12] These materials include the following exhibits that were previously submitted in support of Plaintiffs' preliminary injunction motion: UNHCR, *Women on the Run* (2015), attached as Exhibit K to Mujahid Decl.; UNHCR, *Children on the Run* (2014), attached as Exhibit L to Mujahid Decl.; Amnesty International, *El Salvador 2017/2018*, attached as Exhibit M to Mujahid Decl.; Geneva Declaration on Armed Violence and Development, "Lethal Violence against Women and Girls," *Global Burdens of Armed Violence 2015: Every Body Counts*, attached as Exhibit N to Mujahid Decl.; U.S. Dep't of State Overseas Sec. Advisory Council, *El Salvador 2018 Crime & Safety Report*, attached as Exhibit O to Mujahid Decl.; Rashida Manjoo, *Report of the Special Rapporteur on Violence Against Women, Its Causes and Consequences* (Mar. 31, 2015), attached as Exhibit P to Mujahid Decl.; Center for Gender &

establish that the public interest would be served by giving Plaintiffs an opportunity to establish their claim to asylum under the correct standards.

Because the injunction factors are not addressed by the administrative record, courts routinely consider extra-record evidence concerning whether injunctive relief should be granted.[13] As the Court in *Eco Tour Adventures, Inc. v. Zinke,* 249 F. Supp. 3d 360 (D.D.C. 2017) noted in considering cross-summary judgment motions:

> [T]he D.C. Circuit has recognized, extra-record evidence may be used "in cases where relief is at issue." The issue of injunctive relief is generally not raised in the

---

Refugee Studies and National University of Lanús, *Childhood and Migration in Central and North America: Causes, Policies, Practices and Challenge*s (Feb. 2015), attached as Exhibit Q to Mujahid Decl.; Sibylla Brodzinsky & Ed Pilkington, *US Government Deporting Central American Migrants to Their Deaths*, THE GUARDIAN (Oct. 12, 2015), attached as Exhibit R to Mujahid Decl.; Elizabeth Kennedy, American Immigration Council, *No Childhood Here: Why Central American Children are Fleeing Their Homes*, at 5 (July 1, 2014), attached as Exhibit S to Mujahid Decl.; Nicholas Kristof, *We're Helping Deport Kids to Die*, N.Y. Times (July 16, 2016), attached as Exhibit T to Mujahid Decl..

The materials include 4 additional UNHCR reports: UNHCR, *Guidance Note on Refugee Claims Relation to Victims of Organized Gangs*, (March, 2010), attached as Exhibit 10 to 2d Mujahid Decl.; UNHCR, *Eligibility Guidelines for Assessing the International Protection Needs of Asylum-Seekers from El Salvador* (March, 2016), attached as Exhibit 11 to 2d Mujahid Decl.; UNHCR, *Eligibility Guidelines for Assessing the International Protection Needs of Asylum-Seekers from Honduras* (July 27, 2016), attached as Exhibit 12 to 2d Mujahid Decl.; UNHCR, *America Country of Origin Series: Guatemala Background Paper* (Oct. 2013), attached as Exhibit 13 to 2d Mujahid Decl. The materials also include 3 country conditions declarations: Joint Declaration of Shannon Drysdale Walsh, Cecilia Menjívar, and Harry Vanden ("Honduras Decl."); Joint Declaration of Cecilia Menjívar and Harry Vanden ("El Salvador Decl."); Joint Declaration of Cecilia Menjívar, M. Gabriela Torres, and Harry Vanden ("Guatemala Decl.").

[13] In *Children's Hosp. Ass'n of Texas v. Azar*, 300 F. Supp. 3d 190, 202 (D.D.C. 2018), this Court declined to consider extra-record evidence of irreparable harm at the summary judgment stage; however, in that case, plaintiff was seeking only vacatur of the statute at the summary judgment stage and conceded that evidence of irreparable harm was not necessary. Here, Plaintiffs seek injunctive relief beyond vacatur of the challenged policies, including specific injunctive relief with respect to the Plaintiffs' expedited removal orders and credible fear proceedings. In addition, Plaintiffs submit their evidence in support of not just irreparable harm, but the public interest as well.

>administrative proceedings below and, consequently, "there usually will be no administrative record developed on these issues." Thus, "it will often be necessary for a court to take new evidence to fully evaluate" claims "of irreparable harm ... and [claims] that the issuance of the injunction is in the public interest."

*Id.* at 369 n.7 (citing *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989) and Steven Sark & Sarah Wald, Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Actions, 36 Admin. L. Rev. 333, 345 (1984))*; Hill Dermaceuticals, Inc. v. U.S. Food & Drug Admin.*, CIV.A. 11-1950 RCL, 2012 WL 5914516, at *10 (D.D.C. May 18, 2012), *aff'd sub nom. Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44 (D.C. Cir. 2013) ("Although the Court's review of the merits is confined to the administrative record, the Court may consider the extra-record declarations submitted by Hill to the extent that they are relevant to the non-merits factors of Hill's request for injunctive relief.").

Therefore, the Court should consider Plaintiffs' evidence with respect to the injunctive relief factors.

### III.   Conclusion

For all the foregoing reasons, Plaintiffs respectfully request that this Court consider evidence outside the administrative record as set forth in this motion.

Dated: September 26, 2018                                   Respectfully submitted,

Eunice Lee**  
Karen Musalo**  
Anne Dutton**  
Center for Gender & Refugee Studies  
200 McAllister St.  
San Francisco, CA 94102  
(415) 565-4877  

Scott Michelman (D.C. Bar No. 1006945)  
Arthur B. Spitzer (D.C. Bar No. 235960)  
American Civil Liberties Union Foundation  
    of the District of Columbia  
915 15th Street NW, Second Floor  
Washington, D.C. 20005  
(202) 457-0800  

Thomas Buser-Clancy**  
Andre Segura**  
ACLU Foundation of Texas  
P.O. Box 8306  
Houston, TX 77288  
(713) 942-8146  

*Attorneys for Plaintiffs*  

**Admitted pro hac vice*  
****Admission to D.D.C. pending*  

*/s/ Jennifer Chang Newell*  
Jennifer Chang Newell**  
Katrina Eiland**  
Cody Wofsy**  
American Civil Liberties Union Foundation,  
Immigrants' Rights Project  
39 Drumm Street  
San Francisco, CA 94111  
(415) 343-0774  

Judy Rabinovitz**  
Omar C. Jadwat**  
Lee Gelernt  
Celso J. Perez*** (D.C. Bar No. 1034959)  
American Civil Liberties Union Foundation,  
Immigrants' Rights Project  
125 Broad Street, 18th Floor  
New York, NY 10004  
(212) 549-2660  

Sandra S. Park**  
Lenora M. Lapidus  
Emma Roth**  
American Civil Liberties Union Foundation,  
Women's Rights Project  
125 Broad Street, 18th Floor  
New York, NY 10004  
(212) 519-7871