UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GRACE, et al., | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) Civil Action No. 1:18-cv-01853 (EGS) |
| **v.** | ) |
| | ) |
| JEFFERSON BEAUREGARD SESSIONS, III, | ) |
| Attorney General of the United States, et al., | ) |
| | ) |
| **Defendants.** | ) |

## BRIEF OF AMICI CURIAE IMMIGRATION LAW PROFESSORS
## IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Anjum Gupta (Pro hac vice motion pending)
Immigrant Rights Clinic
Rutgers Law School
123 Washington Street
Newark, NJ 07102
Tel. (973) 353-2518
Email: anjum.gupta@rutgers.edu

Thomas K. Ragland (D.C. Bar #501021)
CLARK HILL PLC
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
Tel. (202) 552-2360
Email: tragland@clarkhill.com

Dated: September 28, 2018

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTEREST OF AMICI CURIAE ........................................................................................ 1

ARGUMENT ..................................................................................................................... 1

I.    THE "UNWILLING OR UNABLE" STANDARD IS WELL SETTLED IN THE
BOARD OF IMMIGRATION APPEALS, EVERY FEDERAL COURT OF
APPEALS, AND THE UNITED STATES SUPREME COURT ................................. 2

    A.  Board of Immigration Appeals ............................................................... 2

    B.  Federal Courts of Appeals ...................................................................... 4

        i.    First Circuit ...................................................................................... 5

        ii.   Second Circuit ................................................................................. 7

        iii.  Third Circuit ................................................................................... 9

        iv.  Fourth Circuit ............................................................................... 10

        v.    Fifth Circuit .................................................................................. 11

        vi.  Sixth Circuit ................................................................................. 12

        vii.  Seventh Circuit ............................................................................. 13

        viii. Eighth Circuit ............................................................................... 15

        ix.  Ninth Circuit ................................................................................. 17

        x.    Tenth Circuit ................................................................................. 19

        xi.  Eleventh Circuit ............................................................................ 20

    C.  Supreme Court of the United States ...................................................... 20

II.   THE "UNWILLING OR UNABLE" STANDARD HAS BEEN APPLIED
TO CLAIMS BASED ON PERSECUTION ON ACCOUNT OF ALL FIVE
OF THE PROTECTED GROUNDS ........................................................................ 22

    A.  Particular Social Group ....................................................................... 22

    B.  Religion ................................................................................................. 23

    C.  Race & Nationality ............................................................................... 24

    D.  Political Opinion ................................................................................... 24

CONCLUSION ................................................................................................................. 25

APPENDIX A: LIST OF SIGNATORIES ......................................................................... a

APPENDIX B: LIST OF CASES RECOGNIZING THE "UNWILLING OR
           UNABLE" STANDARD ........................................................................ k

CERTIFICATE OF SERVICE .......................................................................................... s

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Abankwah v. INS,*
 185 F.3d 18 (2d Cir. 1999)................................................................7, 23

*Abay v. Ashcroft,*
 368 F.3d 634 (6th Cir. 2004) ......................................................23

*Adebisi v. INS,*
 952 F.2d 910 (5th Cir. 1992) ......................................................11

*Afriyie v. Holder,*
 613 F.3d 924 (9th Cir. 2010) ......................................................24

*Ahmed v. Keisler,*
 504 F.3d 1183 (9th Cir. 2007) ......................................................17, 23

*Aldana-Ramos v. Holder,*
 757 F.3d 9 (1st Cir. 2014).............................................................5, 22

*Aliyev v. Mukasey,*
 549 F.3d 111 (2d Cir. 2008)..........................................................7, 8

*Avetova-Elisseva v. INS,*
 213 F.3d 1192 (9th Cir. 2000) ......................................................18

*Baballah v. Ashcroft,*
 367 F.3d 1067 (9th Cir. 2004) ......................................................24

*Bace v. Ashcroft,*
 352 F.3d 1133 (7th Cir. 2003) ......................................................25

*Bartesaghi-Lay v. INS,*
 9 F.3d 819 (10th Cir. 1993) ......................................................19

*Bolanos-Hernandez v. INS,*
 767 F.2d 1277 (9th Cir. 1984) ......................................................25

*Bori v. INS,*
 190 F. App'x 17 (2d Cir. 2006) ......................................................7, 9

*Bringas-Rodriguez v. Sessions,*
 850 F.3d 1051 (9th Cir. 2017) ......................................................17, 22

*Butt v. Keisler,*
 506 F.3d 86 (1st Cir. 2007)......................................................... 6

*Castro-Perez v. Gonzales,*
 409 F.3d 1069 (9th Cir. 2005) ......................................................17

*Cece v. Holder,*
 733 F.3d 662 (7th Cir. 2013) ......................................................13, 23

*Chakir v. Gonzalez,*
 466 F.3d 563 (7th Cir. 2006) ......................................................13

*Cordova v. Holder,*
 759 F.3d 332 (4th Cir. 2014) ...................................................... 22

*Crespin-Valladares v. Holder,*
 632 F.3d 117 (4th Cir. 2011) ......................................................10, 22

*Cruz v. Sessions,*
 853 F.3d 122 (4th Cir. 2017) ...................................................... 22

*de la Llana-Castellon v. INS*,
    16 F.3d 1093 (10th Cir. 1994) .................................................19, 25

*Del Pilar Delgado v. Mukasey*,
    508 F.3d 702 (2d Cir. 2007)..........................................................7

*Doe v. Holder*,
    736 F.3d 871 (9th Cir. 2013) .................................................17, 22

*Eduard v. Ashcroft*,
    379 F.3d 182 (5th Cir. 2004) .................................................11, 24

*Escobar v. Holder*,
    657 F.3d 537 (7th Cir. 2011) ........................................................25

*Espinosa-Cortez v. Att'y Gen. of the U.S.*,
    607 F.3d 101 (3d Cir. 2010)....................................................9, 25

*Faruk v. Ashcroft*,
    378 F.3d 940 (9th Cir. 2004) .......................................................17

*Fiadjoe v. Att'y Gen.*,
    411 F.3d 135 (3d Cir. 2005)....................................................9, 23

*Galina v. I.N.S.*,
    213 F.3d 955 (7th Cir. 2000) ..........................................14, 15, 16

*Garcia v. Att'y Gen. of the U.S.*,
    665 F.3d 496 (3d Cir. 2011) ....................................................9, 23

*Gathungu v. Holder*,
    725 F.3d 900 (8th Cir. 2013) .................................................15, 23

*Gatimi v. Holder*,
    578 F.3d 611 (7th Cir. 2009) .......................................................23

*Gomez-Zuluaga v. Att'y Gen. of the U.S.*,
    527 F.3d 330 (3d Cir. 2008).................................................23, 25

*Guchshenkov v. Ashcroft*,
    366 F.3d 554 (7th Cir. 2004) .......................................................24

*Haoua v. Gonzales*,
    472 F.3d 227 (4th Cir. 2007) .......................................................23

*Hayrapetyan v. Mukasey*,
    534 F.3d 1330 (10th Cir. 2008) ...................................................19

*Hengan v. INS*,
    79 F.3d 60 (7th Cir. 1996) ..........................................................24

*Henriquez-Rivas v. Holder*,
    707 F.3d 1081 (9th Cir. 2013) ................................................17, 23

*Hernandez-Avalos v. Lynch*,
    784 F.3d 944 (4th Cir. 2015) .................................................10, 22

*Hoque v. Ashcroft*,
    367 F.3d 1190 (9th Cir. 2004) ................................................18, 25

*Hor v. Gonzalez*,
    421 F.3d 497 (7th Cir. 2005) .................................................14, 15

*INS v. Cardoza-Fonseca*,
    480 U.S. 421 (1987).....................................................................21

*INS v. Elias-Zacarias*,
    502 U.S. 478 (1992)................................................................20, 21

*Ivanishvili v. U.S. Dep't. of Just.*,
    433 F.3d 332 (2d Cir. 2006)....................................................7

*Ivanov v. Holder*,
    736 F.3d 5 (1st Cir. 2013)...............................................5, 24

*Jorgji v. Mukasey*,
    514 F.3d 53 (1st Cir. 2008)..................................................6

*Kadri v. Mukasey*,
    543 F.3d 16 (1st Cir. 2008).................................................22

*Kamar v. Sessions*,
    875 F.3d 811 (6th Cir. 2017) ..........................................12, 23

*Karapetyan v. Mukasey*,
    543 F.3d 1118 (9th Cir. 2008) ............................................17

*Khan v. Holder*,
    727 F.3d 1 (1st Cir. 2013)...................................................6

*Khattak v. Holder*,
    704 F.3d 197 (1st Cir. 2013).............................................5, 25

*Kholyavskiy v. Mukasey*,
    540 F.3d 555 (7th Cir. 2008) .............................................22

*Krastev v. INS*,
    292 F.3d 1268 (10th Cir. 2002) ..........................................19

*Krotova v. Gonzales*,
    416 F.3d 1080 (9th Cir. 2005) ........................................17, 24

*Lopez v. U.S. Att'y Gen.*,
    504 F.3d 1341 (11th Cir. 2007) ......................................20, 25

*Madrigal v. Holder*,
    716 F.3d 499 (9th Cir. 2013) ....................................17, 18, 23

*Malty v. Ashcroft*,
    381 F.3d 942 (9th Cir. 2004) ............................................18

*Marouf v. Lynch*,
    811 F.3d 174 (6th Cir. 2016) .........................................12, 24

*Mashiri v. Ashcroft*,
    383 F.3d 1112 (9th Cir. 2004) .......................................18, 24

*Melkonian v. Ashcroft*,
    320 F.3d 1061 (9th Cir. 2003) .......................................18, 24

*Menjivar v. Gonzales*,
    416 F.3d 918 (8th Cir. 2005) ............................................16

*Mgoian v. INS*,
    184 F.3d 1029 (9th Cir. 1999) ..........................................18

*Mohammed v. Gonzales*,
    400 F.3d 785 (9th Cir. 2005) ............................................23

*Nabulwala v. Gonzalez*,
    481 F.3d 1115 (8th Cir. 2007) .......................................15, 22

*Negusie v. Holder*,
    555 U.S. 511 (2009)..................................................20, 21

*Nehad v. Mukasey*,
    535 F.3d 962 (9th Cir. 2008) ............................................17

iv

*Ngengwe v. Mukasey*,
    543 F.3d 1029 (8th Cir. 2008) ..................................................16, 23

*Oliva v. Lynch*,
    807 F.3d 53 (4th Cir. 2015) ...................................................23

*Orejuela v. Gonzales*,
    423 F.3d 666 (7th Cir. 2005) ...............................................23, 25

*Orelien v. Gonzales*,
    467 F.3d 67 (1st Cir. 2006)....................................................6

*Ornelas-Chavez v. Gonzales*,
    458 F.3d 1052 (9th Cir. 2006) ..................................................17, 22

*Ortiz v. Araniba*,
    505 F.3d 39 (1st Cir. 2007)....................................................6

*Paloka v. Holder*,
    762 F.3d 191 (2d Cir. 2014)....................................................7, 23

*Pan v. Holder*,
    777 F.3d 540 (2d Cir. 2015)....................................................7, 8, 9, 24

*Paul v. Gonzales*,
    444 F.3d 148 (2d Cir. 2006)....................................................24

*Pavlova v. INS*,
    441 F.3d 82 (2d Cir. 2006)....................................................7, 24

*Poradisova v. Gonzales*,
    420 F.3d 70 (2d Cir. 2005)....................................................7, 24

*Qu v. Holder*,
    618 F.3d 602 (6th Cir. 2010) ...................................................23

*R.R.D. v. Holder*,
    746 F.3d 807 (7th Cir. 2014) ..................................................13, 23

*Rivas-Martinez v. INS*,
    997 F.2d 1143 (5th Cir. 1993) ..................................................11, 25

*Rizal v. Gonzales*,
    442 F.3d 84 (2d Cir. 2006)....................................................7, 24

*Rosales Justo v. Sessions*,
    895 F.3d 154 (1st Cir. 2018)....................................................5, 6

*Salgado-Sosa v. Sessions*,
    882 F.3d 451 (4th Cir. 2018) ...................................................22

*Sarhan v. Holder*,
    658 F.3d 649 (7th Cir. 2011) ..................................................13

*Sharma v. Holder*,
    729 F.3d 407 (5th Cir. 2013) ..................................................25

*Shehu v. Gonzales*,
    443 F.3d 435 (5th Cir. 2006) ..................................................12

*Singh v. INS*,
    94 F.3d 1353 (9th Cir. 1996) ..................................................17, 24

*Smolniakova v. Gonzales*,
    422 F.3d 1037 (9th Cir. 2005) ..................................................17

*Sok v. Mukasey*,
    526 F.3d 48 (1st Cir. 2008)....................................................5, 25

*Sotelo-Aquije v. Slattery,*
    17 F.3d 33 (2d Cir.1994)............................................................7, 25
*Surita v. INS,*
    95 F.3d 814 (9th Cir. 1996) ...........................................................24
*Tariq v. Keisler,*
    505 F.3d 650 (7th Cir. 2007) .........................................................13
*Tesfamichael v. Gonzalez,*
    469 F.3d 109 (5th Cir. 2006) .........................................................11
*Vente v. Gonzales,*
    415 F.3d 296 (3d Cir. 2005)........................................................9, 25
*Zavaleta-Policiano v. Sessions,*
    873 F.3d 241 (4th Cir. 2017) ....................................................10, 22
*Zheng v. Mukasey,*
    552 F.3d 277 (2d Cir. 2009)........................................................25

**Administrative Decisions**

*Matter of A-B-,*
    27 I. & N. Dec. 316 (AG 2018) ....................................1, 5, 6, 14, 15, 23
*Matter of Acosta,*
    19 I. & N. Dec. 211 (BIA 1985) ....................................................2, 3
*Matter of H-,*
    21 I. & N. Dec. 337 (BIA 1996) ....................................3, 20, 21, 23
*Matter of Kasinga,*
    21 I. & N. Dec. 357 (BIA 1996) ....................................3, 20, 21, 23
*Matter of McMullen,*
    19 I. & N. Dec. 90 (BIA 1984) ....................................................2, 4
*Matter of O-Z- & I-Z-,*
    22 I. & N. Dec. 23 (BIA 1998) ....................................................3, 4, 24
*Matter of Pierre,*
    15 I. & N. Dec. 461 (BIA 1975) .....................................................2
*Matter of S-A-,*
    22 I. & N. Dec. 1328 (BIA 2000) .................................................3, 23
*Matter of S-A-K- & H-A-H-,*
    24 I. & N. Dec. 464 (BIA 2008) .....................................................3
*Matter of Villalta,*
    20 I. & N. Dec. 142 (BIA 1990) .................................................3, 25

**Other Authorities**

U.N. High Comm'r for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees*, U.N. Doc. HCR/IP/4/Eng/REV.1 (1992 ed.) .................................................21

## INTEREST OF AMICI CURIAE[1]

Amici are 105 immigration and refugee law scholars and clinical professors.[2] We teach immigration law, refugee law, or in law school clinics that provide representation to asylum seekers. As such, we have written numerous scholarly articles on immigration and refugee law and understand the practical aspects of asylum law through client representation.

