# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GRACE, *et al.*

      Plaintiffs,

v.

JEFFERSON BEAUREGARD
SESSIONS III, in his official
capacity as Attorney General of
the United States, *et al.*,

      Defendants.

Civil Action No. 1:18-cv-01853 (EGS)

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO CONSIDER EVIDENCE OUTSIDE OF THE ADMINISTRATIVE RECORD AND MEMORANDUM SUPPORTING DEFENDANTS' CROSS-MOTION TO STRIKE EVIDENCE OUTSIDE OF THE ADMINISTRATIVE RECORD

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

JOSHUA S. PRESS
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
450 5th Street NW
Washington, DC 20530
(202) 305-0106
joshua.press@usdoj.gov

JOSEPH DARROW
CHRISTINA GREER
Trial Attorneys

Dated: October 10, 2018

*Attorneys for Defendants*

- i -

## TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

BACKGROUND ...............................................................................................................6

STANDARDS OF REVIEW...............................................................................................9

ARGUMENT ..................................................................................................................10

I.      Plaintiffs' Extra-Record Evidence Fails to Meet the Record Rule's Exceptions ..............11

        A.      *Past Training Materials* .......................................................................13

        B.      *"Expert" Third Party Declarations* …………………………..……………………14

        C.      *Government Officials' Public Statements and Newspaper Articles* …………… 16

        D.      *Plaintiffs' Declarations and Third-Party Country Reports or Declarations*…… 18

II.     Plaintiffs' Additional Constitutional Claim Does Not Render Extra-Record Evidence Appropriate ................................................................................................................19

CONCLUSION................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Air Transp. Ass'n of Am. v. Nat'l Mediation Bd.*,
  663 F.3d 476 (D.C. Cir. 2011) ................................................................. 1

*Alliance for Natural Health U.S. v. Sebelius*,
  714 F. Supp. 2d 48 (D.D.C. 2010) ............................................................ 5

*Alsaidi v U.S. Dep't of State*,
  292 F. Supp. 3d 320 (D.D.C. 2018) .......................................................... 5

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
  271 F.3d 262 (D.C. Cir. 2001) .......................................................... 14, 15

*Am. Bioscience, Inc. v. Thompson*,
  269 F.3d 1077 (D.C. Cir. 2001) .............................................................. 10

*Am. Wildlands v. Kempthorne*,
  530 F.3d 991 (D.C. Cir. 2008) ................................................................ 10

*Anti-Monopoly, Inc. v. Hasbro, Inc.*,
  958 F. Supp. 895 (S.D.N.Y. 1997) ........................................................... 12

*Bar MK Ranches v. Yuetter*,
  994 F.2d 735 (10th Cir. 1993) .................................................................. 9

*Bellion Spirits, LLC v. United States*, — F. Supp. 3d —,
  2018 WL 4637013 (D.D.C. Sept. 27, 2018) ................................... *passim*

*Bradley v. Weinberger*,
  483 F.2d 410 (1st Cir. 1973) .................................................................... 5

*Calloway v. Harvey*,
  590 F. Supp. 2d 29 (D.D.C. 2008) ......................................... 9, 10, 12, 18

*Camp v. Pitts*,
  411 U.S. 138 (1973) .......................................................... 13, 14, 19, 23

*Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*,
  667 F. Supp. 2d 111 (D.D.C. 2009) ................................................... 11, 12

*Chiayu Chang v. United States Citizenship & Immigration Servs.*,
  254 F. Supp. 3d 160 (D.D.C. 2017) ....................................... 1, 5, 21, 22

*Children's Hosp. Ass'n of Texas v. Azar*,
   300 F. Supp. 3d 190 (D.D.C. 2018) .......................................................................... 2, 4, 12, 17

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) ............................................................................................................. 9, 11, 23

*Commercial Drapery Contractors v. United States*,
   133 F.3d 1 (D.C. Cir. 1998) ....................................................................................................... 1

*Cronin v. U.S. Dep't of Agric.*,
   919 F.2d 439 (7th Cir. 1990) .................................................................................................... 3

*CTS Corp. v. EPA*,
   759 F.3d 52 (D.C. Cir. 2014) ............................................................................................. 13, 19

*Czerkies v. U.S. Dep't of Labor*,
   73 F.3d 1435 (7th Cir. 1996) .................................................................................................. 20

*Dangler v. Yorktown Central Schools*,
   771 F. Supp. 625 (S.D.N.Y. 1991) .......................................................................................... 3

*Darby v. Cisneros*,
   509 U.S. 137 (1993) ................................................................................................................ 22

*Davis v. Pension Ben. Guar. Corp.*,
   815 F. Supp. 2d 283 (D.D.C. 2011) ......................................................................................... 6

*Doraiswamy v. Sec'y of Labor*,
   555 F.2d 832 (D.C. Cir. 1976) ............................................................................................... 14

*Envtl. Def. Fund, Inc. v. Costle*,
   657 F.2d 275 (D.C. Cir. 1981) ................................................................................................. 9

*Esch v. Yeutter*,
   876 F.2d 976 (D.C. Cir. 1989) ............................................................................... 4, 12, 13, 19

*Franks v. Salazar*,
   751 F. Supp. 2d 62 (D.D.C. 2010) ....................................................................................... 2, 5

*Fund for Animals v. Williams*,
   245 F. Supp. 2d 49 (D.D.C. 2003) ........................................................................................... 2

*Fund for Animals v. Williams*,
   391 F. Supp. 2d 191 (D.D.C. 2005) ................................................................................. *passim*

*Gilmore v. Palestinian Interim Self-Government Auth.*,
   843 F.3d 958 (D.C. Cir. 2016) ................................................................ 17

*Gleklen v. Democratic Cong. Campaign Comm., Inc.*,
   199 F.3d 1365 (D.C. Cir. 2000) ............................................................... 17

*Greer v. Paulson*,
   505 F.3d 1306 (D.C. Cir. 2007) ............................................................... 17

*Guy v. Glickman*,
   945 F. Supp. 324 (D.D.C. 1996) ............................................................... 3

*Harvard Pilgrim Health Care v. Thompson*,
   318 F. Supp. 2d 1 (D.R.I. 2004) ............................................................... 21

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ................................................................................ 23

*Herman v. Assoc. Elec. Coop., Inc.*,
   994 F. Supp. 1147 (E.D. Mo. 1998) .......................................................... 3

*Hill Dermaceuticals, Inc. v. FDA*,
   709 F.3d 44 (D.C. Cir. 2013) ............................................................ *passim*

*IMS, P.C. v. Alvarez*,
   129 F.3d 618 (D.C. Cir. 1997) ..................................................... 10, 12, 19

*In re United States*,
   138 S. Ct. 443 (2017) ............................................................................. 21

*In re United States*,
   875 F.3d. 1200 (9th Cir. 2017) ................................................................ 21

*Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*,
   58 F. Supp. 3d 1191 (D.N.M. 2014) ..................................................... 5, 20

*Ketcham v. U.S. Nat'l Park Serv.*, No. 16-cv-0017,
   2016 WL 4268346 (D. Wyo. Mar. 29, 2016) ............................................ 21

*Koretoff v. Vilsack*,
   841 F. Supp. 2d 1 (D.D.C. 2012) .............................................................. 5

*Marcum v. Salazar*,
   751 F. Supp. 2d 74 (D.D.C. 2010) ........................................................ 9, 10

*Markham v. United States*,
    434 F.3d 1185 (9th Cir. 2006) ................................................................ 20

*Marshall Cty. Health Care Auth. v. Shalala*,
    988 F.2d 1221 (D.C. Cir. 1993) ......................................................... 14, 15

*Matter of A-B-*,
    27 I. & N. Dec. 316 (A.G. 2018) .............................................................. 1

*Matter of A-K-*,
    24 I. & N. Dec. 275 (BIA 2007) ............................................................. 15

*Matter of A-M-E- & J-G-U-*,
    24 I. & N. Dec. 69 (BIA 2007) ............................................................... 15

*Matter of A-R-C-G-*,
    26 I. & N. Dec. 388 (BIA 2014) ............................................................. 15

*Matter of A-T-*,
    24 I. & N. Dec. 296 (BIA 2007) ............................................................. 15

*Matter of A-T-*,
    24 I. & N. Dec. 617 (A.G. 2008) ............................................................ 15

*Matter of A-T-*,
    25 I. & N. Dec. 4 (BIA 2009) ................................................................. 15

*Matter of C-A-*,
    23 I. & N. Dec. 951 (BIA 2006) ............................................................. 15

