# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GRACE, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-01853-EGS |
| | ) | |
| JEFFERSON BEAUREGARD | ) | |
| SESSIONS III, in his official | ) | |
| capacity as Attorney General of | ) | |
| the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION FOR STAY

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director, Office of Immigration Litigation
U.S. Department of Justice, Civil Division
450 5th Street NW
Washington, DC 20530
Tel. (202) 307-4293
Erez.R.Reuveni@usdoj.gov

JOSEPH DARROW
CHRISTINA P. GREER
JOSHUA S. PRESS
Trial Attorneys

Dated: December 19, 2018          *Attorneys for Defendants*

**DISCUSSION**

Defendants respectfully request that, to the extent the Court issues injunctive relief that reaches beyond the Plaintiffs and concerns the five aspects of *Matter of A-B-* and the Policy Memorandum that the Court declares unlawful, the Court should stay that injunction pending a decision by the government whether to appeal, and if there is such an appeal, through the duration of the appeal.  "To assess the propriety of a stay of an injunction pending appeal, the Court looks to four factors: '(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.'"  *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, Civ. A. No. 16-1534 (JEB), 2017 WL 1402139, at *1 (D.D.C. Mar. 14, 2017) (quoting *Cuomo v. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)); *see also Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842-44 (D.C. Cir. 1977).  The Court should apply each of these factors "flexibly according to the unique circumstances of each case." *McSurley v. McClellan*, 697 F.2d 309, 317 (D.C. Cir. 1982). Accordingly, "the necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors." *Wash. Metro.*, 559 F.2d at 843-44 (rejecting "a wooden 'probability' requirement" in favor of "an analysis under which the necessary showing on the merits is governed by the balance of equities as revealed through an examination of the other three factors").

Here, all factors support a stay of any injunction other than as applied to Plaintiffs pending a decision by the government whether to appeal, and if there is such an appeal, through the duration of the appeal in the unique circumstances of this case.

*First*, as the Court itself recognized, the Court is not issuing the equivalent of "[c]lass-wide

relief," which "would entail an Order requiring new credible fear interviews for all similarly situated individuals, and for the government to return to the United States all deported individuals who were affected by the policies at issue in this case. Plaintiffs do not request, and the Court will not order, such relief." Order at 100, n. 31.  Rather, the Court is "declar[ing] an action unlawful" and issuing an order "to prevent that action from violating the rights of the very people"—i.e. the Plaintiffs—that "it affects." *Id.* at 100.

That conclusion is consistent with the statutory scheme.  Congress did not contemplate an order issued under 8 U.S.C. § 1252(e)(3) would enjoin operation of any expedited removal procedure or policy beyond its application to plaintiffs seeking relief.  Rather, Congress made clear that any order would be limited to "judicial review of determinations under section 1225(b) and its implementation." 8 U.S.C. § 1252(e)(3)(A).  A "determination under section 1225(b) and its implementation" is an individual "determin[ation] that an alien . . . is inadmissible" and "order[ed] . . . removed" or subject to expedited credible-fear screening and the implementation of those statutory provisions. *Id*. § 1225(b)(1)(A)(i) & (ii).  In other words, this Court reviews—and should issue relief that extends only so far as—the expedited removal determinations of the individuals before the court. *Am. Immigration Lawyers Ass'n v. Reno (AILA),* 199 F.3d 1352, 1360 (D.C. Cir. 2000) (claim may be brought "by, and only by, aliens against whom the new procedures ha[ve] been applied").  It is in the context of those "determinations under section 1225(b) and its implementation" that this Court "determin[es] . . . whether . . . a regulation, or a written policy . . . issued . . . to implement such section . . . is . . . in violation of law." 8 U.S.C. § 1252(e)(3)(A)(ii).  Thus, once the Court finds that a regulation or policy violates the law, the appropriate relief is to vacate the expedited removal determination that was issued based on that erroneous policy.  Such an order is then subject to expedited appeal. *Id*. § 1252(e)(3)(C) & (E).  As the D.C. Circuit has

explained, Congress imposed these limits "in order to cabin judicial review," and "Congress, having barred class actions," did not "intend[] to permit actions on behalf of a still wider group of aliens, actions in which no class representative appears as a party and the plaintiffs are unconstrained by the requirements of Federal Rule of Civil Procedure 23." *AILA*, 199 F.3d at 1359, 1364.

Relief should therefore be limited under § 1252(e)(3) to the individual Plaintiffs before this Court, pending a possible appeal by the government.  It would only make sense to consider implementing this Court's decision more broadly to the expedited removal system as a whole after a higher court reviews this Court's decision, or the government foregoes the opportunity to seek such review.  One reason for this is the importance of applying consistent and readily discernable policies within the expedited removal system—should this Court's decision not hold up on appeal, it would result in changing and confusing alterations of the policies needed to screen tens of thousands of aliens arriving at our borders.  *See* U.S. Border Patrol Southwest Border Apprehensions by Sector FY2018, https://www.cbp.gov/newsroom/stats/usbp-sw-border-apprehensions (396,579 apprehensions on Southwest border in FY 2018) (last modified Oct. 23, 2018).   Indeed, the legislative history of the 1996 amendments to the Immigration and Nationality Act—which this court relied on extensively in its decision, *see* Order at 2, 9, 89, 91, makes clear Congress's intent that new procedures should be able to remain in force during review by a higher court.  *See* H.R. Rep. No. 104-469(I), "Immigration in the National Interest Act of 1995" (Mar. 4, 1996) (explaining that the limitations on relief "do not preclude challenges to . . . new procedures, but the procedures will remain in force while such lawsuits are pending," that "single district courts or courts of appeal do not have authority to enjoin" such procedures, and that only "the Supreme Court [has the authority] to enjoin the operation" of new expedited removal procedures).

