UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GRACE, *et al.*,

      *Plaintiffs*,

v.

JEFFERSON BEAUREGARD SESSIONS, III,
Attorney General of the United States, *et al.*,

      *Defendants*.

No. 1:18-cv-01853 (EGS)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR STAY PENDING A POSSIBLE APPEAL**

Defendants' motion for a partial stay of the Court's permanent injunction pending a possible appeal should be denied. "[A]n 'injunction pending appeal is an extraordinary remedy,'" and Defendants have failed to meet their heavy burden here. *Standing Rock Sioux Tribe, et al. v. U.S. Army Corps of Engineers, et al.*, No. CV 16-1534 (JEB), 2017 WL 1402139, at *1 (D.D.C. Mar. 14, 2017). *See* Stay Mot., at 1 (citing *Standing Rock Sioux Tribe*, 2017 WL 1402139, at *1).

In considering a request for a stay pending appeal, and as Defendants' own authority emphasizes, "the critical factor" is whether the moving party is likely to succeed on the merits. *Id.*; *see also Nken v. Holder*, 556 U.S. 418, 434 (2009) (likelihood of success and irreparable injury are "critical" and "[i]t is not enough that the chance of success on the merits be better than negligible") (internal quotation marks omitted). Here, because if Defendants decide to appeal, they are unlikely to succeed on the merits, and because the balance of equities strongly favors Plaintiffs, Defendants' motion should be denied.

1. Defendants' contention that in an 8 U.S.C. § 1252(e)(3) action, the Court lacks authority to enjoin the operation of any expedited removal policy beyond its application to the Plaintiffs themselves, *see* Stay Mot. at 1-3, is incorrect and has already been considered and rejected by this Court. In its Memorandum Opinion, the Court states:

> [D]uring oral argument, the government argued that even if the Court has the authority to issue an injunction in this case, it can only enjoin the policies as applied in plaintiffs' cases under section 1252(f). See Oral Arg. Hr'g Tr., ECF No. 102 at 63. In other words, according to the government, the Court may declare the new credible fear policies unlawful, but DHS may continue to enforce the policies in all other credible fear interviews. To state this proposition is to refute it. It is the province of the Court to declare what the law is, see *Marbury v. Madison*, 5 U.S. 137, 177 (1803), and the government cites no authority to support the proposition that a Court may declare an action unlawful but have no power to prevent that action from violating the rights of the very people it affects.

Op. at 100.  The conclusion that the Court clearly has authority to vacate and enjoin unlawful expedited removal policies in a § 1252(e)(3) action is reinforced by the nature of the action itself: a systemic challenge to expedited removal.  *See, e.g.*, Op. at 97-98.  Defendants' argument that Congress authorized a systemic legal challenge to expedited removal policies but intended to deny the Court power to enjoin the very policies found unlawful, is implausible and unsupported.

As the Court further held, Defendants' argument is also inconsistent with the APA, which clearly authorizes the courts to vacate and set aside unlawful agency action.  *See* Op. at 100-01 (citing *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409-10 (D.C. Cir. 1998) for the proposition that "We have made clear that '[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated – not that their application to the individual petitioners is proscribed'").  *See also* Pl. MSJ Reply, ECF No. 92 at 39 & n.33.

And indeed, Defendants themselves have repeatedly conceded in this case that under the APA, the Court has power to vacate agency action found unlawful.  At the hearing on Plaintiffs' request for an emergency stay of removal, Defendants' counsel conceded that "if the policy is found to be unlawful . . . the policy will be set aside," Tr., Aug. 9, 2018, at 13-14, and that "the system or the portion of the system that they challenged would be invalidated." *Id.* at 14.  In their summary judgment briefing, Defendants likewise acknowledged that, at a minimum, under the APA the Court has power to "'set aside [the] challenged agency action.'"  ECF No. 85 at 76.  Although Defendants argued that a remand was most appropriate in their view, they conceded that "it is settled law in this Circuit that where agency action is 'set aside' under the APA," the Court has power to "vacate[] the agency action outright."  ECF No. 85 at 77 (citation omitted).

Defendants' reliance on legislative history quoted out of context does not change the analysis, as the legislative history Defendants cite refers to 8 U.S.C. § 1252(f), which is inapplicable here. *See* Stay Mot. at 3 (citing passage from H.R. Rep. No. 104-469(I), "Immigration in the National Interest Act of 1995" (Mar. 4, 1996)). The language Defendants rely on explains that "single district courts or courts of appeal do not have authority to enjoin procedures *established by Congress* to reform the process of removing illegal aliens from the U.S.," and that only the Supreme Court can enjoin the new "legislation" enacted by Congress – which plainly describes 8 U.S.C. § 1252(f). H.R. Rep. No. 104-469(I) (emphasis added). As this Court explained: "section 1252(f) only applies when a plaintiff challenges the legality of immigration laws and not, as here, when a plaintiff seeks to enjoin conduct that violates the immigration laws." Op. at 101. Moreover, there is nothing in 1252(e)(3) – the jurisdictional provision at issue here – that supports Defendants' argument that government policies found to be illegal must remain in place pending decision by "a higher court." *See* Mot. for Stay at 3 (arguing that this Court's decision invalidating the new policies should not be implemented until "a higher court reviews this Court's decision, or the government foregoes the opportunity to seek such review"). *This* Court has the power and duty to say what the law is, and nothing in the statute requires it to defer its remedy.

