# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GRACE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-01853-EGS |
| | ) | |
| MATTHEW G. WHITAKER, in his | ) | |
| Official capacity as Acting Attorney | ) | |
| General of the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR STAY

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

CHRISTINA P. GREER
Trial Attorney, Office of Immigration Litigation
U.S. Department of Justice, Civil Division
450 5th Street NW
Washington, DC 20530
Tel. (202) 598-8770
Christina.P.Greer@usdoj.gov

JOSEPH DARROW
JOSHUA S. PRESS
Trial Attorneys

Dated: January 9, 2019          *Attorneys for Defendants*

## **INTRODUCTION**

Plaintiffs' arguments fail to demonstrate any basis to refrain from staying injunctive relief that reaches beyond the Plaintiffs in this case.  Plaintiffs assert that the Immigration and Nationality Act allows for an injunction for the benefit of nonparties and that it could not have reserved such a remedy only for the Supreme Court because the Supreme Court may never weigh in.  To the contrary, the governing statute specifically imposes a duty on the higher courts to consider the issues presented here while also preventing any court but the Supreme Court from enjoining the challenged policy as to anyone other than the Plaintiffs—a special review scheme Congress created that must be followed.  Plaintiffs also contend that, because the challenged policies have an impact on cases outside their own, those policies should be enjoined as to all.  That argument ignores the requirement that remedies be fashioned to address the Article III injury or injuries established. That principle has great force here where the case is not—and cannot be—a class action and the statutory scheme expressly authorizes review only of the determinations made as to individual claimants.  As established in Defendants' motion, all factors support a stay of the Court's injunction other than as applied to Plaintiffs pending a decision by the government whether to appeal, and if there is such an appeal, through the duration of the appeal.

## **ARGUMENT**

As Defendants have explained, a stay of the injunction other than as applied to Plaintiffs is warranted because the statutory scheme limits relief in 8 U.S.C. § 1252(e)(3) cases to the individual plaintiffs before the court, Article III and equitable principles require that relief be no broader than necessary to redress plaintiffs' injuries, and the absence of a stay will harm Defendants but not Plaintiffs.  Stay Mot. at 1-6.  Plaintiffs attempt to marshal several arguments to the contrary.  Stay Opp. at 1-6.  None have merit.

*First*, Plaintiffs assert that Defendants' view that "no systemic remedy is available until the Supreme Court weighs in . . . . makes no sense and would do violence to the systemic review system Congress contemplated and established" in part because the Supreme Court may never weigh in.  Stay Opp. 4.  But this concern is wholly resolved by the government's proposal—that the universal aspects of the Court's injunction that extend beyond Plaintiffs be stayed to permit

orderly appellate review without prematurely altering the expedited review system before there is an opportunity for review by higher courts.  Indeed, Congress has strongly signaled it envisioned such a review scheme whereby the expedited removal system would not be upended across the board absent appellate consideration of the claims, specifying that "[i]t shall be the duty of the District Court, *the Court of Appeals, and the Supreme Court of the United States* to advance on the docket and to expedite to the greatest possible extent the *disposition of any case considered under this paragraph*."  8 U.S.C. § 1252(e)(3)(D) (emphasis added).  Given this express reference to higher court review in section 1252(e)(3) cases, Congress would have wanted to "limit[] the authority of Federal courts other than the Supreme Court to enjoin operation of the [] removal procedures established in this legislation," and to prohibit "single district courts" from doing so.  H.R. Report 104-469(I) at 161, "Immigration in the National Interest Act of 1995" (Mar. 4, 1996).  The review scheme Congress created at 8 U.S.C. § 1252(e)(3) is unique.  It allows "review of determinations" for individual Plaintiffs only, precludes class actions or declaratory, injunctive, or other equitable relief, and requires that the system continue to operate unimpeded absent involvement by a higher court, which is to consider appeals on an expedited basis.  *See* Stay Mot. at 2-3.  Staying the nationwide scope of this Court's injunction serves these congressional purposes, but granting universal relief prior to appellate consideration does not.[1]

Plaintiffs also argue that because the Court issued its injunction under the APA, the Court may not stay its nationwide scope pending appeal, suggesting that where a rule is unlawful, the appropriate response is to "vacate[]" it.  Stay Opp. at 3.  Section 1252(e)(3), however, operates independently of the APA and is not subject to review principles that apply in that context.  Moreover, whether a rule should be *vacated* as part of a final judgment says nothing about whether the scope of an injunction implementing vacatur may be or should be stayed pending appeal.  Indeed, courts often stay permanent injunctions entered under the APA to the extent they apply beyond the parties before the court.  *See, e.g.*, *City & Cty. of San Francisco v. Sessions*, No. 17-

---

[1] Although the review regime Congress established in section 1252(e)(3) is unique, it was fully within Congress's prerogative to define courts' jurisdiction this way.  *See* U.S. Const. art. III, § 1; *Trump v. Hawaii*, 138 S. Ct. 2392, 2419-20 (2018).  Plaintiffs do not challenge that prerogative here.