## ARGUMENT

It is well settled in the Board of Immigration Appeals, every Federal Circuit Court of Appeals, and the United States Supreme Court that harms inflicted by private actors can constitute persecution under U.S. asylum laws when the government of the home country is unwilling or unable to protect the applicant, and this standard has been applied to cases based on persecution on account of all five protected grounds.

In *Matter of A-B-*, the Attorney General impermissibly heightened the standard, stating that an applicant must show that the government "condoned" the actions or was "completely helpless" to protect the applicant.[3] More troubling, the new USCIS policies improperly adopted this incorrect standard, including at the credible fear stage.[4]

The defendants argue that *A-B-* "does not set forth a new, substantively distinct standard," and that the "condoned" or "complete helplessness" standard is a "familiar

---

[1] By order of this Court, dated August 28, 2018, "any prospective amici shall file their briefs either upon motion for leave of the Court or upon consent of all parties" (emphasis added). Plaintiffs consent to the filing of this amicus brief. Defendants consent to the timely filing of amicus briefs provided that those briefs do not refer to or seek to introduce non-record factual material into the case. This brief does not refer to or seek to introduce non-record factual material. Accordingly, amici are filing the instant brief upon consent of all parties.

[2] *See* Appendix A – List of Amici Immigration Law Professors and Scholar Signatories.

[3] *Matter of A-B-*, 27 I. & N. Dec. 316, 337 (A.G. 2018). Amici disagree with any characterization of intimate partner violence as "private actions," given that these types of harms, as shown below, often would not occur without the societal, even governmental, sanction they enjoy.

[4] USCIS Policy Memorandum, Guidance for Processing Reasonable Fear, Credible Fear, Asylum, and Refugee Claims in Accordance with Matter of A-B-, July 11, 2018 (hereinafter "USCIS Guidance") at 6.

articulation" of the "unwilling or unable" standard, as used in three circuit courts.[5] The

defendants' argument is disingenuous for several reasons. First as shown below, of the literally

hundreds of cases from every circuit court and the BIA setting forth and applying the "unwilling

or unable" standard, the AG and defendants cherry pick the handful of cases that quote the

"condoned" or "complete helplessness" standard. Second, even the circuit court opinions that

state the "condoned" or "complete helplessness" language provide no basis for this different

standard. Third, those cases that do quote the "condoned" or "complete helplessness" language

clearly do not even apply the heightened standard and merely apply the "unwilling or unable"

standard, looking not at whether the government condones the persecution or is completely

helpless to stop it, but at whether the government is able to provide effective protection. Finally,

even if the heightened "condoned" or "complete helplessness" standard were the controlling

standard in a few circuit courts, it has not been the agency standard, and the AG and USCIS have

provided no explanation, let alone a reasoned one, for the change. This heightened standard is

contrary to decades of precedent and would impose an unduly restrictive requirement on

applicants for asylum, particularly at the credible fear stage.

I.      **THE "UNWILLING OR UNABLE" STANDARD IS WELL SETTLED IN THE
        BOARD OF IMMIGRATION APPEALS, EVERY FEDERAL COURT OF APPEALS,
        AND THE UNITED STATES SUPREME COURT**

        **A.  Board of Immigration Appeals**

        The Board of Immigration Appeals ("BIA") has issued precedential decisions dating back

more than forty years affirming that harms perpetrated by private actors can constitute

persecution.[6] In a foundational case, *Matter of Acosta*, the BIA recognized that even before the

---

[5] Def. MSJ 29.
[6] *See, e.g.*, *Matter of Pierre*, 15 I. & N. Dec. 461, 462 (BIA 1975); *Matter of McMullen*, 19 I. & N. Dec. 90, 96 (BIA 1984).

passage of the Refugee Act of 1980, harms could constitute persecution if they were inflicted

"either by the government of a country or by persons or an organization that the government was

unable or unwilling to control."[7] The BIA noted that Congress carried forward the term

"persecution" from pre-1980 statutes, where it had a well-settled judicial and administrative

construction of meaning "harm or suffering . . . inflicted either by the government of a country or

by persons or an organization that the government was unwilling or unable to control."[8] The

BIA then applied the basic rule of statutory construction that when Congress carries forward a

term that has an established meaning, it intends the same meaning to apply.[9]

The BIA has recognized various types of harms inflicted by private actors as persecution

including, but not limited to, murder,[10] beatings,[11] threats,[12] detention,[13] female genital cutting,[14]

and domestic abuse.[15]

For example, in *Matter of O-Z- & I-Z-*, the applicants were persecuted by an anti-Semitic,

pro-Ukrainian independence movement, unconnected with the Ukrainian government.[16] In that

case, the Service[17] argued that the applicant was required to show that the private action was

---

[7] *Matter of Acosta*, 19 I. & N. Dec. 211, 222 (BIA 1985).

[8] *Id.* at 222.

[9] *Id.* at 223.

[10] *See, e.g., Matter of Villalta*, 20 I. & N. Dec. 142, 147 (BIA 1990) (finding that Salvadoran government appeared to be unable to control paramilitary death squads).

[11] *See, e.g., Matter of O-Z- & I-Z-*, 22 I. & N. Dec. 23, 25 (BIA 1998).

[12] *See, e.g., id.* at 25–26.

[13] *See, e.g., Matter of H-*, 21 I. & N. Dec. 337, 341 (BIA 1996) (detention as a result of interclan violence).

[14] *See, e.g., Matter of Kasinga*, 21 I. & N. Dec. 357, 365 (BIA 1996). *See also Matter of S-A-K- & H-A-H-*, 24 I. & N. Dec. 464, 465 (BIA 2008).

[15] *See, e.g., Matter of S-A-*, 22 I. & N. Dec. 1328 (BIA 2000). We further note that these acts are nearly universally criminalized in countries throughout the world. The fact that an act is a crime does not, in any way, preclude it from being persecution; many acts of persecution are, in fact, criminal.

[16] *Matter of O-Z- & I-Z-*, 22 I. & N. Dec. at 24.

[17] At the time this case was decided, the relevant government agency was the Immigration and Naturalization Service, not the Department of Homeland Security.

"government-directed or condoned" and that he had not done so.[18] The Board disagreed with the

formulation and conclusion, stating:

> With regard to the Service's suggestion that the incidents of persecution were not "government-condoned," we note that the respondent reported at least three of the incidents to the police, who took no action beyond writing a report. It appears that the Ukrainian Government was unable or unwilling to control the respondent's attackers and protect him or his son from the anti-Semitic acts of violence.[19]

As the BIA apparently recognized, the police's lack of action does not amount to "condoning" or

"directing" the behavior, but it was enough to satisfy the "unwilling or unable" standard.

Even when the BIA has decided against the applicant, it has acknowledged the "unwilling

or unable" standard. For example, in *Matter of McMullen*, the BIA stated that "the persecution

contemplated under the Act is not limited to the conduct of organized governments, but may,

under certain circumstances, be committed by individuals or nongovernmental organizations."[20]

It recognized that the Provisional Irish Republican Army ("PIRA") was a terrorist organization

that the government was unable to control.[21] However, it found McMullen barred from asylum

because he was himself a member of PIRA and had persecuted others.[22]

### B.  Federal Courts of Appeals

Every single federal court of appeals that hears direct immigration appeals[23] has held that

harms inflicted by private actors can qualify as persecution, so long as the government is

unwilling or unable to control the persecution. Despite the hundreds of cases from the courts of

appeals acknowledging the "unwilling/unable" standard, the AG and defendants have cherry

picked the handful of cases that mention, without any basis, the "condoned or complete

---

[18] *Matter of O-Z- & I-Z-*, 22 I. & N. Dec. at 25.
[19] *Matter of O-Z- & I-Z-*, 22 I. & N. Dec. at 26.
[20] *Matter of McMullen*, 19 I. & N. Dec. 90, 96 (BIA 1984).
[21] *Id.* at 94.
[22] *Id.* at 99.
[23] There is no immigration court in Washington, D.C., thus the Court of Appeals for the D.C. Circuit does not hear direct immigration appeals.

helplessness" standard. The relevant case law from each circuit is set forth below. These decisions demonstrate that "condoned" or "completely helpless" is not the required standard, and that such claims, like all asylum claims, require an individualized, fact specific inquiry.

### i. First Circuit

The U.S. Court of Appeals for the First Circuit has long recognized the "unwilling or unable" standard.[24] In *Khattak v. Holder*, for example, the court considered the application of a Pakistani family.[25] The father voiced opposition to the Taliban in his role as an active member of the Awami National Party ("ANP"), a leader of a Pakistani human rights organization, and a volunteer special police office for the Peace Committee. The Taliban began threatening the family. The IJ held, and the BIA affirmed, that the family failed to establish that the Pakistani government was unwilling or unable to control the Taliban because the government "was in fact taking on the Taliban" through military action and was "making inroads."[26] On appeal, the First Circuit held that "although such military action indicates that the Pakistani government is *willing* to take on the Taliban, such action does not show that the Pakistani government is *able* to protect its citizens from Taliban attacks."[27] This case demonstrates that asylum seekers can meet the "unwilling or unable" standard even if their home government has engaged in military action against the private actors who are perpetuating the persecution. These actions are a far cry from either the "condoned" or "complete helplessness" standards the AG announced in *Matter of A-B*.

Significantly, even after *Matter of A-B-* was handed down, the First Circuit Court of Appeals has recognized the "unwilling or unable" standard and declined to apply the more

---

[24] *Aldana-Ramos v. Holder*, 757 F.3d 9, 17 (1st Cir. 2014) (citing *Ivanov v. Holder*, 736 F.3d 5, 12 (1st Cir. 2013)). *See also Sok v. Mukasey*, 526 F.3d 48, 53 (1st Cir. 2008).
[25] *Khattak v. Holder*, 704 F.3d 197 (1st Cir. 2013).
[26] *Id*. at 203.
[27] *Id*. at 206.

stringent "condoned or compete helplessness" standard. In *Rosales Justo v. Sessions*, the applicant was a police officer from Mexico who also owned a store to supplement his income.[28] One day members of organized crime came into his store and demanded 2,000 pesos every two weeks as "rent."[29] When the applicant did not pay, the members threatened his family.[30] They eventually killed his son, and the police started an investigation into the murder.[31] Fearing for their lives, the applicant and the rest of his nuclear family moved within Mexico, but unknown men with guns "from organized crime" came looking for them.[32] The applicant did not report the events before and after his son's murder because he was afraid the men would kill him.[33] The First Circuit Court of Appeals found that the BIA misapplied the unwilling or unable standard.[34] The court explained that, with respect to claims involving private actors, it has "consistently stated that an applicant must prove <u>either</u> unwillingness <u>or</u> inability" of the government to control the persecution.[35] The BIA, however, "missed the distinction between the Mexican government's willingness to investigate [the applicant's son's] murder and its ability to protect [the applicant] in the future."[36] Specifically, the court reasoned: "the evidence in the record showed only that the police made efforts to investigate [the son's] murder. The evidence showed nothing about the quality of this investigation or its likelihood of catching the perpetrators. Indeed, evidence . . . generally suggested that the investigation was unlikely to make Rosales's

---

[28] *Rosales Justo v. Sessions*, *895* F.3d 154, 157 (1st Cir. 2018).
[29] *Id.*
[30] *Id.*
[31] *Id.* at 157–158.
[32] *Id.* at 158.
[33] *Id.*
[34] *Id.* at 162.
[35] *Id.* at 163. (citing *Khan v. Holder*, 727 F.3d 1, 7 (1st Cir. 2013); *Butt v. Keisler*, 506 F.3d 86, 92 (1st Cir. 2007); *Jorgji v. Mukasey*, 514 F.3d 53, 57 (1st Cir. 2008); *Ortiz-Araniba v. Keisler*, 505 F.3d 39, 41 (1st Cir. 2007); *Orelien v. Gonzales*, 467 F.3d 67, 72 (1st Cir. 2006).
[36] *Id.*

family any safer."[37] Although the court cited *Matter of A-B-* in its decision,[38] it clearly applied

the "unwilling or unable" standard, given that the police did conduct an investigation,

demonstrating that they neither condoned the persecution nor were completely helpless to stop it.