*Matter of C-C-*,
    23 I. & N. Dec. 899 (BIA 2006) ............................................................. 15

*Matter of D-I-M-*,
    24 I. & N. Dec. 448 (BIA 2008) ............................................................. 15

*Matter of E-A-G-*,
    24 I. & N. Dec. 591 (BIA 2008) ............................................................. 15

*Matter of G-A-*,
    23 I. & N. Dec. 366 (BIA 2002) ............................................................. 15

*Matter of H-L-H- & Z-Y-Z-*,
    25 I. & N. Dec. 209 (BIA 2010) ............................................................. 15

*Matter of J-B-N- & S-M-*,
    24 I. & N. Dec. 208 (BIA 2007) ........................................................................... 15

*Matter of J-E-*,
    23 I. & N. Dec. 291 (BIA 2002) ........................................................................... 16

*Matter of J-F-F-*,
    23 I. & N. Dec. 912 (A.G. 2006) .......................................................................... 15

*Matter of J-H-S-*,
    24 I. & N. Dec. 196 (BIA 2007) ........................................................................... 15

*Matter of J-S-*,
    24 I. & N. Dec. 520 (A.G. 2008) .......................................................................... 15

*Matter of J-W-S-*,
    24 I. & N. Dec. 185 (BIA 2007) ........................................................................... 15

*Matter of K-R-Y- and K-C-S-*,
    24 I. & N. Dec. 133 (BIA 2007) ........................................................................... 15

*Matter of L-E-A-*,
    27 I. & N. Dec. 40 (BIA 2017) ............................................................................. 15

*Matter of L-S-*,
    25 I. & N. Dec. 705 (BIA 2012) ........................................................................... 15

*Matter of M-E-V-G-*,
    26 I. & N. Dec. 227 (BIA 2014) ........................................................................... 15

*Matter of M-F-W- & L-G-*,
    24 I. & N. Dec. 633 (BIA 2008) ........................................................................... 15

*Matter of N-M-*,
    25 I. & N. Dec. 526 (BIA 2011) ........................................................................... 15

*Matter of N-M-A-*,
    22 I. & N. Dec. 312 (BIA 1998) ........................................................................... 15

*Matter of O-Z- & I-Z-*,
    22 I. & N. Dec. 23 (BIA 1998) ............................................................................. 15

*Matter of S-A-K- and H-A-H-*,
    24 I. & N. Dec. 464 (BIA 2008) ........................................................................... 15

*Matter of S-E-G-,*
   24 I. & N. Dec. 579 (BIA 2008) ............................................................ 15

*Matter of S-V-,*
   22 I. & N. Dec. 1306 (BIA 2000) .......................................................... 16

*Matter of T-Z-,*
   24 I. & N. Dec. 163 (BIA 2007) ............................................................ 15

*Matter of W-G-R-,*
   26 I. & N. Dec. 208 (BIA 2014) ............................................................ 15

*Munsell v. U.S. Dep't of Agric.,*
   509 F.3d 572 (D.C. Cir. 2007) .............................................................. 22

*Nat'l. Broad. Co., Inc. v. United States,*
   319 U.S. 190 (1943) .............................................................................. 23

*Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs,*
   448 F. Supp. 2d 1 (D.D.C. 2006) ............................................ 10, 11, 12

*Peoples Gas, Light & Coke Co. v. U.S. Postal Serv.,*
   658 F.2d 1182 (7th Cir. 1981) .............................................................. 23

*POM Wonderful, LLC v. FTC,*
   777 F.3d 478 (D.C. Cir. 2015) ......................................................... 5, 22

*R.L. Inv. Ltd. Partners v. INS,*
   86 F. Supp. 2d 1014 (D. Haw. 2000) ................................................... 11

*SEC v. Chenery Corp.,*
   332 U.S. 194 (1947) ................................................................................ 3

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs,*
   255 F. Supp. 3d 101 (D.D.C. 2017) ............................................... 12, 18

*Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Servs. Workers Int'l Union,*
   *AFL-CIO-CLC v. Pension Ben. Guar. Corp.,* 707 F.3d 319 (D.C. Cir. 2013) ......................... 4

*Stone v. Cha*o,
   284 F. Supp. 2d 241 (D. Mass. 2003) .................................................. 20

*Student Aid Funds, Inc. v. Devos,*
   237 F. Supp. 3d 1 (D.D.C. 2017) ................................................... 19, 21

- vii -

*Styrene Info. & Research Ctr., Inc. v. Sebelius,*
　　851 F. Supp. 2d 57 (D.D.C. 2012) ...................................................................... 12, 16, 18

*Sugrue v. Derwinski,*
　　26 F.3d 8 (2d Cir. 1994) .......................................................................................... 20

*Tagg Bros. & Moorhead v. United States,*
　　280 U.S. 420 (1930) ................................................................................................. 23

*Theodore Roosevelt Conservation P'ship v. Salazar,*
　　616 F.3d 497 (D.C. Cir. 2010) ................................................................................. 17

*Trump v. Hawaii,*
　　138 S. Ct. 2392 (2018) ............................................................................................. 17

*Walter O. Boswell Mem'l Hosp. v. Heckler,*
　　749 F.2d 788 (D.C. Cir. 1984) ................................................................................... 3

*Whitaker v. Thompson,*
　　248 F. Supp. 2d 1 (D.D.C. 2002) ............................................................................. 22

*WildEarth Guardians v. Salazar,*
　　670 F. Supp. 2d 1 (D.D.C. 2009) ............................................................................. 11

## STATUTES

5 U.S.C. § 701 ..................................................................................................................... 1

5 U.S.C. § 706 ................................................................................................................... 10

5 U.S.C § 706(2)(B) ....................................................................................................... 4, 21

8 U.S.C. § 1158 ................................................................................................................... 1

## CIVIL RULES

Federal Rule of Civil Procedure 65 ..................................................................................... 2

## **INTRODUCTION**

In this case Plaintiffs invoke the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, to challenge (1) the Attorney General's recent decision clarifying the law on asylum claims under 8 U.S.C. § 1158, *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), as applied to their credible fear proceedings, and (2) United States Citizenship and Immigration Services' ("USCIS") July 11, 2018 Policy Memorandum (hereinafter, "PM"), which is interpretive guidance informing its line officers how to apply *A-B-*. Plaintiffs also assert separation-of-powers and due-process claims that are redundant of their APA claim. *See* ECF No. 3 ("Complaint") at ¶¶ 86–96; ECF No. 57-1 at 34 n.16, 37 n.18.

It is well-settled in this Circuit that where Plaintiffs raise an APA claim, review is limited to the administrative record as certified by the agency. *See, e.g.*, *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013). And that is true also where, as here, Plaintiffs package claims similar to their APA claims as constitutional claims, where those claims challenge the substance of agency action. *See, e.g.*, *Bellion Spirits, LLC v. United States*, — F. Supp. 3d —, 2018 WL 4637013, at *5 (D.D.C. Sept. 27, 2018) (Boasberg, J.) (collecting cases); *Chiayu Chang v. United States Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 162 (D.D.C. 2017) (Bates, J.) (same). It is similarly well-settled that "[i]n [this] Circuit, there is a well-established presumption that an agency has properly designated the administrative record absent clear evidence to the contrary." *Greater Yellowstone Coal. v. Kempthorne*, No. 07-cv-2112, ECF No. 54, at 1–2 (D.D.C. May 23, 2008) (Sullivan, J.). Thus, a party may not supplement the record absent "a significant showing—variously described as a strong, substantial, or prima facie showing—that it will find material in the agency's possession indicative of bad faith or an incomplete record," *Air Transp. Ass'n of Am. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487–88 (D.C. Cir. 2011), and may not rely on extra-record materials absent a showing of "bad faith or improper behavior on the part of the agency, or that, 'the record is so bare that it prevents effective judicial review.'" *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 198 (D.D.C. 2005) (citing *Commercial Drapery Contractors v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998) and *Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 58 (D.D.C. 2003)); *see also Children's Hosp. Ass'n of Texas v. Azar*, 300 F. Supp. 3d 190, 202

(D.D.C. 2018) (Sullivan, J.) (extra-record material not properly part of record-review case absent showing of "gross procedural deficiencies—such as where the administrative record itself is so deficient as to preclude effective review").