*Second*, Article III and equitable principles similarly warrant a stay of any injunction as to any aliens other than Plaintiffs here because both Article III and equitable principles require that relief be no broader than necessary to redress the plaintiffs' injuries.  Under Article III, "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury."  *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018).  And the rule in equity is that injunctions "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."  *Madsen v. Women's Health Ctr., Inc*., 512 U.S. 753, 765 (1994).  Indeed, nationwide injunctions "did not emerge until a century and a half after the founding," and they "take a toll on the federal court system— preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch."  *Trump v. Hawaii*, 138 S. Ct. 2392, 2408, 2425 (2018), (Thomas, J., concurring).  While Congress intended challenges to the expedited removal system to be brought in a single Court, it also evidenced an intent that those challenges be limited to individual claims, and that as explained the policies remain in force during appellate review.

*Third*, the D.C. Circuit itself has indicated that in section 1252(e)(3) cases, relief should be limited to the actual aliens before the Court.  As that Court explained in *AILA*, "[o]ne cannot come away from reading [8 U.S.C. § 1252(e), (f), and (g)] without having the distinct impression that Congress meant to allow litigation challenging the new system by, and only by, *aliens against whom the new procedures had been applied*."  199 F.3d 1352, 1359–60 (D.C. Cir. 2000) (emphasis added).  The Court explicitly rejected the argument that relief in such cases should "sweep in nearly all aliens anywhere in the world who have tried or will try to enter the United States," *id.* at 1359, which is the effect of an injunction immediately barring the government from implementing the portions of *Matter of A-B-* and the Policy Memorandum with respect to all aliens not before

4

the court and without appellate consideration of these issues.  Moreover, although this Court suggested section 1252(f) does not limit the proper scope of any injunction, the D.C. Circuit disagreed, noting that section 1252(f) does govern section 1252(e)(3) challenges, including challenges to implementing regulations, and noting that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [the expedited secondary inspection provisions] *other than with respect to the application of such provisions to an individual alien against whom the proceedings under such chapter have been initiated*." *Id.* (emphasis added).  Thus, any suggestion that this Court may enter broad injunctive relief beyond the Plaintiffs in this case is in tension with the D.C. Circuit's decision in *AILA*.  That tension further warrants a stay to allow the government to determine whether to appeal and, if it does appeal, during the pendency of that appeal.

*Fourth*, no party will be harmed by a stay of any injunction pending a decision by the government to appeal, and if there is such an appeal, through the duration of such an appeal.  Given this Court's ruling, the Government agrees that Plaintiffs themselves are entitled to relief consistent with the Court's opinion and as outlined in the proposed order submitted by the government.  But Plaintiffs may not invoke harm to third-party aliens who may seek to enter the country in the future, and certainly have no Article III standing to raise claims on their behalf.  *See, e.g.*, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (no "judicially cognizable interest" in preventing the Government from enforcing the law against third parties).

The Government, however, will be irreparably harmed by the absence of any stay of an injunction.  Importantly, the number of expedited removals in a year are in the hundreds of thousands, there is no right under the Constitution to obtain court consideration of a request to enter the country, and the rights conferred by Section 1252(e)(3) are highly circumscribed to

individual claims.  In this context, Congress did not intend for relief, based on equitable factors, to be obtained by individual persons subject to expedited removal or for relief to extend beyond that individual case. Instead, as discussed, challenges and the opportunity for appellate review would go forward without interfering with expedited removal.  *See id*. § 1252(e)(3)(D); *id*. § 1252(f)(1).  Any injunction that enjoins operation of some aspect of the expedited removal system beyond these Plaintiffs by definition harms the government, with no corresponding harm to the Plaintiffs.  *See, e.g.*, *Landon v. Plasencia*, 459 U.S. 21, 34 (1982).   And order that enjoins a governmental entity from enforcing actions taken pursuant to statutes enacted by the duly elected representatives of the people constitutes an irreparable injury that weighs heavily against the entry of broad injunctive relief.  *See New Motor Vehicle Bd.  v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977).

## CONCLUSION

Accordingly, given the statutory text and its legislative history, the potential conflict with Circuit precedent a systemic injunction may pose, the irreparable harm to the government a broad injunction would pose, and the absence of any harm to the Plaintiffs, the government respectfully requests that the Court stay any order entering an injunction with respect to any aliens other than Plaintiffs pending a decision by the government to appeal and, if there is an appeal, pending appeal.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

By:   */s/ Erez Reuveni*
EREZ REUVENI
Assistant Director, Office of Immigration Litigation
U.S. Department of Justice, Civil Division

450 5th Street NW
Washington, DC 20530
Tel. (202) 307-4293
Erez.R.Reuveni@usdoj.gov

JOSEPH DARROW
CHRISTINA P. GREER
JOSHUA S. PRESS
Trial Attorneys

Dated: December 19, 2018                    *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2018, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the District of Columbia by using the appellate CM/ECF system.  Counsel in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

By:   */s/ Christina P. Greer*
      CHRISTINA P. GREER
      Trial Attorney
      United States Department of Justice
      Civil Division