Defendants' reliance on *Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000) ("*AILA*"), is likewise misplaced. Stay Mot. at 4-5. The passage relied upon by Defendants addresses a third party standing argument raised by plaintiff organizations, concluding that only affected individuals had standing to sue. *See AILA*, 199 F.3d at 1359. That conclusion is inapposite here. The Court nowhere held that § 1252(f) applied to restrict relief in

3

§ 1252(e)(3) actions. To the contrary, the Court did not address the scope of available remedies because the Court denied the individual Plaintiffs' claims on the merits.

Ultimately, the government still has no remotely coherent explanation for the scheme it proposes. Congress established a specific provision governing "[c]hallenges on validity of the system." 8 U.S.C. § 1252(e)(3). But in the government's view no systemic remedy is available until the Supreme Court weighs in—which, of course, it might never do. That makes no sense and would do violence to the systemic review system Congress contemplated and established.

2. Defendants assert that equitable principles weigh against the nationwide vacatur of the policies held unlawful by this Court. Stay Mot. at 4. But consistent with the well-settled rule in APA cases and Defendants' concessions, courts routinely vacate unlawful agency action on a nationwide basis. *See, e.g.*, *Nat'l Min. Ass'n*, 145 F.3d at 1409-10; *Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 589 (7th Cir. 2011); *Earth Island Inst. v. Ruthenbeck*, 490 F.3d 687, 699 (9th Cir. 2007), *rev'd on other grounds*, *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009).

Indeed, when, as here, an agency's illegal policies would irreparably injure thousands of people at once, it is entirely appropriate to vacate the policies across the board. *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (explaining that the scope of an injunction requires "an equitable judgment" that accounts for "the interests of the public at large"); *Kansas v. Nebraska*, 135 S. Ct. 1042, 1053 (2015) (similar). A "systemwide impact" demands a "systemwide remedy." *Lewis v. Casey*, 518 U.S. 343, 359-60 (1996).

3. Here, the balance of equities clearly favors denying a stay, and vacatur of the unlawful policies. As this Court's Memorandum Opinion held,

> [t]he balance of the hardships weighs in favor of plaintiffs since the "[g]overnment 'cannot suffer harm from an injunction that merely ends an unlawful practice.'" *R.I.L.-R.*,

4

> 80 F. Supp. at 191 (citing *Rodriguez*, 715 F.3d at 1145).  And . . . of course, "[t]he public interest is served when administrative agencies comply with their obligations under the APA."  *Id.* (citation omitted).  Moreover, as the Supreme Court has stated, "there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm."  *Nken v. Holder*, 556 U.S. 418, 436 (2009).

Op. at 106.  Defendants are thus incorrect that an injunction "by definition" harms the government.  Stay Mot. at 6.

Defendants are also incorrect in asserting that the Court may not consider harms to third parties in weighing the balance of harms.  The third stay factor requires the Court to consider whether "others will be harmed if the court grants the stay."  *See, e.g.*, *Loving v. I.R.S.*, 920 F. Supp. 2d 108, 111 (D.D.C. 2013) (considering, in the course of weighing harms to "others," that "if the injunction is stayed, then *all* [tax] preparers are faced with a Hobson's choice") (emphasis added).  Here, granting the stay would mean that countless noncitizens already present in the United States who are awaiting credible fear interviews or immigration judge review hearings would be subject to unlawful credible fear policies.  It would also mean that some noncitizens could be erroneously removed because of those same unlawful policies.  These harms further weigh against granting Defendants' request.

4. Neither does Defendants' conclusory assertion that vacatur would cause disruption justify a stay.  The policies at issue were announced just months ago.  *Cf. Children's Hosp. Ass'n of Tex. v. Azar*, 300 F. Supp. 3d 190, 211 (D.D.C. 2018) (concluding that vacating a rule nine months after it became effective would be unlikely to have "disruptive consequences").  Credible fear adjudicators have had years of experience issuing determinations under the well-settled standards that pre-dated the challenged policies.  *Cf. Humane Soc'y of the U.S. v. Jewell,* 76 F. Supp. 3d 69, 137 (D.D.C. 2014) (explaining that reinstating prior regime mitigates disruption from vacatur).

5

Indeed, an injunction against the unlawful policies would preserve the status quo ante while any appeal were pending. As this Court held, the unlawful policies represented a significant departure from prior agency policy in numerous respects. *See, e.g.*, Op. at 65 & n.17; 74; 91 n.26; 57 n.13. *See also, e.g.*, *Loving.*, 920 F. Supp. 2d at 112 (explaining that where enjoined regulations "work a substantial change," preservation of the *status quo ante* "would counsel in favor of denying a stay" pending appeal).

* * *

In sum, Defendants have provided no reason to take the extraordinary step of issuing a stay pending a possible appeal. Accordingly, the Court should deny the stay request.

Dated: January 2, 2018

Eunice Lee**
Karen Musalo**
Anne Dutton**
Center for Gender & Refugee Studies
200 McAllister St.
San Francisco, CA 94102
(415) 565-4877

Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Foundation
    of the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 20005
(202) 457-0800

Thomas Buser-Clancy**
Andre Segura**
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
(713) 942-8146

Respectfully submitted,

/s/ *Jennifer Chang Newell*
Jennifer Chang Newell**
Katrina Eiland**
Cody Wofsy**
Julie Veroff
American Civil Liberties Union
Foundation, Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0774

Judy Rabinovitz**
Omar C. Jadwat**
Lee Gelernt
Celso J. Perez (D.C. Bar No. 1034959)
American Civil Liberties Union
Foundation, Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660

6

Sandra S. Park**
Lenora M. Lapidus**
Emma Roth**
American Civil Liberties Union Foundation,
Women's Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 519-7871

*Attorneys for Plaintiffs*

**Admitted pro hac vice*