CV-04642-WHO, 2018 WL 4859528, at *33 (N.D. Cal. Oct. 5, 2018), *judgment entered sub nom. California ex rel. Becerra v. Sessions*, No. 3:17-CV-04701-WHO, 2018 WL 6069940 (N.D. Cal. Nov. 20, 2018); *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 882 (N.D. Ill. 2018). As the Ninth Circuit recently explained in reversing a nationwide injunction entered in an APA case, "an injunction that applies only to the plaintiff[s] would provide complete relief to them." *California v. Azar*, No. 18-15144, 2018 WL 6566752, at *16 (9th Cir. Dec. 13, 2018) (reversing nationwide injunction); *see City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1245 (9th Cir. 2018) (vacating nationwide injunction to the extent it applied outside the state of California).

*Second*, Plaintiffs contend that a stay is inappropriate because "[a] 'systemwide impact' demands a 'systemwide remedy.'" Stay Opp. at 4 (quoting *Lewis v. Casey*, 518 U.S. 343, 359-60 (1996)). But as we have explained, to the extent Congress envisioned a systematic remedy, it made clear that such a remedy would come in conjunction with appellate review given the importance of unimpeded operation of the expedited removal system. More importantly, under Article III, this contention is flatly wrong and inconsistent with basic principles of standing and the role of courts to remedy the injuries of the parties before it. Remedies must be tailored to the injuries established. *See Lewis*, 518 U.S. at 357 ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."). In *Lewis*, for example, although the case was brought as a class action, the Court extended relief only to the named plaintiffs because they alone established their Article III injuries. *Lewis*, 518 U.S. at 360. The case here is not and cannot be a class action, and relief should be no broader than that required to make the individual Plaintiffs whole.

Plaintiffs also rely on *Trump v. Int'l Refugee Assistance Project* ("*IRAP*"), 137 S. Ct. 2080, 2089 (2017), for the proposition that it is appropriate to "vacate [] policies across the board" where the "policies would irreparably injure" others. Stay Opp. at 4. In *IRAP* the Fourth Circuit upheld a nationwide injunction issued on behalf of an organizational plaintiff of an executive order suspending and limiting entry into the country because the plaintiffs were "dispersed throughout the United States," there was an interest in ensuring uniform application of immigration laws, and the court concluded the ban "likely violates the Establishment Clause." *IRAP v. Trump*, 857 F.3d

554, 605 (4th Cir. 2017).  The most obvious distinction between these two cases was that in *IRAP*, claims could be brought on behalf of organizational plaintiffs whereas here, they cannot, meaning that this Court need not decide how to craft relief to ensure that injuries to an organization or its members are remedied.  Moreover, while the Supreme Court did not address the nationwide injunction issue in that case, the Court's ruling does not suggest it approved of such an injunction, but merely that once the Supreme Court issues a decision, such a ruling is the law of the land—a principle fully consistent with the Government's point that the injunction should be stayed to permit higher court review.  *IRAP*, 137 S. Ct. at 2089.  Because there are no organizational plaintiffs here, any need to protect third parties to provide complete relief for the individual plaintiffs is not present here, particularly where the statute itself precludes such relief and the Plaintiffs have been provided full individual relief consistent with the statute.

Plaintiffs' attempt to secure an injunction for nonparties, moreover, subverts the requirement of Article III standing.  "The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  The Court's nationwide injunction, other than as to the named Plaintiffs, is entirely for the benefit of nonparties.  Injunctions for the benefit of nonparties—and that are not necessary to provide complete relief to the actual parties before the Court—are inappropriate and evade important limitations provided by class certification rules—including the rule here that classes may not be certified.  For example, in *Alvarez v. Smith*, 558 U.S. 87, 92 (2009), plaintiffs lacked standing to seek declaratory and injunctive relief against the State's practice of keeping property in custody without a prompt post-seizure hearing because the plaintiffs had already received the seized property or forfeited their claims to it.  The Supreme Court explained that because class certification had been denied, the "only disputes relevant here are those between these six plaintiffs and the State's Attorney . . . and those disputes are now over."  *Id.* at 93.  And although the plaintiffs "continue[d] to dispute the lawfulness of the State's hearing procedures," their "dispute [was] no longer embedded in any actual controversy about the plaintiffs' particular legal rights."  *Id.* .