    **ii.**    **Second Circuit**

    The Second Circuit Court of Appeals also has consistently and unambiguously held that

harms inflicted by private actors may constitute persecution so long as the government is

unwilling or unable to control the conduct.[39] The court has recognized persecution committed at

the hands of various non-state actors, including, *inter alia*, domestic abusers,[40] rebel guerilla

groups,[41] religious groups,[42] tribe members,[43] members of other ethnic groups,[44] anti-Semites,[45]

and traffickers.[46] Further, it has stated that a government's inability or unwillingness to control

private persecutors can be corroborated by a showing of authorities' failure to respond,[47] lack of

resources,[48] corruption or impunity,[49] or societal pervasiveness of the persecution.[50]

    In *Ivanishvili v. DOJ*, the court remanded the case because it found that the IJ failed to

consider the applicant's testimony that authorities and unknown private parties violently attacked

her and other church members.[51] The court emphasized that "even assuming the perpetrators of

these assaults were not acting on orders from the Georgian government, it is well established that

---

[37] *Id*. at 164.
[38] *Id*.
[39] *See, e.g.*, *Pan v. Holder*, 777 F.3d 540, 543 (2d Cir. 2015); *Rizal v. Gonzales*, 442 F.3d 84, 92 (2d Cir. 2006).
[40] *See, e.g.*, *Bori v. INS*, 190 F. App'x 17, 19 (2d Cir. 2006).
[41] *See, e.g.*, *Del Pilar Delgado v. Mukasey*, 508 F.3d 702, 707 (2d Cir. 2007).
[42] *See, e.g.*, *Rizal v. Gonzales*, 442 F.3d at 92.
[43] *See, e.g.*, *Abankwah v. INS*, 185 F.3d 18, 26 (2d Cir. 1999).
[44] *See, e.g.*, *Aliyev v. Mukasey*, 549 F.3d 111, 118 (2d Cir. 2008).
[45] *See, e.g.*, *Poradisova v. Gonzales*, 420 F.3d 70, 81 (2d Cir. 2005).
[46] *See, e.g.*, *Paloka v. Holder*, 762 F.3d 191, 198–99 (2d Cir. 2014).
[47] *See, e.g.*, *Pavlova v. I.N.S.*, 441 F.3d 82, 91 (2d Cir. 2006).
[48] *See, e.g.*, *Sotelo-Aquije v. Slattery*, 17 F.3d 33, 36 (2d Cir.1994).
[49] *See, e.g.*, *Poradisova*, 420 F.3d at 81.
[50] *See, e.g.*, *Abankwah*, 185 F.3d at 25–26.
[51] *Ivanishvili v. U.S. Dep't. of Just.*, 433 F.3d 332, 342–43 (2d. Cir. 2006).

private acts may be persecution if the government has proved unwilling to control such actions."[52]

Similarly, in *Aliyev v. Mukasey*, the Second Circuit Court of Appeals remanded a BIA decision that affirmed an IJ's denial of asylum to a family of ethnic Uyghurs from Kazakhstan.[53] The applicants alleged that they were "mistreated both by Kazakh officials and by ethnic Kazakhs to whose actions the Kazakh government, in effect, granted immunity."[54] After a Kazakh nationalist group threatened and beat the father, he filed a report with the police. The police sent him to the hospital for an examination and injury report, yet never conducted a proper investigation. After the family reported that their home was destroyed by an explosion, a local sheriff came to the home, but did nothing further. The court held that the BIA improperly failed to consider that the applicant had "clearly introduced enough evidence to forge the link between private conduct and public responsibility."[55] Plainly, in the court's view, an asylum seeker can meet the "unable or unwilling" standard even if the police provide some level of support yet never launch a proper investigation.

Further still, decisions from the Second Circuit demonstrate that asylum seekers can meet the "unable or unwilling" standard even if they never reported private violence to the police, so long as the record demonstrates that the government is unlikely to have provided assistance. In *Pan v. Holder*, an asylum seeker from the Kyrgyz Republic was repeatedly beaten by private actors on account of his Korean ethnicity and Evangelical Christianity.[56] He did not call the police after some of these incidents because he alleged that the Kyrgyz police are "very corrupt"

---

[52] *Id.* at 342.
[53] *Aliyev v. Mukasey*, 549 F.3d 111 (2d Cir. 2008).
[54] *Id*. at 113.
[55] *Id*. at 118.
[56] *Pan v. Holder*, 777 F.3d 540 (2d Cir. 2015).

and "if they're going to do something for you they're going to want something in exchange."[57] The court held that the BIA improperly ignored "ample" evidence, including a country report and evidence regarding the police's refusal to help a similarly situated refugee.[58] Similarly, in *Boris v. INS*, the court held that an IJ improperly failed to take into account an Albanian asylum seeker's reasons for not reporting domestic abuse to the government.[59] In particular, the IJ failed to consider a country report that stated that the majority of spousal abuse goes unreported as a result of lax police responses.

Together, *Pan v. Holder* and *Boris v. INS* demonstrate that an asylum seeker need not even report instances of private violence in order to meet the "unable or unwilling" standard. Far from needing to introduce direct evidence of the government's "condoning" the persecution or its "complete helplessness" to stop it, the applicant need only introduce circumstantial evidence indicating that the government is unlikely to have protected the applicant had he or she reported.

### iii.   Third Circuit

The Third Circuit Court of Appeals has consistently recognized that persecution can be committed "by forces the government is unable or unwilling to control."[60] In *Fiadjoe v. Attorney General*, for example, the Third Circuit remanded a BIA decision denying a Ghanaian woman's applications for asylum and CAT relief.[61] The applicant's father was a priest of the Trokosi sect who, in accordance with the tenets of the sect, physically and sexually abused her and forced her to serve as his slave. In 1998, Ghana passed legislation banning the practice of "customary servitude." After this legislation was passed, a Ghanaian government commission, working with

---

[57] *Id*. at 542.

[58] *Id*. at 545.

[59] *Bori v. INS*, 190 F. App'x 17, 19 (2d Cir. 2006)

[60] *Fiadjoe v. Att'y Gen*., 411 F.3d 135, 160 (3d Cir. 2005). *See also Garcia v. Att'y Gen. of the U.S.*, 665 F.3d 496, 503 (3d Cir. 2011); *Espinosa-Cortez v. Att'y Gen. of the U.S.*, 607 F.3d 101, 113 (3d Cir. 2010); *Vente v. Gonzales*, 415 F.3d 296, 300 (3d Cir. 2005).

[61] *Fiadjoe*, 411 F.3d at 160.

an NGO, helped to release 2,800 Trokosi slaves. The BIA denied the applicant's asylum claim

on the grounds that she failed to establish that the government of Ghana was unable or unwilling

to control her father's abuse, given that the government outlawed Trokosi slavery and she never

directly reported the abuse to the government. The Third Circuit reversed, finding that the BIA

"totally ignored the evidence in the record that establishes the deep hold that the Trokosi religion

has upon substantial elements of the Ghanaian people" even after Trokosi slavery was

outlawed.[62] Further, the court pointed to a State Department Report as evidence that it would

have been futile to report her father's violence to the police given that law enforcement tended

not to intervene in domestic disputes.[63] Finally, despite the legislation, the Ghanian government

had not prosecuted any practitioners of Trokosi.[64] This case demonstrates that an applicant can

satisfy the "unable or unwilling" standard even if the government has passed legislation

outlawing the form of violence that she faced and worked with an NGO to dramatically reduce

the incidence of the practice, clearly revealing that the government did not "condone" the

practice and was not "completely helpless" to stop it.

### iv.   Fourth Circuit

The Fourth Circuit Court of Appeals has long recognized the "unwilling or unable"

standard.[65] In *Crespin-Valladares v. Holder*, for example, a Salvadoran applicant had seen four

members of MS-13 flee the scene after his cousin was fatally shot.[66] He described the four men

to the police. Two weeks later, the police arrested two of the men and prosecutors prepared for a

murder trial. As the murder trial approached, gang members told the applicant's uncle that they

---

[62] *Id*. at 161.
[63] *Id*. at 162.
[64] *Id*. at 163.
[65] *See, e.g., Zavaleta-Policiano v. Sessions*, 873 F.3d 241, 246 (4th Cir. 2017); *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949 (4th Cir. 2015); *Crespin-Valladares v. Holder*, 632 F.3d 117, 128 (4th Cir. 2011).
[66] *Crespin-Valladares v. Holder*, 632 F.3d 117 (4th Cir. 2011).

would kill him if he continued to cooperate. The prosecutor provided the uncle with 24-hour police protection. Because the applicant did not directly witness the murder, he did not receive police protection. A court convicted both defendants. The gang members continued to threaten him until he fled to the United States.

The BIA concluded that a State Department report "demonstrates that the Salvadoran government has focused law enforcement efforts on suppressing gang violence."[67] On that basis, the BIA found that the applicant had not shown "that the government would be unable or unwilling to protect them from MS-13."[68] The Fourth Circuit remanded because the BIA erred in failing to consider that "attempts by the Salvadoran government to control gang violence have proved futile." The Salvadoran government's efforts to control gang violence demonstrate that the government neither condoned the violence nor was completely helpless to control it; nevertheless, the court granted the petition for review out of a recognition that the government's efforts were ineffective.

### v.   Fifth Circuit

It is similarly well established in the Fifth Circuit that "persecution entails harm inflicted . . . by the government *or by forces that a government is unable or unwilling to control*."[69] In *Eduard v. Ashcroft*, the court granted the petition of an applicant who was "afraid to go back to Indonesia because Christians are being persecuted there by the Moslems and the Indonesian government cannot control them."[70] Additionally, in *Rivas-Martinez v. INS*, the court held in favor of an applicant who feared persecution at the hands of guerillas.[71]

---

[67] *Id*. at 128.
[68] *Id*.
[69] *Tesfamichael v. Gonzalez*, 469 F.3d 109, 113 (5th Cir. 2006) (emphasis added). *See also Eduard v. Ashcroft*, 379 F.3d 182, 187 (5th Cir. 2004); *Adebisi v. INS*, 952 F.2d 910, 914 (5th Cir. 1992).
[70] *Eduard*, 379 F.3d at 190.
[71] *Rivas-Martinez*, 997 F.2d 1143, 1145 (5th Cir. 1993).

Even when denying relief, the court has explicitly recognized that harms inflicted by private actors can constitute persecution.[72] For example, in *Adebisi v. INS*, the applicant feared persecution at the hands of his tribe members but never sought police protection "because of his fear of the Esubete elders and their voodoo powers . . . ."[73] In denying the petition, the court recognized that "the BIA extends the qualifying range of persecution fear to include acts by groups '*the government is unable or unwilling to control*.'"[74]

### vi.    Sixth Circuit

The Sixth Circuit Court of Appeals has consistently held that harms inflicted by private actors can constitute persecution so long as the government is unwilling or unable to control the persecutors.[75] For example, in *Kamar v. Sessions*, a Jordanian asylum seeker feared that her cousins would subject her to an honor killing because she "shamed" her family by divorcing her husband and conceiving a child while unmarried.[76] The BIA affirmed the IJ's finding that the Jordanian government was not unable or unwilling to protect her, crediting a 2011 country report that stated that the authorities in Jordan has placed eighty-two women in "protective custody" that year to prevent them from becoming victims of honor killings.[77] The BIA also held that subsequent country reports demonstrated that the Jordanian government was actively protecting

---

[72] *See, e.g., Tesfamichael*, 469 F.3d at 113; *Adebisi*, 952 F.2d at 914.

[73] *Adebisi*, 952 F.2d at 914.

[74] *Id.* at 914. Defendants contend that the "condone" or "complete helplessness" standard is a "familiar articulation" of the "unwilling or unable" standard, citing, *inter alia*, *Shehu v. Gonzales*, 443 F.3d 435, 437 (5th Cir. 2006). Def. MSJ 29. While it is true that the court in *Shehu* quoted (without discussion) the "condone" or "complete helplessness" phrase from a Seventh Circuit decision (discussed in further detail below), the case at hand dealt with violence not at the hands of private actors, but at the hands of a government that had since changed from being dominated by Serbs to being dominated by the United Nations Interim Administrative Mission in Kosovo and Provisional Institutions of Self Government. *Shehu*, 443 F.3d at 437–38. Accordingly, the real issue before the court was whether country conditions had changed such that the applicant no longer had a well founded fear of persecution, not whether the state action requirement had been met. In any event, application of the different standards would not have led to different results, as the applicant could not identify her persecutor in that case. *Id.*

[75] *See, e.g., Kamar v. Sessions*, 875 F.3d 811, 818 (6th Cir. 2017); *Marouf v. Lynch*, 811 F.3d 174, 189 (6th Cir. 2016).

[76] *Kamar*, 875 F.3d at 818-20.