Defendants undertook good-faith negotiations with Plaintiffs' counsel concerning a briefing schedule after Plaintiffs stated they would not contest the record in this case and the Court ordered that any such disputes must be raised no later than August 29, 2018. *See* Minute Order Aug. 13, 2018. Plaintiffs now seek to inject over _1,800 pages of non-record evidence_ into the record. Plaintiffs suggest they may circumvent the record rule by arguing that such circumvention is appropriate where Plaintiffs allege that Defendants *may* have previously employed different practices or where Plaintiffs assert constitutional claims, however redundant of their APA claims they may be. *See* Plaintiffs' Motion to Consider Evidence Outside of the Administrative Record (ECF No. 66) and accompanying Memorandum in Support thereto (ECF No. 66-1), at 1 (hereinafter, "Plaintiffs' Motion" or "Pls.' Mot."). Plaintiffs' eleventh-hour request is contrary to D.C. Circuit law and is unsupported by any necessary showing to invoke the exceedingly rare exceptions to the record rule. *See, e.g.*, *Franks v. Salazar*, 751 F. Supp. 2d 62, 67 (D.D.C. 2010) (describing such cases as "rare bird[s]"). Plaintiffs' Motion should be denied.

Plaintiffs acknowledge that cases like this "are normally limited to the Administrative Record." *Id.* Nevertheless, they now ask the Court to allow them to submit six different categories of extra-record materials in support of their APA and due process claims and to demonstrate their entitlement to an injunction:[1] (1) outdated training materials, (2) improper expert and hearsay

---

[1]    Plaintiffs assert these normal rules do not apply because they filed a motion for preliminary injunction that they believe the Court combined with merits briefing under Rule 65(a)(2). *See* ECF No. 64-1 at 13 n.10. The Court has not issued any such order, but even if it had, it is well-settled that "consolidation of [] motions for preliminary-injunctive relief and summary judgment under Federal Rule of Civil Procedure 65 effectively moots the Court's consideration of the preliminary injunctive factors because the court will enter judgment on the merits." *Azar*, 300 F. Supp. 3d at 202 (Sullivan, J.). In other words, if the preliminary injunction is combined with "a full hearing" on a plaintiff's claim, "considerations of irreparable harm are out the window." *Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 445 (7th Cir. 1990). Plaintiffs' attempts to invoke injunction-related concepts like irreparable harm and balancing of the equities are therefore irrelevant. *See Herman v. Assoc. Elec. Coop., Inc.*, 994 F. Supp. 1147, 1153 (E.D. Mo. 1998), *rev'd on other grounds*, 172 F.3d 1078 (8th Cir. 1999) (noting how the "Court need not and does not further address the factors

testimony, (3) Defendants' public statements, (4) newspaper articles, (5) declarations by the Plaintiffs concerning their asylum claims, and (6) third-party country-condition reports or declarations. *See infra* nn. 2–7.

Plaintiffs' voluminous compilation of facts not part of the record and not considered by the agencies in reaching the substantive decisions now challenged stands in stark contrast to the fundamental tenet of administrative law that the rationality of an agency decision or action must be assessed based on the records before each agency at the time. *Guy v. Glickman*, 945 F. Supp. 324 (D.D.C. 1996) ("It is well settled that judicial review of agency action is generally restricted to the full administrative record before the agency at the time the decision was made.... The focal point for judicial review should be the administrative record already in existence, not some new record completed initially in the reviewing court."). As the Supreme Court has previously instructed, "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action *solely by the grounds invoked by the agency*." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (emphasis added). Plaintiffs' Motion thus upends the long-settled principle of administrative law that "a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) (per curiam) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)). This request reinforces that what Plaintiffs are actually seeking is not merely a facial challenge to *A-B-* or the PM, but instead a *de novo* trial that is essentially a "do-over" of *A-B-* itself, except with this Court standing in for the Attorney General as the decision-maker. But "in judicial review of agency action, weighing the evidence is not the court's function." *Utd. Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Servs. Workers Int'l Union, AFL-CIO-CLC v. Pension Ben. Guar. Corp.*, 707 F.3d 319, 325 (D.C. Cir. 2013). And as the D.C. Circuit has previously explained,

---

ordinarily considered in the preliminary injunction context"); *Dangler v. Yorktown Central Schools*, 771 F. Supp. 625, 632 (S.D.N.Y. 1991) ("If the trial of the merits is accelerated and consolidated with the preliminary injunction hearing, then no determination of irreparable harm need be made by this court."). In short, Plaintiffs' preference to proceed under Rule 65(a)(2) in no way authorizes injunctive relief.

when "the substantive soundness of [an] agency's decision is under scrutiny," the principle "that judicial review of agency action is normally to be confined to the administrative record ... exerts its maximum force[.]"*Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989).

In support of their request for this exceptional result, the Plaintiffs invoke the narrow circumstances under which a court may permit a plaintiff to introduce extra-record evidence in a challenge to final agency action. But those narrow circumstances have no application to this case. Courts generally permit plaintiffs to introduce extra-record evidence only when upon a showing of "bad faith or improper behavior on the part of the agency, or that, 'the record is so bare that it prevents effective judicial review.'" *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 198 (D.D.C. 2005); *accord Azar*, 300 F. Supp. 3d 202 (Sullivan, J.) (such a showing is only generally made when there are "gross procedural deficiencies" impairing a reviewing court's ability to engage in effective judicial review). But here, although Plaintiffs disagree with the merits of both *A-B-* and the PM, they have provided nothing to suggest that the agencies have come close to acting in bad faith or that this Court is incapable of effectively reviewing those agency actions on the basis of the administrative record.

Finally, Plaintiffs note that they have raised a constitutional claim and argue that such claims provide an accepted means of circumventing the procedural requirements of the APA, including the record-review principles that restrict the use of extra-record evidence. But Plaintiffs' "additional" due process claim is necessarily redundant of Plaintiffs' APA claims. This is true because the APA expressly contemplates review of constitutional claims, *see* 5 U.S.C § 706(2)(B), and there is no reason to depart from the APA's procedures in reviewing the constitutional claim that Plaintiffs have brought. Indeed, case law makes clear that "when a constitutional challenge to agency action requires evaluating the substance of an agency's decision made on an administrative record, that challenge *must be judged on the record before the agency*." *See Bellion*, 2018 WL 4637013, at *7 (emphasis added). Plaintiffs' claims to the contrary present a significant departure from the consistent practice of courts in this Circuit. *See, e.g.*, *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 500 (D.C. Cir. 2015); *Alsaidi v U.S. Dep't of State*, 292 F. Supp. 3d 320, 328 (D.D.C. 2018); *Chiayu Chang*, 254 F. Supp. 3d at 161–62; *Alliance for Natural Health U.S. v. Sebelius*,

4

714 F. Supp. 2d 48, 60 (D.D.C. 2010); *see also Franks*, 751 F. Supp. 2d at 67.

Plaintiffs should not be allowed to bolster their case and circumvent the record rule by recasting their APA claims in constitutional garb, especially when their constitutional claim is indistinguishable from their APA claim. *See* Complaint at ¶ 88 (invoking both 5 U.S.C, § 706(2)(A) and (C)). There is no legitimate suggestion here that the record is incomplete, and Plaintiffs' injection of a constitutional argument should not be allowed to provide an end-run around the record rule. If courts were to "'allow fresh … submission of new evidence and legal arguments'" whenever a plaintiff raises a constitutional claim, then that "would 'incentivize every unsuccessful party to agency action to allege ... constitutional violations' in order to 'trade in the APA's restrictive procedures for the more evenhanded ones of the Federal Rules of Civil Procedure.'" *Chiayu Chang*, 254 F. Supp. 3d at 161–62 (quoting *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1238 (D.N.M. 2014)); *Bradley v. Weinberger*, 483 F.2d 410, 415 (1st Cir. 1973) (Coffin, C.J.) (characterizing judicial review of agency action as a "re-view, a second look at the same material, not a re-doing").

Accordingly, the Court should deny Plaintiffs' motion to augment the record on review with extra-record materials and strike those materials in their entirety. *See infra* nn. 2–7. In addition, Defendants move to strike Plaintiffs' "Statement of Facts," ECF No. 65-2, which are not properly before the Court in this APA case. *See, e.g.*, *Koretoff v. Vilsack*, 841 F. Supp. 2d 1, 5 (D.D.C. 2012) (Huvelle, C.J.) *aff'd*, 707 F.3d 394 (D.C. Cir. 2013) ("Defendant is correct in arguing that plaintiffs' submission was improper."); *Davis v. Pension Ben. Guar. Corp.*, 815 F. Supp. 2d 283, 292 (D.D.C. 2011) (Kennedy, J.) ("Plaintiffs' motion cites extensively to the attached statement of material facts not in genuine dispute, which does not belong in an administrative record case"). Correspondingly, those entries should be struck from the record and not considered.