Similarly, in *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009), the Supreme Court held

that a plaintiff lacked standing to seek to enjoin certain Forest Service regulations after the parties had resolved the controversy regarding the application of those regulations to the specific project that had caused that plaintiff's own claimed injury. *Id*. at 494-97. The plaintiff's "injury in fact with regard to that project," the Supreme Court held, "ha[d] been remedied," and so he lacked standing to maintain his challenge to the regulations. *Id*. at 494. The Supreme Court expressly rejected a contrary rule that, "when a plaintiff has sued to challenge the lawfulness of certain action or threatened action but has settled that suit, he retains standing to challenge the basis for that action"—in *Earth Island*, "the regulation in the abstract"—"apart from any concrete application that threatens imminent harm to his interests." *Id*. Such a rule would "fly in the face of Article III's injury-in-fact requirement." *Id*.

The same conclusion follows where, as here, a plaintiff's only injury has been eliminated by an injunction barring application of the challenged law or policy to the plaintiff. If a plaintiff himself is no longer in any imminent danger of suffering injury from the law or policy—whether because his injury has become moot through happenstance or settlement, as in *Alvarez* and *Earth Island*, or because a plaintiff-specific injunction prevents any future injury to that plaintiff from the law or policy—he lacks standing to press for additional injunctive relief. The fact that the challenged law or policy would still cause concrete injury to nonparties is irrelevant. As *Alvarez* and *Earth Island* both demonstrate, the plaintiff must show the relief he seeks is necessary to redress his own actual or imminent injury-in-fact; potential injuries to others who are not parties to the case do not entitle the plaintiff to seek relief on their behalf.

Plaintiffs' suggestion that the Court must consider harm to third parties, Stay Opp. at 5, is thus inapt. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 163 (2010) (the plaintiffs "d[id] not represent a class, so they could not seek to enjoin [an agency order] on the ground that it might cause harm to other parties"). That follows from bedrock Article III and equity principles: "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018), and injunctions must "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 765 (1994). *See City & Cty. of San Francisco*, 2018 WL 4859528, at *32 (staying nationwide

scope of injunction pending appeal because "'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court'") (quoting *Los Angeles Haven Hosp. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011)).

This principle has even more force here, where the statute providing for remedies specifically bars any remedy on a class-wide or nation-wide basis.[2]  As Defendants argued in the stay motion, the D.C. Circuit's decision in *Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000) ("AILA"), indicates that in section 1252(e)(3) cases, relief should be limited to the actual aliens before the Court.  Stay Mot. at 4-5.  Plaintiffs suggest that Defendants' reliance on *AILA* is misplaced because that case addressed "third party standing."  Stay Opp. at 3-4.  But that is precisely why *AILA* supports a stay pending appeal.  In *AILA*, the D.C. Circuit explicitly rejected the argument that nonparties could seek or receive relief through a section 1252(e)(3) action, concluding that only "aliens against whom the [expedited removal] procedures had been applied" had standing to challenge those procedures.  *AILA*, 199 F.3d at 1360; Stay Mot. at 4-5.  In reaching that conclusion, the D.C. Circuit explained that providing a vehicle for securing relief beyond the actual injuries suffered by actual Plaintiffs would do violence to the statutory scheme.  *AILA*, 199 F.3d at 1360.  For example, as the court observed, "having barred class actions," it would make no sense to assume that Congress "intended to permit actions on behalf of a still wider group of aliens, actions in which no class representative appears as a party and the plaintiffs are unconstrained by the requirements of Federal Rule of Civil Procedure 23."  *Id.* at 1359.  That is precisely what Plaintiffs would obtain here if the universal aspects of the injunction are not stayed pending appeal.