[77] *Id.* at 816.

victims and prosecuting the perpetrators of honor crimes.[78] The court reversed, finding that "governors in Jordan routinely abuse the law and use imprisonment to protect potential victims of honor crimes . . . . This practice is akin to persecuting the victim as she 'must choose between death and an indefinite prison term.'"[79] Meanwhile, the Jordanian government frequently reduced the sentences of successful perpetrators of honor killing or dismissed the case if the victim's family (who is also often the perpetrator's family) did not press charges.[80] Clearly, the court was employing the "unable or unwilling" standard, and not the heightened standard, as the Jordanian government was not "completely helpless" to protect women from honor killings, given that it was prosecuting some perpetrators and had placed eighty-two women in "protective custody" in one year. Its protections were merely ineffective.

###### vii.   Seventh Circuit

The Seventh Circuit Court of Appeals also has long recognized the "unwilling or unable" standard.[81]

For example, in *Sarhan v. Holder*, a Jordanian asylum seeker feared that her brother would subject her to an honor killing in response to a false rumor that she had committed adultery.[82] The IJ denied her claim, finding the Jordanian government would protect the applicant if her brother posed a threat, and the BIA affirmed. On appeal, the government argued that in 2007 there were only 17 reported instances of honor killings in a country with 6 million people and all 17 honor crimes were prosecuted.[83] The court found these arguments

---

[78] *Id.*
[79] *Id.* at 819 (quoting Sarhan v. Holder, 658 F.3d 649, 659 (7th Cir. 2011)).
[80] *Id.*
[81] *See, e.g., R.R.D. v. Holder*, 746 F.3d 807, 809 (7th Cir. 2014); *Cece v. Holder*, 733 F.3d 662, 675 (7th Cir. 2013) (en banc); *Tariq v. Keisler*, 505 F.3d 650, 656 (7th Cir. 2007); *Chakir v. Gonzalez*, 466 F.3d 563, 569–70 (7th Cir. 2006).
[82] *Sarhan v. Holder*, 658 F.3d 649 (7th Cir. 2011).
[83] *Id.* at at 657.

unconvincing and reversed the BIA, holding "the record permits no conclusion other than that the government is ineffective when it comes to providing protection to women whose behavior places them in the group who are threatened with honor killings."[84] The court found that "[p]rosecution at times is an empty gesture."[85] It stated that the six-month prison sentences amounted to "little more than a slap on the wrist" and sent a "strong social message of toleration for the practice."[86] Further, the court found that the "protective custody" Jordan offered to victims was effectively voluntary imprisonment and "strikes us as being much closer to persecution than to protection from harm." After reviewing this evidence, the court concluded it was "at a loss to understand" how the BIA held that the record does not establish that the Jordanian government would be unable or unwilling to protect the applicant. The Jordanian government might have been ineffective at protecting the applicant, but it could hardly be characterized as "completely helpless" given that it prosecuted all 17 reported instances of honor killings in 2007.

Defendants in the instant case contend that "[t]he 'condoned' or 'completely helplessness' language . . . is a familiar articulation of the BIA's well-established 'unable or unwilling to control' standard."[87] In *Matter of A-B-*, the AG cited two Seventh Circuit decisions in support of the "condoned or complete helplessness" standard. In *Galina v. I.N.S.*, the court stated that "a finding of persecution ordinarily requires a determination that government authorities . . . condoned it or at least demonstrated a complete helplessness to protect the victims."[88] However, none of the cases the court cited in support of this proposition contain the

---

[84] *Id.*
[85] *Id.*
[86] *Id.*
[87] Def. MSJ 29.
[88] *Galina v. I.N.S.*, 213 F.3d 955, 958 (7th Cir. 2000).

"condoned" or "complete helplessness" language, and the court does nothing further to explain where the language came from. Similarly, in *Hor v. Gonzalez*, relying on *Galina*, the court recognized that an applicant cannot claim asylum on the basis of "persecution by a private group unless the government either condones it or is helpless to prevent it, but if either of those conditions is satisfied, the claim is a good one."[89] Notably, however, in both *Galina* and *Hor*, the court held that the petitioners had met the state action requirement despite the fact that the police took some actions to protect them, albeit ineffectively,[90] demonstrating that, despite the language it used to describe the standard, the standard the court actually applied was the "unable or unwilling" standard and not the heightened "condoned or complete helplessness" standard that the AG applied in *Matter of A-B-*. Moreover, cases such as *Sarhan*, decided after *Galina* and *Hor*, set forth and apply only the "unwilling/unable" standard.

### viii.   Eighth Circuit

The "unwilling or unable" standard is also well established in the Eighth Circuit.[91] In *Gathungu v. Holder*, a Kenyan asylum seeker feared persecution by members of the Mungiki, a violent political group that tortured him after he defected.[92] His wife and daughters also sought asylum and feared the Mungiki would force them to undergo female genital mutilation if they returned to Kenya. The IJ denied the family's application for asylum, and the BIA affirmed. Both the IJ and BIA found that the applicants had failed to establish that the Kenyan government was unwilling or unable to control the Mungiki, citing country reports that indicated the Kenyan

---

[89] *Hor v. Gonzalez*, 421 F.3d 497, 501 (7th Cir. 2005). The AG decision in *A-B-* cited *Hor v. Gonzales*, 400 F.3d 482, 485 (7th Cir. 2005), in which a panel of the court denied the applicant's motion for a stay of removal, reasoning that "the probability of success on the merits [was] low." *Id.* at 485. In the second *Hor* decision, the merits panel disagreed and granted the applicant's petition for review.
[90] *Hor*, 421 F.3d at 499; *Galina*, 213 F.3d at 958.
[91] *See e.g.*, *Gathungu v. Holder*, 725 F.3d 900 (8th Cir. 2013); *Nabulwala v. Gonzalez*, 481 F.3d 1115 (8th Cir. 2007)
[92] *Gathungu v. Holder*, 725 F.3d 900 (8th Cir. 2013).

police had "very strong policies" against the Mungiki and was "taking action against the Mungiki such that the violence perpetrated by the group had been reduced."[93] On appeal, the Eighth Circuit held that the BIA improperly ignored evidence that the Kenyan government accepted bribes and had a practice of "making a show of arresting the Mungiki members but then releasing them."[94] The court concluded, "[T]he very fact that the Mungiki have continued to create significant violence over the last decade despite repeated assertions by the Kenyan government that it is cracking down on the Mungiki . . . show the Kenyan government is unable to control the Mungiki."[95] This case demonstrates that an asylum seeker can meet the "unwilling or unable" standard even if a government "takes action" to crack down on violence perpetrated by a rebel group if "the record shows that many of the crackdown promises are hollow."[96]

In *Menjivar v. Gonzales*, the court quoted the Seventh Circuit *Galina* decision in stating that "the applicant must show that the government 'condoned it or at least demonstrated a complete helplessness to protect the victims.'"[97] However, in that case, the court agreed with the IJ that the state action requirement had not been met because the police responded to the persecution in a timely manner and conducted a thorough investigation of the private actor's crimes.[98] It is clear that the court in fact applied the familiar "unable or unwilling" test.

Relying on *Menjivar*, the court in *Ngengwe v. Mukasey* stated that an applicant fearing harm at the hands of private actors "must show that the government 'condoned it or at least demonstrated a complete helplessness to protect the victims.'"[99] However, although the court quoted the more stringent standard, it nevertheless disagreed with the IJ's determination that

---

[93] *Id*. at 906.
[94] *Id*. at 908-09.
[95] *Id*. at 909.
[96] *Id*.
[97] *Menjivar v. Gonzales*, 416 F.3d 918, 921 (8th Cir. 2005) (quoting *Galina*, 213 F.3d at 958).
[98] *Id*. at 922.
[99] *Ngengwe v. Mukasey*, 543 F.3d 1029, 1035 (8th Cir. 2008) (quoting *Menjivar*, 416 F.3d at 921).

16

Cameroon was not unwilling or unable to prevent persecution against widows.[100] In this case, the applicant did not report her abuse to the police; nevertheless, the court found that the state action requirement had been met because the applicant testified that when her sister "was attacked and beaten by her family … the police refused to stop the beating because it was 'a family issue.'"[101]

Further, the court relied on official reports as evidence that Cameroon's existing justice system does not protect women from domestic violence. The Court noted that: (1) Cameroon does not have a legal code that covers familial relationships and this "leaves women (especially in the North) defenseless against male-oriented customs;" (2) Cameroon's law does not impose effective penalties against male perpetrators of domestic violence; (3) violence against women in the country is "widespread;" and (4) women and girls face continuing discrimination through customs such as polygamy and forced early marriages, and laws such as one that prevents women from inheriting land.[102] Thus, the court held that, "[g]iven the evidence in the record that the Cameroonian government would not protect [the applicant] from her in-laws," substantial evidence did not support the IJ's and BIA's conclusion that the applicant had failed to show that Cameroon was unable or unwilling to protect her.[103] This case demonstrates the continued viability of asylum claims based on domestic violence and other harms committed by private actors and the importance of a thorough, case-by-case analysis of the facts.

### ix.   Ninth Circuit

The Ninth Circuit Court of Appeals also has consistently recognized the "unwilling or unable" standard.[104] In *Madrigal v. Holder*, a former Mexican soldier who had conducted anti-

---

[100] *Id.*
[101] *Id.*
[102] *Id.*
[103] *Id.*
[104] *See, e.g.*, Smolniakova v. Gonzales, 422 F.3d 1037, 1048 (9th Cir. 2005) (citing *Singh v. INS*, 134 F.3d 962, 967 n.9 (9th Cir. 1998)); *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1062–63 (9th Cir. 2017); *Doe v. Holder*, 736 F.3d 871, 873, 77–78 (9th Cir. 2013) ("Doe was not required to demonstrate that the Russian government sponsored

drug activities alleged past persecution and a well-founded fear of future persecution at the hands of Los Zetas, a violent drug cartel.[105] The BIA concluded that the Mexican government was willing and able to control Los Zetas.[106] In its decision, the BIA cited various statistics on the efforts of the Mexican national government to combat drug violence, including the arrest of 79,000 people on drug trafficking related charges during a seven-year period.[107] The court reversed and remanded, stating that "the BIA appears to have focused only on the Mexican government's willingness to control Los Zetas, not its *ability* to do so."[108] The court concluded that record evidence demonstrated that "violent crime traceable to drug cartels remains high despite the Mexican government's efforts to quell it," suggesting that the Mexican government may lack the ability to effectively control Los Zetas.[109] As the court apparently recognized, government that has arrested tens of thousands of drug traffickers is not "completely helpless" at suppressing drug cartels, yet might still be "unable" to protect an asylum seeker.

In *Avetova-Elisseva v. INS*, a Russian asylum seeker feared future persecution on account of her Armenian ethnicity.[110] She was born in Baku, Azerbaijan, but fled to escape Azeri ethnic cleansing. With the help of Soviet troops, she crossed the Caspian Sea and settled in Moscow. While in Russia, she continued to face harassment. In rejecting her claim, the IJ found:

[T]he inability of the police to sometimes deal with [the harassment of people of

---

or condoned the persecution of homosexuals…."); *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1083 (9th Cir. 2013); *Madrigal v. Holder*, 716 F.3d 499, 503 (9th Cir. 2013); *Karapetyan v. Mukasey*, 543 F.3d 1118, 1128 (9th Cir. 2008); *Nehad v. Mukasey*, 535 F.3d 962, 972 (9th Cir. 2008); *Ahmed v. Keisler*, 504 F.3d 1183, 1191 (9th Cir. 2007); *Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1056 (9th Cir. 2006); *Castro-Perez v. Gonzales*, 409 F.3d 1069, 1072 (9th Cir. 2005); *Krotova v. Gonzales*, 416 F.3d 1080, 1087 (9th Cir. 2005); *Faruk v. Ashcroft*, 378 F.3d 940, 944 (9th Cir. 2004); *Hoque v. Ashcroft*, 367 F.3d 1190, 1198 (9th Cir. 2004); *Malty v. Ashcroft*, 381 F.3d 942, 947 (9th Cir. 2004); *Mashiri v. Ashcroft*, 383 F.3d 1112, 1121(9th Cir. 2004); *Melkonian v. Ashcroft*, 320 F.3d 1061, 1065 (9th Cir. 2003); *Avetova-Elisseva v. INS*, 213 F.3d 1192, 1196 (9th Cir. 2000); *Mgoian v. INS*, 184 F.3d 1029, 1036 (9th Cir. 1999).
[105] *Madrigal v. Holder*, 716 F.3d 499 (9th Cir. 2013).
[106] *Id*. at 506.
[107] *Id*. at 506-07.
[108] *Id*. at 506.
[109] *Id*. at 506-07.
[110] *Avetova-Elisseva v. INS*, 213 F.3d 1192 (9th Cir. 2000).

Armenian dissent], is not due to the fact that the police is [sic] participating in the persecution or harassment but, rather, because of lack of resources and a very high crime rate, which leads the police to only prosecute those cases where the evidence is abundantly clear . . . . The evidence is not one that shows that the government is systematically engaging in these acts or tolerating the people that do engage in acts of discrimination and harassment, deliberately to persecute Armenians because of the fact that they are Armenian.[111]

The Ninth Circuit reversed and remanded to the BIA, stating, "It does not matter that financial considerations may account for such an inability to stop elements of ethnic persecution."[112] Further, the court held, "just because the Russian army rescued Avetova and other Armenians from a likely death in Azerbaijan does not negate the prospect of future persecution that is less than life-threatening—or even of life-threatening persecution from elements that the government cannot control."[113] It is clear that, according to the court, a government may be "unable or unwilling" to protect an applicant from continued persecution even if it does not "condone" the persecution and is not "completely helpless" at aiding the applicant.