## BACKGROUND

Until Plaintiffs sought to inject **_1,828_** pages of extra-record materials into this case, the record in this case presented a straightforward issue. As the Court advised the parties at a hearing on Plaintiffs' motion for an emergency stay of removal: "So it seems to me ... I'm going to want

the administrative record, I'm going to give plaintiffs a chance to file a motion for summary judgement pursuant to our local and federal rules; I'm going to give the defendants an opportunity to file cross motions for summary judgment and/or a motion to dismiss raising whatever arguments it wants to raise, and give the plaintiffs a chance to file a reply; schedule an argument[.]" Tr. (Aug. 9, 2018) 25:13-20. The Court's scheduling order, in turn, specifically instructed the parties to meet and confer concerning the scope of the administrative record and, if Plaintiffs disagreed with the scope of the evidentiary record, required the Plaintiffs to so inform the court through a motion no later than August 29, 2018. *See* Minute Entry (Aug. 13, 2018) ("The parties shall attempt to resolve record disputes amongst themselves by no later than August 24, 2018. If the parties resolve the record disputes amongst themselves, the parties are ordered to submit a joint schedule proposal for further proceedings by no later than August 27, 2018. If the parties are unable to resolve any record disputes, the parties shall adhere to the following schedule for resolution of any disputes by the Court: *Any motion to complete/compel/supplement shall be filed by no later than August 29, 2018*[.]" (emphasis added)).

Following several rounds of conferral, Plaintiffs, by e-mail dated Saturday, August, 25, 2018, at 4:34 p.m (EDT), told Defendants: "we do not intend to dispute that you've produced the record relied on by the agency." Plaintiffs also did not indicate any intention to seek to supplement the record or introduce extra-record materials. Based on that representation, and consistent with this Court's scheduling order, the parties then negotiated a swift briefing schedule. *See* ECF No. 40. That briefing schedule did not contemplate time to challenge record or evidentiary issues because Plaintiffs had indicated that they would not challenge the record and because the Court's deadline for doing so had lapsed as of August 29, 2018.

Nevertheless, on Tuesday, September 25, at 4:35 p.m. (EDT)—one day before Plaintiffs' summary-judgment brief was due and two weeks after Defendants filed their opening brief—Plaintiffs informed Defendants for the first time that they intended to "file a motion to consider evidence outside the administrative record." To that end, Plaintiffs have introduced 1,828 pages of extra-record materials, including improper expert testimony, declarations from non-party attorneys, statements of various current and former government actors, and documents not part of

the administrative record. *See* Pls.' Mot. at 1 (citing ECF Nos. 10-2 through 10-7, 12-1 through 12-8, and 64-2 through 64-8). Specifically, the Plaintiffs have sought to put forth (1) outdated training manuals, memoranda, and a government brief,[2] (2) improper expert declarations of third-party interpretation of *A-B-*,[3] (3) public statements of various government officials,[4] (4)

---

[2] Department of Homeland Security, Asylum Officer Basic Training Course, Female Asylum Applications and Gender-Related; Asylum Officer Basic Training, Female Asylum Applicants & Gender-Related Claims (Dec. 5, 2002), attached as Exhibit E to Mujahid Declaration (ECF No. 10-5); Refugee,  Asylum, and International Operations Directorate Officer ("RAIO") Training Course, Credible Fear of Persecution and Torture Determinations (Feb. 13, 2017), attached as Exhibit F to Mujahid Declaration (ECF No. 10-5); Asylum Officer Basic Training, Reading Caselaw (January 9, 2006), attached as Exhibit G to Mujahid Declaration (ECF No. 10-6); RAIO Training Course, Reading and Using Case Law (Apr., 2012), attached as Exhibit H to Mujahid Declaration (ECF No. 10-6); RAIO Training Course, Credible Fear (Feb. 28, 2014), attached Exhibit I to Mujahid Declaration (ECF No. 10-6); RAIO Training Course, Credible Fear of Persecution and Torture Determinations (Apr. 14, 2006) attached as Exhibit J to Mujahid Declaration (ECF No. 10-6); *Memorandum from Phyllis Coven, INS Office of International Affairs to all INS Asylum Officers and HQASM Coordinators, Considerations for Asylum Officers Adjudicating Asylum Claims for Women* (May 26, 1995), cited in 72 Interpreter Releases 771 (June 5, 1995), attached as Exhibit 1 to 2d Mujahid Declaration (ECF No. 64-4); DHS, Asylum Officer Basic Training Course, Female Asylum Applications and Gender-Related Claims (2009), attached as Exhibit 2 to 2d Mujahid Declaration (ECF No. 64-4); DHS Br., *Matter of R-A-* (Feb 19, 2004), attached as Exhibit 3 to 2d Mujahid Declaration (ECF No. 64-4).

[3] The Declarations of Rebecca Jamil, Ethan Nasr, Ruby L. Powers, Allegra Love, and Jodi Goodwin. ECF No. 64-5. This would also include Retired Immigration Judges and Former Members of the Board of Immigration Appeals Statement in Response to Attorney General's Decision in *Matter of A-B-*, June 11, 2018, attached as Exhibit 8 to 2d Mujahid Declaration (ECF No. 64-4); Retired Immigration Judges and Former Members of the Board of Immigration Appeals Statement in Response to Latest Attack on Judicial Independence, July 30, 2018, attached as Exhibit 9 to 2d Mujahid Declaration (ECF No. 64-4).

[4] Attorney General Jefferson Beauregard Sessions III, Remarks to the Executive Office for Immigration Review, Falls Church, VA (Oct. 12, 2017), attached as Exhibit 4 to 2d Mujahid Declaration (ECF No. 64-4); Attorney General Jefferson Beauregard Sessions III, Remarks to the Executive Office for Immigration Review Legal Training Program, Washington, D.C. (June 11, 2018), attached as Exhibit 5 to 2d Mujahid Declaration (ECF No. 64-4); Secretary Kirstjen M. Nielsen, Department of Homeland Security, Testimony at Hearing Before the Senate Committee on Judiciary (Jan. 16, 2018), attached as Exhibit 7 to 2d Mujahid Declaration (ECF 64-4); Attorney General Jefferson Beauregard Sessions III, Remarks to the Largest Class of Immigration Judges in History for the Executive Office for Immigration Review, Fall River, VA (Sept. 10, 2018), attached as Exhibit 6 to 2d Mujahid Declaration (ECF No. 64-4).

newspaper articles,[5] (5) declarations of the Plaintiffs themselves,[6] and (6) third-party country reports or declarations.[7]

None of these documents is in the administrative record or was considered by the agencies in issuing *A-B-* or promulgating the PM. *See* ECF No. 41. Accordingly, these documents are not

---

[5]     Liz Robins, *In Immigration Courts, It Is Judges vs. Justice Department*, New York Times, Sept. 7, 2018, attached as Exhibit 14 to 2d Mujahid Declaration (ECF No. 64-4); Seth Freed Wessler, *'When I Say I'm Complicit, This Is What I Mean*, Topic (Sept. 2018), attached as Exhibit 15 to 2d Mujahid Declaration (ECF No. 64-4); Executive Office of Immigration Review, *EOIR Performance Plan: Adjudicative Employees*, attached as Exhibit 16 to 2d Mujahid Declaration (ECF No. 64-4); Joel Rose, *Justice Department Rolls Out Quotas for Immigration Judges*, NPR, Apr. 3, 2018, attached as Exhibit 17 to 2d Mujahid Declaration (ECF No. 64-4); Sibylla Brodzinsky & Ed Pilkington, *US Government Deporting Central American Migrants to Their Deaths*, The Guardian (Oct. 12, 2015), attached as Exhibit R to Mujahid Declaration (ECF No. 10-7); Elizabeth Kennedy, American Immigration Council, *No Childhood Here: Why Central American Children are Fleeing Their Homes*, at 5 (July 1, 2014), attached as Exhibit S to Mujahid Declaration (ECF No. 10-7); Nicholas Kristof, *We're Helping Deport Kids to Die*, N.Y. Times (July 16, 2016), attached as Exhibit T to Mujahid Declaration (ECF No. 10-7).

[6]     Declarations of Grace, Carmen, Mina, Mona, Gio, Gina, Maria, Nora, and Cindy. ECF Nos. 12-1 – 12-9) (filed under seal).