Plaintiffs also suggest that section 1252(f) has no bearing here.  Stay Opp. at 3.  In *AILA*, however, the D.C. Circuit was clear that the contrary was true.  The court found that organizational plaintiffs before the court lacked standing to seek relief on behalf of aliens not before the court because "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or

---

[2] The Immigration and Nationality Act is unequivocal:  "Without regard to the nature of the action nor claim and without regard to the identity of the party or parties bringing the action, no court may . . . certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under [section 1252(e)(3)]."  8 U.S.C. § 1252(e)(1)(B).

restrain the operation of [the expedited secondary inspection provisions] other than with respect to the application of such provisions to an individual alien against whom proceedings under such chapter have been initiated." *Id.* at 1359. Thus, even if viewed as a case about standing, *AILA* supports staying the scope of the injunction pending appeal.

*Third*, to the extent that Plaintiffs suggest that Defendants are "unlikely to succeed on the merits" of their substantive claims, Stay Opp. at 1, they are wrong. Plaintiffs appear to develop this argument as to jurisdiction only, *id.* at 1-5, and as discussed above and in the government's motion, Plaintiffs' arguments on that score are incorrect. And even if Plaintiffs have not forfeited the argument as to substantive claims, Defendants can show that "the scope of the injunction involves novel issues upon which reasonable minds could differ," which is sufficient to show a likelihood of success. *See City of Chicago*, 321 F. Supp. 3d at 882; *United States v. Peters*, 784 F. Supp. 2d 234, 235 (W.D.N.Y. 2011) (where "reasonable minds could differ . . . it cannot be said that [movant] is necessarily unlikely to succeed," so that "[t]his factor therefore tips in favor of a stay"); *In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1, 4-5 (D.D.C. 2002) (likelihood of success weighed in favor of stay where "the Court believe[d] Defendants are likely to obtain review," where "reasonable minds could differ" on the proper resolution of an unsettled issue).

For example, this Court construed *Matter of A-B-* as establishing a "general rule" against asylum claims based on gang or domestic violence, and that this "rule" was unreasonable. Order at 55-56. But other courts disagree, concluding that *Matter of A-B-* does not establish such a general rule. *See, e.g.*, *Padilla-Maldonado v. Att'y Gen. of the U.S.*, No. 17-3097, 2018 WL 4896385, at *5 (3d Cir. Oct. 9, 2018) (holding that *Matter of A-B-* means that the fact a particular social group is based on domestic or gang violence does not "automatically defeat her claim"); *United States v. Reyes-Romero*, 327 F. Supp. 3d 855, 889 n.40 (W.D. Pa. 2018) (noting that although the Attorney General questioned the viability of certain particular social groups, "Matter of A-B- did not resolve that issue as a general matter, instead clarifying that immigration courts are to apply a more rigorous framework on a case-by-case basis to test the alleged status of a particular social group"). And this Court held that the "condoned or complete helplessness"

standard for assessing governmental role in private-party persecution represents a change from the existing standard.  Order at 61-62.  But that holding is at odds with decades of circuit-level and Board of Immigration Appeals precedent.  *See, e.g.*, *Galina v. INS*, 213 F.3d 955, 958 (7th Cir. 2000) (employing "condone" standard); *Matter of Eusaph*, 10 I. & N. Dec. 453, 454, 455 (BIA 1964) (same).  And it is in conflict with other courts of appeals that have cited *Matter of A-B-* with approval on this point.  *See, e.g.,* R*osales Justo v. Sessions,* 895 F.3d 154, 164 (1st Cir. 2018); *Juan Pedro v. Sessions*, 740 F. App'x 467, 472 n.1 (6th Cir. 2018).

Thus, quite apart from the jurisdictional and scope of remedy issues discussed above and which warrant a partial stay on their own, Defendants can show a likelihood of success on their substantive claims as well, further warranting a partial stay of the scope of the injunction pending appeal.

## <u>CONCLUSION</u>

Given the carefully crafted mechanism Congress created for review of claims challenging the expedited removal system, the limitations on relief provided by the statute, and the Article III and equitable considerations raised in the government's motion and above, the Court should stay application of its injunction with respect to any aliens other than Plaintiffs pending a decision by the government to appeal and, if there is an appeal, pending appeal.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

By:    */s/ Christina P. Greer*
CHRISTINA P. GREER
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
450 5th Street NW

Washington, DC 20530
Tel. (202) 598-8770
Christina.P.Greer@usdoj.gov

JOSEPH DARROW
JOSHUA S. PRESS
Trial Attorneys

Dated: January 9, 2019                    *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system.   Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By:   */s/ Christina P. Greer*
      CHRISTINA P. GREER
      Trial Attorney
      United States Department of Justice
      Civil Division