### x. Tenth Circuit

Similarly, the Tenth Circuit Court of Appeals has long held that persecution "may come from a non-government agency which the government is unwilling or unable to control."[114] In *de la Llana-Castellon v. INS*, the BIA denied a Nicaraguan family's asylum application after *sua sponte* taking administrative notice of the fact that elections had brought about a change in government in Nicaragua.[115] The Sandinistas, a party that controlled the Nicaraguan government before the elections, had previously persecuted the family. The BIA held that the family could no longer establish a well-founded fear of future persecution given the change in government.

---

[111] *Id*. at 1197-98.
[112] *Id*. at 1198.
[113] *Id*. at 1200.
[114] *de la Llana-Castellon v. INS*, 16 F.3d 1093, 1097 (10th Cir. 1994). *See also Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1336–37 (10th Cir. 2008); *Krastev v. INS*, 292 F.3d 1268, 1275–76 (10th Cir. 2002); *Bartesaghi-Lay v. INS*, 9 F.3d 819, 822 (10th Cir. 1993).
[115] *de la Llana-Castellon v. INS*, 16 F.3d 1093 (10th Cir. 1994).

The court reversed, finding the BIA erred in failing to analyze whether the Sandinistas constitute an entity that the government was unable or unwilling to control.[116] The court reasoned, "[t]here may very well be evidence that the coalition government does not enjoy full or even marginal control in Nicaragua and that the Sandinistas are still a force to be reckoned with."[117] In remanding, the court plainly asked the agency to assess whether the family met the "unwilling or unable" test, and not the heightened "condoned or complete helplessness" test.

### xi.  Eleventh Circuit

Finally, the "unwilling or unable" standard is similarly well established in the Eleventh Circuit.[118] For instance, in *Lopez v. U.S. Attorney General*, the court stated that the failure to report private persecution to government authorities is "excused where the petitioner convincingly demonstrates that those authorities would have been unable or unwilling to protect her, and for that reason she could not rely on them."[119] The court remanded the decision because the BIA and IJ failed to address this point.[120]

### C.  Supreme Court of the United States

Likely because of the unanimous agreement among the lower courts that harms inflicted by private actors can constitute persecution so long as the government is unwilling or unable to control the private actors, the United States Supreme Court has not had occasion to explicitly opine on the issue. However, the Court has implicitly acknowledged that harms inflicted by private actors can constitute persecution.[121] For example, in *INS v. Elias-Zacarias*, the Court

---

[116] *Id.* at 1097.
[117] *Id.*
[118] *See, e.g., Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341 (11th Cir. 2007); *Malu v. United States AG*, 764 F.3d 1282, 1291 (11th Cir. 2014).
[119] *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007).
[120] *Id.* at 1345.
[121] *See Negusie v. Holder*, 555 U.S. 511, 536 n.6 (2009) (Stevens, J., dissenting) (citing *Matter of Kasinga*, 21 I. & N. Dec. 357, 365 (BIA 1996); *Matter of H-*, 21 I. & N. Dec. 337, 343–44 (BIA 1996)); *cf. INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992).

evaluated the claim of a Guatemalan asylum applicant who claimed that he feared persecution at the hands of a non-state guerilla group.[122] The Court found that he had failed to show that his refusal to join the guerillas was based on a political opinion or that the group was seeking to persecute him because of that opinion.[123] Accordingly, the Court found against the applicant on nexus grounds.[124] However, the court never called into question the notion that harms perpetrated by a private actor, namely the guerilla group, could constitute persecution.[125]

Similarly, in *Negusie v. Holder*, Justice Stevens in his dissent on an unrelated issue briefly discussed the difference between asylum and withholding of removal—which he stated could be based on "harm inflicted by private actors" (citing the BIA's *Matter of Kasinga* and *Matter of H-* decisions as examples)—and the Convention Against Torture, which requires "state involvement."[126]

Moreover, the Supreme Court has stated that the United Nations High Commissioner for Refugees ("UNHCR") Handbook "provides significant guidance in construing the Protocol [Relating to the Status of Refugees], to which Congress sought to conform. It has been widely considered useful in giving content to the obligations that the Protocol establishes."[127] The UNHCR Handbook clearly recognizes that harms inflicted by private actors can constitute persecution "if the authorities refuse, or prove unable, to offer effective protection."[128]

---

[122] *Elias-Zacarias*, 502 U.S. at 480.
[123] *Id.* at 483.
[124] *Id.* at 483–84.
[125] *Id.* at 483.
[126] *Negusie*, 555 U.S. at 536 n.6 (Stevens, J., dissenting) (citing *Matter of Kasinga*, 21 I. & N. Dec. at 365; *Matter of H-*, 21 I. & N. Dec. 337, 343–44 (BIA 1996)).
[127] *INS v. Cardoza-Fonseca*, 480 U.S. 421, 439 n.22 (1987).
[128] U.N. High Comm'r for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees*, ¶ 65, U.N. Doc. HCR/IP/4/Eng/REV.1 (1992 ed.), http://www.unhcr.org/4d93528a9.pdf (Harms inflicted by private actors "can be considered as persecution if they are knowingly tolerated by the authorities, or if the authorities refuse, or prove unable, to offer effective protection.").

## II.   THE "UNWILLING OR UNABLE" STANDARD HAS BEEN APPLIED TO CLAIMS BASED ON PERSECUTION ON ACCOUNT OF ALL FIVE OF THE PROTECTED GROUNDS

Amici are troubled by the AG's dicta in *A-B-* stating that "generally" claims involving private actors "will not qualify for asylum,"[129] and equally troubled by the new USCIS policies adopting this view,[130] given the decades of precedent establishing the opposite. Although the AG's decision was focused on the particular social group ground, the persecution and protected ground elements of an asylum claim are separate and distinct. Accordingly, this section demonstrates that it is well established that harms inflicted by private actors on account of any of the five protected grounds, including particular social group, can constitute persecution, so long as the government is unwilling or unable to control the private actor.

### A.  Particular Social Group

The BIA and circuit courts routinely have held that harms inflicted by private actors on account of membership in a particular social group can constitute persecution, so long as the applicant can show that the government was unwilling or unable to control the private actors. For example, courts have granted claims involving persecution by private actors on account of sexual orientation,[131] family membership,[132] mental illness,[133] and clan or tribe membership,[134] among

---

[129] *A-B-*, 27 I. & N. Dec. at 320.

[130] USCIS Guidance at 6, 10.

[131] *See, e.g.*, *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1056, 1076 (9th Cir. 2017) (persecution by family members and neighbor); *Doe v. Holder*, 736 F.3d 871, 874, 879 (9th Cir. 2013) (persecution by classmates and other private individuals); *Kadri v. Mukasey*, 543 F.3d 16, 18–19, 21–22 (1st Cir. 2008) (persecution by private patients and private members of the medical community); *Nabulwala v. Gonzalez*, 481 F.3d 1115, 1117–18 (8th Cir. 2007) (persecution by applicant's family members in order to change her sexual orientation); *Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1054, 1056–58 (9th Cir. 2006) (persecution by family members and other private parties).

[132] *See, e.g.*, *Salgado-Sosa v. Sessions*, 882 F.3d 451, 457–59 (4th Cir. 2018); *Cruz v. Sessions*, 853 F.3d 122, 129–30 (4th Cir. 2017); *Zavaleta-Policiano v. Sessions*, 873 F.3d 241, 249–50 (4th Cir. 2017); *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949–50, 953 (4th Cir. 2015); *Aldana-Ramos v. Holder*, 757 F.3d 9, 15, 17–19 (1st Cir. 2014); *Cordova v. Holder*, 759 F.3d 332, 338–40 (4th Cir. 2014); *Crespin-Valladares v. Holder*, 632 F.3d 117, 126–27 (4th Cir. 2011).

[133] *See, e.g.*, *Kholyavskiy v. Mukasey*, 540 F.3d 555, 572–74 (7th Cir. 2008).

[134] *See, e.g.*, *Ahmed v. Keisler*, 504 F.3d 1183, 1198–99 (9th Cir. 2007) (persecution by the Awami League on account of applicant's membership in the social group of Bihari); *Fiadjoe v. Att'y Gen.*, 411 F.3d 135, 157–58, 162–

others.[135] Courts also have granted cases involving domestic violence,[136] gang violence,[137] sex

trafficking,[138] forced marriage,[139] involuntary servitude,[140] and female genital cutting,[141]

perpetrated on account of the applicant's particular social group. Notably, in many of these

cases, applicants had a "personal" relationship with their persecutors, but this fact did not defeat

a showing of nexus, contrary to the AG's suggestion in *Matter of A-B-* that "when private actors

inflict violence based on a personal relationship with a victim, then the victim's membership in a

larger group may well not be 'one central reason' for the abuse."[142]

## B. Religion

Freedom of religion is often curtailed by family members, communities, and militia

groups, not affiliated with the government, who are seeking to punish individuals who do not

---

63 (3d Cir. 2005) (persecution by applicant's father on account of her social group of Trokosi slaves); *Matter of H-*, 21 I. & N. Dec. 337, 344–46 (BIA 1996) (persecution by members of the Hawiye clan on account of applicant's membership in the Marehan clan).

[135] *See, e.g., Kamar v. Sessions*, 875 F.3d 811, 818–19 (6th Cir. 2017) (persecution by family on account of membership in the social group of "women who, in accordance with social and religious norms in Jordan, are accused of being immoral criminals and, as a consequence, face the prospect of being killed or persecuted without any protection from the Jordanian government"); *R.R.D. v. Holder*, 746 F.3d 807, 808, 810 (7th Cir. 2014) (persecution by drug traffickers on account of membership in the social group of "honest police"); *Gathungu v. Holder*, 725 F.3d 900, 907 (8th Cir. 2013) (persecution by members of the Mungiki group on account of membership in the social group of "Mungiki defectors"); *Orejuela v. Gonzales*, 423 F.3d 666, 672–74 (7th Cir. 2005) (persecution by FARC on account of membership in the social group of "educated, landowning class of cattle farmers targeted by FARC").

[136] *See, e.g., Ngengwe v. Mukasey*, 543 F.3d 1029, 1031–32, 1034, 1038 (8th Cir. 2008) (persecution by applicant's in-laws on account of her membership in the social group of female Cameroonian widows); *Matter of S-A-*, 22 I. & N. Dec. 1328 (BIA 2000).

[137] *See, e.g., Oliva v. Lynch*, 807 F.3d 53, 56–57, 59–60 (4th Cir. 2015); *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1085–87, 1091 (9th Cir. 2013); *Madrigal v. Holder*, 716 F.3d 499, 503–06 (9th Cir. 2013); *Garcia v. Att'y Gen. of the U.S.*, 665 F.3d 496, 503–04 (3d Cir. 2011).

[138] *See, e.g., Paloka v. Holder*, 762 F.3d 191, 193–95, 198–99 (2d Cir. 2014) (persecution by private sex traffickers on account of social group of unmarried young women in Albania between the ages of 15 and 25); *Cece v. Holder*, 733 F.3d 662, 673, 675–76 (7th Cir. 2013) (en banc) (sex trafficking on account of social group of "young, Albanian women who live alone").

[139] *See, e.g., Qu v. Holder*, 618 F.3d 602, 604, 608 (6th Cir. 2010).

[140] *See, e.g., id.* at 604, 608; *Gomez-Zuluaga v. Att'y Gen. of the U.S.*, 527 F.3d 330, 346–48 (3d Cir. 2008).

[141] *See, e.g., Gatimi v. Holder*, 578 F.3d 611, 614–15, 618 (7th Cir. 2009); *Haoua v. Gonzales*, 472 F.3d 227, 230–32 (4th Cir. 2007); *Mohammed v. Gonzales*, 400 F.3d 785, 795–98 (9th Cir. 2005); *Abay v. Ashcroft*, 368 F.3d 634, 639–40 (6th Cir. 2004); *Abankwah v. INS*, 185 F.3d 18, 21, 23–26 (2d Cir. 1999); *Matter of Kasinga*, 21 I. & N. Dec. 357, 368 (BIA 1996).

[142] *A-B-*, 27 I. & N. Dec. at 338-39.

comply with religious, and often cultural, norms. The BIA and courts of appeals routinely have granted cases involving persecution by private actors on account of religion, in conformity with the "unwilling or unable" standard.[143]

## C.  Race & Nationality

The categories of race and nationality often meld together in asylum law.[144] As set forth in greater detail above, in *Matter of O-Z- & I-Z-*, the BIA affirmed a grant of relief to asylum seekers of Jewish nationality who were persecuted by an anti-Semitic, pro-Ukrainian independence movement, unconnected with the Ukrainian government.[145] The BIA noted that the applicants reported at least three incidents to the police, who failed to take action beyond writing a report.[146] Numerous other courts have granted cases in which the applicant claimed harm by private actors on account of race or nationality, using the "unable or unwilling" standard.[147]

## D.  Political Opinion

Asylum seekers facing persecution on account of their political opinion often are subjected to the acts of non-state actors, including militias, freedom fighters, rebels, terrorists, paramilitaries, revolutionaries, guerrillas, and quasi-state bodies. Expressing opposition to these

---

[143] *See, e.g.*, *Marouf v. Lynch*, 811 F.3d 174, 189 (6th Cir. 2016); *Ivanov v. Holder*, 736 F.3d 5, 12–13 (1st Cir. 2013); *Afriyie v. Holder*, 613 F.3d 924, 932 (9th Cir. 2010); *Paul v. Gonzales*, 444 F.3d 148, 151, 157 (2d Cir. 2006); *Pavlova v. INS*, 441 F.3d 82, 91–92 (2d Cir. 2006); *Rizal v. Gonzales*, 442 F.3d 84, 92 (2d Cir. 2006); *Krotova v. Gonzales*, 416 F.3d 1080, 1087 (9th Cir. 2005); *Poradisova v. Gonzales*, 420 F.3d 70, 81–82 (2d Cir. 2005); *Eduard v. Ashcroft*, 379 F.3d 182, 187–88 (5th Cir. 2004); *Matter of O-Z- & I-Z-*, 22 I. & N. Dec. 23, 26 (BIA 1998).