[7]     UNHCR, *Women on the Run* (2015), attached as Exhibit K to Mujahid Declaration (ECF No. 10-6); UNHCR, *Children on the Run* (2014), attached as Exhibit L to Mujahid Declaration (ECF No. 10-6); Amnesty International, *El Salvador 2017/2018*, attached as Exhibit M to Mujahid Declaration (ECF No. 10-7); Geneva Declaration on Armed Violence and Development, "Lethal Violence against Women and Girls," *Global Burdens of Armed Violence 2015: Every Body Counts*, attached as Exhibit N to Mujahid Declaration (ECF No. 10-7); U.S. Dep't of State Overseas Sec. Advisory Council, *El Salvador 2018 Crime & Safety Report*, attached as Exhibit O to Mujahid Declaration (ECF No. 10-7); Rashida Manjoo, *Report of the Special Rapporteur on Violence Against Women, Its Causes and Consequences* (Mar. 31, 2015), attached as Exhibit P to Mujahid Declaration (ECF No. 10-7); Center for Gender & Refugee Studies and National University of Lanús, *Childhood and Migration in Central and North America: Causes, Policies, Practices and Challenge*s (Feb. 2015), attached as Exhibit Q to Mujahid Declaration (ECF No. 10-7); UNHCR, *Guidance Note on Refugee Claims Relation to Victims of Organized Gangs*, (March, 2010), attached as Exhibit 10 to 2d Mujahid Declaration (ECF No. 64-4); UNHCR, *Eligibility Guidelines for Assessing the International Protection Needs of Asylum-Seekers from El Salvador* (March, 2016), attached as Exhibit 11 to 2d Mujahid Declaration (ECF No. 64-4); UNHCR, *Eligibility Guidelines for Assessing the International Protection Needs of Asylum-Seekers from Honduras* (July 27, 2016), attached as Exhibit 12 to 2d Mujahid Declaration (ECF No. 64-4); UNHCR, *America Country of Origin Series: Guatemala Background Paper* (Oct. 2013), attached as Exhibit 13 to 2d Mujahid Declaration (ECF No. 64-4); Joint Declaration of Shannon Drysdale Walsh, Cecilia Menjívar, and Harry Vanden (ECF No. 64-6); Joint Declaration of Cecilia Menjívar and Harry Vanden (ECF No. 64-8); Joint Declaration of Cecilia Menjívar, M. Gabriela Torres, and Harry Vanden (ECF No. 64-7).

properly part of the administrative record or the evidentiary record before this Court on APA review. *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981) ("The focal point for judicial review should be the administrative record already in existence, not some new record completed initially in the reviewing court.").

## STANDARDS OF REVIEW

Ordinarily, judicial review under the APA is confined to "the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). The agency must compile for the court an administrative record that includes "all information it considered either directly or indirectly." *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010); *accord Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993).

"[A]bsent clear evidence to the contrary, an agency is entitled to a presumption that it properly designated the administrative record." *Calloway v. Harvey*, 590 F. Supp. 2d 29, 37 (D.D.C. 2008). However, in exceptional cases, this presumption of regularity may be rebutted and a court may either (1) supplement an incomplete record with materials that were before the agency and were considered directly or indirectly by the agency decisionmaker, or (2) permit the introduction of "extra-record evidence." *Marcum*, 751 F. Supp. 2d at 78. Extra-record evidence, "consists of 'evidence outside of or in addition to the administrative record that was not necessarily considered by the agency.'" *Calloway*, 590 F. Supp. 2d at 37 (quoting *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006)). The D.C. Circuit has four circumstances when extra-record evidence may be considered: (1) when the agency failed to examine all relevant factors; (2) when the agency failed to explain adequately its grounds for decision; (3) when the agency acted in bad faith; or (4) when the agency engaged in improper behavior. *See IMS, P.C. v. Alvarez*, 129 F.3d 618, 624 (D.C. Cir. 1997). "Underlying all of these exceptions is the assessment that resort to extra-record information [is necessary] to enable judicial review to become effective," *Calloway*, 590 F. Supp. 2d at 38 (internal quotations omitted), or that the agency has somehow acted in bad faith, *see, e.g.*, *Fund for Animals*, 391 F.

Supp. 2d at 198 (collecting cases).

## ARGUMENT

Under the APA, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. "The record consists of the order involved, any findings or reports on which that order is based, and 'the pleadings, evidence, and other parts of the proceedings before the agency.'" *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (quoting Fed. R. App. P. 16(a)). Thus, "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal," and "[t]he entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). This framework explains why "[i]t is a widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that were before the agency at the time its decision was made." *IMS*, 129 F.3d at 623. And this principle is equally well-established even where constitutional claims may be raised: "[W]hen a constitutional challenge to agency action requires evaluating the substance of an agency's decision made on an administrative record, that challenge *must be judged on the record before the agency*." *See Bellion*, 2018 WL 4637013, at *7 (collecting cases). Based on this background understanding, plaintiffs have an overwhelmingly high burden to rebut the "strong presumption of regularity" accompanying the agency's designation of the record. *Pac. Shores*, 448 F. Supp. 2d at 5. Although there are limited exceptions to the rule that judicial review of agency action is confined the administrative record, *see, e.g.*, *Overton Park*, 401 U.S. at 420, no such exception applies here, and Plaintiffs' motion must be denied in its entirety—with all extra-record materials they have submitted struck from the record. *See, e.g.*, *R.L. Inv. Ltd. Partners v. INS*, 86 F. Supp. 2d 1014, 1018 (D. Haw. 2000) ("The court's review is based on the administrative record that was before the agency at the time of the agency's decision. … In deciding the present motions [for summary judgment], this court will not consider evidence such as the expert opinion of Michael J. O'Malley and the affidavit of Richard Bahar, which the [agency] did not have."), *adopted by* 273 F.3d 874 (9th Cir. 2001).

10

## I.   PLAINTIFFS' EXTRA-RECORD EVIDENCE FAILS TO MEET THE RECORD RULE'S EXCEPTIONS.

Plaintiffs' request—that this Court consider in the first instance evidence that was never before the Attorney General or USCIS—"is extraordinary." *The Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 113 (D.D.C. 2009) ("*CHAPA*"). There are two general circumstances in which a plaintiff may ask a court to consider documents that are not part of an agency's certified record, both of which are sometimes referred to as "supplement[ing]" the record. *See WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 5 n.4 (D.D.C. 2009). First, plaintiffs may seek to "add[] ... documents the agency considered" but failed to include in the certified record (or in other words, plaintiff may *complete* the record). *Pac. Shores*, 448 F. Supp. 2d at 5. Second, plaintiffs may seek "review of extra-record evidence," that is, "evidence outside of or in addition to the administrative record that was not necessarily considered by the agency." *Id.* Only this second form of adding evidence, which is more aptly characterized as *supplementing* the agency's administrative record, is at issue here.

The D.C. Circuit has identified four narrow exceptions to the general prohibition on considering extra-record evidence: "(1) when the agency failed to examine all relevant factors; (2) when the agency failed to explain adequately its grounds for decision; (3) when the agency acted in bad faith; or (4) when the agency engaged in improper behavior." *Styrene Info. & Research Ctr., Inc. v. Sebelius*, 851 F. Supp. 2d 57, 63 (D.D.C. 2012) (citing *IMS*, 129 F.3d at 624); *see also Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 255 F. Supp. 3d 101, 124 (D.D.C. 2017) (citing *IMS* for the same four exceptions); *Azar*, 300 F. Supp. 3d, 202–04 (Sullivan, J.).[8] The common thread that runs through these exceptions is "the assessment that 'resort to extra-record information is *necessary* to enable judicial review to become effective,'" *Calloway*, 590 F. Supp.

---

[8]   Although the D.C. Circuit initially identified eight circumstances under which plaintiffs could introduce extra-record evidence, *see Esch*, 876 F.2d at 991, "the Circuit appears to have narrowed these exceptions to [the] four" cited above. *Styrene Info.*, 851 F. Supp. 2d at 63; *see also Hill*, 709 F.3d at 47 ("*Esch* has been given a limited interpretation since it was decided[.]"); *CHAPA*, 667 F. Supp. 2d at 116 (noting that the court in *IMS* "identified four instances in which accepting the plaintiffs' extra-record evidence would be appropriate"). In any event, Plaintiffs rely on only these four exceptions in their brief. *See* Pls.' Mot. at 3.

2d at 38 (emphasis added) (alterations omitted) (quoting *Esch*, 876 F.2d at 991), or that the agency has acted in bad faith. *See Fund for Animals*, 391 F. Supp. 2d at 198 (collecting cases).