[144] *See, e.g.*, *Baballah v. Ashcroft*, 367 F.3d 1067, 1077 n.10 (9th Cir. 2004) ("[E]thnicity describes a category which falls somewhere between and within the protected grounds of race and nationality.")

[145] *Matter of O-Z- & I-Z-*, 22 I. & N. Dec. at 24.

[146] *Id.* at 26.

[147] *See, e.g.*, *Pan v. Holder*, 777 F.3d 540, 545 (2d Cir. 2015); *Poradisova v. Gonzales*, 420 F.3d 70, 81–82 (2d Cir. 2005); *Eduard v. Ashcroft*, 379 F.3d 182, 190–91 (5th Cir. 2004); *Guchshenkov v. Ashcroft*, 366 F.3d 554, 559 (7th Cir. 2004); *Mashiri v. Ashcroft*, 383 F.3d 1112, 1122 (9th Cir. 2004); *Melkonian v. Ashcroft*, 320 F.3d 1061, 1069 (9th Cir. 2003); *Hengan v. INS*, 79 F.3d 60, 62–63 (7th Cir. 1996); *Singh v. INS*, 94 F.3d 1353, 1360 (9th Cir. 1996); *Surita v. INS*, 95 F.3d 814, 819–20 (9th Cir. 1996).

non-state actors can subject an asylum seeker to acts of persecution, torture and even death. The BIA and courts of appeals have routinely granted cases involving persecution by private actors on account of political opinion, so long as the applicant showed that the government was unwilling or unable to control the private actors.[148]

## CONCLUSION

It is well settled in the Board of Immigration Appeals, all Federal Courts of Appeals, and the United States Supreme Court that harms inflicted by private actors can constitute persecution for purposes of asylum or withholding of removal on account of any of the five protected grounds, so long as the applicant demonstrates that the government was unable or unwilling to control the private actors. Any pronouncement by the Attorney General or by USCIS that such claims should be subject to heightened standards or increased skepticism is contrary to settled law and without merit and is even more troubling at the credible fear interview stage.

Dated: September 28, 2018                       Respectfully Submitted,

                                                /s/ Thomas Ragland

Anjum Gupta (Pro Hac Vice motion pending)       Thomas K. Ragland (D.C. Bar #501021)
Immigrant Rights Clinic                         CLARK HILL PLC
Rutgers Law School                              1001 Pennsylvania Avenue, N.W.
123 Washington Street                           Suite 1300 South
Newark, NJ 07102                                Washington, DC 20004

                                                *Counsel for Amici Curiae*

---

[148] *See, e.g.*, *Khattak v. Holder*, 704 F.3d 197, 203, 207 (1st Cir. 2013); *Sharma v. Holder*, 729 F.3d 407, 412–13 (5th Cir. 2013); *Escobar v. Holder*, 657 F.3d 537, 539–40 (7th Cir. 2011); *Espinosa-Cortez v. Att'y Gen. of the U.S*, 607 F.3d 101, 114 (3d Cir. 2010); *Zheng v. Mukasey*, 552 F.3d 277, 287–88 (2d Cir. 2009); *Gomez-Zuluaga v. Att'y Gen. of the U.S.*, 527 F.3d 330, 344–45 (3d Cir. 2008); *Sok v. Mukasey*, 526 F.3d 48, 57–58 (1st Cir. 2008); *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1344 (11th Cir. 2007); *Orejuela v. Gonzales*, 423 F.3d 666, 673–74 (7th Cir. 2005); *Vente v. Gonzales*, 415 F.3d 296, 301–03 (3d Cir. 2005); *Hoque v. Ashcroft*, 367 F.3d 1190, 1198 (9th Cir. 2004); *Bace v. Ashcroft*, 352 F.3d 1133, 1138–39 (7th Cir. 2003); *de la Llana-Castellon v. INS*, 16 F.3d 1093, 1097 (10th Cir. 1994); *Sotelo-Aquije v. Slattery*, 17 F.3d 33, 38 (2d Cir. 1994); *Rivas-Martinez v. INS*, 997 F.2d 1143, 1148 (5th Cir. 1993); *Bolanos-Hernandez v. INS*, 767 F.2d 1277, 1287–88 (9th Cir. 1984); *Matter of Villalta*, 20 I. & N. Dec. 142, 147 (BIA 1990).

## APPENDIX A: LIST OF SIGNATORIES[*]

Ana Pottratz Acosta
Assistant Teaching Professor
Mitchell Hamline School of Law

Raquel Aldna
Professor of Law
UC Davis

Sabi Ardalan
Assistant Clinical Professor
Harvard Law School

Heather Axford
Adjunct Professor of Law
New York Law School

Sabrina Balgamwalla
Director of Wayne State Law School Asylum & Immigration Law Clinic
Wayne State Law School

Melynda H. Barnhart
Visiting Professor of Law
New York Law School

Caitlin Barry
Director, Farmworker Legal Aid Clinic
Villanova University Charles Widger School of Law

David Baluarte
Associate Clinical Professor of Law and Director of the Immigrant Rights Clinic
Washington and Lee University School of Law

Jon Bauer
Clinical Professor of Law and Richard D. Tulisano '69 Scholar in Human Rights
University of Connecticut School of Law

Kaci Bishop
Clinical Associate Professor of Law, Immigration Clinic
The University of North Carolina School of Law

Linda Bosniak
Professor of Law
Rutgers University

---

[*] Listed in individual capacity. University affiliation is listed for identification purposes only.

Jason A. Cade
Associate Professor of Law
University of Georgia School of Law

Violeta R. Chapin
Clinical Professor of Law
University of Colorado Law School

Gabriel J. Chin
Edward L. Barrett Jr. Chair and Martin Luther King Jr. Professor of Law
University of California, Davis School of Law

Michael J. Churgin
Raybourne Thompson Centennial Professor in Law
The University of Texas at Austin

Marisa S. Cianciarulo
Professor of Law, Associate Dean for Academic Affairs
Chapman University Fowler School of Law

Dree K. Collopy
Lecturer, Past Director of the Immigration Litigation Clinic
The Catholic University of America Columbus School of Law

Fernando Colon-Navarro
Fernando Colon-navarro
Thurgood Marshall School of Law (Texas Southern University)

Charles Shane Ellison
Director of Immigrant and Refugee Clinic, Special Assistant Professor
Creighton University School of Law

Kate Evans
Associate Professor of Law
University of Idaho College of Law

Richard H. Frankel
Associate Professor of Law
Drexel University Thomas R. Kline School of Law

Niels W. Frenzen
Sidney M. and Audrey M. Irmas Endowed Clinical Professor of Law
Univ. of Southern California Gould School of Law

Paula Galowitz
Clinical Professor of Law Emerita
New York University School of Law

Denise Gilman
Director, immigration Clinic
University of Texas School of Law

Deborah Gonzalez
Director of the Immigration Clinic
Roger Williams University School of Law

Joanne Gottesman
Clinical Professor of Law & Director of the Immigrant Justice Clinic
Rutgers Law School

Lindsay M. Harris
Assistant Professor & Co-Director of Immigration and Human Rights Clinic
University of the District of Columbia — David A. Clarke School of Law

Kayleen R. Hartman
Clinical Teaching Fellow
Kayleen Rebecca Hartmam

Dina Francesca Haynes
Professor of law
New England law

Susan Hazeldean
Assistant Professor of Law
Brooklyn Law School

Geoffrey Heeren
Professor of Law and Director of the Immigration Clinic
Valparaiso University Law School

Barbara Hines
Retired Clinical Professor of Law
University of Texas School of Law

Geoffrey A. Hoffman
Director of Immigration Clinic
University of Houston Law Center

Mary Holper
Associate Clinical Professor, Director, Immigration Clinic
Boston College Law School

Alan Hyde
Distinguished Professor of Law
Rutgers Law School

Michael Kagan
Joyce Mack Professor of Law
University of Nevada, Las Vegas

Elizabeth Keyes
Associate Professor
University of Baltimore School of Law

Krista Kshatriya
Lecturer
UC San Diego

Charles H. Kuck
Adjunct Professor of Law
Emory Law School

Hiroko Kusuda
Clinic Professor
Loyola New Orleans University College of Law

Stephen H. Legomsky
John S. Lehmann University Professor Emeritus
Washington University School of Law

Romy Lerner
Associate Director Immigration Clinic
University of Miami

Beth Lyon
Clinical Professor of Law
Cornell Law School

Randi Mandelbaum
Distinguished Clinical Professor of Law
Rutgers Law School

Lynn Marcus
Director, Immigration Law Clinic
University of Arizona Rogers College of Law

Fatma E. Marouf
Professor of Law
Texas A&M Univ. School of Law

Sheila Velez Martinez
Jack and Lovell Olender Professor of Asylum Refugee and Immigration Law
University of Pittsburgh School of Law

Miriam Marton
Assistance Clinical Professor of Law
University of Tulsa College of Law

Elizabeth McCormick
Associate Clinical Professor of Law
University of Tulsa College of Law

Karla M. McKanders
Clinical Professor of Law
Vanderbilt University Law School

Katie Herbert Meyer
Assistant Prof. of Practice & Director, Immigration Law Clinic
Washington University in St. Louis

Richard T. Middleton, IV
Associate Professor of Political Science and Adjunct Professor of Law
Univesity of Missouri-St. Louis; St. Louis University School of Law

Nickole Miller
Clinical Teaching Fellow, Immigrant Rights Clinic
University of Baltimore School of Law

Jennifer Moore
Professor of Law
University of New Mexico School of Law

Elora Mukherjee
Jerome L. Greene Clinical Professor of Law; Director, Immigrants' Rights Clinic
Columbia Law School

Natalie Nanasi
Assistant Professor and Director, Hunter Legal Center for Victims of Crimes Against Women
SMU Dedman School of Law

Lori A. Nessel
Professor of Law, Director, Center for Social Justice
Seton Hall University School of Law

Mariela Olivares
Associate Professor of Law
Howard University School of Law

John Palmer
Tenure-Track Professor
Pompeu Fabra University

Sarah H. Paoletti
Practice Prof. of Law and Dir., Transnational Legal Clinic
University of Pennsylvania School of Law

Helen Parsonage
Adjunct Professor of Law
Wake Forest School of Law

Huyen Pham
Professor of Law
Texas A&M University School of Law

Nina Rabin
Director, Immigrant Family Law Clinic
UCLA School of Law

Jaya Ramji-Nogales
I. Herman Stern Research Professor
Temple Law School

Renee C. Redman
Adjunct Professor of Law
University of Connecticut School of Law

Maritza Reyes
Associate Professor of Law
Florida A&M University College of Law

f

Emily Robinson
Co-Director, Loyola Immigrant Justice Clinic
Loyola Law School, Los Angeles

Katherine Aschenbrenner Rodriguez
Associate Professor, Immigration Clinic
Barry University School of Law

Sarah Rogerson
Clinical Professor of Law
Albany Law School

Carrie Rosenbaum
Adjunct Professor
Golden Gate University School of Law

Samantha Rumsey
Immigrant Rights Clinic Fellow
Rutgers Law School

Kevin Ruser
Richard and Margaret Larson Professor of Law, M.S. Hevelone Professor of Law, Director of
Clinical Programs
University of Nebraska College of Law

Benjamin Casper Sanchez
Faculty Director, James H. Binger Center for New Americans
University of Minnesota Law School

Irene Scharf
Prof. of Law, Dir. Immigration Litigation Clinic
Univ of Mass School of Law

Anne Schaufele
Practitioner-in-Residence, International Human Rights Law Clinic
American University, Washington College of Law

Erica Schommer
Clinical Associate Professor of Law
St. Mary's University School of Law

Philip G. Schrag
Delaney Family Professor of Public Interest Law
Georgetown University

Ragini Shah
Clinical Professor of Law
Suffolk University Law School

Rebecca Sharpless
Clinical Professor
University of Miami School of Law

Deena N. Sharuk
Lecturer, Clinic Supervisor: Immigration Law Clinic
University of Virginia School of Law

Rachel Settlage
Associate Professor
Wayne State Law School

Gemma Solimene
Clinical Associate Professor of Law
Fordham University School of Law

Jayashri Srikantiah
Professor of Law & Director, Immigrants' Rights Clinic
Stanford Law School

Elissa Steglich
Clinical Professor
University of Texas School of Law

Rick Su
Professor of Law
University at Buffalo School of Law

Maureen A. Sweeney
Law School Associate Professor
University of Maryland Carey School of Law

Margaret H. Taylor
Professor of Law
Wake Forest University School of Law

Claire R. Thomas
Director, Asylum Clinic; Adjunct Professor of Law
New York Law School

David B. Thronson
Professor of Law and Associate Dean for Academic Affairs
Michigan State University College of Law

Philip L. Torrey
Managing Attorney, Harvard Immigration and Refugee Clinical Program
Harvard Law School

Emily C. Torstveit Ngara
Director, Deportation Defense Clinic
Maurice A. Deane School of Law at Hofstra University

Diane Uchimiya
Professor of Law and Director of the Justice and Immigration Clinic
University of La Verne College of Law

Julia Vázquez
Associate Clinical Professor of Law
Southwestern Law School

Yolanda Vazquez
Associate Professor of Law
University of Cincinnati College of Law

Penny M. Venetis
Clinical Professor of Law & Director of International Human Rights Clinic & Judge Dickinson
R. Debevoise Scholar
Rutgers Law School

Rose Cuison Villazor
Professor of Law and Chancellor's Social Justice Scholar
Rutgers Law School

Susannah D. Volpe
Visiting Assistant Clinical Professor
Seton Hall Law School

Leti Volpp
Robert D. and Leslie Kay Raven Professor of Law
UC Berkeley School of Law

Shoba Sivaprasad Wadhia
Clinical Professor of Law and Director of the Center for Immigrants' Rights Clinic
Penn State Law-University Park

i

Anna Welch
Clinical Professor
University of Maine School of Law

Deborah M. Weissman
Reef C. Ivey II Distinguishd Professor of Law
University of North Carolina School of Law

Virgil Wiebe
Professor of Law, Robins Kaplan Director of Clinical Education, Co-Director of
Interprofessional Center
University of St. Thomas (MN)

Stephen Wizner
William O. Douglas Clinical Professor of Law Emeritus
Yale Law School

Lauris Wren
Clinical Professor of Law
Maurice A. Deane School of Law at Hofstra University

**APPENDIX B: LIST OF CASES RECOGNIZING THE "UNWILLING OR UNABLE" STANDARD**

The following is a non-exhaustive list of cases (published and unpublished) from each circuit that explicitly recognize the "unwilling or unable" standard for state action in asylum cases.