This case does not present one of the four "highly exceptional[] circumstances when a court may review evidence beyond the administrative record." *CHAPA*, 667 F. Supp. 2d at 115. Before turning to the individual exceptions though, it is worth noting how Plaintiffs never specifically indicate which of the exceptions they believe actually apply here and, in that regard, have waived the argument.[9]  To be sure, Plaintiffs outline some of the considerations that shape whether a court should permit a plaintiff to introduce extra-record evidence in the context of the factors considered by the agencies. *See* Pls.' Mot. at 4–6. But Plaintiffs never link the specific evidence they seek to introduce to that legal framework. They have simply supplied an exceptional volume of documents that might have provided a bigger picture, *see supra* nn. 2–7, but overlook the four narrow categories where extra-record evidence may be introduced. That is not how it works. *See Bellion*, 2018 WL 4637013, at *4 ("Bellion's desire to critique the agencies' analysis implies not that the agency failed to consider a factor, but that Bellion disagrees with its conclusion as to those factors. The nature of the evidence Bellion seeks to add confirms that its actual beef is with the *substance* of the agency's decision. Such a position does not permit Bellion to supplement the record."). Accordingly, courts do not permit plaintiffs to introduce extra-record evidence except in the face of "gross procedural deficiencies—such as where the administrative record itself is so deficient as to preclude effective review." *Hill*, 709 F.3d at 47; *see also CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) (same). And when "the substantive soundness of [an] agency's decision is under scrutiny," the principle "that judicial review of agency action is normally to be confined to the administrative record ... exerts its maximum force[.]" *Esch*, 876 F.2d at 991. This gets to the core problem of Plaintiffs' Motion—they have disputed "the substantive soundness" of both *A-B-* and USCIS's PM. Indeed, they allege that *A-B-* and the PM are contrary to prior agency, Attorney General, or federal court precedents and statutory provisions of the Immigration and Nationality

---

[9]     *See, e.g.*, *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n. 11 (S.D.N.Y. 1997) ("failure to provide argument on a point at issue constitutes abandonment of the issue" and "provides an independent basis for dismissal"), *aff'd*, 130 F.3d 1101; *Jackson v. Bank of Am.*, 2015 U.S. Dist. LEXIS 129853, *10 (M.D. Ga. Sept. 28, 2015) (collecting cases).

Act ("INA"). Pls.' Mot. at 1. But no category of extra record materials introduced should get around the record rule.

### A. Past Training Materials

Regarding the first category of extra-record materials Plaintiffs seek to introduce, past training materials and policies, *see supra* n.2, the Plaintiffs argue that "[t]he propriety of extra-record review of the prior policies is confirmed by Defendants' repeated reference in their Summary Judgment Motion to some of the prior policy material Plaintiffs now seek to put in evidence." Pls.' Opp'n at 5. But again that is not how APA review is supposed to work. *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam) ("[T]he focal point for judicial review should be the administrative record *already in existence*, not some new record made initially in the reviewing court." (emphasis added)). In this regard, the materials once used may have changed over time and were not in front of the agencies when making their decisions or performing the challenged actions. Probing how or why those decisions were made in a challenge to the substantive merits of the decision is improper under this standard. *Doraiswamy v. Sec'y of Labor*, 555 F.2d 832, 842–43 (D.C. Cir. 1976) ("As the Court has made plain, there is no occasion for a judicial probe beyond the confines of an administrative record affording enough 'contemporaneous explanation of the administrative decision' to 'indicate[] the determinative reason for the final action taken.'" (quoting *Pitts*, 411 U.S. at 143)). Moreover, Defendants' Motion for Summary Judgment only looked at training materials to rebut a specific point Plaintiffs cited in their Complaint that was incorporated by reference. Regardless, the fact that Defendants rebutted specific points in the Plaintiffs' Complaint is not a concession that Plaintiffs may avoid the record rule. *See Bellion*, 2018 WL 4637013, at *7.

### B. "Expert" Third Party Declarations

Plaintiffs' attempt to introduce their many self-serving declarations of the state of immigration law prior to *A-B-* is equally off-base. Normally, the way to show that the substance of agency action is contrary to prior case law or agency decisions or statutory provisions is to cite to contrary prior case law, agency decisions, or statutory provisions. *See, e.g.*, *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 266 (D.C. Cir. 2001) (claim that agency decision

violates statute it "is charged with enforcing" requires no more than "the statute and legislative history"); *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) ("The entire case on review is a question of law, and only a question of law"). But not for Plaintiffs. Instead, they would have this Court rely upon self-serving expert declarations or third-party, hearsay testimonials conveying the subjective views of non-parties concerning what these precedents, statutory provisions, and agency decisions mean. *See supra* nn. 3–4, 6.

By even introducing such materials, Plaintiffs forget how this case involves a *facial* challenge to an administrative adjudication, *A-B-*, and an interpretive document, the PM, that at most requires review of a legal determination by the Attorney General, and an agency's guidance instructing its employees on how to apply the Attorney General's legal conclusions. Such review is quintessentially a legal determination that can be made by reviewing the INA, relevant agency and federal court decisions, and the administrative record. *See Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) ("The entire case on review is a question of law, and only a question of law."); *see also Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 266 (D.C. Cir. 2001) (claim that agency decision violates statute it "is charged with enforcing" requires no more than "the statute and legislative history"). Indeed, any claim that *A-B-* or the PM breaks with past policies—which it does not—is readily ascertainable by simply reviewing the very "past policies," *i.e.* legal decisions issued by the Attorney General, the BIA, and federal courts of appeals concerning what standards should govern asylum claims.[10]

---

[10]   For example, the BIA has issued at least eight decisions interpreting the term "particular social group," *see, e.g.*, *Matter of L-E-A-*, 27 I. & N. Dec. 40 (BIA 2017); *Matter of A-R-C-G-*, 26 I. & N. Dec. 388 (BIA 2014); *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (BIA 2014); *Matter of W-G-R-*, 26 I. & N. Dec. 208 (BIA 2014); *Matter of E-A-G-*, 24 I. & N. Dec. 591 (BIA 2008); *Matter of S-E-G-*, 24 I. & N. Dec. 579 (BIA 2008); *Matter of A-M-E- & J-G-U-*, 24 I. & N. Dec. 69 (BIA 2007); *Matter of C-A-*, 23 I. & N. Dec. 951 (BIA 2006), and three precedential decisions interpreting the REAL ID Act's "one central reason" standard, *see also Matter of L-E-A-*, 27 I. & N. Dec. 40 (BIA 2017); *Matter of N-M-*, 25 I. & N. Dec. 526 (BIA 2011); *Matter of J-B-N- & S-M-*, 24 I. & N. Dec. 208 (BIA 2007), and several affecting particular types of asylum claims, *see Matter of A-T-*, 24 I. & N. Dec. 296 (BIA 2007), *overruled by Matter of A-T-*, 24 I. & N. Dec. 617 (A.G. 2008); *Matter of J-S-*, 24 I. & N. Dec. 520 (A.G. 2008); *see also*, *Matter of L-S-*, 25 I. & N. Dec. 705 (BIA 2012); *Matter of H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. 209 (BIA 2010); *Matter of A-T-*, 25 I. & N. Dec. 4 (BIA 2009); *Matter of M-F-W- & L-G-*, 24 I. & N. Dec. 633 (BIA 2008); *Matter of S-A-K- and H-A-H-*, 24 I. & N. Dec. 464 (BIA 2008); *Matter of D-I-M-*, 24 I. & N. Dec.

Plaintiffs' heavy reliance on "factual" declarations submitted by *attorneys* expressing their personal views of what the law was and how they believe the Attorney General changed it is entirely improper. *See* ECF Nos. 64-1 at 13, 33–34, 41, 59. For example, the Plaintiffs admit that their submission of the Declaration of Deborah Anker "is not a factual declaration," but instead provides her opinion and "common understandings of various facets of credible fear and asylum law." Pls.' Mot. 4 n.3. The vast majority of their third-party declarations fit this bill. *See supra* n. 3.

Plaintiffs' Motion implicitly acknowledges this problem and, as an anticipated alternative, requests "that the Court treat the[ir] declaration[s] as … *amicus curiae* brief[s]. Pls.' Mot. at 4 n.3. This is likely because the declarations from Anker, Nasr, and Nijam merely provide their opinions as to what the law was and the impact of *A-B-*. Similarly, the beliefs of a former Immigration Judge or Asylum Officer are immaterial to the questions at hand, which can all be answered by looking at the law—not to outside opinions about what the law is or should be. The same is true regarding the declarations from private-bar immigration attorneys. *See* ECF No. 64-5 at 10–15. For that matter, briefs filed in prior litigation that were not before the Attorney General in the litigation at issue (that is, *A-B-*) are irrelevant. *See* ECF No. 64-4, Exhibit 3, DHS Brief, *Matter of R-A-* (Feb. 19, 2004). This is reinforced by how the questions in this litigation relate to USCIS's interpretation of the Attorney General's decision in *A-B-*. The author of prior briefs before the BIA or Attorney General is U.S. Immigration and Customs Enforcement, which is not a party to this litigation.