<u>**First Circuit**</u>

**Published Cases**

*Ortiz-Araniba v. Keisler*, 505 F.3d 39 (1st Cir. 2001)
*Menjivar v. Gonzales*, 416 F.3d 918 (1st Cir. 2005)
*Silva v. Ashcroft*, 394 F.3d 1 (1st Cir. 2005)
*Orelien v. Gonzales*, 467 F.3d 67 (1st Cir. 2006)
*Butt v. Keisler*, 506 F.3d 86 (1st Cir. 2007)
*Raza v. Gonzales*, 484 F.3d 125 (1st Cir. 2007)
*Kho v. Keisler*, 505 F.3d 50 (1st Cir. 2007)
*Jorgji v. Mukasey*, 514 F.3d 53 (1st Cir. 2008)
*Budiono v. Mukasey*, 548 F. 3d 44 (1st Cir. 2008)
*Kadri v. Mukasey*, 543 F.3d 16 (1st Cir. 2008)
*Datau v. Mukasey*, 540 F.3d 37 (1st Cir. 2008)
*Sok v. Mukasey*, 526 F.3d 48 (1st Cir. 2008)
*Decky v. Holder*, 587 F.3d 104 (1st Cir. 2009)
*Cendrawasih v. Holder*, 571 F.3d 128 (1st Cir. 2009)
*Burbiene v. Holder*, 568 F.3d 251 (1st Cir. 2009)
*Lopez Perez v. Holder*, 587 F.3d 456 (1st Cir. 2009)
*Dias Gomes v. Holder*, 566 F.3d 232 (1st Cir. 2009)
*Castillo-Diaz v. Holder*, 562 F.3d 23 (1st Cir. 2009)
*Diaz-Garcia v. Holder*, 609 F.3d 21 (1st Cir. 2010)
*Anacasus v. Holder*, 602 F.3d 14 (1st Cir. 2010)
*Barsoum v. Holder*, 617 F.3d 73 (1st Cir. 2010)
*Morgan v. Holder*, 634 F.3d 53 (1st Cir. 2011)
*Gilca v. Holder*, 680 F.3d 109 (1st Cir. 2012)
*Rebenko v. Holder*, 693 F.3d 87 (1st Cir. 2012)
*Khattak v. Holder*, 704 F.3d 197 (1st Cir. 2013)
*Guaman-Loja v. Holder*, 707 F.3d 119 (1st Cir. 2013)
*Vasili v. Holder*, 732 F.3d 83 (1st Cir. 2013)
*Khan v. Holder*, 727 F.3d 1 (1st Cir. 2013)
*Sunarto Ang. v. Holder*, 723 F.3d 6 (1st Cir. 2013)
*Muyubisnay-Cungachi v. Holder*, 734 F.3d 66 (1st Cir. 2013)
*Ivanov v. Holder*, 736 F.3d 5 (1st Cir. 2013)
*Aldana-Ramos v. Holder*, 757 F.3d 9 (1st Cir. 2014)
*Morales-Morales v. Sessions*, 857 F.3d 130 (1st Cir. 2017)
*Rosales Justo v. Sessions*, 895 F.3d 154, 157 (1st Cir. 2018)

**Unpublished Cases**

*Kamuh v. Mukasey*, 280 Fed. Appx. 7 (1st Cir. 2008)
*Barzoia Becerra v. Holder*, 323 Fed. Appx. 1 (1st Cir. 2009)

k

*Mawa v. Holder*, 569 Fed. Appx. 2 (1st Cir. 2014)
*Rodriguez v. Lynch*, 654 Fed. Appx. 498 (1st Cir. 2016)

## Second Circuit

**Published Cases**
*Sotelo-Aquije v. Slattery*, 17 F.3d 33 (2d Cir. 1994)
*Ivanishvili v. US Dept. of Justice & Atty Gen. Gonzales*, 433 F.3d 332 (2d Cir. 2006)
*Pavlova v. INS*, 441 F.3d 82 (2d Cir. 2006)
*Rizal v. Gonzales*, 442 F. 3d 84 (2d Cir. 2006)
*Joaquin-Porras v. Gonzales*, 435 F.3d 172 (2d Cir. 2006)
*Zheng v. Mukasey*, 552 F.3d 277 (2d Cir. 2009)
*Paloka v. Holder*, 762 F.3d 191 (2d Cir. 2014)
*Pan v. Holder*, 777 F.3d 540 (2d Cir. 2014)

**Unpublished Cases**
*Jasaraj-Hot v. Gonzales*, 217 Fed. Appx. 33 (2d Cir. 2007)
*Camara v. Dept. of Homeland Sec.*, 218 Fed. Appx. 61 (2d Cir. 2007)
*Hussain v. Gonzales,* 228 Fed. Appx. 101 (2d Cir. 2007)
*Mikhailenko v. U.S. Citizenship and Immigration Services*, 228 Fed. Appx. 41 (2d Cir. 2007)
*Gjicali v. Mukasey*, 260 Fed. Appx. 360 (2d Cir. 2008)
*Ketaren v. Mukasey*, 269 Fed. Appx. 90 (2d Cir. 2008)
*Cortez v. Holder*, 363 Fed. Appx. 829 (2d Cir. 2010)
*Farook v. Holder*, 407 Fed. Appx. 545 (2d Cir. 2011)
*Sutiono v. Lynch*, 611 Fed. Appx. 738 (2d Cir. 2015)

## Third Circuit

**Published Cases**
*Abdille v. Ashcroft*, 242 F.3d 477 (3d Cir. 2001)
*Fiadjoe v. Att'y Gen.*, 411 Fed. 135 (3d Cir. 2005)
*Fiadjoe v. Attorney General of U.S.*, 411 F.3d 135 (3d Cir. 2005)
*Vente v. Gonzales*, 415 F.3d 296 (3d Cir. 2005)
*Sukwanputra v. Gonzales*, 434 F.3d 627 (3d Cir. 2006)
*Espinosa-Cortez*, 607 F.3d 101 (3d Cir. 2010)
*Garcia v. Att'y Gen.*, 665 F.3d 496 (3d Cir. 2011)

**Unpublished Cases**
*Rehman v. Att'y Gen.*, 178 Fed. Appx. 126 (3d Cir. 2006)
*Lie v. Secretary of Dept. of Homeland Sec.*, 121 Fed. Appx. 453 (3d Cir. 2005)
*Lin v. Att'y Gen.*, 151 Fed. Appx. 113 (3d Cir. 2005)
*Wijaya v. Att'y Gen.*, 172 Fed. Appx. 411 (3d Cir. 2006)
*Soesilo v. Att'y Gen.*, 239 Fed. Appx. 703 (3d Cir. 2007)
*Suherwanto v. Att'y Gen.*, 230 Fed. Appx. 211 (3d Cir. 2007)
*Setiawan v. Att'y Gen.*, 237 Fed. Appx. 728 (3d Cir. 2007)
*Susanto v. Att'y Gen.*, 244 Fed. Appx. 492 (3d Cir. 2007)
*Massaquoi v. Att'y Gen.*, 313 Fed. Appx. 483 (3d Cir. 2008)
*Sze Fung Cheng v. Att'y Gen.*, 312 Fed. Appx. 460 (3d Cir. 2008)

*Ngo v. Att'y Gen.*, 350 Fed. Appx. 714 (3d Cir. 2009)
*Paprskarz v. Att'y Gen.*, 360 Fed. Appx. 283 (3d Cir. 2010)
*Dolley v. Att'y Gen.*, 440 Fed. Appx. 121 (3d Cir. 2011)
*Mahadeo v. Att'y Gen.*, 455 Fed. Appx. 274 (3d Cir. 2011)
*Lopez-Perez v. Att'y Gen.*, 447 Fed. Appx. 370 (3d Cir. 2011)
*Abazaj v. Att'y Gen.*, 443 Fed. Appx. 725 (3d Cir. 2011)
*Ball v. Att'y Gen.*, 479 Fed. Appx. 443 (3d Cir. 2012)
*Haxhari v. Att'y Gen.*, 459 Fed. Appx. 140 (3d Cir. 2012)
*Cardoza v. Att'y Gen.*, 505 Fed. Appx. 135 (3d Cir. 2012)
*Xing Qiang Zhuo v. Att'y Gen.*, 502 Fed. Appx. 176 (3d Cir. 2012)
*Pitel v. Att'y Gen.*, 528 Fed. Appx. 172 (3d Cir. 2013)
*Kuruca v. Att'y Gen.*, 547 Fed. Appx. 126 (3d Cir. 2013)
*Ferreira v. Att'y Gen.*, 513 Fed. Appx. 184 (3d Cir. 2013)
*Bera v. Att'y Gen.*, 555 Fed. Appx. 129, 132 (3d Cir. 2014)
*Kesuma v, Att'y Gen.*, 555 Fed. Appx. 123 (3d Cir. 2014)

## Fourth Circuit
**Published Cases**
*M.A. A26851062 v. U.S. I.N.S*, 858 F.2d 210 (4th Cir. 1988)
*Crespin-Valladares v. Holder*, 632 F.3d 117 (4th Cir. 2011)
*Mulyani v. Holder*, 771 F.3d 190 (4th Cir. 2014)
*Martinez v. Holder*, 740 F.3d 902 (4th Cir. 2014)
*Cordova v. Holder*, 759 F.3d 332 (4th Cir. 2014)
*Hernandez-Avalos v. Lynch*, 784 F.3d 944 (4th Cir. 2015)
*Cruz v. Sessions*, 853 F.3d 122 (4th Cir. 2017)
*Zavaleta-Policiano v. Sessions*, 873 F.3d 241 (4th Cir. 2017)
*Velasquez v. Sessions*, 866 F.3d 188 (4th Cir. 2017)
*Salgado-Sosa v. Sessions*, 882 F.3d 451 (4th Cir. 2018)

**Unpublished Cases**
*Banegas-Rivera v Lynch*, 664 Fed.Appx. 296 (4th Cir. 2016)

## Fifth Circuit
**Published Cases**
*Adebisi v. I.N.S*, 952 F.3d 910 (5th Cir. 1992)
*Rivas-Martinez v. I.N.S*, 997 F.2d 1143 (5th Cir. 1993)
*Eduard v. Ashcroft*, 379 F.3d 182 (5th Cir. 2004)
*Tesfamichael v. Gonzalez*, 469 F.3d 109 (5th Cir. 2006)
*Tamara-Gomez v. Gonzales*, 447 F.3d 343, 347 (5th Cir. 2006)
*Orellana-Monson v. Holder*, 685 F.3d 511, 518 (5th Cir. 2012)
*Hernandez-De La Cruz v. Lynch*, 819 F.3d 784 (5th Cir. 2016)
*Ramirez-Mejia v. Lynch*, 794 F.3d 485, 488 (5th Cir. 2015)

**Unpublished Cases**
*Gomez v. Gonzales*, 163 Fed. Appx. 268 (5th Cir. 2006)
*Manjee v. Holder*, 544 Fed. Appx. 571 (5th Cir. 2006)

*Venturini v. Mukasey*, 272 Fed. Appx. 397 (5th Cir. 2008)

## Sixth Circuit

**Published Cases**
*Khalili v. Holder*, 557 F.3d 429 (6th Cir. 2009)
*Al-Ghorbani v. Holder*, 585 F.3d 980 (6th Cir. 2009)
*Bonilla-Morales v. Holder*, 607 F.3d 1132 (6th Cir. 2010)
*Bi Xia Qu v. Holder*, 618 F.3d 602 (6th Cir. 2010)
*Kante v. Holder*, 634 F.3d 321 (6th Cir. 2011)
*Marouf v. Lynch*, 811 F.3d 174 (6th Cir. 2016)
*Marikasi v. Lynch*, 840 F.3d 281 (6th Cir. 2016)
*Kamar v. Sessions*, 875 F.3d 811 (6th Cir. 2017)
*Diaz v. Sessions*, 880 F.3d 244 (6th Cir. 2018)