### C. Government Officials' Public Statements and Newspaper Articles

With the next two categories of extra-record evidence, public statements and newspaper articles, *see supra* nn. 4–5, the Plaintiffs seem to want to combine "when the agency failed to

---

448 (BIA 2008); *Matter of A-K-*, 24 I. & N. Dec. 275 (BIA 2007); *Matter of J-H-S-*, 24 I. & N. Dec. 196 (BIA 2007); *Matter of J-W-S-*, 24 I. & N. Dec. 185 (BIA 2007); *Matter of T-Z-*, 24 I. & N. Dec. 163 (BIA 2007); *Matter of K-R-Y- and K-C-S-*, 24 I. & N. Dec. 133 (BIA 2007); *Matter of C-C-*, 23 I. & N. Dec. 899 (BIA 2006); *Matter of N-M-A-*, 22 I. & N. Dec. 312 (BIA 1998); *Matter of O-Z- & I-Z-*, 22 I. & N. Dec. 23 (BIA 1998). There have also been at least four decisions interpreting the requirements for protection under the United Nations Convention Against Torture. *Matter of J-F-F-*, 23 I. & N. Dec. 912 (A.G. 2006); *Matter of G-A-*, 23 I. & N. Dec. 366 (BIA 2002); *Matter of J-E-*, 23 I. & N. Dec. 291 (BIA 2002); *Matter of S-V-*, 22 I. & N. Dec. 1306 (BIA 2000).

examine all relevant factors," *Styrene Info.*, 851 F. Supp. 2d at 63, with evidence of purported bias so that they could somehow meet the record-rule's bad-faith exception. *See* Pls.' Mot. at 5. But in this confusion, the Plaintiffs have forgotten how the agency is entitled to a "presumption that [it] has properly designated the administrative record absent clear evidence to the contrary." *Greater Yellowstone Coal. v. Kempthorne*, No. 07-cv-211, ECF No. 54, at 1–2 (May 23, 2008) (Sullivan, J.). The also appear to have forgotten the rules of hearsay. *See, e.g.*, *Gilmore v. Palestinian Interim Self-Government Auth.*, 843 F.3d 958, 973 (D.C. Cir. 2016) (finding no error in granting summary judgment where nonmovant offered only "inadmissible hearsay"); *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) ("Because Greer's evidence about Carter's statement is 'sheer hearsay,' it 'counts for nothing' on summary judgment." (quoting *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000))).

Regardless, the Plaintiffs here have provided no such "clear evidence" that the record is either incomplete or that there was in any bad faith in its compilation. They have only provided what they perceive to be statements indicative of bias. But the Supreme Court's recent decision in *Trump v. Hawaii* makes plain that reviewability of immigration decisions does not work that way. 138 S. Ct. 2392, 2421 (2018) ("[P]laintiffs and the dissent challenge the entry suspension based on their perception of its effectiveness and wisdom. They suggest that the policy is overbroad and does little to serve national security interests. But we cannot substitute our own assessment for the Executive's predictive judgments on such matters[.]"). In this regard, it is well-settled that Plaintiffs may only rely on extra-record materials by making an actual showing of "bad faith or improper behavior on the part of the agency[.]" *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 198 (D.D.C. 2005) (collecting cases). In other words, "evidence [must be] provided" of such deficiencies. *Azar*, 300 F. Supp. 3d at 202 (Sullivan, J.). Plaintiffs acknowledge these limitations on record review, but fail to make *any* showing concerning bad faith. Pl.'s Mot. at 6. Without having made "a strong showing of bad faith or improper behavior," *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010) (citation omitted), the Plaintiffs' Motion to add these categories of extra-record evidence should be denied.

### D. Plaintiffs' Declarations and Third-Party Country Reports or Declarations

Turning to the declarations of the Plaintiffs themselves and their third-party country reports, *see supra* nn. 6–7, it is plain that Plaintiffs' attempt to introduce this evidence only to bolster their substantive criticism of the Attorney General's decision in *A-B-* and USCIS's implementation PM, rather than to "enable judicial review to become effective." *Calloway*, 590 F. Supp. 2d at 38 (citation omitted). That alone is sufficient reason to deny Plaintiffs' Motion. But even with these categories, there is no real suggestion that either the Attorney General or USCIS "failed to examine all relevant factors" in deciding *A-B-* or drafting the PM. *Styrene Info.*, 851 F. Supp. 2d at 63. The Plaintiffs clearly disagree with the Attorney General's legal analysis and the result reached in *A-B-*, and, by extension, the USCIS PM, but contentious factors of asylum law are not *unexamined* factors. In essence, the Plaintiffs' argument to introduce these documents conflates their challenge to the legality of the Attorney General's decision and the USCIS PM, with the adequacy of the record needed to review those actions. Although both the Attorney General and USCIS did examine all relevant factors in considering their decision or PM issuance, even when an agency does not address each factor "with the depth or ultimate conclusion the [plaintiff] would prefer, ... [d]isagreement with an agency's analysis is not enough to warrant the consideration of extra-record evidence[.]" *Standing Rock*, 255 F. Supp. 3d at 124–25.

This is borne out by how neither the Attorney General nor USCIS "failed to explain adequately its grounds for decision." *Styrene Info.*, 851 F. Supp. 2d at 63. That exception appears to be what Plaintiffs are invoking when they argue that "the government has not adequately explained its justification for departing from prior policies." Pls.' Mot. at 5. Here again, though, Plaintiffs conflate the *substantive* adequacy of Defendants' actions—which this Court will assess at summary judgment, applying the relevant APA and Fifth Amendment principles—with the distinct question of whether the *record* is adequate for this Court to make that assessment. This is not enough to get around the record rule. The Plaintiffs obviously disagree with the Attorney General's and USCIS's conclusions. But "[t]his is not a case where the agency failed 'to explain administrative action [so] as to frustrate effective judicial review.'" *IMS*, 129 F.3d at 624 (quoting

*Pitts*, 411 U.S. at 142–43). Instead, the purpose of the evidence plainly is to call into question "the substantive soundness of the agenc[ies'] decision." *Esch*, 876 F.2d at 991.

At bottom, the Plaintiffs can proceed before this Court on the basis of the current record, or they can try to return to the agency to introduce new evidence and create a new record for review. But because the current administrative record is not "so deficient as to preclude effective review," *Hill*, 709 F.3d at 47, the Plaintiffs should not be permitted to construct a new record here before proceeding to summary judgment. As Judge Boasberg concluded just two weeks ago: "it is only where there are '*gross procedural deficiencies*' that render the 'administrative record ... so deficient as to preclude judicial review; that a plaintiff may add more than the agency had before it." *Bellion*, 2018 WL 4637013, at *5 (citing *CTS Corp.*, 759 F.3d at 64; quoting *Hill*, 709 F.3d at 47); *see also Esch*, 876 F.2d at 992 (permitting supplementation only where the agency "failed woefully in complying with the hearing requirement" such that "[n]one of the proceedings that did occur was conducted in a manner conducive to obtaining the relevant facts"); *Utd. Student Aid Funds, Inc. v. Devos*, 237 F. Supp. 3d 1, 6 (D.D.C. 2017) (finding that lack of any evidence on key issue was a qualifying "gross procedural deficiency"). Here, on the other hand, for the reasons already mentioned, the administrative record is sufficiently developed on the challenged points.