**Unpublished Cases**
*Keita v. Gonzales*, 175 Fed.Appx. 711 (6th Cir. 2006)
*Berishaj v. Gonzales*, 238 Fed.Appx. 57 (6th Cir. 2007)
*El Ghorbi v. Mukasey*, 281 Fed.Appx. 514 (6th Cir. 2008)
*Anyakudo v. Holder*, 375 Fed.Appx. 559 (6th Cir. 2010)
*Abdramane v. Holder*, 569 Fed.Appx. 430 (6th Cir. 2014)

## Seventh Circuit

**Published Cases**
*Hengan v. INS*, 79 F.3d 60 (7th Cir. 1996)
*Chitay -Pirir v. INS*, 169 F.3d 1079 (7th Cir. 1999)
*Galina v. I.N.S.*, 213 F.3d 955 (7th Cir. 2000)
*Bace  v. Ashcroft*, 352 F.3d 1133 (7th Cir. 2003)
*Guchshenkov v. Ashcroft*, 366 F.3d 554 (7th Cir. 2004)
*Mitreva v. Gonzalez*, 417 F.3d 761 (7th Cir. 2005)
*Hor v. Gonzalez*, 421 F.3d 497 (7th Cir. 2005)
*Hernandez v. Baena v. Gonzalez*, 417 F.3d 720 (7th Cir. 2005)
*Orejuela v. Gonzalez*, 423 F.3d 666 (7th Cir. 2005)
*Margos v. Gonzalez*, 443 F.3d 593 (7th Cir. 2006)
*Chakir v. Gonzalez*, 466 F.3d 563 (7th Cir. 2006)
*Kaharudin v. Gonzalez*, 500 F. 3d 619 (7th Cir. 2007)
*Tariq v. Keisler*, 505 F.3d 650 (7th Cir. 2007)
*Garcia v. Gonzalez*, 500 F.3d 615 (7th Cir. 2007)
*Jiang v. Gonzalez*, 485 F.3d 992 (7th Cir. 2007)
*Tariq v. Keisler*, 505 F.3d 650 (7th Cir. 2007)
*Kholyavskiy v. Mukasey*, 540 F.3d 555 (7th Cir. 2008)
*Ingmantoro v. Mukasey*, 550 F. 3d 646 (7th Cir. 2008)
*Ramos v. Holder* , 589 F.3d 426 (7th Cir. 2009)
*Gatimi v. Holder*, 578 F.3d 611 (7th Cir. 2009)
*Sarhan v. Holder*, 658 F.3d 649 (7th Cir. 2011)
*Salim v. Holder*, 728 F.3d 718 (7th Cir. 2013)
*Bitsin v. Holder*, 719 F.3d 619 (7th Cir. 2013)

*Cece v. Holder*, 733 F.3d 662 (7th Cir. 2013)
*Vahora v. Holder*, 707 F.3d 904 (7th Cir. 2013)
*R.R.D. v. Holder*, 746 F.3d 807 (7th Cir. 2014)
*N.L.A. v. Holder*, 744 F.3d 425 (7th Cir. 2014)

**Unpublished Cases**
*Llieshanaku v. Ashcroft*, 100 Fed. Appx. 546 (7th Cir. 2004)
*Esquivel v. Ashcroft*, 105 Fed. Appx. 99 (7th Cir. 2004)
*Yaylacicegi v. Gonzalez*, 175 Fed. Appx. 33 (7th Cir. 2006)
*Rupey v. Mukasey*, 304 Fed. Appx. 453 (7th Cir. 2008)
*Abdelghani v. Holder*, 309 Fed. Appx. 19 (7th Cir. 2009)

<u>**Eighth Circuit**</u>

**Published Cases**
*Yacoub v. INS*, 999 F.2d 1296 (8th Cir. 1993)
*Valioukevitch v. INS*, 251 F.3d 747 (8th Cir. 2001)
*Francois v. INS*, 283 F.3d 926 (8th Cir. 2002)
*Kimumwe v. Gonzales*, 431 F.3d 319 (8th Cir. 2005)
*Suprun v. Gozales*, 442 F.3d 1078 (8th Cir. 2006)
*Flores-Calderon v. Gonzales*, 472 F.3d 1040 (8th Cir. 2007)
*Makatengkeng v. Gonzales*, 495 F.3d 876 (8th Cir. 2007)
*Nabulwala v. Gonzalez*, 481 F.3d 1115 (8th Cir. 2007)
*Beck v. Mukasey*, 527 F.3d 737 (8th Cir. 2008)
*Yatim v. Mukasey*, 531 F.3d 584 (8th Cir. 2008)
*Cubillos v. Holder*, 565 F.3d 1054 (8th Cir. 2009)
*Manani v. Filip*, 552 F.3d 894 (8th Cir. 2009)
*Khilan v. Holder*, 557 F.3d 583 (8th Cir. 2009)
*Guillen-Hernandez v. Holder*, 592 F.3d 883 (8th Cir. 2010)
*Osuji v. Holder*, 657 F.3d 719 (8th Cir. 2011)
*Matul-Hernandez v. Holder*, 685 F.3d 707 (8th Cir. 2012)
*La v. Holder*, 701 F.3d 566 (8th Cir. 2012)
*Salman v. Holder*, 687 F.3d 991 (8th Cir. 2012)
*Edionseri v. Sessions*, 860 F.3d 1101 (8th Cir. 2012)
*De Castro-Gutierrez v. Holder*, 713 F.3d 375 (8th Cir. 2013)
*Gutierrez-Vidal v. Holder*, 709 F.3d 728 (8th Cir. 2013)
*Gathungu v. Holder*, 725 F.3d 900 (8th Cir. 2013)
*Barillas-Mendez v. Lynch*, 790 F.3d 787 (8th Cir. 2015)
*Rodriguez-Mercado v. Lynch*, 809 F.3d 415 (8th Cir. 2015)
*Saldana v. Lynch*, 820 F.3d 970 (8th Cir. 2016)
*Cinto-Velasquez v. Lynch*, 817 F.3d 602 (8th Cir. 2016)
*Fuentes-Erazo v. Session*, 848 F.3d 847 (8th Cir. 2017)
*Lemus-Arita v. Sessions*, 854 F.3d 476 (8th Cir. 2017)

**Unpublished Cases**
*Santacruz v. Lynch*, 666 Fed. Appx. 576 (8th Cir. 2016)
*De La Cruz v. Sessions*, 697 Fed. Appx. 887 (8th Cir. 2017)

<u>**Ninth Circuit**</u>

**Published Cases**
*McMullen v. INS*, 658 F.2d 1312 (9th Cir. 1981)
*Bolanos-Hernandez v. INS*, 767 F.2d 1277 (9th Cir. 1984)
*Del Valle v. Immigration & Naturalization Service*, 776 F.2d 1407 (9th Cir. 1985)
*Arteaga v. INS*, 836 F.2d 1227 (9th Cir. 1988)
*Elnager v. U.S. INS*, 930 F.2d 784 (9th Cir. 1991)
*Singh v. INS*, 94 F.3d 1353 (9th Cir. 1996)
*Surita v. INS*, 95 F.3d 814 (9th Cir. 1996)
*Gomez-Saballos v. INS*, 79 F.3d 912 (9th Cir. 1996)
*Sangha v. INS*, 103 F.3d 1482 (9th Cir. 1997)
*Korablina v. INS*, 158 F.3d 1038 (9th Cir. 1998)
*Mgoian v. INS*, 184 F.3d 1029 (9th Cir. 1999)
*Chouchkov v. INS*, 220 F.3d 1077 (9th Cir. 2000)
*Avetova-Elisseva v. INS*, 213 F.3d 1192 (9th Cir. 2000)
*Quirino Canedo Ochave v. INS*, 254 F.3d 859 (9th Cir. 2001)
*Melkonian v. Ashcroft*, 320 F.3d 1061 (9th Cir. 2003)
*Malty v. Ashcroft*, 381 F.3d 942 (9th Cir. 2004)
*Hoque v. Ashcroft*, 367 F.3d 1190 (9th Cir. 2004)
*Mansour v. Ashcroft*, 390 F.3d 667 (9th Cir. 2004)
*Mashiri v. Ashcroft*, 383 F.3d 1112 (9th Cir. 2004)
*Faruk v. Ashcroft*, 378 F.3d 940 (9th Cir. 2004)
*Castro-Perez v. Gonzales*, 409 F.3d 1069 (9th Cir. 2005)
*Krotova v. Gonzales*, 416 F.3d 1080 (9th Cir. 2005)
*Nahrvani v. Gonzales*, 399 F.3d 1148 (9th Cir. 2005)
*Mohammed v. Gonzales*, 400 F.3d 785 (9th Cir. 2005)
*Smolniakova v. Gonzales*, 422 F.3d 1037 (9th Cir. 2005)
*Ornelas-Chavez v. Gonzales*, 458 F.33d 1052 (9th Cir. 2006)
*Ahmed v. Keisler*, 504 F.3d 1183 (9th Cir. 2007)
*Lolong v. Gonzales*, 484 F.3d 1173 (9th Cir. 2007)
*Nehad v. Mukasey*, 535 F.3d 962 (9th Cir. 2008)
*Karapetyan v. Mukasey*, 543 F.3d 1118 (9th Cir. 2008)
*Xun Li v. Holder*, 559 F.3d 1096 (9th Cir. 2009)
*Wakkary v. Holder*, 558 F.3d 1049 (9th Cir. 2009)
*Donchev v. Mukasey*, 553 F.3d 1206 (9th Cir. 2009)
*Rahimzadeh v. Holder*, 613 F.3d 916 (9th Cir. 2010)

*Afriyie v. Holder*, 613 F.3d 924 (9th Cir. 2010)
*Trung Van Truong v. Holder*, 613 F.3d 938 (9th Cir. 2010)
*Madrigal v. Holder*, 716 F.3d 499 (9th Cir. 2012)
*Quiambao Vitug v. Holder*, 723 F.3d 1056 (9th Cir. 2013)
*Doe v. Holder*, 736 F.3d 871 (9th Cir. 2013)
*Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013)
*Bringas-Rodrigues v. Sessions*, 850 F.3d 1051 (9th Cir. 2017)
*C.J.L.G v. Sessions*, 880 F.3d 1122 (9th Cir. 2017)

**Unpublished Cases**
*Ganut v. Ashcroft*, 85 Fed. Appx. 38 (9th Cir. 2003)
*Velasquez v. Ashcroft*, 81 Fed. Appx. 673 (9th Cir. 2003)
*Mashiri v. Ashcroft*, 2004 U.S. App. LEXIS 22714 (9th Cir. 2004)
*Papazyan v. Gonzales*, 179 Fed. Appx. 428 (9th Cir. 2006)
*Sablina v. Gonzales*, 217 Fed. Appx. 671 (9th Cir.  2007)
*Ebeid v. Mukasey*, 274 Fed. Appx. 508 (9th Cir. 2008)
*Garces v. Mukasey*, 312 Fed. Appx. 12 (9th Cir. 2009)

## Tenth Circuit
**Published Cases**
*Bartesaghi-Lay v. INS*, 9 F.3d 819 (10th Cir. 1993)
*de la Llana-Castellon v. INS*, 16 F.3d 1093 (10th Cir. 1994)
*Krastev v. INS*, 292 F.3d 1268 (10th Cir. 2002)
*Batalova v. Ashcroft*, 355 F.3d 1246 (10th Cir. 2004)
*Niang v. Gonzales*, 422 F.3d 1187 (10th Cir. 2005)
*Hayrapetyan v. Mukasey*, 534 F.3d 1330 (10th Cir. 2008)
*Sidabutar v. Gonzales*, 503 F.3d 1116 (10th Cir. 2010)
*Ritonga v. Holder*, 633 F.3d 971 (10th Cir. 2011)

**Unpublished Cases**
*Nasir v. INS*, 30 Fed. Appx. 812 (10th Cir. 2002)
*Sauveur v. Ashcroft*, 108 Fed. Appx. 557 (10th Cir. 2004)
*Gichema v. Gonzales*, 139 Fed. Appx. 90 (10th Cir. 2005)
*Sagala v. Mukasey*, 295 Fed. Appx. 932 (10th Cir. 2008)

## Eleventh Circuit
**Published Cases**
*Lopez v. United States AG*, 504 F.3d 1341 (11th Cir. 2007)
*Malu v. United States AG*, 764 F.3d 1282 (11th Cir. 2014)

**Unpublished Cases**
*Morehodov v. United States AG*, 270 Fed. Appx. 775 (11th Cir. 2008)
*Lewis v. United States AG*, 512 Fed. Appx. 963 (11th Cir. 2013)
*Hossain v. United States AG*, 630 Fed. Appx. 914 (11th Cir. 2015)

*Alonzo-Rivera v. United States AG,* 649 Fed. Appx. 983 (11th Cir. 2016)
*Jeronimo v. United States AG,* 678 Fed. Appx. 796 (11th Cir. 2017)
*Kapa v. United States AG,* 675 Fed. Appx. 903 (11th Cir. 2017)

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2018, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the District of Columbia by using the appellate CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

Dated: September 28, 2018                    /s Thomas Ragland