## II.   PLAINTIFFS' ADDITIONAL CONSTITUTIONAL CLAIM DOES NOT RENDER EXTRA-RECORD EVIDENCE APPROPRIATE.

Plaintiffs alternatively argue that regardless of whether they demonstrate bad faith or gross procedural deficiencies—which they categorically have failed to do—they may also submit extra-record evidence because they have invoked a separate constitutional claim. Specifically, Plaintiffs assert the Court must permit extrinsic *hearsay* evidence from third parties about the mind-state of asylum officers and immigration judges because they have pleaded a constitutional due process claim in addition to their APA claim. Pls.' Mot. at 7–12. This is entirely mistaken because Plaintiffs' due process claim essentially asserts that *A-B-* and the PM as a substantive matter require asylum officers to deny credible fear claims premised on domestic or gang-related violence. *See* Complaint at ¶ 96. But even if that were true (it is not), that claim is redundant of their APA claim asserting the same precise injury—the alleged unlawfulness of *A-B-* and its progeny. The Plaintiffs should not be permitted an end-run around the record rule merely because

their counsel are adept at dressing up standard administrative-law claims in constitutional garb. *See, e.g.*, *Markham v. United States*, 434 F.3d 1185, 1187–88 (9th Cir. 2006); *Czerkies v. U.S. Dep't of Labor*, 73 F.3d 1435, 1433 (7th Cir. 1996) (en banc) (Posner, C.J.) ("The government does not violate the Constitution every time it mistakenly denies a claim for benefits .... This is a case of a claim for benefits 'cloaked in constitutional terms.' Czerkies has affixed the constitutional label to a garden-variety claim for benefits[.]")); *Sugrue v. Derwinski*, 26 F.3d 8, 10–11 (2d Cir. 1994); *cf. also Stone v. Chao*, 284 F. Supp. 2d 241, 247 (D. Mass. 2003) ("Plaintiff … is … trying to morph his constitutional counts from 'benefits' causes of action into requests for injunctive relief. This is an unacceptable form of artful pleading[.]"). In short, the Court should not judge Plaintiffs' constitutional cause of action on the basis of a different record, created for the first time in this Court.

This rule of administrative law has been accepted by the vast majority of courts across the country and, more importantly, is the rule adopted by numerous judges in this district court. As Judge Boasberg recently explained, "when a constitutional challenge to agency action requires evaluating the substance of an agency's decision made on an administrative record, that challenge must be judged on the record before the agency." *Bellion*, 2018 WL 4637013, at *7 (collecting cases). The reason is simple: "permitting a broader record on judicial review for a constitutional claim would 'incentivize every unsuccessful party to agency action to allege bad faith, retaliatory animus, and constitutional violations to trade in the APA's restrictive procedures for the more even-handed ones of the Federal Rules of Civil Procedure.'" *Id.* (quoting *Jarita Mesa*, 58 F. Supp. 3d at 1237–38. In that case, the plaintiff brought claims under the APA and both the First and Fifth Amendments. Much like this case, the Bellion plaintiff sought to supplement the record with two peer-reviewed scientific articles and three declarations—arguing that his constitutional claims should provide him with an opportunity to go beyond the administrative record. *Id.* at *1–2, *5. Judge Boasberg disagreed that constitutional claims somehow changed the rules of how to judge an agency's actions as revealed by the record. *See id.* at *7; *cf. also In re United States*, 875 F.3d 1200, 1211 (9th Cir. 2017) (Watford, J., dissenting) ("If the record compiled by the agency is inadequate to support the challenged action, the reviewing court will usually be required to vacate

19

the agency's action and remand for additional investigation or explanation. So in most cases the agency bears the risk associated with filing an incomplete record, not the challengers."), *vacated by In re United States*, 138 S. Ct. 443 (2017).

This exact same reasoning was adopted last year by Judge Bates. In *Chiayu Chang v. USCIS*, the court concluded that the addition of constitutional claims in a complaint challenging final agency action does not override the ordinary limitations on the scope of the record and discovery under the APA. *See* 254 F. Supp. 3d at 163 ("Plaintiffs cite no authority for the proposition that [their constitutional] claim is a separate cause of action that exists outside the APA and is therefore exempt from the record review rule"). Indeed, the APA expressly authorizes constitutional challenges to agency action, *see* 5 U.S.C. § 706(2)(B)—a provision that would be superfluous if the APA's procedural limitations never applied to constitutional claims. *See Harvard Pilgrim Health Care v. Thompson*, 318 F. Supp. 2d 1, 10 (D.R.I. 2004) ("The APA's restriction of judicial review to the administrative record would be meaningless if any party seeking review based on ... constitutional deficiencies was entitled to broad-ranging discovery."); *Ketcham v. U.S. Nat'l Park Serv.*, No. 16-cv-0017, 2016 WL 4268346, at *2 (D. Wyo. Mar. 29, 2016) ("To distinguish between a 'stand-alone constitutional challenge' and an 'APA challenge[]' ... would run afoul of Congress's intent."). Regardless of the out-of-circuit case law Plaintiffs rely upon (much of which was distinguished in *Chiayu Chang*), the Plaintiffs' decision to alternatively style their challenge as a constitutional claim, rather than a substantive challenge under the APA, should not enable it to expand the record that was before the agency at the time of the decision at issue in this case.

In any event, although there remains "some disagreement among district courts" about the issue generally, *Chiayu Chang*, 254 F. Supp. 3d at 161, courts in this circuit routinely review constitutional challenges similar in kind to the Plaintiffs seek to bring here on the basis of the administrative record. In *Whitaker v. Thompson*, for instance, Judge Kessler conducted "a review of the record upon which the FDA relied" in assessing whether the agency violated the First Amendment by "prohibiting dietary supplements' labels from including the health claim that 'Consumption of antioxidant vitamins may reduce the risk of certain kinds of cancers.'" 248 F.

Supp. 2d 1, 2, 11 (D.D.C. 2002). Similarly, in *POM Wonderful*, the D.C. Circuit explained that "[i]n reviewing whether there is appropriate scientific substantiation for the claims made [about the health benefits of pomegranate-based products], our task is only to determine if the Commission's finding is supported by substantial evidence on the record as a whole." 777 F.3d 478, 493 (D.C. Cir. 2015) (citation omitted). The court initially articulated that rule in the statutory portion of its analysis, but it applied the same approach for the petitioners' First Amendment claim. *See id.* at 500 ("We conclude that the Commission's findings of deception are supported by substantial evidence *in the record*[.]" (emphasis added)). And in *Munsell v. U.S. Department of Agriculture*, the D.C. Circuit held that the USDA's administrative exhaustion statute required the plaintiff to exhaust his administrative remedies even with respect to his First Amendment claim. In *Munsell*, the plaintiff spoke out against a federal official in the USDA's Food Safety and Inspection Service and alleged that a federal official retaliated against him by moving forward with an enforcement action. 509 F.3d 572, 573 (D.C. Cir. 2007). The court nevertheless found that the federal official's actions were "indisputably subject to review under the APA: 'When an aggrieved party [seeking judicial review under the APA] has exhausted all administrative remedies expressly prescribed by statute or agency rule, the agency action is final ... and therefore subject to judicial review.'" *Id.* at 578–79 (quoting *Darby v. Cisneros*, 509 U.S. 137, 146 (1993)).

"There appears to be a common thread running through these cases: when a constitutional challenge to agency action requires evaluating the substance of an agency's decision made on an administrative record, that challenge must be judged on the record before the agency." *Bellion*, 2018 WL 4637013, at *7. This is as it should be, as the APA and Supreme Court cases predating the APA require that federal agency action be reviewed pursuant to the materials upon which agency action was based. *See Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (noting how the "APA did not significantly alter the 'common law' of judicial review of agency action" (citation omitted)); *Peoples Gas, Light & Coke Co. v. U.S. Postal Serv.*, 658 F.2d 1182, 1191 (7th Cir. 1981) (citing cases for the proposition that the APA "has been widely interpreted as being merely declaratory of the common law of reviewability and standing existing at the time of the statute's enactment in 1948"). The presence of Plaintiffs' constitutional claim does not alter this rule and

21

courts are not free to create and review "some new record made initially in the reviewing court." *Overton Park*, 401 U.S. at 416; *Camp*, 411 U.S. at 142; *accord Nat'l. Broad. Co., Inc. v. United States*, 319 U.S. 190, 227 (1943) ("The court below correctly held that its inquiry was limited to review of the evidence before the Commission."); *Tagg Bros. & Moorhead v. United States*, 280 U.S. 420, 443–44 (1930) (Brandeis, J.) (concluding that "[t]he validity of an order of the Secretary ... must be determined upon the record of the proceedings before him" and noting how "[t]o allow his findings to be attacked or supported in court by new evidence would substitute the court for the administrative tribunal"). The Plaintiffs should not be allowed to upend this legion of cases merely because they are clever enough to figure out that what is allegedly arbitrary or capricious may equally be characterized as an alleged violation of due process.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Consider Evidence Outside of the Administrative Record and strike those entries.

DATED: October 10, 2018                           Respectfully Submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

*/s/ Joshua S. Press*
JOSHUA S. PRESS
Trial Attorney
Office of Immigration Litigation
District Court Section
Civil Division, U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 305-0106
Fax: (202) 305-7000
e-Mail: joshua.press@usdoj.gov

JOSEPH DARROW
Trial Attorney

CHRISTINA GREER
Trial Attorney

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this October 10, 2018, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to all parties of record.

*/s/ Joshua S. Press*
JOSHUA S. PRESS
Trial Attorney