# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: <u>1:18–cv–01853–EGS</u>

GRACE et al v. SESSIONS et al
Assigned to: Judge Emmet G. Sullivan
 Case:  1:18–cv–01966–EGS
Cause: 08:1252(a)(2) Injunction for Deportation

Date Filed: 08/07/2018
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**GRACE**        represented by   **Anne Kathleen Scholten Dutton**
HASTINGS COLLEGE OF THE LAW
Center for Gender & Refugee Studies
200 McAllister Street
San Francisco, CA 94102
(415)581–8825
Fax: (415)581–8824
Email: duttonanne@uchastings.edu
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
ACLU IMMIGRANTS' RIGHTS PROJECT
125 Broad Street
18th Floor
New York, NY 10004
646–905–8953
Email: cperez@aclu.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eunice Lee**
UC Hastings Center for Gender and Refugee Studies
200 McAllister Street
San Francisco, CA 94102
(415) 581–8836
Fax: (415) 581–8824
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen Musalo**
HASTINGS COLLEGE OF THE LAW
Center for Gender & Refugee Studies
200 McAllister Street

San Francisco, CA 94102
(415) 581–8825
Fax: (415) 581–8824
Email: musalok@uchastings.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lenora M. Lapidus**
ACLU WOMEN'S RIGHTS PROJECT
125 Broad Street
18th Floor
New York, NY 10004
(212) 549–2668
Fax: (212)549–2580
Email: llapidus@aclu.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
AMERICAN CIVIL LIBERTIES UNION
OF THE DISTRICT OF COLUMBIA
915 15th Street, NW
2nd Floor
Washington, DC 20005
(202) 457–0800
Fax: (202) 457–0805
Email: smichelman@acludc.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andre Ivan Segura**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF TEXAS
5225 Katy Freeway
Suite 350
Houston, TX 77007
(713)942–8146
Fax: (713)942–8966
Email: asegura@aclutx.org
*PRO HAC VICE*

**Ann Kathleen Scholten Dutton**
HASTINGS COLLEGE OF THE LAW
Center For Gender & Refugee Studies
200 McAllister Street
San Francisco, CA 94102
(415) 581–8825
Email: duttonanne@uchastings.edu
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**

AMERICAN CIVIL LIBERTIES UNION
OF THE DISTRICT OF COLUMBIA
915 15th Street, NW
2nd Floor
Washington, DC 20005
(202) 601–4266
Fax: (202) 457–0805
Email: artspitzer@gmail.com
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
(415) 343–0785
Fax: (415) 395–0950
Email: cwofsy@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma Jane Roth**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
18th Floor
New York, NY 10004
(212) 284–7325
Fax: (212)549–2650

**Jennifer Chang Newell**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
(415) 343–0774
Fax: (415) 395–0950
Email: jnewell@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Judy Rabinovitz**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
18th Floor
New York, NY 10004
(212) 549–2618
Fax: (212) 549–2654
Email: jrabinovitz@aclu.org

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katrina Eiland**
AMERICAN CIVIL LIBERTIES UNION
Foundation Immigrants' Rights Project
39 Drumm St
San Francisco, CA 94111
(415) 343–0782
Fax: (415) 395–0950
Email: keiland@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Immigrants' Rights Project
125 Broad Street
18th Floor
New York, NY 10004
(212) 549–2620
Fax: (212) 549–2654
Email: ojadwat@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sandra Shin–Young Park**
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street
18th Floor
New York, NY 10004
(212) 519–7871
Fax: (212) 549–2650
Email: spark@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser–Clancy**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF TEXAS
5225 Katy Freeway
Suite 350
Houston, TX 77007
(713)942–8146
Fax: (713)942–8966
Email: Tbuser–clancy@aclutx.org
*PRO HAC VICE*

**Plaintiff**

**MINA**                                        represented by   **Anne Kathleen Scholten Dutton**
                                                                  (See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eunice Lee**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen Musalo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lenora M. Lapidus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andre Ivan Segura**
(See above for address)
*PRO HAC VICE*

**Ann Kathleen Scholten Dutton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma Jane Roth**
(See above for address)

**Jennifer Chang Newell**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Judy Rabinovitz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katrina Eiland**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sandra Shin–Young Park**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser–Clancy**
(See above for address)
*PRO HAC VICE*

<u>**Plaintiff**</u>

**GINA**                              represented by **Anne Kathleen Scholten Dutton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eunice Lee**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen Musalo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lenora M. Lapidus**

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andre Ivan Segura**
(See above for address)
*PRO HAC VICE*

**Ann Kathleen Scholten Dutton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma Jane Roth**
(See above for address)

**Jennifer Chang Newell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Judy Rabinovitz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katrina Eiland**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sandra Shin–Young Park**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser–Clancy**
(See above for address)
*PRO HAC VICE*

<u>**Plaintiff**</u>

**MONA**                                  represented by **Anne Kathleen Scholten Dutton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eunice Lee**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen Musalo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lenora M. Lapidus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andre Ivan Segura**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF TEXAS
5225 Katy Freeway
Suite 350
Houston, TX 77007
(713)942–8146
Fax: 9713)942–8966
Email: asegura@aclutx.org
*PRO HAC VICE*

**Ann Kathleen Scholten Dutton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma Jane Roth**
(See above for address)

**Jennifer Chang Newell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Judy Rabinovitz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katrina Eiland**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sandra Shin–Young Park**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser–Clancy**
(See above for address)
*PRO HAC VICE*

**Plaintiff**

**MARIA**                    represented by    **Anne Kathleen Scholten Dutton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eunice Lee**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen Musalo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lenora M. Lapidus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andre Ivan Segura**
(See above for address)
*PRO HAC VICE*

**Ann Kathleen Scholten Dutton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma Jane Roth**
(See above for address)

**Jennifer Chang Newell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Judy Rabinovitz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katrina Eiland**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sandra Shin–Young Park**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser–Clancy**
(See above for address)
*PRO HAC VICE*

<u>**Plaintiff**</u>

**CARMEN**
*and her minor daughter, J.A.C.F. (by and through her mother)*

represented by **Anne Kathleen Scholten Dutton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eunice Lee**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen Musalo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lenora M. Lapidus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andre Ivan Segura**
(See above for address)
*PRO HAC VICE*

**Ann Kathleen Scholten Dutton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma Jane Roth**
(See above for address)

**Jennifer Chang Newell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Judy Rabinovitz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katrina Eiland**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sandra Shin–Young Park**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser–Clancy**

(See above for address)
*PRO HAC VICE*

**Plaintiff**

| | | |
|---|---|---|
| **J.A.C.F.**<br>*minor daughter* | represented by | **Anne Kathleen Scholten Dutton**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Celso Perez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eunice Lee**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen Musalo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lenora M. Lapidus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andre Ivan Segura**
(See above for address)
*PRO HAC VICE*

**Ann Kathleen Scholten Dutton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Emma Jane Roth**
(See above for address)

**Jennifer Chang Newell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Judy Rabinovitz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katrina Eiland**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sandra Shin–Young Park**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser–Clancy**
(See above for address)
*PRO HAC VICE*

**Plaintiff**

**GIO**                    represented by **Anne Kathleen Scholten Dutton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eunice Lee**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen Musalo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lenora M. Lapidus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andre Ivan Segura**
(See above for address)
*PRO HAC VICE*

**Ann Kathleen Scholten Dutton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma Jane Roth**
(See above for address)

**Jennifer Chang Newell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Judy Rabinovitz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katrina Eiland**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sandra Shin–Young Park**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser–Clancy**
(See above for address)
*PRO HAC VICE*

<u>**Plaintiff**</u>

**NORA**
*and her minor son, A.B.A. (by and through his mother)*

represented by **Anne Kathleen Scholten Dutton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eunice Lee**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen Musalo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lenora M. Lapidus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andre Ivan Segura**
(See above for address)
*PRO HAC VICE*

**Ann Kathleen Scholten Dutton**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma Jane Roth**
(See above for address)

**Jennifer Chang Newell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Judy Rabinovitz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katrina Eiland**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sandra Shin–Young Park**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser–Clancy**
(See above for address)
*PRO HAC VICE*

**Plaintiff**

**A.B.A.**                          represented by   **Anne Kathleen Scholten Dutton**
*minor son*                                          (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Celso Perez**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eunice Lee**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen Musalo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lenora M. Lapidus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andre Ivan Segura**
(See above for address)
*PRO HAC VICE*

**Ann Kathleen Scholten Dutton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma Jane Roth**
(See above for address)

**Jennifer Chang Newell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Judy Rabinovitz**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katrina Eiland**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sandra Shin–Young Park**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser–Clancy**
(See above for address)
*PRO HAC VICE*

**Plaintiff**

**CINDY ARDON MEJIA**
*and her minor daughter, A.P.A. (by and through her mother)*

represented by **Anne Kathleen Scholten Dutton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eunice Lee**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen Musalo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lenora M. Lapidus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andre Ivan Segura**
(See above for address)
*PRO HAC VICE*

**Ann Kathleen Scholten Dutton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma Jane Roth**
(See above for address)

**Jennifer Chang Newell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Judy Rabinovitz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katrina Eiland**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sandra Shin–Young Park**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser–Clancy**
(See above for address)

**Plaintiff**

**A.P.A.**
*minor daughter*

represented by **Anne Kathleen Scholten Dutton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eunice Lee**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen Musalo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lenora M. Lapidus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andre Ivan Segura**
(See above for address)
*PRO HAC VICE*

**Ann Kathleen Scholten Dutton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma Jane Roth**
(See above for address)

**Jennifer Chang Newell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Judy Rabinovitz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katrina Eiland**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sandra Shin–Young Park**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser–Clancy**
(See above for address)
*PRO HAC VICE*

V.

**Defendant**

| **JEFFERSON B. SESSIONS, III** | represented by | **Erez Reuveni** |
|---|---|---|
| *Attorney General of the United States, in his official capacity* | | UNITED STATES DEPARTMENT OF JUSTICE |
| | | P.O. Box 868 |
| | | Ben Franklin Station |
| | | Washington, DC 20044 |
| | | (202) 307–4293 |
| | | Fax: (202) 305–7000 |
| | | Email: erez.r.reuveni@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Christina Greer** |
| | | US DEPARTMENT OF JUSTICE, CIVIL DIVISION |

OFFICE OF IMMIGRATION
LITIGATION
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
202−598−8770
Email: christina.p.greer@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Joseph Anton Darrow**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration
Litigation
P.O. Box 868
Washington, DC 20044
(202) 598−2445
Email: joseph.a.darrow@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Joshua Samuel Press**
U.S. DEPARTMENT OF JUSTICE
Immigration Litigation
Ben Franklin Station
P.O. Box 868
Washington, DC 20044
(202) 305−0106
Fax: (202) 305−7000
Email: joshua.press@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**KIRSTJEN M. NIELSEN**
*Secretary of the Department of Homeland
Security, in her official capacity*

represented by **Erez Reuveni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Greer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Anton Darrow**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Samuel Press**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**L. FRANCIS CISSNA**
*Director of United States Citizenship and*

represented by **Erez Reuveni**
(See above for address)

*Immigration Services, in his official*
*capacity*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Greer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Anton Darrow**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Samuel Press**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JAMES MCHENRY**
*Director of the Executive Office for*
*Immigration Review, in his official*
*capacity*

represented by **Erez Reuveni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Greer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Anton Darrow**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Samuel Press**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**IMMIGRATION LAW PROFESSORS**

represented by **Thomas K. Ragland**
CLARK HILL PLC
1001 Pennsylvania Avenue, NW
Suite 1300 South
Washington, DC 20004
(202) 552–2360
Fax: (202) 552–2384
Email: tragland@clarkhill.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anjum Gupta**
RUTGERS LAW SCHOOL
Immigration Rights Clinic
123 Washington Street
Newark, NJ 07102
(973)353–2518

**Amicus**

| | | |
|---|---|---|
| **TAHIRIH JUSTICE CENTER** | represented by | **Paul Michael Thompson** |

MCDERMOTT WILL & EMERY LLP
500 N. Capitol Street, N.W.
Washington, DC 20001
(202) 756–8032
Fax: (202) 756–8087
Email: pthompson@mwe.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **UNITED NATIONS HIGH COMMISSIONER FOR REFUGEES** | represented by | **Ana C. Reyes** |

WILLIAMS & CONNOLLY LLP
725 12th St. NW
Washington, DC 20005
(202) 434–5276
Fax: (202) 434–5029
Email: areyes@wc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **ADMINISTRATIVE LAW PROFESSORS** | represented by | **Derek Tam Ho** |

KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C.
1615 M Street, NW
Suite 400
Washington, DC 20036
(202) 326–7900
Fax: (202) 326–7999
Email: dho@kellogghansen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **DISTRICT OF COLUMBIA** | represented by | **Stephanie Litos** |

OFFICE OF THE ATTORNEY
GENERAL FOR THE DISTRICT OF
COLUMBIA
441 4th Street, NW
Suite 630 South
Washington, DC 20001
(202) 724–6650
Fax: (202) 741–0647
Email: stephanie.litos@dc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**CALIFORNIA**                           represented by  **Stephanie Litos**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*


**Amicus**

**CONNECTICUT**                          represented by  **Stephanie Litos**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*


**Amicus**

**DELAWARE**                             represented by  **Stephanie Litos**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*


**Amicus**

**HAWAII**                               represented by  **Stephanie Litos**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*


**Amicus**

**ILLINOIS**                             represented by  **Stephanie Litos**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*


**Amicus**

**IOWA**                                 represented by  **Stephanie Litos**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*


**Amicus**

**MAINE**                                represented by  **Stephanie Litos**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*


**Amicus**

**MARYLAND**                             represented by  **Stephanie Litos**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**MASSACHUSETTS**                    represented by **Stephanie Litos**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**MINNESOTA**                        represented by **Stephanie Litos**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**NEW JERSEY**                       represented by **Stephanie Litos**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**NEW MEXICO**                       represented by **Stephanie Litos**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**NEW YORK**                         represented by **Stephanie Litos**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**OREGON**                           represented by **Stephanie Litos**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**RHODE ISLAND**                     represented by **Stephanie Litos**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**VERMONT**                          represented by **Stephanie Litos**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

VIRGINIA                              represented by   **Stephanie Litos**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Amicus**

WASHINGTON                            represented by   **Stephanie Litos**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/07/2018 | 1 | | MOTION for Leave to Proceed Under Pseudonyms and to File Supporting Exhibits Under Seal by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (jf) (Entered: 08/08/2018) |
| 08/07/2018 | 2 | | ORDER granting 1 MOTION for Leave to Proceed Under Pseudonyms and to File Supporting Exhibits Under Seal; further ordered, that the list of the full names of the plaintiffs and their children shall remain under seal until further order of the Court.. Signed by Chief Judge Beryl A. Howell on August 07, 2018. (See Order for Full Details) (jf) (Entered: 08/08/2018) |
| 08/07/2018 | 3 | | COMPLAINT against LEE FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON BEAUREGARD SESSIONS, III ( Filing fee $ 400, receipt number 4616094025) filed by CINDY ARDON MEJIA, J.A.C.F., MINA, GRACE, CARMEN, GINA, NORA, A.P.A., GIO, MONA, A.B.A., MARIA. (Attachments: # 1 Civil Cover Sheet)(jf) Modified on 8/10/2018 (zrdj). (Entered: 08/08/2018) |
| 08/07/2018 | 4 | | SEALED Declarations filed by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA. re 3 Complaint, filed by MARIA, A.B.A., J.A.C.F., CINDY ARDON MEJIA, A.P.A., GINA, MINA, MONA, CARMEN, GIO, GRACE, NORA. (This document is SEALED and only available to authorized persons.)(zjf) (Entered: 08/08/2018) |
| 08/08/2018 | | | MINUTE ORDER. In view of the forthcoming motion for temporary restraining order, the Court, sua sponte, schedules a status conference for August 8, 2018 at 2:00 pm in Courtroom 24A. Plaintiffs are HEREBY DIRECTED to contact forthwith the United States Attorney's Office for the District or Columbia and/or the Department of Justice as appropriate to identify government counsel. Signed by Judge Emmet G. Sullivan on 8/8/2018. (lcegs2) (Entered: 08/08/2018) |
| 08/08/2018 | 5 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Cody H. Wofsy, :Firm– American Civil Liberties Union Foundation Immigrants' Right Project, :Address– 39 Drumm St, San Francisco, CA 94111. Phone No. – 415–343–0770. Fax No. – 415–395–0950 Filing fee $ 100, receipt number 0090–5628203. Fee Status: Fee Paid. by A.B.A., A.P.A., CARMEN, GINA, |

| | | | |
|---|---|---|---|
| | | | GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Attachments: # 1 Certificate of Service Certificate of Service)(Michelman, Scott) (Entered: 08/08/2018) |
| 08/08/2018 | 6 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jennifer Chang Newell, :Firm– American Civil Liberties Union Foundation Immigrants' Rights Project, :Address– 39 Drumm St, San Francisco, CA 94111. Phone No. – 415–343–0770. Fax No. – 415–395–0950 Filing fee $ 100, receipt number 0090–5628241. Fee Status: Fee Paid. by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Attachments: # 1 Certificate of Service Certificate of Service)(Michelman, Scott) (Entered: 08/08/2018) |
| 08/08/2018 | 7 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Judy Rabinovitz, :Firm– American Civil Liberties Union Foundation Immigrants' Rights Project, :Address– 125 Broad St, 18th Floor, New York, NY 10004. Phone No. – 212–549–2618. Fax No. – 212–549–2654 Filing fee $ 100, receipt number 0090–5628273. Fee Status: Fee Paid. by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Attachments: # 1 Certificate of Service Certificate of Service)(Michelman, Scott) (Entered: 08/08/2018) |
| 08/08/2018 | 8 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Katrina Eiland, :Firm– American Civil Liberties Union Foundation Immigrants' Rights Project, :Address– 39 Drumm St, San Francisco, CA 94111. Phone No. – 415–343–0770. Fax No. – 415–395–0950 Filing fee $ 100, receipt number 0090–5628296. Fee Status: Fee Paid. by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Attachments: # 1 Certificate of Service Certificate of Service)(Michelman, Scott) (Entered: 08/08/2018) |
| 08/08/2018 | 9 | | NOTICE of Appearance by Arthur B. Spitzer on behalf of All Plaintiffs (Spitzer, Arthur) (Entered: 08/08/2018) |
| 08/08/2018 | 10 | | MOTION for Preliminary Injunction by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Attachments: # 1 Memorandum in Support, # 2 Declaration of Deborah Anker, # 3 Declaration of Sarah Mujahid, # 4 Exhibit Exhibit Index, # 5 Exhibit A – F, # 6 Exhibit G – L, # 7 Exhibit M – T, # 8 Text of Proposed Order)(Michelman, Scott) (Entered: 08/08/2018) |
| 08/08/2018 | 11 | | MOTION for Temporary Restraining Order *for Emergency Stay of Removal* by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Attachments: # 1 LR 65.1 Cert of Counsel, # 2 Text of Proposed Order)(Michelman, Scott) (Entered: 08/08/2018) |
| 08/08/2018 | 12 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration of Grace, # 2 Declaration of Carmen, # 3 Declaration of Mina, # 4 Declaration of Gina, # 5 Declaration of Mona, # 6 Declaration of Gio, # 7 Declaration of Maria, # 8 Declaration of Nora, # 9 Declaration of Cindy, # 10 Text of |

| | | | |
|---|---|---|---|
| | | | Proposed Order)(Michelman, Scott) (Entered: 08/08/2018) |
| 08/08/2018 | | | MINUTE ORDER granting 5 motion for leave to appear pro hac vice. Cody H. Wofsy is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 8/8/2018. (lcegs2) (Entered: 08/08/2018) |
| 08/08/2018 | | | MINUTE ORDER granting 6 motion for leave to appear pro hac vice. Jennifer Chang Newell is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 8/8/2018. (lcegs2) (Entered: 08/08/2018) |
| 08/08/2018 | | | MINUTE ORDER granting 7 motion for leave to appear pro hac vice. Judy Rabinovitz is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 8/8/2018. (lcegs2) (Entered: 08/08/2018) |
| 08/08/2018 | | | MINUTE ORDER granting 8 motion for leave to appear pro hac vice. Katrina Eiland is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 8/8/2018. (lcegs2) (Entered: 08/08/2018) |
| 08/08/2018 | | | Minute Entry for proceedings held before Judge Emmet G. Sullivan: Status Conference held on 8/8/2018. Government Submissions to be filed no later than 8:00 PM on 8/8/2018. Plaintiff to Reply by 1:00 AM. A Motion Hearing is set for 8/9/2018 at 09:30 AM in Courtroom 24A before Judge Emmet G. Sullivan. (Court Reporter Scott Wallace) (znbn) (Entered: 08/08/2018) |
| 08/08/2018 | 13 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Sandra Shin–Young Park, :Firm– American Civil Liberties Union Women's Rights Project, :Address– 125 Broad St, 18th Floor, New York, NY 10004. Phone No. – 212–519–7871. Fax No. – 212–549–2650 Filing fee $ 100, receipt number 0090–5629175. Fee Status: Fee Paid. by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Attachments: # 1 Certificate of Service Certificate of Service)(Michelman, Scott) (Entered: 08/08/2018) |
| 08/08/2018 | | | MINUTE ORDER. Plaintiffs have not yet filed the memorandum accompanying 11 Motion for Temporary Restraining Order for Emergency Stay of Removal referenced in the Motion. ECF No. 11 at 1. Plaintiffs are HEREBY ORDERED to file the memorandum in support of their motion by no later than 5:50 pm Eastern Daylight Time. Signed by Judge Emmet G. Sullivan on 8/8/2018. (lcegs2) (Entered: 08/08/2018) |
| 08/08/2018 | 14 | | NOTICE of Filing Memorandum by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA re Order, 11 MOTION for Temporary Restraining Order for Emergency Stay of Removal (Attachments: # 1 Memorandum in Support of Stay Motion (and Preliminary Injunction))(Michelman, Scott) (Entered: 08/08/2018) |
| 08/08/2018 | 15 | | NOTICE of Appearance by Erez Reuveni on behalf of All Defendants (Reuveni, Erez) (Entered: 08/08/2018) |
| 08/08/2018 | 16 | | Memorandum in opposition to re 10 MOTION for Preliminary Injunction, 11 MOTION for Temporary Restraining Order for Emergency Stay of Removal filed by LEE FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON BEAUREGARD SESSIONS, III. (Reuveni, Erez) Modified to add link on 8/13/2018 (znmw). (Entered: 08/08/2018) |
| 08/08/2018 | | | |

| | | | |
|---|---|---|---|
| | | | MINUTE ORDER granting 13 motion for leave to appear pro hac vice. Sandra Shin−Young Park is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 8/8/2018. (lcegs2) (Entered: 08/08/2018) |
| 08/08/2018 | 17 | | NOTICE of Appearance by Cody H. Wofsy on behalf of All Plaintiffs (Wofsy, Cody) (Entered: 08/08/2018) |
| 08/08/2018 | 18 | | NOTICE of Appearance by Jennifer Chang Newell on behalf of All Plaintiffs (Newell, Jennifer) (Entered: 08/08/2018) |
| 08/09/2018 | 19 | | REPLY to opposition to motion re 10 MOTION for Preliminary Injunction, 11 MOTION for Temporary Restraining Order *for Emergency Stay of Removal* filed by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA. (Michelman, Scott) Modified to add link on 8/13/2018 (znmw). (Entered: 08/09/2018) |
| 08/09/2018 | | | MINUTE ORDER. Due to the Court's calendar, the motions hearing previously scheduled for 8/9/2018 at 9:30am on 8/9/2018 will now take place at 10:00am in Courtroom 24A. PLEASE NOTE THE TIME CHANGE. The Court regrets any inconvenience to the parties. Signed by Judge Emmet G. Sullivan on 8/9/2018. (lcegs2) (Entered: 08/09/2018) |
| 08/09/2018 | | | Set/Reset Hearings: Motion Hearing set for 8/9/2018 at 10:00 AM in Courtroom 24A before Judge Emmet G. Sullivan. (znbn) (Entered: 08/09/2018) |
| 08/09/2018 | 20 | | STANDING ORDER: The parties are directed to read the attached Standing Order Governing Civil Cases Before Judge Emmet G. Sullivan in its entirety upon receipt. The parties are hereby ORDERED to comply with the directives in the attached Standing Order. Signed by Judge Emmet G. Sullivan on 08/09/18. (Attachment: # 1 Exhibit 1) (mac) (Entered: 08/09/2018) |
| 08/09/2018 | | | Minute Entry for proceedings held before Judge Emmet G. Sullivan: Motion Hearing held on 8/9/2018 re 10 Motion for Preliminary Injunction and 11 Motion for Temporary Restraining Order. The Court Will Issue Orders Forthcoming. (Court Reporter SCOTT WALLACE.) (mac) (Entered: 08/09/2018) |
| 08/09/2018 | 21 | | ORDER granting temporary stay of removal. Signed by Judge Emmet G. Sullivan on 8/9/2018. (lcegs2) (Entered: 08/09/2018) |
| 08/09/2018 | 22 | | ORDER directing defendants to return plaintiffs to the United States FORTHWITH. Signed by Judge Emmet G. Sullivan on 8/9/2018.(lcegs2) (Entered: 08/09/2018) |
| 08/09/2018 | | | Set/Reset Deadlines: Defendant Status Report due on 8/10/2018 by 5:00PM. (mac) (Entered: 08/09/2018) |
| 08/10/2018 | 23 | | TRANSCRIPT OF PROCEEDINGS before Judge Emmet G. Sullivan held on 8−9−18; Page Numbers: 1−48. Date of Issuance:8−9−18. Court Reporter/Transcriber Scott Wallace, Telephone number 202−354−3196, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or |

| | | | |
|---|---|---|---|
| | | | ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 8/31/2018. Redacted Transcript Deadline set for 9/10/2018. Release of Transcript Restriction set for 11/8/2018.(Wallace, Scott) (Entered: 08/10/2018) |
| 08/10/2018 | 24 | | NOTICE of Appearance by Joshua Samuel Press on behalf of All Defendants (Press, Joshua) (Entered: 08/10/2018) |
| 08/10/2018 | 25 | | STATUS REPORT *concerning compliance with the Court's order (ECF No. 22)* by LEE FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON BEAUREGARD SESSIONS, III. (Reuveni, Erez) (Entered: 08/10/2018) |
| 08/10/2018 | 26 | | NOTICE of Appearance by Joseph Anton Darrow on behalf of All Defendants (Darrow, Joseph) (Entered: 08/10/2018) |
| 08/10/2018 | | | MINUTE ORDER directing defendants to file a comprehensive report to the Court explaining the circumstances surrounding the removal of plaintiffs on the morning of August 9, 2018, notwithstanding the representations from the attorney for the defendants that the government would not remove the plaintiffs prior to 11:59 pm that day. The report shall be supported by declarations of appropriate officials. Defendants shall file the report by no later than 5:00 pm August 13, 2018. Signed by Judge Emmet G. Sullivan on 8/10/2018. (lcegs2) (Entered: 08/10/2018) |
| 08/10/2018 | 27 | | Joint STATUS REPORT by LEE FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON BEAUREGARD SESSIONS, III. (Press, Joshua) (Entered: 08/10/2018) |
| 08/13/2018 | | | Set/Reset Deadlines: Defendants Report due on 8/13/2018 by 5:00PM. (mac) (Entered: 08/13/2018) |
| 08/13/2018 | 28 | | Unopposed MOTION to Lift Stay *of Removal as to Her Only* by MONA (Attachments: # 1 Declaration of Katrina Eiland)(Wofsy, Cody) (Entered: 08/13/2018) |
| 08/13/2018 | | | MINUTE ORDER granting 28 Plaintiff Mona's unopposed motion to lift 21 Order granting temporary stay of removal as to her ONLY. In view of the government's detention policy regarding individuals in expedited removal, the stay of removal is HEREBY VACATED as to Plaintiff Mona ONLY. Plaintiff's counsel is reminded of the obligation, pursuant to Local Civil Rule 7(c), to provide a proposed order with each motion and opposition. Signed by Judge Emmet G. Sullivan on 8/13/2018. (lcegs2) (Entered: 08/13/2018) |
| 08/13/2018 | | | MINUTE ORDER. In view of the 27 parties' joint status report on scheduling, defendants shall serve the administrative record and index on the parties by no later than August 17, 2018. The plaintiffs shall complete their review of the administrative record and provide correspondence to the defendants raising any concerns by no later than August 22, 2018. The parties shall attempt to resolve record disputes amongst themselves by no later than August 24, 2018. If the |

| | | | |
|---|---|---|---|
| | | | parties resolve the record disputes amongst themselves, the parties are ordered to submit a joint schedule proposal for further proceedings by no later than August 27, 2018. If the parties are unable to resolve any record disputes, the parties shall adhere to the following schedule for resolution of any disputes by the Court: Any motion to complete/compel/supplement shall be filed by no later than August 29, 2018; any response/opposition shall be filed by no later than September 4, 2018; and any reply shall be filed by no later than September 6, 2018. One week after either an order resolving all administrative record disputes or the parties resolution of any administrative record concerns themselves, whichever is later, defendants shall file the certified list of the contents of the administrative record with the Court. The defendants shall provide a complete copy of the administrative record, with certified list, to the Court on flash drive(s) or DVD(s). The Court will schedule further proceedings in this matter following the production of the administrative record and resolution of any disputes regarding the administrative record. Signed by Judge Emmet G. Sullivan on 8/13/2018. (lcegs2) (Entered: 08/13/2018) |
| 08/13/2018 | | | Set/Reset Deadlines: Joint Schedule Proposal For Further Proceedings due by 8/27/2018 Motion To Complete/Compel/Supplement due by 8/29/2018. Response/Opposition due by 9/4/2018. Reply due by 9/6/2018. (mac) (Entered: 08/13/2018) |
| 08/13/2018 | 29 | | STATUS REPORT *Responding to the Court's Minute Order (8/13/18)* by LEE FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON BEAUREGARD SESSIONS, III. (Attachments: # 1 Declaration Cronen Declaration, # 2 Declaration Bible Declaration, # 3 Exhibit Email to counsel)(Reuveni, Erez) (Entered: 08/13/2018) |
| 08/13/2018 | 30 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Eunice Lee, :Firm– Center for Gender and Refugee Studies, University of California –– Hastings College of the Law, :Address– 200 McAllister Street, San Francisco CA 94102. Phone No. – 415–581–8836. Fax No. – 415–581–8824 Filing fee $ 100, receipt number 0090–5636296. Fee Status: Fee Paid. by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA (Michelman, Scott) (Entered: 08/13/2018) |
| 08/13/2018 | 31 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Anne Dutton, :Firm– Center for Gender and Refugee Studies, University of California –– Hastings College of the Law, :Address– 200 McAllister Street, San Francisco CA 94102. Phone No. – 415–581–8825. Fax No. – 415–581–8824 Filing fee $ 100, receipt number 0090–5636315. Fee Status: Fee Paid. by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Michelman, Scott) (Entered: 08/13/2018) |
| 08/13/2018 | 32 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Karen Musalo, :Firm– Center for Gender and Refugee Studies, University of California –– Hastings College of the Law, :Address– 200 McAllister Street, San Francisco CA 94102. Phone No. – 415–581–8836. Fax No. – 415–581–8824 Filing fee $ 100, receipt number 0090–5636337. Fee Status: Fee Paid. by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Michelman, Scott) (Entered: 08/13/2018) |
| 08/13/2018 | 33 | | RESPONSE re 29 Status Report, filed by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, |

| | | | |
|---|---|---|---|
| | | | NORA. (Attachments: # 1 Declaration of Carmen)(Wofsy, Cody) (Entered: 08/13/2018) |
| 08/13/2018 | | | MINUTE ORDER granting 30 motion for leave to appear pro hac vice. Eunice Lee is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 8/13/2018. (lcegs2) (Entered: 08/13/2018) |
| 08/13/2018 | | | MINUTE ORDER granting 31 motion for leave to appear pro hac vice. Anne Dutton is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 8/13/2018. (lcegs2) (Entered: 08/13/2018) |
| 08/13/2018 | | | MINUTE ORDER granting 32 motion for leave to appear pro hac vice. Karen Musalo is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 8/13/2018. (lcegs2) (Entered: 08/13/2018) |
| 08/14/2018 | 34 | | NOTICE of Appearance by Katrina Eiland on behalf of All Plaintiffs (Eiland, Katrina) (Entered: 08/14/2018) |
| 08/16/2018 | 35 | | NOTICE of Appearance by Judy Rabinovitz on behalf of All Plaintiffs (Rabinovitz, Judy) (Entered: 08/16/2018) |
| 08/16/2018 | 36 | | NOTICE of Appearance by Sandra Shin–Young Park on behalf of All Plaintiffs (Park, Sandra) (Entered: 08/16/2018) |
| 08/16/2018 | 37 | | NOTICE of Appearance by Christina Greer on behalf of All Defendants (Greer, Christina) (Entered: 08/16/2018) |
| 08/17/2018 | 38 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Omar C. Jadwat, :Firm– American Civil Liberties Union Foundation Immigrants' Rights Project, :Address– 125 Broad St, 18th Floor, New York, NY 10004. Phone No. – 212–549–2660. Fax No. – 212–549–2654 Filing fee $ 100, receipt number 0090–5646458. Fee Status: Fee Paid. by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Michelman, Scott) (Entered: 08/17/2018) |
| 08/17/2018 | | | MINUTE ORDER granting 38 motion for leave to appear pro hac vice. Omar C. Jadwat is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 8/17/2018. (lcegs2) (Entered: 08/17/2018) |
| 08/17/2018 | 39 | | NOTICE *of service of the administrative record* by LEE FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON BEAUREGARD SESSIONS, III (Reuveni, Erez) (Entered: 08/17/2018) |
| 08/27/2018 | 40 | | Joint STATUS REPORT *on Scheduling by All Parties* by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA. (Newell, Jennifer) (Entered: 08/27/2018) |
| 08/29/2018 | | | MINUTE ORDER. Upon consideration of 40 the parties' joint status report, the following schedule shall govern the proceedings in this case: Defendants' Motion for Summary Judgment shall be filed no later than September 12, 2018, and shall be no longer than 45 pages in length. Any motions seeking leave to file an amicus curiae brief in support of the Defendants, with the brief attached as an exhibit, shall be filed by no later than September 19, 2018. The Plaintiffs' Opposition and Cross–Motion for Summary Judgment shall be filed by no later than September 26, 2018, and shall be no longer than 65 pages in length. Any motions seeking leave to file an amicus curiae brief in support of Plaintiffs, |

| | | | |
|---|---|---|---|
| | | | with the brief attached as an exhibit, shall be filed by no later than October 3, 2018. Defendants' Opposition and Reply shall be filed no later than October 3, 2018, and shall be no longer than 45 pages in length. Plaintiffs' Reply shall be filed by no later than October 10, 2018, and shall be no longer than 25 pages in length. It is FURTHER ORDERED that by no later than October 17, 2018, the parties, including those seeking leave to file an amicus curiae brief, shall submit to the Court two hard copies and one USB drive containing all submissions to the Court governed by this scheduling order, including points and authorities. All paper copy submissions to the Court shall include the headers added by the Case Management/Electronic Case Files (CM/ECF) System shall be single–sided, double–spaced, use 12–point Times New Roman font, and use one–inch page margins. Each set of hard copies shall be in three–ring binders, with appropriate tables of contents and tabs, and the binders shall be clearly labeled to identify the pleading therein. It is FURTHER ORDERED that by no later than October 17, 2018, the parties shall jointly submit one copy of each principal case or authority cited by any party. The points and authorities shall be in three–ring binders, with appropriate tables of contents and tabs, and the binders shall be clearly labeled to identify the contents therein. Signed by Judge Emmet G. Sullivan on 8/29/2018. (lcegs2) (Entered: 08/29/2018) |
| 08/29/2018 | 41 | | NOTICE *of Filing of Administrative Record and Certified List of Contents* by LEE FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON BEAUREGARD SESSIONS, III (Attachments: # 1 Exhibit A – Certified List of Contents of Administrative Record, # 2 Exhibit B – List of Contents of EOIR Record of Proceedings)(Darrow, Joseph) (Entered: 08/29/2018) |
| 08/29/2018 | 42 | | Joint MOTION for Briefing Schedule *seeking revision of current briefing schedule* by LEE FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON BEAUREGARD SESSIONS, III (Attachments: # 1 Text of Proposed Order)(Reuveni, Erez) (Entered: 08/29/2018) |
| 08/29/2018 | | | MINUTE ORDER granting 42 the parties' joint motion to revise the briefing schedule, and vacating the prior scheduling order. The following revised schedule shall govern the proceedings in this case: Defendants' Motion for Summary Judgment shall be filed no later than September 12, 2018, and shall be no longer than 45 pages in length. Any motions seeking leave to file an amicus curiae brief in support of the Defendants, with the brief attached as an exhibit, shall be filed by no later than September 21, 2018. The Plaintiffs' Opposition and Cross–Motion for Summary Judgment shall be filed by no later than September 26, 2018, and shall be no longer than 65 pages in length. Any motions seeking leave to file an amicus curiae brief in support of Plaintiffs, with the brief attached as an exhibit, shall be filed by no later than September 28, 2018. Defendants' Opposition and Reply shall be filed no later than October 3, 2018, and shall be no longer than 45 pages in length. Plaintiffs' Reply shall be filed by no later than October 10, 2018, and shall be no longer than 25 pages in length. It is FURTHER ORDERED that by no later than October 17, 2018, the parties, including those seeking leave to file an amicus curiae brief, shall submit to the Court two hard copies and one USB drive containing all submissions to the Court governed by this scheduling order, including points and authorities. All paper copy submissions to the Court shall include the headers added by the Case Management/Electronic Case Files (CM/ECF) |

| | | | |
|---|---|---|---|
| | | | System shall be single–sided, double–spaced, use 12–point Times New Roman font, and use one–inch page margins. Each set of hard copies shall be in three–ring binders, with appropriate tables of contents and tabs, and the binders shall be clearly labeled to identify the pleading therein. It is FURTHER ORDERED that by no later than October 17, 2018, the parties shall jointly submit one copy of each principal case or authority cited by any party. The points and authorities shall be in three–ring binders, with appropriate tables of contents and tabs, and the binders shall be clearly labeled to identify the contents therein. It is FURTHER ORDERED that any prospective amici shall file their briefs either upon motion for leave of the Court or upon consent of all parties. Signed by Judge Emmet G. Sullivan on 8/29/2018. (lcegs2) (Entered: 08/29/2018) |
| 08/29/2018 | | | Set/Reset Deadlines/Hearings: Defendants' Summary Judgment motion due by 9/12/2018. Response to Motion for Summary Judgment due by 9/26/2018. Reply to Motion for Summary Judgment due by 10/3/2018. Motions for leave to file amicus curiae brief in support defendants due by 9/19/2018. Plaintiffs' Cross Summary Judgment motion due by 9/26/2018. Response to Cross Motion due by 10/3/2018. Reply to Cross Motion due by 10/10/2018. Motions for leave to file amicus curiae brief in support of plaintiffs due by 10/3/2018. Parties' two hard copies and one USB drive of their submissions due by 10/17/2018. Parties joint submission of each principal case or authority cited due by 10/17/2018. (zcdw) (Entered: 08/31/2018) |
| 08/30/2018 | 43 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(Eiland, Katrina) (Entered: 08/30/2018) |
| 08/30/2018 | 44 | | ERRATA *Correcting Certificates of Service for* by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA 12 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (This document is SEALED and only available to authorized persons.) filed by MARIA, A.B.A., J.A.C.F., CINDY ARDON MEJIA, A.P.A., GINA, MINA, MONA, CARMEN, GIO, GRACE, NORA, 10 MOTION for Preliminary Injunction filed by MARIA, A.B.A., J.A.C.F., CINDY ARDON MEJIA, A.P.A., GINA, MONA, MINA, CARMEN, GRACE, GIO, NORA. (Eiland, Katrina) (Entered: 08/30/2018) |
| 09/05/2018 | 46 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. JEFFERSON BEAUREGARD SESSIONS, III served on 8/27/2018 (Attachments: # 1 Exhibit Delivery Confirmation)(Wofsy, Cody) (Entered: 09/05/2018) |
| 09/05/2018 | 47 | | ENTERED IN ERROR.....RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the District of Columbia Attorney General. Date of Service Upon District of Columbia Attorney General 8/27/2018. Answer due for ALL D.C. DEFENDANTS by 9/17/2018. (Attachments: # 1 Exhibit Delivery Confirmation)(Wofsy, Cody) Modified on 9/7/2018 (jf). (Entered: 09/05/2018) |

| 09/05/2018 | 48 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. LEE FRANCIS CISSNA served on 8/27/2018; JAMES MCHENRY served on 8/27/2018; KIRSTJEN M. NIELSEN served on 8/27/2018 (Attachments: # 1 Exhibit Delivery Confirmation)(Wofsy, Cody) (Entered: 09/05/2018) |
| --- | --- | --- | --- |
| 09/05/2018 | 51 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 8/27/2018. Answer due for ALL FEDERAL DEFENDANTS by 10/26/2018. (jf) (Entered: 09/07/2018) |
| 09/06/2018 | 49 | | NOTICE of Appearance by Omar C. Jadwat on behalf of All Plaintiffs (Jadwat, Omar) (Entered: 09/06/2018) |
| 09/06/2018 | 50 | | RESPONSE re 43 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (This document is SEALED and only available to authorized persons.) *Response to Sealed Court Order* filed by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA. (Attachments: # 1 Revised Consent Motion, # 2 Text of Proposed Order (Revised))(Eiland, Katrina) (Entered: 09/06/2018) |
| 09/07/2018 | | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 47 Summons Returned Executed as to DC Attorney General, was entered in error and refiled by counsel under the correct docket event. (jf) (Entered: 09/07/2018) |
| 09/07/2018 | 52 | | NOTICE of Appearance by Ann Kathleen Scholten Dutton on behalf of All Plaintiffs (Scholten Dutton, Ann) (Entered: 09/07/2018) |
| 09/10/2018 | 53 | | ORDER granting Plaintiffs' consent motion for an Order under Federal Rule of Civil Procedure 5.2(c) to lift restrictions on docket, and to seal documents containing confidential information. Signed by Judge Emmet G. Sullivan on 9/10/2018. (lcegs2) (Entered: 09/10/2018) |
| 09/11/2018 | 54 | | COMPLAINT *REDACTED* against LEE FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON BEAUREGARD SESSIONS, III (Fee Status:Filing Fee Waived) filed by CINDY ARDON MEJIA, J.A.C.F., MINA, GRACE, CARMEN, GINA, NORA, A.P.A., GIO, MONA, A.B.A., MARIA.(Michelman, Scott) (Entered: 09/11/2018) |
| 09/11/2018 | 55 | | MOTION for Preliminary Injunction *REDACTED* by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Attachments: # 1 Memorandum in Support REDACTED, # 2 Text of Proposed Order REDACTED)(Michelman, Scott) (Entered: 09/11/2018) |
| 09/11/2018 | 56 | | MOTION for Emergency Stay of Removal REDACTED by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Attachments: # 1 Memorandum in Support REDACTED)(Michelman, Scott) Modified on 9/11/2018 to correct docket event/text (jf). (Entered: 09/11/2018) |
| 09/12/2018 | 57 | | MOTION for Summary Judgment by LEE FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON BEAUREGARD |

| | | | |
|---|---|---|---|
| | | | SESSIONS, III (Attachments: # 1 Memorandum in Support memorandum in support of motion for summary judgment, # 2 Text of Proposed Order)(Reuveni, Erez) (Entered: 09/12/2018) |
| 09/13/2018 | 58 | | NOTICE of Appearance by Eunice Lee on behalf of All Plaintiffs (Lee, Eunice) (Entered: 09/13/2018) |
| 09/13/2018 | 59 | | NOTICE of Appearance by Karen Musalo on behalf of All Plaintiffs (Musalo, Karen) (Entered: 09/13/2018) |
| 09/14/2018 | 60 | | Unopposed MOTION to Lift Stay *as to Him Only* by GIO (Attachments: # 1 Declaration of Celso J. Perez, # 2 Text of Proposed Order)(Eiland, Katrina) (Entered: 09/14/2018) |
| 09/14/2018 | | | MINUTE ORDER granting 60 Plaintiff Gio's unopposed motion to lift 21 Order granting temporary stay of removal as to him ONLY. In view of the government's detention policy regarding individuals in expedited removal, the stay of removal is HEREBY VACATED as to Gio ONLY. Signed by Judge Emmet G. Sullivan on 9/14/2018. (lcegs2) (Entered: 09/14/2018) |
| 09/20/2018 | 61 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Emma Roth, :Firm– ACLU Womne's Rights Project, :Address– 125 Broad St., New York, NY 10004. Phone No. – 212–284–7325. Fax No. – 212–549–2650 Filing fee $ 100, receipt number 0090–5698964. Fee Status: Fee Paid. by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, MINA, MONA, NORA (Attachments: # 1 Declaration, # 2 Exhibit (Certificate of Good Standing), # 3 Text of Proposed Order)(Michelman, Scott) (Entered: 09/20/2018) |
| 09/21/2018 | | | MINUTE ORDER granting 61 Motion for Leave to Appear Pro Hac Vice. Emma Roth is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 9/21/2018. (lcegs2) (Entered: 09/21/2018) |
| 09/24/2018 | 62 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Andre Ivan Segura, :Firm– American Civil Liberties Union Foundation of Texas, :Address– 5225 Katy Freeway, Suite 350, Houston TX 77007. Phone No. – 713–942–8146. Fax No. – 713–942–8966 Filing fee $ 100, receipt number 0090–5702895. Fee Status: Fee Paid. by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Michelman, Scott) (Entered: 09/24/2018) |
| 09/24/2018 | 63 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Thomas Buser–Clancy, :Firm– American Civil Liberties Union Foundation of Texas, :Address– 5225 Katy Freeway, Suite 350, Houston TX 77007. Phone No. – 713–942–8146. Fax No. – 713–942–8966 Filing fee $ 100, receipt number 0090–5702935. Fee Status: Fee Paid. by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Michelman, Scott) (Entered: 09/24/2018) |
| 09/24/2018 | | | MINUTE ORDER granting 62 motion for leave to appear pro hac vice. Andre Ivan Segura is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 9/24/2018. (lcegs2) (Entered: 09/24/2018) |

| 09/24/2018 | | | MINUTE ORDER granting 63 motion for leave to appear pro hac vice. Thomas Buser–Clancy is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 9/24/2018. (lcegs2) (Entered: 09/24/2018) |
|---|---|---|---|
| 09/26/2018 | 64 | | Cross MOTION for Summary Judgment by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Declaration of Sarah Mujahid, # 4 Exhibit 1–17, # 5 Declaration Declarations of Jamil, Nasr, Love, Goodwin and Powers, # 6 Declaration Honduras Declaration, # 7 Declaration Guatemala Declaration, # 8 Declaration El Salvador Declaration, # 9 Text of Proposed Order)(Newell, Jennifer) (Entered: 09/26/2018) |
| 09/26/2018 | 65 | | Memorandum in opposition to re 57 MOTION for Summary Judgment filed by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts)(Newell, Jennifer) (Entered: 09/26/2018) |
| 09/26/2018 | 66 | | MOTION To Consider Evidence Outside of the Administrative Record by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Newell, Jennifer) (Entered: 09/26/2018) |
| 09/27/2018 | 67 | | MOTION to Hold in Abeyance *hold merits briefing in abeyance, or, alternatively, for an extension of time to file a brief* re 66 MOTION To Consider Evidence Outside of the Administrative Record , 64 Cross MOTION for Summary Judgment by LEE FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON BEAUREGARD SESSIONS, III (Attachments: # 1 Text of Proposed Order)(Reuveni, Erez) Modified event title on 10/2/2018 (znmw). Added MOTION for Extension of Time to on 10/2/2018 (znmw). (Entered: 09/27/2018) |
| 09/27/2018 | | | MINUTE ORDER. The plaintiffs are directed to respond to 67 government's motion to hold merits briefing in abeyance or for an extension of time, by no later than 12:00 pm on September 28, 2018. Signed by Judge Emmet G. Sullivan on 9/27/2018. (lcegs2) (Entered: 09/27/2018) |
| 09/28/2018 | 68 | | Memorandum in opposition to re 67 MOTION hold merits briefing in abeyance, or, alternatively, for an extension of time to file a brief re 66 MOTION To Consider Evidence Outside of the Administrative Record , 64 Cross MOTION for Summary Judgment filed by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA. (Attachments: # 1 Text of Proposed Order)(Newell, Jennifer) (Entered: 09/28/2018) |
| 09/28/2018 | 69 | | NOTICE of Appearance by Thomas K. Ragland on behalf of IMMIGRATION LAW PROFESSORS (Ragland, Thomas) (Entered: 09/28/2018) |
| 09/28/2018 | 70 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– ANJUM GUPTA, :Firm– Rutgers Law School Immigrant Rights Clinic, :Address– 123 Washington Street, Newark, NJ 07102. Phone No. – 973–353–2518. Filing fee $ 100, receipt number 0090–5710719. Fee Status: Fee Paid. by IMMIGRATION LAW PROFESSORS (Attachments: # 1 Declaration of Anjum Gupta in Support of Motion for Admission Pro Hac Vice, # 2 Text of Proposed Order)(Ragland, Thomas) (Entered: 09/28/2018) |

| 09/28/2018 | 71 | | ENTERED IN ERROR.....MOTION for Leave to File *Brief of the Tahirih Justice Center, et al. as Amici Curiae in Support of Plaintiffs' Opposition and Motion for Summary Judgment* by Tahirih Justice Center (Attachments: # 1 Exhibit A – Brief of the Tahirih Justice Center et al. as Amici Curiae, # 2 Text of Proposed Order)(Thompson, Paul) Modified on 9/28/2018 (jf). (Entered: 09/28/2018) |
| 09/28/2018 | | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 71 MOTION for Leave to File *Brief of the Tahirih Justice Center, et al. as Amici Curiae in Support of Plaintiffs' Opposition and Motion for Summary Judgment* was entered in error at the request of counsel and will be refiled.(jf) (Entered: 09/28/2018) |
| 09/28/2018 | 72 | | MOTION for Leave to File *Brief of the Tahirih Justice Center et al. as Amici Curiae in Support of Plaintiffs Opposition and Motion for Summary Judgment* by TAHIRIH JUSTICE CENTER (Attachments: # 1 Exhibit A – Brief of the Tahirih Justice Center, et al. as Amici Curiae, # 2 Text of Proposed Order)(Thompson, Paul) (Entered: 09/28/2018) |
| 09/28/2018 | 73 | | MOTION for Leave to File *Brief of UNHCR as Amicus Curiae in Support of Plaintiffs' Cross–Motion for Summary Judgment* by United Nations High Commissioner for Refugees (Attachments: # 1 Exhibit Brief of UNHCR as Amicus Curiae, # 2 Text of Proposed Order)(Reyes, Ana) (Entered: 09/28/2018) |
| 09/28/2018 | 74 | | NOTICE of Appearance by Derek Tam Ho on behalf of ADMINISTRATIVE LAW PROFESSORS (Ho, Derek) (Entered: 09/28/2018) |
| 09/28/2018 | 75 | | Consent MOTION for Leave to File *Amici Curiae Brief* by ADMINISTRATIVE LAW PROFESSORS (Attachments: # 1 Exhibit A – Admin Law Professors' Brief as Amici Curiae ISO Plntfs, # 2 Exhibit B – Proposed Order)(Ho, Derek) (Entered: 09/28/2018) |
| 09/28/2018 | 76 | | MOTION for Leave to File *Brief of Amici Curiae in Support of Plaintiff's Motion for Summary Judgment* by DISTRICT OF COLUMBIA, CALIFORNIA, CONNECTICUT, DELAWARE, HAWAII, ILLINOIS, IOWA, MAINE, MARYLAND, MASSACHUSETTS, MINNESOTA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, RHODE ISLAND, VERMONT, VIRGINIA, WASHINGTON (Attachments: # 1 Exhibit Brief of Amici Curiae In Support of Plaintiff's Motion for Summary Judgment)(Litos, Stephanie) (Entered: 09/28/2018) |
| 09/28/2018 | | | MINUTE ORDER granting in part 67 defendants' motion for an extension time to file a brief re 66 plaintiffs' motion to consider evidence outside of the administrative record, 64 plaintiffs' cross motion for summary judgment. Having considered the motion and the opposition thereto, the Court grants in part defendants' motion. Defendants' Opposition and Reply shall be filed by no later than October 10, 2018, and shall be no longer than 60 pages in length. Plaintiffs' Reply shall be filed by no later than October 17, 2018, and shall be no longer than 35 pages in length. It is FURTHER ORDERED that by no later than October 24, 2018, the parties, including those seeking leave to file an amicus curiae brief, shall submit to the Court two hard copies and one USB drive containing all submissions to the Court governed by this scheduling order, including points and authorities. All paper copy submissions to the Court |

| | | | |
|---|---|---|---|
| | | | shall include the headers added by the Case Management/Electronic Case Files (CM/ECF) System shall be single–sided, double–spaced, use 12–point Times New Roman font, and use one–inch page margins. Each set of hard copies shall be in three–ring binders, with appropriate tables of contents and tabs, and the binders shall be clearly labeled to identify the pleading therein. It is FURTHER ORDERED that by no later than October 24, 2018, the parties shall jointly submit one copy of each principal case or authority cited by any party. The points and authorities shall be in three–ring binders, with appropriate tables of contents and tabs, and the binders shall be clearly labeled to identify the contents therein. Signed by Judge Emmet G. Sullivan on 9/28/2018. (lcegs2) (Entered: 09/28/2018) |
| 09/28/2018 | 77 | | MOTION for Leave to File *Brief of Amici Curiae* by IMMIGRATION LAW PROFESSORS (Attachments: # 1 Exhibit Brief of Amici Curiae Immigration Law Professors in Support of Plaintiffs' Motion for Summary Judgment, # 2 Text of Proposed Order)(Ragland, Thomas) (Entered: 09/28/2018) |
| 10/01/2018 | | | Set/Reset Deadlines: Defendants' Opposition And Reply due by 10/10/2018. Plaintiffs' Reply due by 10/17/2018. Joint Submission due by 10/24/2018. (mac) (Entered: 10/01/2018) |
| 10/01/2018 | | | MINUTE ORDER granting 70 motion for leave to appear pro hac vice. Anjum Gupta is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 10/1/2018. (lcegs2) (Entered: 10/01/2018) |
| 10/01/2018 | 78 | | Consent MOTION for Extension of Time to File Response/Reply by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Attachments: # 1 Text of Proposed Order)(Newell, Jennifer). Added MOTION to Amend/Correct on 10/4/2018 (znmw). (Entered: 10/01/2018) |
| 10/02/2018 | | | MINUTE ORDER granting 78 plaintiffs' motion for alteration of proposed order. The following schedule shall govern the proceedings in this case: Defendants' Opposition and Reply shall be filed by no later than October 10, 2018, and shall be no longer than 60 pages in length. Plaintiffs' Reply shall be filed by no later than October 24, 2018, and shall be no longer than 35 pages in length. It is FURTHER ORDERED that by no later than October 31, 2018, the parties, including those seeking leave to file an amicus curiae brief, shall submit to the Court two hard copies and one USB drive containing all submissions to the Court governed by this scheduling order, including points and authorities. All paper copy submissions to the Court shall include the headers added by the Case Management/Electronic Case Files (CM/ECF) System shall be single–sided, double–spaced, use 12–point Times New Roman font, and use one–inch page margins. Each set of hard copies shall be in three–ring binders, with appropriate tables of contents and tabs, and the binders shall be clearly labeled to identify the pleading therein. It is FURTHER ORDERED that by no later than October 31, 2018, the parties shall jointly submit one copy of each principal case or authority cited by any party. The points and authorities shall be in three–ring binders, with appropriate tables of contents and tabs, and the binders shall be clearly labeled to identify the contents therein. Signed by Judge Emmet G. Sullivan on 10/2/2018.(lcegs2) (Entered: 10/02/2018) |
| 10/02/2018 | | | |

| | | | |
|---|---|---|---|
| | | | MINUTE ORDER granting 72 motion to file brief of the Tahirih Justice Center et al. as amici curiae. Tahirih Justice Center et al.'s brief is hereby deemed filed. Signed by Judge Emmet G. Sullivan on 10/2/2018. (lcegs2) (Entered: 10/02/2018) |
| 10/02/2018 | | | MINUTE ORDER granting 75 consent motion to file amici curiae brief by Administrative Law Professors. The Administrative Law Professors' brief is hereby deemed filed. Signed by Judge Emmet G. Sullivan on 10/2/2018. (lcegs2) (Entered: 10/02/2018) |
| 10/02/2018 | | | MINUTE ORDER granting 76 motion to file brief as amici curiae. The District of Columbia and the states of California, Connecticut, Delaware, Hawaii, Illinois, Iowa, Maine, Maryland, Massachusetts, Minnesota, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, Virginia, and Washington's brief is hereby deemed filed. Signed by Judge Emmet G. Sullivan on 10/2/2018. (lcegs2, ) (Entered: 10/02/2018) |
| 10/02/2018 | | | MINUTE ORDER granting 77 motion to file brief of amici curiae by Immigration Law Professors. The Immigration Law Professors' brief is hereby deemed filed. Signed by Judge Emmet G. Sullivan on 10/2/2018. (lcegs2) (Entered: 10/02/2018) |
| 10/02/2018 | 80 | | AMICUS BRIEF by TAHIRIH JUSTICE CENTER. (jf) (Entered: 10/04/2018) |
| 10/02/2018 | 81 | | AMICUS BRIEF by ADMINISTRATIVE LAW PROFESSORS. (jf) (Entered: 10/04/2018) |
| 10/02/2018 | 82 | | AMICUS BRIEF by CALIFORNIA, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, HAWAII, ILLINOIS, IOWA, MAINE, MARYLAND, MASSACHUSETTS, MINNESOTA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, RHODE ISLAND, VERMONT, VIRGINIA, WASHINGTON. (jf) (Entered: 10/04/2018) |
| 10/02/2018 | 83 | | AMICUS BRIEF by IMMIGRATION LAW PROFESSORS. (jf) (Entered: 10/04/2018) |
| 10/03/2018 | | | Set/Reset Deadlines: Defendants' Opposition and Reply due by 10/10/2018. Plaintiffs' Reply due by 10/24/2018. Joint Submission due by 10/31/2018. (mac) (Entered: 10/03/2018) |
| 10/03/2018 | | | MINUTE ORDER granting 73 UNHCR's consent motion to file brief as amicus curiae. UNHCR's brief is hereby deemed filed. Signed by Judge Emmet G. Sullivan on 10/3/2018. (lcegs3) (Entered: 10/03/2018) |
| 10/03/2018 | 84 | | AMICUS BRIEF by UNITED NATIONS HIGH COMMISSIONER FOR REFUGEES. (jf) (Entered: 10/04/2018) |
| 10/04/2018 | 79 | | NOTICE of Appearance by Celso Perez on behalf of All Plaintiffs (Perez, Celso) (Entered: 10/04/2018) |
| 10/10/2018 | 85 | | Memorandum in opposition to re 64 Cross MOTION for Summary Judgment *and reply in support of motion for summary judgment (ECF 57)* filed by LEE FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON BEAUREGARD SESSIONS, III. (Reuveni, Erez) (Entered: 10/10/2018) |

| 10/10/2018 | 86 | | RESPONSE re 64 Cross MOTION for Summary Judgment *Defendants' Response to Plaintiffs' Statement of Undisputed Material Facts and Counter–statement* filed by LEE FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON BEAUREGARD SESSIONS, III. (Reuveni, Erez) (Entered: 10/10/2018) |
|---|---|---|---|
| 10/10/2018 | 87 | | Memorandum in opposition to re 66 MOTION To Consider Evidence Outside of the Administrative Record filed by JEFFERSON BEAUREGARD SESSIONS, III, LEE FRANCIS CISSNA, KIRSTJEN M. NIELSON, JAMES MCHENRY. (Press, Joshua) Modified filers on 10/19/2018 (znmw). (Entered: 10/10/2018) |
| 10/10/2018 | 88 | | Cross MOTION to Strike 10 MOTION for Preliminary Injunction , 66 MOTION To Consider Evidence Outside of the Administrative Record by All Defendants (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Press, Joshua) Modified filer on 10/12/2018 (znmw). (Entered: 10/10/2018) |
| 10/10/2018 | 89 | | ENTERED IN ERROR.....Memorandum in opposition to re 66 MOTION To Consider Evidence Outside of the Administrative Record filed by LEE FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON BEAUREGARD SESSIONS, III. (See Docket Entry 88 to view document). (znmw) Modified to enter in error as a duplicate of 87 on 10/19/2018 (znmw). (Entered: 10/12/2018) |
| 10/10/2018 | 91 | | REPLY to opposition to motion re 57 MOTION for Summary Judgment filed by LEE FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON B. SESSIONS, III. (See Docket Entry 85 to view document). (znmw) (Entered: 10/19/2018) |
| 10/12/2018 | 90 | | Joint MOTION for Clarification of Briefing Schedule *Seeking Clarification or Modification of Briefing Schedule on Evidence Motions* by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Attachments: # 1 Text of Proposed Order)(Newell, Jennifer). Added MOTION to Modify on 10/15/2018 (jf). (Entered: 10/12/2018) |
| 10/15/2018 | | | MINUTE ORDER granting joint 90 motion for modification of the briefing schedule. Plaintiffs' reply brief concerning their extra record evidence motion and opposition to Defendants' motion to strike is due by no later than October 24, 2018; and Defendants' reply brief concerning their motion to strike is due by no later than October 31, 2018. Signed by Judge Emmet G. Sullivan on 10/15/2018. (lcegs2) (Entered: 10/15/2018) |
| 10/15/2018 | | | Set/Reset Deadlines: Plaintiffs' Reply Brief due by 10/24/2018. Defendants Reply Brief due by 10/31/2018. (mac) (Entered: 10/15/2018) |
| 10/24/2018 | 92 | | REPLY to opposition to motion re 64 Cross MOTION for Summary Judgment filed by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA. (Attachments: # 1 Addendum)(Newell, Jennifer) (Entered: 10/24/2018) |
| 10/24/2018 | 93 | | REPLY re 86 Response to Document, *in support of Plaintiffs' Statement of Undisputed Material Facts* filed by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, |

| | | | |
|---|---|---|---|
| | | | NORA. (Newell, Jennifer) (Entered: 10/24/2018) |
| 10/24/2018 | 94 | | REPLY to opposition to motion re 66 MOTION To Consider Evidence Outside of the Administrative Record filed by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA. (Newell, Jennifer) (Entered: 10/24/2018) |
| 10/24/2018 | 95 | | Memorandum in opposition to re 88 Cross MOTION to Strike 10 MOTION for Preliminary Injunction , 66 MOTION To Consider Evidence Outside of the Administrative Record filed by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA. (Attachments: # 1 Text of Proposed Order)(Newell, Jennifer) (Entered: 10/24/2018) |
| 10/26/2018 | 96 | | NOTICE of Appearance by Emma Jane Roth on behalf of All Plaintiffs (Roth, Emma) (Entered: 10/26/2018) |
| 10/31/2018 | 97 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Lenora M. Lapidus, :Firm– American Civil Liberties Union Foundation, :Address– 125 Broad Street, New York, NY 10004. Phone No. – (212) 549 2668. Fax No. – (212) 549 2580 Filing fee $ 100, receipt number 0090–5768114. Fee Status: Fee Paid. by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (Attachments: # 1 Declaration of Lenora Lapidus, # 2 Text of Proposed Order)(Spitzer, Arthur) (Entered: 10/31/2018) |
| 10/31/2018 | 98 | | REPLY to opposition to motion re 88 Cross MOTION to Strike 10 MOTION for Preliminary Injunction , 66 MOTION To Consider Evidence Outside of the Administrative Record filed by LEE FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON B. SESSIONS, III. (Press, Joshua) (Entered: 10/31/2018) |
| 11/05/2018 | | | MINUTE ORDER granting 97 motion for leave to appear pro hac vice. Lenora M. Lapidus is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 11/5/2018. (lcegs2) (Entered: 11/05/2018) |
| 11/05/2018 | | | MINUTE ORDER. The Court hereby schedules a hearing on the cross–motions for summary judgment for November 19, 2018, in Courtroom 24A at 10:00 am. Signed by Judge Emmet G. Sullivan on 11/5/2018. (lcegs2) (Entered: 11/05/2018) |
| 11/06/2018 | | | Set/Reset Hearings: Motion Hearing set for 11/19/2018 at 10:00 AM in Courtroom 24A before Judge Emmet G. Sullivan. (mac) (Entered: 11/06/2018) |
| 11/07/2018 | 99 | | NOTICE of Appearance by Lenora M. Lapidus on behalf of All Plaintiffs (Lapidus, Lenora) (Entered: 11/07/2018) |
| 11/07/2018 | 100 | | JOINT APPENDIX *containing Excerpts Cited from the Administrative Record* by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA. (Newell, Jennifer) (Entered: 11/07/2018) |
| 11/19/2018 | | | Minute Entry for proceedings held before Judge Emmet G. Sullivan: Motions Hearing Held On The Cross Motions For Summary Judgment. Oral Arguments Heard And Taken Under Advisement. The Court Will Issue A Written Opinion. (Court Reporter JANICE DICKMAN.) (mac) (Entered: 11/19/2018) |

| | | | |
|---|---|---|---|
| 11/19/2018 | 101 | | Civil Statement from Plaintiffs regarding case caption. (Spitzer, Arthur) (Entered: 11/19/2018) |
| 11/21/2018 | 102 | | TRANSCRIPT OF PROCEEDINGS before Judge Emmet G. Sullivan held on November 19, 2018; Page Numbers: 1–124. Date of Issuance: November 21, 2018. Court Reporter: Janice Dickman, Telephone number: 202–354–3267, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 12/12/2018. Redacted Transcript Deadline set for 12/22/2018. Release of Transcript Restriction set for 2/19/2019.(Dickman, Janice) (Entered: 11/21/2018) |
| 12/18/2018 | 104 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by L. FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON B. SESSIONS, III (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit, # 2 Exhibit)(Greer, Christina) Modified on 12/20/2018 (znmw). (Entered: 12/18/2018) |
| 12/19/2018 | 105 | 158 | ORDER granting in part and denying in part 57 Defendants' Motion for Summary Judgment; granting in part and denying in part 64 Plaintiffs' Cross–Motion for Summary Judgment; granting in part and denying in part 66 Motion to Consider Evidence Outside Administrative Record ; granting in part and denying in part 88 Motion to Strike. Signed by Judge Emmet G. Sullivan on 12/19/2018. (lcegs2, ) (Entered: 12/19/2018) |
| 12/19/2018 | 106 | 51 | REDACTED MEMORANDUM OPINION. Signed by Judge Emmet G. Sullivan on 12/19/2018. (lcegs2) (Entered: 12/19/2018) |
| 12/19/2018 | 107 | | MOTION to Stay re 105 Order on Motion for Summary Judgment,,,, Order on Motion for Miscellaneous Relief,, Order on Motion to Strike, by L. FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON B. SESSIONS, III (Attachments: # 1 Text of Proposed Order)(Greer, Christina) (Entered: 12/19/2018) |
| 12/26/2018 | 108 | | Emergency MOTION to Stay *to comply with Paragraph 5 of the Permanent Injunction Order* by L. FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON B. SESSIONS, III (Greer, Christina) Modified event title on 12/28/2018 (znmw). (Entered: 12/26/2018) |
| 12/26/2018 | | | MINUTE ORDER granting 108 motion for stay in light of lapse of appropriations. Defendants are directed to notify the Court when appropriations are restored or if a continuing resolution is enacted. Signed by Judge Emmet G. |

| | | | |
|---|---|---|---|
| | | | Sullivan on 12/26/2018. (lcegs2) (Entered: 12/26/2018) |
| 12/27/2018 | | | MINUTE ORDER directing the parties to brief the following issue by no later than 1:00 p.m. (EST) on December 28, 2018: whether paragraph 5 of the Permanent Injunction Order is related to an "emergenc[y] involving the safety of human life or the protection of property." See 31 USC § 1342. Submissions should be no longer than five pages. Signed by Judge Emmet G. Sullivan on 12/27/2018. (lcegs2) (Entered: 12/27/2018) |
| 12/28/2018 | 109 | | STIPULATION re Order on Motion for Extension of Time to, Order, *JOINT STIPULATION REGARDING PARAGRAPH 5 OF THE PERMANENT INJUNCTION, MOTION TO LIFT THE STAY ENTERED ON DECEMBER 26, 2018, AND MOTION TO SET ASIDE BRIEFING SCHEDULE* by L. FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON B. SESSIONS, III. (Attachments: # 1 Text of Proposed Order)(Greer, Christina) (Entered: 12/28/2018) |
| 12/28/2018 | | | MINUTE ORDER granting 109 the parties' motion to lift stay and to set aside the briefing schedule. In light of the parties' joint stipulation regarding paragraph 5 of the Permanent Injunction Order, the stay entered on December 26, 2018, is lifted, and the briefing schedule issued on December 27, 2018, is vacated. The parties are directed to comply with the Court's Permanent Injunction Order dated December 19, 2018. The defendants are FURTHER DIRECTED to file a status report detailing the steps they have taken to comply with Paragraph 5 of the Permanent Injunction Order by no later than January 4, 2019. Signed by Judge Emmet G. Sullivan on 12/28/2018. (lcegs2) (Entered: 12/28/2018) |
| 12/31/2018 | | | Set/Reset Deadlines: Status Report due by 1/4/2019 (mac) (Entered: 12/31/2018) |
| 01/02/2019 | 110 | | Memorandum in opposition to re 107 MOTION to Stay re 105 Order on Motion for Summary Judgment,,,, Order on Motion for Miscellaneous Relief,, Order on Motion to Strike, filed by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA. (Attachments: # 1 Text of Proposed Order)(Newell, Jennifer) (Entered: 01/02/2019) |
| 01/04/2019 | 111 | | STATUS REPORT by L. FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON B. SESSIONS, III. (Greer, Christina) (Entered: 01/04/2019) |
| 01/04/2019 | | | MINUTE ORDER. In light of 111 defendants' status report, defendants are directed to file a further status report by no later than January 11, 2019. Signed by Judge Emmet G. Sullivan on 1/4/2019. (lcegs2) (Entered: 01/04/2019) |
| 01/07/2019 | | | Set/Reset Deadlines: Further Status Report due by 1/11/2019 (mac) (Entered: 01/07/2019) |
| 01/09/2019 | 112 | | REPLY to opposition to motion re 107 MOTION to Stay re 105 Order on Motion for Summary Judgment,,,, Order on Motion for Miscellaneous Relief,, Order on Motion to Strike, filed by L. FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON B. SESSIONS, III. (Greer, Christina) (Entered: 01/09/2019) |

| 01/11/2019 | 113 | | STATUS REPORT by L. FRANCIS CISSNA, JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON B. SESSIONS, III. (Greer, Christina) (Entered: 01/11/2019) |
|---|---|---|---|
| 01/11/2019 | 114 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by A.B.A., A.P.A., CARMEN, GINA, GIO, GRACE, J.A.C.F., MARIA, CINDY ARDON MEJIA, MINA, MONA, NORA (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Newell, Jennifer) (Entered: 01/11/2019) |
| 01/17/2019 | 115 | 48 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 105 Order on Motion for Summary Judgment,,,, Order on Motion for Miscellaneous Relief,, Order on Motion to Strike, 106 Memorandum & Opinion by JAMES MCHENRY, KIRSTJEN M. NIELSEN, JEFFERSON B. SESSIONS, III, L. FRANCIS CISSNA. Fee Status: No Fee Paid. Parties have been notified. (Reuveni, Erez) (Entered: 01/17/2019) |

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GRACE, *et al.*                                    )
                                                   )
        Plaintiffs,           )
                                                   )
v.                                                 )    Civil Action No. 1:18-cv-01853-EGS
                                                   )
MATTHEW G. WHITAKER, in his                        )
Official capacity as Acting Attorney               )
General of the United States, *et al.*,            )
                                                   )
        Defendants.           )
                                                   )

## NOTICE OF APPEAL

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

Dated: January 17, 2019       *Attorneys for Defendants*

Defendants hereby appeal from the Court's Order and Memorandum Opinion entered December 19, 2018 (ECF Nos. 105, 106) in the above-captioned case to the United States Court of Appeals for the District of Columbia.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

By: /s/ *Erez Reuveni*
EREZ REUVENI
Assistant Director
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
450 5th Street NW
Washington, DC 20530
Tel: (202) 307-4293
Email: Erez.R.Reuveni@usdoj.gov

Dated: January 17, 2019     *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
United States Department of Justice
Civil Division

```
                                    )
GRACE, et al.,                      )
                                    )
                 Plaintiffs,        )
                                    )
     v.                             )
                                    ) No. 18-cv-01853 (EGS)
                                    )
MATTHEW G. WHITAKER,[1] Acting      )
Attorney General of the United      )
States, et al.,                     )
                                    )
                 Defendants.        )
```

**MEMORANDUM OPINION**

When Congress passed the Refugee Act in 1980, it made its intentions clear: the purpose was to enforce the "historic policy of the United States to respond to the urgent needs of persons subject to persecution in their homelands." Refugee Act of 1980, § 101(a), Pub. L. No. 96-212, 94 Stat. 102 (1980). Years later, Congress amended the immigration laws to provide for expedited removal of those seeking admission to the United States. Under the expedited removal process, an alien could be summarily removed after a preliminary inspection by an immigration officer, so long as the alien did not have a credible fear of persecution by his or her country of origin. In

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes the current Acting Attorney General as the defendant in this case. "Plaintiffs take no position at this time regarding the identity of the current Acting Attorney General of the United States." Civil Statement, ECF No. 101.

creating this framework, Congress struck a balance between an efficient immigration system and ensuring that "there should be no danger that an alien with a genuine asylum claim will be returned to persecution." H.R. REP. NO. 104-469, pt. 1, at 158 (1996).

Seeking an opportunity for asylum, plaintiffs, twelve adults and children, alleged accounts of sexual abuse, kidnappings, and beatings in their home countries during interviews with asylum officers.[2] These interviews were designed to evaluate whether plaintiffs had a credible fear of persecution by their respective home countries. A credible fear of persecution is defined as a "significant possibility" that the alien "could establish eligibility for asylum." 8 U.S.C. § 1225(b)(1)(B)(v). Although the asylum officers found that plaintiffs' accounts were sincere, the officers denied their claims after applying the standards set forth in a recent precedential immigration decision issued by then-Attorney General, Jefferson B. Sessions, *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018).

Plaintiffs bring this action against the Attorney General alleging violations of, *inter alia*, the Administrative Procedure Act ("APA") and the Immigration and Nationality Act ("INA"),

---

[2] Plaintiffs Grace, Carmen, Gio, Gina, Maria, Mina, Nora, and Mona are proceeding under pseudonyms.

2

arguing that the standards articulated in *Matter of A-B-*, and a subsequent Policy Memorandum issued by the Department of Homeland Security ("DHS") (collectively "credible fear policies"), unlawfully and arbitrarily imposed a heightened standard to their credible fear determinations.

Pending before the Court are: (1) plaintiffs' combined motions for a preliminary injunction and cross-motion for summary judgment; (2) plaintiffs' motion to consider evidence outside the administrative record; (3) the government's motion to strike exhibits supporting plaintiffs' motion for summary judgment; and (4) the government's motion for summary judgment. Upon consideration of the parties' memoranda, the parties' arguments at the motions hearings, the arguments of *amici*,[3] the administrative record, the applicable law, and for the reasons discussed below, the Court finds that several of the new credible fear policies, as articulated in *Matter of A-B-* and the Policy Memorandum, violate both the APA and INA. As explained in this Memorandum Opinion, many of these policies are inconsistent with the intent of Congress as articulated in the INA. And because it is the will of Congress—not the whims of the Executive—that determines the standard for expedited removal, the Court finds that those policies are unlawful.

---

[3] The Court appreciates the illuminating analysis provided by the *amici*.

Part I of this Opinion sets forth background information necessary to resolve plaintiffs' claims. In Part II, the Court considers plaintiffs' motion to consider evidence outside the administrative record and denies the motion in part. In Part III, the Court considers the parties' cross-motions for summary judgment. In Part III.A, the Court considers the government's arguments that this case is not justiciable and holds that this Court has jurisdiction to hear plaintiffs' challenges to the credible fear policies. In Part III.B, the Court addresses the legal standards that govern plaintiffs' claims. In Part III.C, the Court turns to the merits of plaintiffs' claims and holds that, with the exception of two policies, the new credible fear policies are arbitrary, capricious, and in violation of the immigration laws. In Part III.D, the Court considers the appropriate form of relief and vacates the unlawful credible fear policies. The Court further permanently enjoins the government from continuing to apply those policies and from removing plaintiffs who are currently in the United States without first providing credible fear determinations consistent with the immigration laws. Finally, the Court orders the government to return to the United States the plaintiffs who were unlawfully deported and to provide them with new credible fear determinations consistent with the immigration laws.

4

## I. Background

Because the claims in this action center on the expedited removal procedures, the Court discusses those procedures, and the related asylum laws, in detail.

### A. Statutory and Regulatory Background

#### 1. The Refugee Act

In 1980, Congress passed the Refugee Act, Pub. L. No. 96-212, 94 Stat. 102, which amended the INA, Pub. L. No. 82-414, 66 Stat. 163 (1952)(codified as amended in sections of 8 U.S.C.). The "motivation for the enactment of the Refugee Act" was the "United Nations Protocol Relating to the Status of Refugees ["Protocol"]," *INS v. Cardoza-Fonseca*, 480 U.S. 421, 424 (1987), "to which the United States had been bound since 1968," *id.* at 432–33. Congress was clear that its intent in promulgating the Refugee Act was to bring the United States' domestic laws in line with the Protocol. *See id.* at 437 (stating it is "clear from the legislative history of the new definition of 'refugee,' and indeed the entire 1980 Act . . . that one of Congress' primary purposes was to bring United States refugee law into conformance with the [Protocol]."). The Board of Immigration Appeals ("BIA"), has also recognized that Congress' intent in enacting the Refugee Act was to align domestic refugee law with the United States' obligations under the Protocol, to give statutory meaning to "our national commitment to human rights

5

and humanitarian concerns," and "to afford a generous standard for protection in cases of doubt." *In Re S-P-*, 21 I. & N. Dec. 486, 492 (B.I.A. 1998)(quoting S. REP. NO. 256, 96th Cong., 2d Sess. 1, 4, reprinted in 1980 U.S.C.C.A.N. 141, 144).

The Refugee Act created a statutory procedure for refugees seeking asylum and established the standards for granting such requests; the INA currently governs that procedure. The INA gives the Attorney General discretion to grant asylum to removable aliens. 8 U.S.C. § 1158(b)(1)(A). However, that relief can only be granted if the alien is a "refugee." *Id.* The term "refugee" is defined as:

> [A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). "Thus, the 'persecution or well-founded fear of persecution' standard governs the Attorney General's determination [of] whether an alien is eligible for asylum." *Cardoza-Fonseca*, 480 U.S. at 428. To establish refugee status, the alien must show he or she is someone who: (1) has suffered persecution (or has a well-founded fear of persecution) (2) on account of (3) one of five specific protected grounds:

6

race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1101(a)(42)(A). An alien fearing harm by non-governmental actors is eligible for asylum if the other criteria are met, and the government is "unable or unwilling to control" the persecutor. *Matter of Acosta*, 19 I. & N. Dec. 211, 222 (BIA 1985) *overruled on other grounds* by *Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987).

### 2. Expedited Removal Process

Before seeking asylum through the procedures outlined above, however, many aliens are subject to a streamlined removal process called "expedited removal." 8 U.S.C. § 1225. Prior to 1996, every person who sought admission into the United States was entitled to a full hearing before an immigration judge, and had a right to administrative and judicial review. *See Am. Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38, 41 (D.D.C. 1998)(describing prior system for removal). The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") amended the INA to provide for a summary removal process for adjudicating the claims of aliens who arrive in the United States without proper documentation. As described in the IIRIRA Conference Report, the purpose of the expedited removal procedure

> is to expedite the removal from the United States of aliens who indisputably have no authorization to be admitted . . . , while

7

> providing an opportunity for such an alien who
> claims asylum to have the merits of his or her
> claim promptly assessed by officers with full
> professional training in adjudicating asylum
> claims.

H.R. REP. NO. 104-828, at 209–10 (1996)("Conf. Rep.").

Consistent with that purpose, Congress carved out an exception to the expedited removal process for individuals with a "credible fear of persecution." *See* 8 U.S.C. § 1225(b)(1)(B)(ii). If an alien "indicates either an intention to apply for asylum . . . or a fear of persecution," the alien must be referred for an interview with a U.S. Citizenship and Immigration Services ("USCIS") asylum officer. *Id.* § 1225(b)(1)(A)(ii). During this interview, the asylum officer is required to "elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture[.]" 8 C.F.R. § 208.30(d). The asylum officer must "conduct the interview in a nonadversarial manner." *Id.*

Expediting the removal process, however, risks sending individuals who are potentially eligible for asylum to their respective home countries where they face a real threat, or have a credible fear of persecution. Understanding this risk, Congress intended the credible fear determinations to be governed by a low screening standard. *See* 142 CONG. REC. S11491-02 ("The credible fear standard . . . is intended to be a low

8

screening standard for admission into the usual full asylum process"); *see also* H.R. REP. NO. 104-469, pt. 1, at 158 (1996)(stating "there should be no danger that an alien with a genuine asylum claim will be returned to persecution"). A credible fear is defined as a "significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum." 8 U.S.C. § 1225(b)(1)(B)(v).

If, after a credible fear interview, the asylum officer finds that the alien does have a "credible fear of persecution" the alien is taken out of the expedited removal process and referred to a standard removal hearing before an immigration judge. *See* 8 U.S.C. § 1225(b)(1)(B)(ii), (v). At that hearing, the alien has the opportunity to develop a full record with respect to his or her asylum claim, and may appeal an adverse decision to the BIA, 8 C.F.R. § 208.30(f), and then, if necessary, to a federal court of appeals, *see* 8 U.S.C. § 1252(a)-(b).

If the asylum officer renders a negative credible fear determination, the alien may request a review of that determination by an immigration judge. 8 U.S.C. § 1225(b)(1)(B)(iii)(III). The immigration judge's decision is "final and may not be appealed" 8 C.F.R. § 1208.30(g)(2)(iv)(A),

except in limited circumstances. *See* 8 U.S.C. § 1252(e).

### **3. Judicial Review**

Section 1252 delineates the scope of judicial review of expedited removal orders and limits judicial review of orders issued pursuant to negative credible fear determinations to a few enumerated circumstances. *See* 8 U.S.C. § 1252(a). The section provides that "no court shall have jurisdiction to review . . . the application of [section 1225(b)(1)] to individual aliens, including the [credible fear] determination made under section 1225(b)(1)(B)." 8 U.S.C.

§ 1252(a)(2)(A)(iii). Moreover, except as provided in section 1252(e), the statute prohibits courts from reviewing: (1) "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an [expedited removal] order;" (2) "a decision by the Attorney General to invoke" the expedited removal regime; and (3) the "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1)." *Id.* § 1252(a)(2)(A)(i), (ii) & (iv).

Section 1252(e) provides for judicial review of two types of challenges to removal orders pursuant to credible fear determinations. The first is a habeas corpus proceeding limited to reviewing whether the petitioner was erroneously removed because he or she was, among other things, lawfully admitted for

permanent residence, or had previously been granted asylum.
8 U.S.C. § 1252(e)(2)(C). As relevant here, the second
proceeding available for judicial review is a systemic challenge
to the legality of a "written policy directive, written policy
guideline, or written procedure issued by or under the authority
of the Attorney General to implement" the expedited removal
process. *Id.* § 1252(e)(3)(A)(ii). Jurisdiction to review such a
systemic challenge is vested solely in the United States
District Court for the District of Columbia. *Id.*
§ 1252(e)(3)(A).

### B. Executive Guidance on Asylum Claims

#### 1. Precedential Decision

The Attorney General has the statutory and regulatory
authority to make determinations and rulings with respect to
immigration law. *See, e.g.*, 8 U.S.C. § 1103(a)(1). This
authority includes the ability to certify cases for his or her
review and to issue binding decisions. *See* 8 C.F.R.
§§ 1003.1(g)-(h)(1)(ii).

On June 11, 2018, then-Attorney General Sessions did
exactly that when he issued a precedential decision in an asylum
case, *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018). In *Matter
of A-B-*, the Attorney General reversed a grant of asylum to a
Salvadoran woman who allegedly fled several years of domestic
violence at the hands of her then-husband. *Id.* at 321, 346.

11

The decision began by overruling another case, *Matter of A-R-C-G-*, 27 I. & N. Dec. 388 (BIA 2014). *Id.* at 319. In *A-R-C-G-*, the BIA recognized "married women in Guatemala who are unable to leave their relationship" as a "particular social group" within the meaning of the asylum statute. 27 I. & N. Dec. at 392. The Attorney General's rationale for overruling *A-R-C-G-* was that it incorrectly applied BIA precedent, "assumed its conclusion and did not perform the necessary legal and factual analysis" because, among other things, the BIA accepted stipulations by DHS that the alien was a member of a qualifying particular social group. *Matter of A-B-,* 27 I. & N. Dec. at 319. In so doing, the Attorney General made clear that "[g]enerally, claims by aliens pertaining to domestic violence or gang violence perpetrated by non-governmental actors will not qualify for asylum," *id.* at 320,[4] and "[a]ccordingly, few such claims would satisfy the legal standard to determine whether an alien has a credible fear of persecution." *Id.* at 320 n.1 (citing 8 U.S.C. § 1225(b)(1)(B)(v)).

The Attorney General next reviewed the history of BIA precedent interpreting the "particular social group" standard and again explained, at length, why *A-R-C-G-* was wrongly

_____

[4] Although *Matter of A-B-* discusses gang-related violence at length, the applicant in *Matter of A-B-* never claimed gang members had any involvement in her case. *Id.* at 321 (describing persecution related to domestic violence).

12

decided. In so ruling, the Attorney General articulated legal standards for determining asylum cases based on persecution from non-governmental actors on account of membership in a particular social group, focusing principally on claims by victims of domestic abuse and gang violence. He specifically stated that few claims pertaining to domestic or gang violence by non-governmental actors could qualify for asylum or satisfy the credible fear standard. *See id.* at 320 n.1.

The Attorney General next focused on the specific elements of an asylum claim beginning with the standard for membership in a "particular social group." The Attorney General declared that "[s]ocial groups defined by their vulnerability to private criminal activity likely lack the particularity required" under asylum laws since "broad swaths of society may be susceptible to victimization." *Id.* at 335.

The Attorney General next examined the persecution requirement, which he described as having three elements: (1) an intent to target a belief or characteristic; (2) severe harm; and (3) suffering inflicted by the government or by persons the government was unable or unwilling to control. *Id.* at 337. With respect to the last element, the Attorney General stated that an alien seeking to establish persecution based on the violent conduct of a private actor may not solely rely on the government's difficulty in controlling the violent behavior. *Id.*

Rather, the alien must show "the government condoned the private actions or at least demonstrated a complete helplessness to protect the victims." *Id.* (citations and internal quotation marks omitted).

The Attorney General concluded with a discussion of the requirement that an asylum applicant demonstrate that the persecution he or she suffered was on account of a membership in a "particular social group." *Id.* at 338-39. He explained that "[i]f the ill-treatment [claimed by an alien] was motivated by something other than" one of the five statutory grounds for asylum, then the alien "cannot be considered a refugee for purpose of asylum." *Id.* at 338 (citations omitted). He continued to explain that when private actors inflict violence based on personal relationships with a victim, the victim's membership in a particular social group "may well not be 'one central reason' for the abuse." *Id.* Using *Matter of A-R-C-G-* as an example, the Attorney General stated that there was no evidence that the alien was attacked because her husband was aware of, and hostile to, her particular social group: women who were unable to leave their relationship. *Id.* at 338-39. The Attorney General remanded the matter back to the immigration judge for further proceedings consistent with his decision. *Id.* at 346.

## **2. Policy Memorandum**

Two days after the Attorney General issued *Matter of A-B-*, USCIS issued Interim Guidance instructing asylum officers to apply *Matter of A-B-* to credible fear determinations. Asylum Division Interim Guidance -- *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018) ("Interim Guidance"), ECF No. 100 at 15-18.[5] On July 11, 2018, USCIS issued final guidance to asylum officers for use in assessing asylum claims and credible fear determinations in light of *Matter of A-B-*. USCIS Policy Mem., Guidance for Processing Reasonable Fear, Credible Fear, Asylum, and Refugee Claims in Accordance with *Matter of A-B-*, July 11, 2018 (PM-602-0162) ("Policy Memorandum"), ECF No. 100 at 4-13.

The Policy Memorandum adopts the standards set forth in *Matter of A-B-* and adds new directives for asylum officers. First, like *Matter of A-B-*, the Policy Memorandum invokes the expedited removal statute. *Id.* at 4 (citing section 8 U.S.C. § 1225 as one source of the Policy Memorandum's authority). The Policy Memorandum further acknowledges that "[a]lthough the alien in *Matter of A-B-* claimed asylum and withholding of removal, the Attorney General's decision and this [Policy Memorandum] apply also to refugee status adjudications and

---

[5] When citing electronic filings throughout this Memorandum Opinion, the Court cites to the ECF header page number, not the original page number of the filed docket.

reasonable fear and credible fear determinations." *Id.* n.1
(citations omitted).

The Policy Memorandum also adopts the standard for
"persecution" set by *Matter of A-B-*: In cases of alleged
persecution by private actors, aliens must demonstrate the
"government is unwilling or unable to control" the harm "such
that the government either 'condoned the behavior or
demonstrated a complete helplessness to protect the victim.'"
*Id.* at 5 (citing *Matter of A-B-*, 27 I. & N. Dec. at 337). After
explaining the "condoned or complete helplessness" standard, the
Policy Memorandum explains that:

> **In general, in light of the [standards
> governing persecution by a non-government
> actor], claims based on membership in a
> putative particular social group defined by
> the members' vulnerability to harm of domestic
> violence or gang violence committed by non-
> government actors will not establish the basis
> for asylum, refugee status, or a credible or
> reasonable fear of persecution.**

*Id.* at 9 (emphasis in original).

Furthermore, the Policy Memorandum made clear that because
*Matter of A-B-* "explained the standards for eligibility for
asylum . . . based on a particular social group . . . if an
applicant claims asylum based on membership in a particular
social group, then officers must factor [the standards explained
in *Matter of A-B-*] into their determination of whether an

16

applicant has a credible fear . . . of persecution." *Id.* at 12
(citations and internal quotation marks omitted).

The Policy Memorandum includes two additional directives
not found in *Matter of A-B-*. First, it instructs asylum officers
to apply the "case law of the relevant federal circuit court, to
the extent that those cases are not inconsistent with *Matter of
A-B-*." *Id.* at 11. Second, although acknowledging that the
"relevant federal circuit court is the circuit where the removal
proceedings *will take place* if the officer makes a positive
credible fear or reasonable fear determination," the Policy
Memorandum instructs asylum officers to "apply precedents of the
Board, and, if necessary, the circuit where the alien is
*physically located* during the credible fear interview." *Id.* at
11-12. (emphasis added).

The Policy Memorandum concludes with the directive that
"[asylum officers] should be alert that under the standards
clarified in *Matter of A-B-*, few gang-based or domestic-violence
claims involving particular social groups defined by the
members' vulnerability to harm may . . . pass the 'significant
probability' test in credible-fear screenings." *Id.* at 13.

### C. Factual and Procedural Background

Each of the plaintiffs, twelve adults and children, came to
the United States fleeing violence from Central America and
seeking refuge through asylum. Plaintiff Grace fled Guatemala

17

after having been raped, beaten, and threatened for over twenty years by her partner who disparaged her because of her indigenous heritage. Grace Decl., ECF No. 12-1 ¶ 2.[6] Her persecutor also beat, sexually assaulted, and threatened to kill several of her children. *Id.* Grace sought help from the local authorities who, with the help of her persecutor, evicted her from her home. *Id.*

Plaintiff Carmen escaped from her country with her young daughter, J.A.C.F., fleeing several years of sexual abuse by her husband, who sexually assaulted, stalked, and threatened her, even after they no longer resided together. Carmen Decl., ECF No. 12-2 ¶ 2. In addition to Carmen's husband's abuse, Carmen and her daughter were targeted by a local gang because they knew she lived alone and did not have the protection of a family. *Id.* ¶ 24. She fled her country of origin out of fear the gang would kill her. *Id.* ¶ 28.

Plaintiff Mina escaped from her country after a gang murdered her father-in-law for helping a family friend escape from the gang. Mina Decl., ECF No. 12-3 ¶ 2. Her husband went to the police, but they did nothing. *Id.* at ¶ 10. While her husband was away in a neighboring town to seek assistance from another police force, members of the gang broke down her door and beat

---

[6] The plaintiffs' declarations have been filed under seal.

Mina until she could no longer walk. *Id.* ¶ 15. She sought asylum in this country after finding out she was on a "hit list" compiled by the gang. *Id.* ¶¶ 17–18.

The remaining plaintiffs have similar accounts of abuse either by domestic partners or gang members. Plaintiff Gina fled violence from a politically-connected family who killed her brother, maimed her son, and threatened her with death. Gina Decl., ECF No. 12-4 ¶ 2. Mona fled her country after a gang brutally murdered her long-term partner—a member of a special military force dedicated to combating gangs—and threatened to kill her next. Mona Decl., ECF No. 12-5 ¶ 2. Gio escaped from two rival gangs, one of which broke his arm and threatened to kill him, and the other threatened to murder him after he refused to deal drugs because of his religious convictions. Gio Decl., ECF No. 12-6 ¶ 2. Maria, an orphaned teenage girl, escaped a forced sexual relationship with a gang member who targeted her after her Christian faith led her to stand up to the gang. Maria Decl., ECF No. 12-7 ¶ 2. Nora, a single mother, together with her son, A.B.A., fled an abusive partner and members of his gang who threatened to rape her and kill her and her son if she did not submit to the gang's sexual advances. Nora Decl., ECF No. 12-8 ¶ 2. Cindy, together with her young child, A.P.A., fled rapes, beatings, and shootings

19

███████████████████████████. Cindy Decl., ECF No. 12-9 ¶ 2.[7]

Each plaintiff was given a credible fear determination pursuant to the expedited removal process. Despite finding that the accounts they provided were credible, the asylum officers determined that, in light of *Matter of A–B–,* their claims lacked merit, resulting in a negative credible fear determination. Plaintiffs sought review of the negative credible fear determinations by an immigration judge, but the judge affirmed the asylum officers' findings. Plaintiffs are now subject to final orders of removal or were removed pursuant to such orders prior to commencing this suit.[8]

Facing imminent deportation, plaintiffs filed a motion for preliminary injunction, ECF No. 10, and an emergency motion for stay of removal, ECF No. 11, on August 7, 2018. In their motion for stay of removal, plaintiffs sought emergency relief because two of the plaintiffs, Carmen and her daughter J.A.C.F., were "subject to imminent removal." ECF No. 11 at 1.

The Court granted the motion for emergency relief as to the plaintiffs not yet deported. The parties have since filed cross-

---

[7] Each plaintiffs' harrowing accounts were found to be believable during the plaintiffs' credible fear interviews. Oral Arg. Hr'g Tr., ECF No. 102 at 37.

[8] Since the Court's Order staying plaintiffs' removal, two plaintiffs have moved for the Court to lift the stay and have accordingly been removed. *See* Mot. to Lift Stay, ECF Nos. 28 (plaintiff Mona), 60 (plaintiff Gio).

20

motions for summary judgment related to the Attorney General's precedential decision and the Policy Memorandum issued by DHS. Further, plaintiffs have filed an opposed motion to consider evidence outside the administrative record.

## II. Motion to Consider Extra Record Evidence

Plaintiffs attach several exhibits to their combined application for a preliminary injunction and cross-motion for summary judgment, *see* ECF Nos. 10–2 to 10–7, 12–1 to 12–9, 64–3 to 64-8, which were not before the agency at the time it made its decision. These exhibits include: (1) declarations from plaintiffs; (2) declarations from experts pertaining to whether the credible fear policies are new; (3) government training manuals, memoranda, and a government brief; (4) third-party country reports or declarations; (5) various newspaper articles; and (6) public statements from government officials. Pls.' Evid. Mot., ECF No. 66-1 at 7–16. The government moves to strike these exhibits, arguing that judicial review under the APA is limited to the administrative record, which consists of the "materials that were before the agency at the time its decision was made." Defs.' Mot. to Strike, ECF No. 88-1 at 20.

### A. Legal Standard

"[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its

decision.'" *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013)(quoting W*alter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)). This is because, under the APA, the court is confined to reviewing "the whole record or those parts of it cited by a party," 5 U.S.C. § 706, and the administrative record only includes the "materials 'compiled' by the agency that were 'before the agency at the time the decision was made,'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996)(citations omitted).

Accordingly, when, as here, plaintiffs seek to place before the court additional materials that the agency did not review in making its decision, a court must exclude such material unless plaintiffs "can demonstrate unusual circumstances justifying departure from th[e] general rule." *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)(citation omitted). Aa court may appropriately consider extra-record materials: (1) if the agency "deliberately or negligently excluded documents that may have been adverse to its decision," (2) if background information is needed to "determine whether the agency considered all of the relevant factors," or (3) if the agency "failed to explain [the] administrative action so as to frustrate judicial review." *Id.*

Plaintiffs make three arguments as to why the Court should

consider their proffered extra-record materials: (1) to evaluate
whether the government's challenged policies are an
impermissible departure from prior policies; (2) to consider
plaintiffs' due process cause of action[9]; and (3) to evaluate
plaintiffs' request for permanent injunctive relief. Pls.' Evid.
Mot., ECF No. 66-1 at 2–12. The Court considers each argument in
turn.

## B. Analysis

### 1. Evidence of Prior Policies

Plaintiffs first argue that the Court should consider
evidence of the government's prior policies as relevant to
determining whether the policies in *Matter of A-B-* and the
subsequent guidance deviated from prior policies without
explanation. *Id*. at 8–11. The extra-record materials at issue
include government training manuals, memoranda, and a government
brief, *see* Decl. of Sarah Mujahid ("Mujahid Decl."), ECF No. 10-
3 Exs. E–J; Second Decl. of Sarah Mujahid ("Second Mujahid
Decl."), ECF No. 64-4, Exs. 1–3, and declarations from third
parties explaining the policies are new, Decl. of Rebecca Jamil
and Ethan Nasr, ECF No. 65-5.

The Court will consider the government training manuals,

---

[9] The Court does not reach plaintiffs' due process claims, and
therefore will not consider the extra-record evidence related to
that claim. *See* Second Mujahid Decl., ECF No. 64-4, Exs. 4–7;
Second Mujahid Decl., ECF No. 64-4, Exs. 8–9; ECF No. 64-5.

23

memoranda, and government brief, but not the declarations explaining them. Plaintiffs argue that the credible fear policies are departures from prior government policies, which the government changed without explanation. Pls.' Evid. Mot., ECF No. 66-1 at 7–11. The government's response is the credible fear policies are not a departure because they do not articulate any new rules. *See* Defs.' Mot., ECF No. 57-1 at 17. Whether the credible fear policies are new is clearly an "unresolved factual issue" that the "administrative record, on its own, . . . is not sufficient to resolve." *See United Student Aid Funds, Inc. v. Devos*, 237 F. Supp. 3d 1, 6 (D.D.C. 2017). The Court cannot analyze this argument without reviewing the prior policies, which are not included in the administrative record. Under these circumstances, it is "appropriate to resort to extra-record information to enable judicial review to become effective." *Id.* at 3 (citing *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989)).

The government agrees that "any claim that *A–B–* or the [Policy Memorandum] breaks with past policies . . . is readily ascertainable by simply reviewing the very 'past policies.'" Defs.' Mot. to Strike, ECF No. 88-1 at 24. However, the government disagrees with the types of documents that are considered past policies. *Id.* According to the government, the only "past policies" at issue are legal decisions issued by the

Attorney General, BIA, or courts of appeals. *Id.* The Court is not persuaded by such a narrow interpretation of the evidence that can be considered as past policies. *See Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 255 (D.D.C. 2005)(finding training manual distributed as informal guidance "at a minimum" reflected the policy of the "Elections Crimes Branch if not the Department of Justice").

Admitting third party-declarations from a retired immigration officer and former immigration judge, on the other hand, are not necessary for the Court in its review. Declarations submitted by third-parties regarding putative policy changes would stretch the limited extra-record exception too far. Accordingly, the Court will not consider these declarations when determining whether the credible fear policies constitute an unexplained change of position.

### 2. **Evidence Supporting Injunctive Relief**

The second category of information plaintiffs ask the Court to consider is extra-record evidence in support of their claim that injunctive relief is appropriate. Pls.' Evid. Mot., ECF No. 66-1 at 13–16. The evidence plaintiffs present includes plaintiffs' declarations, ECF Nos. 12-1 to 12-9 (filed under seal); several reports describing the conditions of plaintiffs' native countries, Mujahid Decl., ECF No. 10-3, Exs. K-T; and four United Nations High Commissioner for Refugees ("UNHCR")

25

reports, Second Mujahid Decl., ECF No. 64-4 Exs. 10-13. The
materials also include three declarations regarding humanitarian
conditions in the three home countries. Joint Decl. of Shannon
Drysdale Walsh, Cecilia Menjívar, and Harry Vanden ("Honduras
Decl."), ECF No. 64-6; Joint Decl. of Cecilia Menjívar, Gabriela
Torres, and Harry Vanden ("Guatemala Decl."), ECF No. 64-7;
Joint Decl. of Cecilia Menjívar and Harry Vanden ("El Salvador
Decl."), ECF No. 64-8.

    The government argues that the Court need not concern itself
with the preliminary injunction analysis because the Court's
decision to consolidate the preliminary injunction and summary
judgment motions under Rule 65 renders the preliminary
injunction moot. Defs.' Mot. to Strike, ECF No. 88-1 at 12 n.1.
The Court concurs, but nevertheless must determine if plaintiffs
are entitled to a permanent injunction, assuming they prevail on
their APA and INA claims. Because plaintiffs request specific
injunctive relief with respect to their expedited removal orders
and credible fear proceedings, the Court must determine whether
plaintiffs are entitled to the injunctive relief sought. *See Eco
Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 370, n.7
(D.D.C. 2017)("it will often be necessary for a court to take
new evidence to fully evaluate" claims "of irreparable harm . .
. and [claims] that the issuance of the injunction is in the
public interest.")(citation omitted). Thus, the Court will

26

consider plaintiffs' declarations, the UNHCR reports, and the country reports only to the extent they are relevant to plaintiffs' request for injunctive relief.[10]

In sum, the Court will consider extra-record evidence only to the extent it is relevant to plaintiffs' contentions that the government deviated from prior policies without explanation or to their request for injunctive relief. The Court will not consider any evidence related to plaintiffs' due process claim. Accordingly, the Court will not consider the following documents: (1) evidence related to the opinions of immigration judges and attorneys, Second Mujahid Decl., ECF No. 64-4, Exs. 8–9, 14–17 and ECF No. 64-5; (2) statements of various public officials, Second Mujahid Decl., ECF No. 64-4, Exs. 4–7; and (3) various newspaper articles, Mujahid Decl., ECF No. 10-3, Exs. R-T, and Second Mujahid Decl., ECF No. 64-4, Exs. 14–17.

## III. Motion for Summary Judgment

### A. Justiciability

The Court next turns to the government's jurisdictional arguments that: (1) the Court lacks jurisdiction to review plaintiffs' challenge to *Matter of A-B-*; and (2) because the Court lacks jurisdiction to review *Matter of A-B-,* the

_____

[10] The Court will not consider three newspaper articles, Mujahid Decl., ECF No. 10-3, Exs. R-T, however, since they are not competent evidence to be considered at summary judgment. *See* Fed. R. Civ. P. 56(c).

27

government action purportedly causing plaintiffs' alleged harm, the plaintiffs lack standing to challenge the Policy Memorandum. Federal district courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court must therefore resolve any challenge to its jurisdiction before it may proceed to the merits of a claim. *See Galvan v. Fed. Prison Indus.*, 199 F.3d 461, 463 (D.C. Cir. 1999). The Court addresses each argument in turn.

### 1. The Court has Jurisdiction under Section 1252(e)(3)

#### a. *Matter of A-B-*

The government contends that section 1252 forecloses judicial review of plaintiffs' claims with respect to *Matter of A-B-*. Defs.' Mot., ECF No. 57-1 at 30–34. Plaintiffs argue that the statute plainly provides jurisdiction for this Court to review their claims. Pls.' Mot., ECF No. 64-1 at 26–30. The parties agree that to the extent jurisdiction exists to review a challenge to a policy implementing the expedited removal system, it exists pursuant to subsection (e) of the statute.

Under section 1252(a)(2)(A), no court shall have jurisdiction over "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1)" except "as provided in subsection [1252](e)." Section 1252(e)(3) vests exclusive jurisdiction in the United States District Court for the District of Columbia to review

"[c]hallenges [to the] validity of the [expedited removal] system." *Id.* § 1252(e)(3)(A). Such systemic challenges include challenges to the constitutionality of any provision of the expedited removal statute or to its implementing regulations. *See id.* § 1252(e)(3)(A)(i). They also include challenges claiming that a given regulation or written policy directive, guideline, or procedure is inconsistent with law. *Id.* § 1252(e)(3)(A)(ii). Systemic challenges must be brought within sixty days of the challenged statute or regulation's implementation. *Id.* § 1252(e)(3)(B); *see also Am. Immigration Lawyers Ass'n*, 18 F. Supp. 2d at 47 (holding that "the 60-day requirement is jurisdictional rather than a traditional limitations period").

Both parties agree that the plain language of section 1252(e)(3) is dispositive. It reads as follows:

> (3) Challenges on validity of the system
>
> (A) In general
>
> Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of--
>
> (i) whether such section, or any regulation issued to implement such section, is constitutional; or
>
> (ii) whether such a regulation, or a written policy directive, written policy guideline, or

29

> written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3).

The government first argues that *Matter of A-B-* does not implement section 1225(b), as required by section 1252(e)(3). Defs.' Mot., ECF No. 57-1 at 30-32. Instead, the government contends *Matter of A-B-* was a decision about petitions for asylum under section 1158. *Id.* The government also argues that *Matter of A-B-* is not a written policy directive under the Act, but rather an adjudication that determined the rights and duties of the parties to a dispute. *Id.* at 32.

The government's argument that *Matter of A-B-* does not "implement" section 1225(b) is belied by *Matter of A-B-* itself. Although A-B- sought asylum, the Attorney General's decision went beyond her claims explicitly addressing "the legal standard to determine whether an alien has a credible fear of persecution" under 8 U.S.C. section 1225(b). *Matter of A-B-*, 27 I. & N. Dec. at 320 n.1 (citing standard for credible fear determinations). In the decision, the Attorney General articulated the general rule that claims by aliens pertaining to either domestic violence, like the claim in *Matter of A-B-*, or gang violence, a hypothetical scenario not at issue in *Matter of A-B-*, would likely not satisfy the credible fear determination

30

standard. *Id.* (citing 8 U.S.C. § 1225(b)). Because the Attorney General cited section 1225(b) and the standard for credible fear determinations when articulating the new general legal standard, the Court finds that *Matter of A-B-* implements section 1225(b) within the meaning of section 1252(e)(3).

The government also argues that, despite *Matter of A-B-'s* explicit invocation of section 1225 and articulation of the credible fear determination standard, *Matter of A-B-* is an "adjudication" not a "policy," and therefore section 1252(e)(3) does not apply. Defs.' Mot., ECF No. 57-1 at 32–34. However, it is well-settled that an "administrative agency can, of course, make legal-policy through rulemaking or by adjudication." *Kidd Commc'ns v. F.C.C.*, 427 F.3d 1, 5 (D.C. Cir. 2005)(citing *SEC v. Chenery Corp.*, 332 U.S. 194, 202–03 (1947)). Moreover, "[w]hen an agency does [make policy] by adjudication, because it is a policymaking institution unlike a court, its dicta can represent an articulation of its policy, to which it must adhere or adequately explain deviations." *Id*. at 5. *Matter of A-B-* is a sweeping opinion in which the Attorney General made clear that asylum officers must apply the standards set forth to subsequent credible fear determinations. *See NRLB v. Wyman Gordon Co.*, 394 U.S. 759, 765 (1969)("Adjudicated cases may and do, of course, serve as vehicles for the formulation of agency policies, which are applied and announced therein.").

31

Indeed, it is difficult to reconcile the government's argument with the language in *Matter of A-B-*: "When confronted with asylum cases based on purported membership in a particular social group, the Board, *immigration judges*, and *asylum officers must analyze the requirements as set forth in this opinion,* which restates and where appropriate, *elaborates upon*, the requirements [for asylum]." 27 I. & N. Dec. at 319 (emphasis added). This proclamation, coupled with the directive to asylum officers that claims based on domestic or gang-related violence generally would not "satisfy the standard to determine whether an alien has a credible fear of persecution," *id.* at 320 n.1, is clearly a "written policy directive" or "written policy guidance" sufficient to bring *Matter of A-B-* under the ambit of section 1252(e)(3). *See Kidd*, 427 F.3d at 5 (stating agency can "make legal-policy through rulemaking or by adjudication"). Indeed, one court has regarded *Matter of A-B-* as such. *See Moncada v. Sessions*, 2018 WL 4847073 *2 (2d Cir. Oct. 5, 2018)(characterizing *Matter of A-B-* as providing "**substantial new guidance** on the viability of asylum 'claims by aliens pertaining to . . . gang violence'")(emphasis added)(citation omitted).

The government also argues that because the DHS Secretary, rather than the Attorney General, is responsible for implementing most of the provisions in section 1225, the

Attorney General lacks the requisite authority to implement section 1225. Defs.' Reply, ECF No. 85 at 25. Therefore, the government argues, *Matter of A-B-* cannot be "issued by or under the authority of the Attorney General to implement [section 1225(b)]" as required by the statute. *See* 8 U.S.C. § 1252(e)(3)(A)(ii). The government fails to acknowledge, however, that the immigration judges who review negative credible fear determinations are also required to apply *Matter of A-B-*. 8 C.F.R. § 1208.30(g)(2); 8 C.F.R. § 103.10(b)(stating decisions of the Attorney General shall be binding on immigration judges). And it is the Attorney General who is responsible for the conduct of immigration judges. *See, e.g.*, 8 U.S.C. § 1101(b)(4)("An immigration judge shall be subject to such supervision and shall perform such duties as the Attorney General shall prescribe."). Therefore, the Attorney General clearly plays a significant role in the credible fear determination process and has the authority to "implement" section 1225.

Finally, the Court recognizes that even if the jurisdictional issue was a close call, which it is not, several principles persuade the Court that jurisdiction exists to hear plaintiffs' claims. First, there is the "familiar proposition that only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to

33

judicial review." *Bd. of Governors of the Fed. Reserve Sys. v. MCorp. Fin., Inc.*, 502 U.S. 32, 44 (1991)(citations and internal quotation marks omitted). Here, there is no clear and convincing evidence of legislative intent in section 1252 that Congress intended to limit judicial review of the plaintiffs' claims. To the contrary, Congress has explicitly provided this Court with jurisdiction to review systemic challenges to section 1225(b). *See* 8 U.S.C. § 1252(e)(3).

Second, there is also a "strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr*, 533 U.S. 289, 298 (2001). As the Supreme Court has recently explained, "legal lapses and violations occur, and especially so when they have no consequence. That is why [courts have for] so long applied a strong presumption favoring judicial review of administrative action." *Weyerhaeuser Co. v. United States Fish and Wildlife Servs.,* 586 U.S. __, __ (2018)(slip op., at 11). Plaintiffs challenge the credible fear policies under the APA and therefore this "strong presumption" applies in this case.

Third, statutory ambiguities in immigration laws are resolved in favor of the alien. *See Cardoza–Fonseca*, 480 U.S. at 449. Here, any doubt as to whether 1252(e)(3) applies to plaintiffs' claims should be resolved in favor of plaintiffs. *See INS v. Errico*, 385 U.S. 214, 225 (1966)("Even if there were some doubt as to the correct construction of the statute, the

doubt should be resolved in favor of the alien.").

In view of these three principles, and the foregoing analysis, the Court concludes that section 1252(a)(2)(A) does not eliminate this Court's jurisdiction over plaintiffs' claims, and that section 1252(e)(3) affirmatively grants jurisdiction.

### b. Policy Memorandum

The government also argues that the Court lacks jurisdiction to review the Policy Memorandum under section 1252(e) for three reasons. First, according to the government, the Policy Memorandum "primarily addresses the asylum standard" and therefore does not implement section 1225(b) as required by the statute. Defs.' Reply, ECF No. 85 at 30. Second, since the Policy Memorandum "merely explains" *Matter of A-B-*, the government argues, it is not reviewable for the same reasons *Matter of A-B-* is not reviewable. *Id.* Finally, the government argues that sections 1225 and 1252(e)(3) "indicate" that Congress only provided judicial review of agency guidelines, directives, or procedures which create substantive rights as opposed to interpretive documents, like the Policy Memorandum, which merely explain the law to government officials. *Id.* at 31–33.

The Court need not spend much time on the government's first two arguments. First, the Policy Memorandum, entitled "Guidance for Processing Reasonable Fear, Credible Fear, Asylum,

and Refugee Claims in Accordance with *Matter of A-B-*" expressly applies to credible fear interviews and provides guidance to credible fear adjudicators. Policy Memorandum, ECF No. 100 at 4 n.1 ("[T]he Attorney General's decision and this [Policy Memorandum] apply also to . . . credible fear determinations."). Furthermore, it expressly invokes section 1225 as the authority for its issuance. *Id.* at 4. The government's second argument that the Policy Memorandum is not reviewable for the same reasons *Matter of A-B-* is not, is easily dismissed because the Court has already found that *Matter of A-B-* falls within section 1252(e)(3)'s jurisdictional grant. *See supra,* at 27-38.

The government's third argument is that section 1252(e)(3) only applies when an agency promulgates legislative rules and not interpretive rules. Defs.' Reply, ECF No. 85 at 30-33. Although not entirely clear, the argument is as follows: (1) the INA provides DHS with significant authority to create legislative rules; (2) Congress barred judicial review of such substantive rules in section 1252(a); (3) therefore Congress must have created a mechanism to review these types of legislative rules, and only legislative rules, in section 1252(e)(3)). *Id.* at 30-31. Folded into this reasoning is also a free-standing argument that because the Policy Memorandum is not a final agency action, it is not reviewable under the APA. *Id.* at 32.

36

Contrary to the government's assertions, section 1252(e)(3) does not limit its grant of jurisdiction over a "written policy directive, written policy guideline, or written procedure" to only legislative rules or final agency action. Nowhere in the statute did Congress exclude interpretive rules. *Cf.* 5 U.S.C. § 553(b)(3)(A)(stating subsection of statute does not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice."). Rather, Congress used broader terms such as policy "guidelines," "directives," or "procedures" which do not require notice and comment rulemaking or other strict procedural prerequisites. *See* 8 U.S.C. § 1252(e)(3). There is no suggestion that Congress limited the application of section 1252(e)(3) to only claims involving legislative rules or final agency action, and this Court will not read requirements into the statute that do not exist. *See Keene Corp. v. U.S.*, 508 U.S. 200, 208 (1993)(stating courts have a "duty to refrain from reading a phrase into the statute when Congress has left it out").

In sum, section 1252(a)(2)(A) is not a bar to this Court's jurisdiction because plaintiffs' claims fall well within section 1252(e)(3)'s grant of jurisdiction. Both *Matter of A-B-* and the Policy Memorandum expressly reference credible fear determinations in applying the standards articulated by the Attorney General. Because *Matter of A-B-* and the Policy

37

Memorandum are written policy directives and guidelines issued
by or under the authority of the Attorney General, section
1252(e)(3) applies, and this Court has jurisdiction to hear
plaintiffs' challenges to the credible fear policies.

## 2. **Plaintiffs have Standing to Challenge the Policy Memorandum**

The government next challenges plaintiffs' standing to
bring this suit with respect to their claims against the Policy
Memorandum only. Defs.' Mot., ECF No. 57-1 at 35–39. To
establish standing, a plaintiff "must, generally speaking,
demonstrate that he has suffered 'injury in fact,' that the
injury is 'fairly traceable' to the actions of the defendant,
and that the injury will likely be redressed by a favorable
decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997)(citing
*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Valley
Forge Christian Coll. v. Ams. United for Separation of Church
and State, Inc.*, 454 U.S. 464, 471–72 (1982)). Standing is
assessed "upon the facts as they exist at the time the complaint
is filed.*" Natural Law Party of U.S. v. Fed. Elec. Comm'n*, 111
F. Supp. 2d 33, 41 (D.D.C. 2000).

As a preliminary matter, the government argues that
plaintiffs lack standing to challenge any of the policies in the
Policy Memorandum that rest on *Matter of A-B-* because the Court
does not have jurisdiction to review *Matter of A-B-*. *See* Defs.'

38

Mot., ECF No. 57-1 at 35, 37–39. Therefore, the government argues, plaintiffs' injuries would not be redressable or traceable to the Policy Memorandum since they stem from *Matter of A-B-*. This argument fails because the Court has found that it has jurisdiction to review plaintiffs' claims related to *Matter of A-B-* under 1252(e)(3). *See supra*, at 27-38.

The government also argues that because plaintiffs do not have a legally protected interest in the Policy Memorandum—an interpretive document that creates no rights or obligations—plaintiffs do not have an injury in fact. Defs.' Reply, ECF No. 85 at 33. The government's argument misses the point. Plaintiffs do not seek to enforce a right under a prior policy or interpretive guidance. *See* Pls.' Reply, ECF No. 92 at 17–18. Rather, they challenge the validity of their credible fear determinations pursuant to the credible fear policies set forth in *Matter of A-B-* and the Policy Memorandum. Because the credible fear policies impermissibly raise their burden and deny plaintiffs a fair opportunity to seek asylum and escape the persecution they have suffered, plaintiffs argue, the policies violate the APA and immigration laws. *See id.*

The government also argues that even if the Court has jurisdiction, all the claims, with the exception of one, are time-barred and therefore not redressable. Defs.' Mot., ECF No. 57-1 at 39–41. The government argues that none of the policies

39

Mot., ECF No. 57-1 at 35, 37–39. Therefore, the government argues, plaintiffs' injuries would not be redressable or traceable to the Policy Memorandum since they stem from *Matter of A-B-*. This argument fails because the Court has found that it has jurisdiction to review plaintiffs' claims related to *Matter of A-B-* under 1252(e)(3). *See supra*, at 27-38.

The government also argues that because plaintiffs do not have a legally protected interest in the Policy Memorandum—an interpretive document that creates no rights or obligations—plaintiffs do not have an injury in fact. Defs.' Reply, ECF No. 85 at 33. The government's argument misses the point. Plaintiffs do not seek to enforce a right under a prior policy or interpretive guidance. *See* Pls.' Reply, ECF No. 92 at 17–18. Rather, they challenge the validity of their credible fear determinations pursuant to the credible fear policies set forth in *Matter of A-B-* and the Policy Memorandum. Because the credible fear policies impermissibly raise their burden and deny plaintiffs a fair opportunity to seek asylum and escape the persecution they have suffered, plaintiffs argue, the policies violate the APA and immigration laws. *See id.*

The government also argues that even if the Court has jurisdiction, all the claims, with the exception of one, are time-barred and therefore not redressable. Defs.' Mot., ECF No. 57-1 at 39–41. The government argues that none of the policies

are in fact new and each pre-date the sixty days in which
plaintiffs are statutorily required to bring their claims. *Id.*
at 39–41. The government lists each challenged policy and relies
on existing precedent purporting to apply the same standard
espoused in the Policy Memorandum prior to its issuance. *See id.*
at 39–41. The challenge in accepting this theory of standing is
that it would require the Court to also accept the government's
theory of the case: that the credible fear policies are not
"new." In other words, the government's argument "assumes that
its view on the merits of the case will prevail." *Defs. of
Wildlife v. Gutierrez*, 532 F.3d 913, 924 (D.C. Cir. 2008). This
is problematic because "in reviewing the standing question, the
court must be careful not to decide the questions on the merits
for or against the plaintiff, and must therefore assume that on
the merits the plaintiffs would be successful in their claims."
*City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir.
2003)(citations omitted).

　　Whether the credible fear policies differ from the
standards articulated in the pre-policy cases cited by the
government, and are therefore new, is a contested issue in this
case. And when assessing standing, this Court must "be careful
not to decide the questions on the merits" either "for or
against" plaintiffs, "and must therefore assume that on the
merits the plaintiffs would be successful in their claims." *Id.*

Instead, the Court must determine whether an order can redress plaintiffs' injuries in whole or part. *Gutierrez*, 532 F.3d at 925. There is no question that the challenged policies impacted plaintiffs. *See* Defs.' Mot., ECF No. 57-1 at 28 (stating an "asylum officer reviewed each of [plaintiffs] credible fear claims and found them wanting in light of *Matter of A-B-*"). There is also no question that an order from this Court declaring the policies unlawful and enjoining their use would redress those injuries. *See Carpenters Indus. Council v. Zinke,* 854 F.3d 1, 6 n.1 (D.C. Cir. 2017)(stating when government actions cause an injury, enjoining that action will usually redress the injury).

Because plaintiffs have demonstrated that they have: (1) suffered an injury; (2) the injury is fairly traceable to the credible fear policies; and (3) action by the Court can redress their injuries, plaintiffs have standing to challenge the Policy Memorandum. Therefore, the Court may proceed to the merits of plaintiffs' claims.

### B. Legal Standard for Plaintiffs' Claims

Although both parties have moved for summary judgment, the parties seek review of an administrative decision under the APA. *See* 5 U.S.C. § 706. Therefore, the standard articulated in Federal Rule of Civil Procedure 56 is inapplicable because the Court has a more limited role in reviewing the administrative

record. *Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 160 (D.D.C. 2011)(internal citation omitted). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *See Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006)(internal quotation marks and citations omitted). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Wilhelmus*, 796 F. Supp. 2d at 160 (internal citation omitted).

Plaintiffs bring this challenge to the alleged new credible fear policies arguing they violate the APA and INA. Two separate, but overlapping, standards of APA review govern the resolution of plaintiffs' claims. First, under 5 U.S.C. § 706(2)(a), agency action must not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To survive an arbitrary and capricious challenge, an agency action must be "the product of reasoned decisionmaking." *Fox v. Clinton*, 684 F.3d 67, 74–75 (D.C. Cir. 2012). The reasoned decisionmaking requirement applies to judicial review of agency adjudicatory actions. *Id.* at 75. A court must not uphold an adjudicatory action when the agency's judgment "was neither adequately explained in its decision nor supported by agency

42

precedent." *Id.* (citing *Siegel v. SEC*, 592 F.3d 147, 164 (D.C. Cir. 2010)). Thus, review of *Matter of A-B-* requires this Court to determine whether the decision was the product of reasoned decisionmaking. *See id.* at 75.

Second, plaintiffs' claims also require this Court to consider the degree to which the government's interpretation of the various relevant statutory provisions in *Matter of A-B-* is afforded deference. The parties disagree over whether this Court is required to defer to the agency's interpretations of the statutory provisions in this case. "Although balancing the necessary respect for an agency's knowledge, expertise, and constitutional office with the courts' role as interpreter of laws can be a delicate matter," the familiar *Chevron* framework offers guidance. *Id.* at 75 (citing *Gonzales v. Oregon*, 546 U.S. 243, 255 (2006)).

In reviewing an agency's interpretation of a statute it is charged with administering, a court must apply the framework of *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Halverson v. Slater*, 129 F.3d 180, 184 (D.C. Cir. 1997). Under the familiar *Chevron* two-step test, the first step is to ask "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed

43

intent of Congress." *Chevron*, 467 U.S. at 842–43. In making that determination, the reviewing court "must first exhaust the 'traditional tools of statutory construction' to determine whether Congress has spoken to the precise question at issue." *Natural Res. Def. Council, Inc. v. Daley*, 209 F.3d 747, 572 (2000)(citation omitted). The traditional tools of statutory construction include "examination of the statute's text, legislative history, and structure . . . as well as its purpose." *Id.* (internal citations omitted). If these tools lead to a clear result, "then Congress has expressed its intention as to the question, and deference is not appropriate." *Id.*

If a court finds that the statute is silent or ambiguous with respect to a particular issue, then Congress has not spoken clearly on the subject and a court is required to proceed to the second step of the *Chevron* framework. *Chevron*, 467 U.S. at 843. Under *Chevron* step two, a court's task is to determine if the agency's approach is "based on a permissible construction of the statute." *Id.* To make that determination, a court again employs the traditional tools of statutory interpretation, including reviewing the text, structure, and purpose of the statute. *See Troy Corp. v. Browder*, 120 F.3d 277, 285 (D.C. Cir. 1997)(noting that an agency's interpretation must "be reasonable and consistent with the statutory purpose"). Ultimately, "[n]o matter how it is framed, the question a court faces when

44

confronted with an agency's interpretation of a statute it administers is always, simply, whether the agency has stayed within the bounds of its statutory authority." *District of Columbia v. Dep't of Labor*, 819 F.3d 444, 459 (D.C. Cir. 2016)(citation omitted).

The scope of review under both the APA's arbitrary and capricious standard and *Chevron* step two are concededly narrow. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)(stating "scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency"); *see also Judulang v. Holder*, 565 U.S. 42, 52 n.7 (2011)(stating the *Chevron* step two analysis overlaps with arbitrary and capricious review under the APA because under *Chevron* step two a court asks "whether an agency interpretation is 'arbitrary or capricious in substance'"). Although this review is deferential, "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decision making." *Judulang,* 565 U.S. at 53; *see also Daley*, 209 F.3d at 755 (stating that although a court owes deference to agency decisions, courts do not hear cases "merely to rubber stamp agency actions").

With these principles in mind, the Court now turns to plaintiffs' claims that various credible fear policies based on

45

*Matter of A-B-*, the Policy Memorandum, or both, are arbitrary and capricious and in violation of the immigration laws.

### C. APA and Statutory Claims

Plaintiffs challenge the following alleged new credible fear policies: (1) a general rule against credible fear claims related to domestic or gang-related violence; (2) a heightened standard for persecution involving non-governmental actors; (3) a new rule for the nexus requirement in asylum; (4) a new rule that "particular social group" definitions based on claims of domestic violence are impermissibly circular; (5) the requirements that an alien articulate an exact delineation of the specific "particular social group" at the credible fear determination stage and that asylum officers apply discretionary factors at that stage; and (6) the Policy Memorandum's requirement that adjudicators ignore circuit court precedent that is inconsistent with *Matter of A-B-*, and apply the law of the circuit where the credible fear interview takes place. The Court addresses each challenged policy in turn.

### 1. The General Rule Foreclosing Domestic Violence and Gang-Related Claims Violates the APA and Immigration Laws

Plaintiffs argue that the credible fear policies establish an unlawful general rule against asylum petitions by aliens with credible fear claims relating to domestic and gang violence. Pls.' Mot., ECF No. 64-1 at 28.

46

A threshold issue is whether the *Chevron* framework applies to this issue at all. "Not every agency interpretation of a statute is appropriately analyzed under *Chevron*." *Alabama Educ. Ass'n v. Chao*, 455 F.3d 386, 392 (D.C. Cir. 2006). The government acknowledges that the alleged new credible fear policies are not "entitled to blanket *Chevron* deference." Defs.' Reply, ECF No. 85 at 39 (emphasis in original). Rather, according to the government, the Attorney General is entitled to *Chevron* deference when he "interprets any *ambiguous* statutory terms in the INA." *Id.* (emphasis in original). The government also argues that the Attorney General is entitled to *Chevron* deference to the extent *Matter of A-B-* states "long-standing precedent or interpret[s] prior agency cases or regulations through case-by-case adjudication." *Id.* at 40.

To the extent *Matter of A-B-* was interpreting the "particular social group" requirement in the INA, the *Chevron* framework clearly applies. The Supreme Court has explained that "[i]t is clear that principles of *Chevron* deference are applicable" to the INA because that statute charges the Attorney General with administering and enforcing the statutory scheme. *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (quoting 8 U.S.C. §§ 1103(a)(1), 1253(h)). In addition to *Chevron* deference, a court must also afford deference to an agency when it is interpreting its own precedent. *U.S. Telecom Ass'n v.*

47

*F.C.C.*, 295 F.3d 1326, 1332 (D.C. Cir. 2002)("We [] defer to an agency's reasonable interpretation of its own rules and precedents.").

In this case, the Attorney General interpreted a provision of the INA, a statute that Congress charged the Attorney General with administering. *See* 8 U.S.C. § 1103(a)(1). *Matter of A-B-* addressed the issue of whether an alien applying for asylum based on domestic violence could establish membership in a "particular social group." Because the decision interpreted a provision of the INA, the *Chevron* framework applies to *Matter of A-B-*.[11] *See Negusie v. Holder*, 555 U.S. 511, 516 (2009)(stating it "is well settled" that principles of *Chevron* deference apply to the Attorney General's interpretation of the INA).

### a. *Chevron* Step One: The Phrase "Particular Social Group" is Ambiguous

The first question within the *Chevron* framework is whether, using the traditional tools of statutory interpretation including evaluating the text, structure, and the overall

---

[11] The Policy Memorandum is not subject to *Chevron* deference. The Supreme Court has warned that agency "[i]nterpretations such as those in opinion letters—like interpretations contained in *policy statements*, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference." *Christensen v. Harris Cnty*, 529 U.S. 576, 587 (2000). Rather, interpretations contained in such formats "are entitled to respect . . . only to the extent that those interpretations have the power to persuade." *Id.* (citations omitted).

statutory scheme, as well as employing common sense, Congress has "supplied a clear and unambiguous answer to the interpretive question at hand." *Pereira v. Sessions*, 138 S. Ct. 2105, 2113 (2018)(citation omitted). The interpretive question at hand in this case is the meaning of the term "particular social group."

Under the applicable asylum provision, an "alien who is physically present in the United States or who arrives in the United States . . . irrespective of such alien's status" may be granted asylum at the discretion of the Attorney General if the "Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A)." 8 U.S.C. § 1158. The term "refugee" is defined in section 1101(a)(42)(A) as, among other things, an alien who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). At the credible fear stage, an alien needs to show that there is a "significant possibility . . . that the alien could establish eligibility for asylum." 8 U.S.C. § 1225(b)(1)(B)(v).

The INA itself does not shed much light on the meaning of the term "particular social group." The phrase "particular social group" was first included in the INA when Congress enacted the Refugee Act of 1980. Pub. L. No. 96-212, 94 Stat.

102 (1980). The purpose of the Refugee Act was to protect refugees, i.e., individuals who are unable to protect themselves from persecution in their native country. *See id.* § 101(a)("The Congress declares that it is the historic policy of the United States to respond to the urgent needs of persons subject to persecution in their homelands, including . . . humanitarian assistance for their care and maintenance in asylum areas."). While the legislative history of the Act does not reveal the specific meaning the members of Congress attached to the phrase "particular social group," the legislative history does make clear that Congress intended "to bring United States refugee law into conformance with the [Protocol], 19 U.S.T. 6223, T.I.A.S. No. 6577, to which the United States acceded in 1968." *Cardoza-Fonseca*, 480 U.S. at 436-37. Indeed, when Congress accepted the definition of "refugee" it did so "with the understanding that it is based directly upon the language of the Protocol and it is intended that the provision be construed consistent with the Protocol." *Id.* at 437 (citations omitted). It is therefore appropriate to consider what the phrase "particular social group" means under the Protocol. *See id.*

In interpreting the Refugee Act in accordance with the meaning intended by the Protocol, the language in the Act should be read consistently with the United Nations' interpretation of the refugee standards. *See id.* at 438-39 (relying on UNHCR's

interpretation in interpreting the Protocol's definition of "well-founded fear"). The UNHCR defined the provisions of the Convention and Protocol in its Handbook on Procedures and Criteria for Determining Refugee Status ("UNHCR Handbook").[12] *Id.* As the Supreme Court has noted, the UNHCR Handbook provides "significant guidance in construing the Protocol, to which Congress sought to conform . . . [and] has been widely considered useful in giving content to the obligations that the protocol establishes." *Id.* at 439 n.22 (citations omitted). The UNHCR Handbook codified the United Nations' interpretation of the term "particular social group" at that time, construing the term expansively. The UNHCR Handbook states that "a 'particular social group' normally comprises persons of similar background, habits, or social status." UNHCR Handbook at Ch. II B(3)(e) ¶ 77.

The clear legislative intent to comply with the Protocol and Congress' election to not change or add qualifications to the U.N.'s definition of "refugee" demonstrates that Congress intended to adopt the U.N.'s interpretation of the word "refugee." Moreover, the UNHCR's classification of "social

---

[12] Handbook of Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and 1967 Protocol Relating to the Status of Refugees, OFFICE OF THE UNITED NATIONS HIGH COMMISSIONER FOR REFUGEES, *available at* http://www.unhcr.org/4d93528a9.pdf.

group" in broad terms such as "similar background, habits, or social status" suggests that Congress intended an equally expansive construction of the same term in the Refugee Act. Furthermore, the Refugee Act was enacted to further the "historic policy of the United States to respond to the urgent needs of persons subject to persecution in their homelands . . . . [and] it is the policy of the United States to encourage all nations to provide assistance and resettlement opportunities to refugees to the fullest extent possible." *Maharaj v. Gonzales*, 450 F.3d 961, 983 (9th Cir. 2006)(O'Scannlain, J. concurring in part)(citing Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102).

Although the congressional intent was clear that the meaning of "particular social group" should not be read too narrowly, the Court concludes that Congress has not "spoken directly" on the precise question of whether victims of domestic or gang-related persecution fall into the particular social group category. Therefore, the Court proceeds to *Chevron* step two to determine whether the Attorney General's interpretation, which generally precludes domestic violence and gang-related claims at the credible fear stage, is a permissible interpretation of the statute.

### b. *Chevron* Step Two: Precluding Domestic and Gang-Related Claims at the Credible Fear Stage is an Impermissible Reading of the Statute and is Arbitrary and Capricious

As explained above, the second step of the *Chevron* analysis overlaps with the arbitrary and capricious standard of review under the APA. *See Nat'l Ass'n of Regulatory Util. Comm'rs v. ICC,* 41 F.3d 721, 726 (D.C. Cir. 1994)("[T]he inquiry at the second step of *Chevron* overlaps analytically with a court's task under the [APA]."). "To survive arbitrary and capricious review, an agency action must be the product of reasoned decisionmaking." *Fox v. Clinton*, 684 F.3d 67, 74–75 (D.C. Cir. 2012). "Thus, even though arbitrary and capricious review is fundamentally deferential—especially with respect to matters relating to an agency's areas of technical expertise—no deference is owed to an agency action that is based on an agency's purported expertise where the agency's explanation for its action lacks any coherence." *Id.* at 75 (internal citations and alterations omitted).

Plaintiffs argue that the Attorney General's near-blanket rule against positive credible fear determinations based on domestic violence and gang-related claims is arbitrary and capricious for several reasons. First, they contend that the rule has no basis in immigration law. Pls.' Mot., ECF No. 64-1 at 39–40. Plaintiffs point to several cases in which immigration

judges and circuit courts have recognized asylum petitions based on gang-related or gender-based claims. *See id.* at 38–39 (citing cases). Second, plaintiffs argue that the general prohibition is arbitrary and capricious and contrary to the INA because it constitutes an unexplained change to the long-standing recognition that credible fear determinations must be individualized based on the facts of each case. *Id.* at 40–41.

The government's principal response is straightforward: no such general rule against domestic violence or gang-related claims exists. Defs.' Reply, ECF No. 85 at 44–47. The government emphasizes that the only change to the law in *Matter of A-B-* is that *Matter of A-R-C-G-* was overruled. *Id.* at 43. The government also argues that *Matter of A-B-* only required the BIA to assess each element of an asylum claim and not rely on a party's concession that an element is satisfied. *Id.* at 45. Thus, according to the government, the Attorney General simply "eliminated a loophole created by *A-R-C-G-*." *Id.* at 45. The government dismisses the rest of *Matter of A-B-* as mere "comment[ary] on problems typical of gang and domestic violence related claims." *Id.* at 46.

And even if a general rule does exist, the government contends that asylum claims based on "private crime[s]" such as domestic and gang violence have been the center of controversy for decades. Defs.' Reply, ECF No. 85 at 44. Therefore, the

government concludes, that *Matter of A-B-* is a lawful interpretation and restatement of the asylum laws, and is entitled to deference. *Id.* Finally, the government argues that Congress designed the asylum statute as a form of limited relief, not to "provide redress for all misfortune." *Id.*

The Court is not persuaded that *Matter of A-B-* and the Policy Memorandum do not create a general rule against positive credible fear determinations in cases in which aliens claim a fear of persecution based on domestic or gang-related violence. *Matter of A-B-* mandates that "[w]hen confronted with asylum cases based on purported membership in a particular social group . . . immigration judges, and asylum officers must analyze the requirements as set forth" in the decision. 27 I. & N. Dec. at 319. The precedential decision further explained that "[g]enerally, claims by aliens pertaining to domestic violence or gang violence perpetrated by non-governmental actors will not qualify for asylum." *Id.* at 320. *Matter of A-B-* also requires asylum officers to "analyze the requirements as set forth in" *Matter of A-B-* when reviewing asylum related claims including whether such claims "would satisfy the legal standard to determine whether an alien has a credible fear of persecution." *Id.* at 320 n.1 (citing 8 U.S.C. § 1225(b)). Furthermore, the Policy Memorandum also makes clear that the sweeping statements in *Matter of A-B-* must be applied to credible fear

55

determinations: "if an applicant claims asylum based on membership in a particular social group, then officers must factor the [standards explained in *Matter of A-B-*] *into their determination of whether an applicant has a credible fear or reasonable fear of persecution*." Policy Memorandum, ECF No. 100 at 12 (emphasis added).

Not only does *Matter of A-B-* create a general rule against such claims at the credible fear stage, but the general rule is also not a permissible interpretation of the statute. First, the general rule is arbitrary and capricious because there is no legal basis for an effective categorical ban on domestic violence and gang-related claims. Second, such a general rule runs contrary to the individualized analysis required by the INA. Under the current immigration laws, the credible fear interviewer must prepare a case-specific factually intensive analysis for each alien. *See* 8 C.F.R. § 208.30(e)(requiring individual analysis including material facts stated by the applicant, and additional facts relied upon by officer). Credible fear determinations, like requests for asylum in general, must be resolved based on the particular facts and circumstances of each case. *Id.*

A general rule that effectively bars the claims based on certain categories of persecutors (i.e. domestic abusers or gang members) or claims related to certain kinds of violence is

56

inconsistent with Congress' intent to bring "United States refugee law into conformance with the [Protocol]." *Cardoza-Fonseca*, 480 U.S. at 436-37. The new general rule is thus contrary to the Refugee Act and the INA.[13] In interpreting "particular social group" in a way that results in a general rule, in violation of the requirements of the statute, the Attorney General has failed to "stay[] within the bounds" of his statutory authority.[14] *District of Columbia v. Dep't of Labor*, 819 F.3d at 449.

The general rule is also arbitrary and capricious because it impermissibly heightens the standard at the credible fear stage. The Attorney General's direction to deny most domestic violence or gang violence claims at the credible fear

---

[13] The new rule is also a departure from previous DHS policy. *See* Mujahid Decl., Ex. F ("2017 Credible Fear Training") ("Asylum officers should evaluate the entire scope of harm experienced by the applicant to determine if he or she was persecuted, taking into account the individual circumstances of each case."). It is arbitrary and capricious for that reason as well. *Lone Mountain Processing, Inc. v. Sec'y of Labor*, 709 F.3d 1161, 1164 (D.C. Cir. 2013)("[A]n agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, *not casually ignored.*")(emphasis added).

[14] The Court also notes that domestic law may supersede international obligations only by express abrogation, *Chew Heong v. United States*, 112 U.S. 536, 538 (1884), or by subsequent legislation that irrevocably conflicts with international obligations, *Reid v. Covert*, 354 U.S. 1, 18 (1957). Congress has not expressed any intention to rescind its international obligations assumed through accession to the 1967 Protocol via the Refugee Act of 1980.

determination stage is fundamentally inconsistent with the threshold screening standard that Congress established: an alien's removal may not be expedited if there is a "significant possibility" that the alien could establish eligibility for asylum. 8 U.S.C. § 1225(b)(1)(B)(v). The relevant provisions require that the asylum officer "conduct the interview in a nonadversarial manner" and "elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture." 8 C.F.R. § 208.30(d). As plaintiffs point out, to prevail at a credible fear interview, the alien need only show a "significant possibility" of a one in ten chance of persecution, i.e., a fraction of ten percent. *See* 8 U.S.C. § 1225(b)(1)(B)(v); *Cardoza-Fonseca*, 480 U.S. at 439–40 (describing a well-founded fear of persecution at asylum stage to be satisfied even when there is a ten percent chance of persecution). The legislative history of the IIRIRA confirms that Congress intended this standard to be a low one. *See* 142 CONG. REC. S11491-02 ("[t]he credible fear standard . . . is intended to be a low screening standard for admission into the usual full asylum process"). The Attorney General's directive to broadly exclude groups of aliens based on a sweeping policy applied indiscriminately at the credible fear stage, was neither adequately explained nor supported by agency precedent. Accordingly, the general rule against domestic violence and

58

gang-related claims during a credible fear determination is
arbitrary and capricious and violates the immigration laws.

## 2. Persecution: The "Condoned or Complete Helplessness"
## Standard Violates the APA and Immigration Laws

Plaintiffs next argue that the government's credible fear
policies have heightened the legal requirement for all credible
fear claims involving non-governmental persecutors. Pls.' Mot.,
ECF No. 64-1 at 48.

To be eligible for asylum, an alien must demonstrate either
past "persecution or a well-founded fear of persecution."
8 U.S.C. § 1101(a)(42)(A). When a private actor, rather than the
government itself, is alleged to be the persecutor, the alien
must demonstrate "some connection" between the actions of the
private actor and "governmental action or inaction." *See Rosales
Justo v. Sessions*, 895 F.3d 154, 162 (1st Cir. 2018). To
establish this connection, a petitioner must show that the
government was either "unwilling or unable" to protect him or
her from persecution. *See Burbiene v. Holder*, 568 F.3d 251, 255
(1st Cir. 2009).

Plaintiffs argue that *Matter of A-B-* and the Policy
Memorandum set forth a new, heightened standard for government
involvement by requiring an alien to "show the government
condoned the private actions or at least demonstrated a complete
helplessness to protect the victim." *Matter of A-B-*, 27 I. & N.

59

Dec. at 337; Policy Memorandum, ECF No. 100 at 9. The government argues that the "condone" or "complete helplessness" standard is not a new definition of persecution; and, in any event, such language does not change the standard. Defs.' Reply, ECF No. 85 at 55.

### a. *Chevron* Step One: The Term "Persecution" is Not Ambiguous[15]

Again, the first question under the *Chevron* framework is whether Congress has "supplied a clear and unambiguous answer to the interpretive question at hand." *Pereira*, 138 S. Ct. at 2113. Here, the interpretive question at hand is whether the word "persecution" in the INA requires a government to condone the persecution or demonstrate a complete helplessness to protect the victim.

The Court concludes that the term "persecution" is not ambiguous and the government's new interpretation is inconsistent with the INA. The Court is guided by the longstanding principle that Congress is presumed to have incorporated prior administrative and judicial interpretations of language in a statute when it uses the same language in a subsequent enactment. *See Sekhar v. United States*, 570 U.S. 729, 733 (2013)(explaining that "if a word is obviously transplanted

---

[15] Because the government is interpreting a provision of the INA, the *Chevron* framework applies.

from another legal source, whether the common law or other legislation, it brings the old soil with it"); *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)(stating Congress is aware of interpretations of a statute and is presumed to adopt them when it re-enacts them without change).

The seminal case on the interpretation of the term "persecution," *Matter of Acosta*, 19 I. & N. Dec. 211 (BIA 1985), is dispositive. In *Matter of Acosta*, the BIA recognized that harms could constitute persecution if they were inflicted "either by the government of a country or by persons or an organization that the government was unable or unwilling to control." *Id.* at 222 (citations omitted). The BIA noted that Congress carried forward the term "persecution" from pre-1980 statutes, in which it had a well-settled judicial and administrative meaning: "harm or suffering . . . inflicted either by the government of a country or by persons or an organization that the government was unable or unwilling to control." *Id.* Applying the basic rule of statutory construction that Congress carries forward established meanings of terms, the BIA adopted the same definition. *Id.* at 223.

The Court agrees with this approach. When Congress uses a term with a settled meaning, its intent is clear for purposes of *Chevron* step one. *cf. B & H Med., LLC v. United States*, 116 Fed. Cl. 671, 685 (2014)(a term with a "judicially settled meaning"

is "not ambiguous" for purposes of deference under *Auer v.*
*Robbins*, 519 U.S. 452 (1997)). As explained in *Matter of Acosta*,
Congress adopted the "unable or unwilling" standard when it used
the word "persecution" in the Refugee Act. 19 I. & N. Dec. at
222, *see also Shapiro v. United States*, 335 U.S. 1, 16
(1948)(Congress presumed to have incorporated "settled judicial
construction" of statutory language through re-enactment).
Indeed, the UNHCR Handbook stated that persecution included
"serious discriminatory or other offensive acts . . . committed
by the local populace . . . if they are knowingly tolerated by
the authorities, or if the authorities refuse, or prove unable,
to offer *effective* protection." *See* UNHCR Handbook ¶ 65
(emphasis added). It was clear at the time that the Act was
passed by Congress that the "unwilling or unable" standard did
not require a showing that the government "condoned" persecution
or was "completely helpless" to prevent it. Therefore, the
government's interpretation of the term "persecution" to mean
the government must condone or demonstrate complete helplessness
to help victims of persecution fails at *Chevron* step one.

The government relies on circuit precedent that has used
the "condoned" or "complete helplessness" language to support
its argument that the standard is not new. Defs.' Reply, ECF No.
85 at 55. There are several problems with the government's
argument. First, upon review of the cited cases it is apparent

that, although the word "condone" was used, in actuality, the courts were applying the "unwilling or unable" standard. For example, in *Galina v. INS*, 213 F.3d 955 (7th Cir. 2005), an asylum applicant was abducted and received threatening phone calls in her native country. *Id.* at 957. The applicant's husband called the police to report the threatening phone calls, and after the police located one of the callers, the calls stopped. *Id.* The Court recognized that a finding of persecution ordinarily requires a determination that the government condones the violence or demonstrated a complete helplessness to protect the victims. *Id.* at 958. However, relying on the BIA findings, the Court found that notwithstanding the fact "police might take some action against telephone threats" the applicant would still face persecution if she was sent back to her country of origin because she could have been killed. *Id.* Therefore, the Court ultimately concluded that an applicant can still meet the persecution threshold when the police are unable to provide effective help, but fall short of condoning the persecution. *Id.* at 958. Despite the language it used to describe the standard, the court did not apply the heightened "condoned or complete helplessness" persecution standard pronounced in the credible fear policies here.

Second, and more importantly, under the government's formulation of the persecution standard, no asylum applicant who

received assistance from the government, regardless of how ineffective that assistance was, could meet the persecution requirement when the persecutor is a non-government actor.[16] *See* Policy Memorandum, ECF No. 100 at 17 (stating that in the context of credible fear interviews, "[a]gain, the home government must either condone the behavior or demonstrate a complete helplessness to protect victims of such alleged persecution"). That is simply not the law. For example, in *Rosales Justo v. Sessions*, the United States Court of Appeals for the First Circuit held that a petitioner satisfied the "unable or unwilling" standard, even though there was a significant police response to the claimed persecution. 895 F.3d 154, 159 (1st Cir. 2018). The petitioner in *Rosales Justo* fled Mexico after organized crime members murdered his son. *Id.* at 157–58. Critically, the "police took an immediate and active interest in the [petitioner's] son's murder." *Id.* The Court noted that the petitioner "observed seven officers and a forensic team at the scene where [the] body was recovered, the police took statements from [petitioner] and his wife, and an

---

[16] The Court notes that this persecution requirement applies to all asylum claims not just claims based on membership in a "particular social group" or claims related to domestic or gang-related violence. *See Matter of A–B–*, 27 I. & N. Dec. at 337 (describing elements of persecution). Therefore, such a formulation heightens the standard for every asylum applicant who goes through the credibility determination process.

autopsy was performed." *Id.* The Court held that, despite the extensive actions taken by the police, the "unwilling or unable" standard was satisfied because although the government was willing to protect the petitioner, the evidence did not show that the government was able to make the petitioner and his family any safer. *Id.* at 164 (reversing BIA's conclusion that the immigration judge clearly erred in finding that the police were willing but unable to protect family). As *Rosales Justo* illustrates, a requirement that police condone or demonstrate complete helplessness is inconsistent with the current standards under immigration law.[17]

Furthermore, the Court need not defer to the government's interpretation to the extent it is based on an interpretation of court precedent. Indeed, in "case after case, courts have affirmed this fairly intuitive principle, that courts need not, and should not, defer to agency interpretations of opinions written by courts." *Citizens for Responsibility & Ethics in*

---

[17] This departure is also wholly unexplained. As the Supreme Court has held, "[u]nexplained inconsistency is . . . a reason for holding an interpretation to be an arbitrary and capricious change from agency practice under the [APA]." *See Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 46–57 (1983). The credible fear policies do not acknowledge a change in the persecution standard and are also arbitrary and capricious for that reason. *See Fox Television Stations, Inc.*, 556 U.S. at 514, 515 (2009)("[T]he requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it is changing [its] position.").

*Washington v. Fed. Election Comm'n*, 209 F. Supp. 3d 77, 87 (D.D.C. 2016)(listing cases). "There is therefore no reason for courts—the supposed experts in analyzing judicial decisions—to defer to agency interpretations of the Court's opinions." *Univ. of Great Falls v. NLRB*, 278 F.3d 1335, 1341 (D.C. Cir. 2002); *see also Judulang*, 565 U.S. at 52 n.7 (declining to apply *Chevron* framework because the challenged agency policy was not "an interpretation of any statutory language").

To the extent the credible fear policies established a new standard for persecution, it did so in purported reliance on circuit opinions. The Court gives no deference to the government's interpretation of judicial opinions regarding the proper standard for determining the degree to which government action, or inaction, constitutes persecution. *Univ. of Great Falls*, 278 F.3d at 1341. The "unwilling or unable" persecution standard was settled at the time the Refugee Act was codified, and therefore the Attorney General's "condoned" or "complete helplessness" standard is not a permissible construction of the persecution requirement.

### 3. Nexus: The Credible Fear Policies Do Not Pose a New Standard for the Nexus Requirement

Plaintiffs next argue that the formulation of the nexus requirement articulated in *Matter of A-B-*that when a private actor inflicts violence based on a personal relationship with

66

116

the victim, the victim's membership in a larger group may well not be "one central reason" for the abuse—violates the INA, Refugee Act, and APA. The nexus requirement in the INA is that a putative refugee establish that he or she was persecuted "on account of" a protected ground such as a particular social group.[18] *See* 8 U.S.C. § 1158(b)(1)(B)(i).

The parties agree that the precise interpretive issue is not ambiguous. The parties also endorse the "one central reason" standard and the need to conduct a "mixed-motive" analysis when there is more than one reason for persecution. *See* Defs.' Mot., 57-1 at 47; Pls.' Mot., ECF No. 64-1 at 53-54. The INA expressly contemplates mixed motives for persecution when it specifies that a protected ground must be "one central reason" for the persecution. 8 U.S.C. § 1158(b)(1)(B)(i). Where the parties disagree is whether the credible fear policies deviate from this standard.

With respect to the nexus requirement, the government's reading of *Matter of A-B-* on this issue is reasonable. In *Matter of A-B-*, the Attorney General relies on the "one central reason" standard and provides examples of a criminal gang targeting people because they have money or property or "simply because

---

[18] Similar to the Attorney General's directives related to the "unwilling or unable" standard, this directive applies to all asylum claims, not just claims related to domestic or gang-related violence.

the gang inflicts violence on those who are nearby." 27 I. & N. Dec. at 338–39. The decision states that "purely personal" disputes will not meet the nexus requirement. *Id.* at 339 n.10. The Court discerns no distinction between this statement and the statutory "one central reason" standard.

Similarly, the Policy Memorandum states that "when a private actor inflicts violence based on a personal relationship with the victim, the victim's membership in a larger group often will not be 'one central reason' for the abuse." Policy Memorandum, ECF No. 100 at 9 (citing *Matter of A–B–*, 27 I. & N. Dec. at 338–39). Critically, the Policy Memorandum explains that in "a particular case, the evidence may establish that a victim of domestic violence was attacked **based solely** on her preexisting personal relationship with her abuser." *Id.* (emphasis added). This statement is no different than the statement of the law in *Matter of A–B–*. Because the government's interpretation is not inconsistent with the statute, the Court finds the government's interpretation to be reasonable.

The Court reiterates that, although the nexus standard forecloses cases in which **purely** personal disputes are the impetus for the persecution, it does not preclude a positive credible fear determination simply because there is a personal relationship between the persecutor and the victim, so long as the one central reason for the persecution is a protected

ground. *See Aldana Ramos v. Holder*, 757 F.3d 9, 18–19 (1st Cir. 2014)(recognizing that "multiple motivations [for persecution] can exist, and that the presence of a non-protected motivation does not render an applicant ineligible for refugee status"); *Qu v. Holder*, 618 F.3d 602, 608 (6th Cir. 2010)("[I]f there is a nexus between the persecution and the membership in a particular social group, the simultaneous existence of a personal dispute does not eliminate that nexus."). Indeed, courts have routinely found the nexus requirement satisfied when a personal relationship exists—including cases in which persecutors had a close relationship with the victim. *See, e.g.*, *Bringas-Rodriguez*, 850 F.3d at 1056 (persecution by family members and neighbor on account of applicant's perceived homosexuality); *Nabulwala v. Gonzalez*, 481 F.3d 1115, 1117–18 (8th Cir. 2007)(applicant's family sought to violently "change" her sexual orientation).

   *Matter of A-B-* and the Policy Memorandum do not deviate from the "one central reason" standard articulated in the statute or in BIA decisions. *See* 8 U.S.C. § 1158(b)(1)(B)(i). Therefore, the government did not violate the APA or INA with regards to its interpretation of the nexus requirement.

### 4. Circularity: The Policy Memorandum's Interpretation of the Circularity Requirement Violates the APA and Immigration Laws

   Plaintiffs argue that the Policy Memorandum establishes a

<div align="center">69</div>

new rule that "particular social group" definitions based on claims of domestic violence are impermissibly circular and therefore not cognizable as a basis for persecution in a credible fear determination. Pls.' Mot., ECF No. 64-1 at 56–59. Plaintiffs argue that this new circularity rule is inconsistent with the current legal standard and therefore violates the Refugee Act, INA, and is arbitrary and capricious.[19] *Id.* at 57. The parties agree that the formulation of the anti-circularity rule set forth in *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 242 (BIA 2014)—"that a particular social group cannot be defined exclusively by the claimed persecution"—is correct. *See* Defs.' Reply, ECF No. 85 at 62; Pls.' Reply., ECF No. 92 at 30–31. Accordingly, the Court begins with an explanation of that opinion.

---

[19] The government contends that plaintiffs' argument on this issue has evolved from the filing of the complaint to the filing of plaintiffs' cross-motion for summary judgment. Defs.' Reply, ECF No. 85 at 61. In plaintiffs' complaint, they objected to the circularity issue by stating the new credible fear policies erroneously conclude "that groups defined in part by the applicant's inability to leave the relationship are impermissibly circular." ECF No. 54 at 24. In their cross-motion for summary judgment, plaintiffs argue that the government's rule is inconsistent with well-settled law that the circularity standard only applies when the group is defined exclusively by the feared harm. Pls.' Mot., ECF No. 64-1 at 57. The Court finds that plaintiffs' complaint was sufficient to meet the notice pleading standard. *See 3E Mobile, LLC v. Glob. Cellular, Inc*., 121 F. Supp. 3d 106, 108 (D.D.C. 2015)(explaining that the notice-pleading standard does not require a plaintiff to "plead facts or law that match every element of a legal theory").

The question before the BIA in *Matter of M-E-V-G-*, was whether the respondent had established membership in a "particular social group," namely "Honduran youth who have been actively recruited by gangs but who have refused to join because they oppose the gangs." 26 I. & N. Dec. at 228. The BIA clarified that a person seeking asylum on the ground of membership in a particular social group must show that the group is: (1) composed of members who share an immutable characteristic; (2) defined with particularity; and (3) socially distinct within the society in question. *Id.* at 237. In explaining the third element for membership, the BIA confirmed the rule that "a social group cannot be defined exclusively by the fact that its members have been subjected to harm." *Id.* at 242. The BIA explained that for a particular social group to be distinct, "persecutory conduct alone cannot define the group." *Id.*

The BIA provided the instructive example of former employees of an attorney general. *Id.* The BIA noted that such a group may not be valid for asylum purposes because they may not consider themselves a group, or because society may not consider the employees to be meaningfully distinct in society in general. *Id.* The BIA made clear, however, that "such a social group determination must be made on a case-by-case basis, because it is possible that under certain circumstances, the society would

71

make such a distinction and consider the shared past experience to be a basis for distinction within that society." *Id.* "Upon their maltreatment," the BIA explained "it is possible these people would experience a sense of 'group' and society would discern that this group of individuals, who share a common immutable characteristic, is distinct in some significant way." *Id.* at 243 (recognizing that "[a] social group cannot be defined *merely* by the fact of persecution or *solely* by the shared characteristic of facing dangers in retaliation for actions they took against alleged persecutors . . . but that the shared trait of persecution does not disqualify an otherwise valid social group")(citations and internal quotation marks omitted). The BIA further clarified that the "act of persecution by the government may be the catalyst that causes the society to distinguish [a group] in a meaningful way and consider them a distinct group, but the immutable characteristic of their shared past experience exists independent of the persecution." *Id.* at 243. Thus, such a group would not be circular because the persecution they faced was not the sole basis for their membership in a particular social group. *Id.*

With this analysis in mind, the Court now focuses on the dispute at issue. Here, plaintiffs do not challenge *Matter of A- B-'*s statements with regard to the rule against circularity, but rather challenge the Policy Memorandum's articulation of the

rule. Pls.' Mot., ECF No, 64-1 at 57–58. Specifically, they
challenge the Policy Memorandum's mandate that domestic
violence-based social groups that include "inability to leave"
are not cognizable. *Id.* at 58 (citations and internal quotation
marks omitted). The Policy Memorandum states that "married women
. . . who are unable to leave their relationship" are a group
that would not be sufficiently particular. Policy Memorandum,
ECF No. 100 at 6. The Policy Memorandum explained that "even if
'unable to leave' were particular, the applicant must show
something more than the danger of harm from an abuser if the
applicant tried to leave because that would amount to circularly
defining the particular social group by the harm on which the
asylum claim is based." *Id.*

The Policy Memorandum's interpretation of the rule against
circularity ensures that women unable to leave their
relationship will always be circular. This conclusion appears to
be based on a misinterpretation of the circularity standard and
faulty assumptions about the analysis in *Matter of A-B-*. First,
as *Matter of M-E-V-G-* made clear, there cannot be a general rule
when it comes to determining whether a group is distinct because
"it is possible that under certain circumstances, the society
would make such a distinction and consider the shared past
experience to be a basis for distinction within that society."
26 I. & N. Dec. at 242. Thus, to the extent the Policy

Memorandum imposes a general circularity rule foreclosing such claims without taking into account the independent characteristics presented in each case, the rule is arbitrary, capricious, and contrary to immigration law.

Second, the Policy Memorandum changes the circularity rule as articulated in settled caselaw, which recognizes that if the proposed social group definition contains characteristics independent from the feared persecution, the group is valid under asylum law. *Matter of M-E-V-G-,* 26 I. & N. Dec. at 242 (Particular social group may be cognizable if "immutable characteristic of their shared past experience exists independent of the persecution."). Critically, the Policy Memorandum does not provide a reasoned explanation for, let alone acknowledge, the change. *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009)("[T]he requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it is changing [its] position."). *Matter of A-B-* criticized the BIA for failing to consider the question of circularity in *Matter of A-R-C-G-* and overruled the decision based on the BIA's reliance on DHS's concession on the issue. 27 I. & N. Dec. at 334-35, 33. Moreover, *Matter of A-B-* suggested only that the social group at issue in *Matter of A-R-C-G-* might be "effectively" circular. *Id.* at 335. The Policy Memorandum's formulation of the circularity

standard goes well beyond the Attorney General's explanation in *Matter of A-B-*. As such, it is unmoored from the analysis in *Matter of M-E-V-G-* and has no basis in *Matter of A-B-*. It is therefore, arbitrary, capricious, and contrary to immigration law.

### 5. **Discretion and Delineation: The Credible Fear Policies Do Not Contain a Discretion Requirement, but the Policy Memorandum's Delineation Requirement is Unlawful**

Plaintiffs next argue that the credible fear policies "unlawfully import two aspects of the ordinary removal context into credible fear proceedings." Pls.' Reply, ECF No. 92 at 32. The first alleged requirement is for aliens to delineate the "particular social group" on which they rely at the credible fear stage. *Id.* The second alleged requirement is that asylum adjudicators at the credible fear stage take into account certain discretionary factors when making a fair credibility determination and exercise discretion to deny relief.[20] *Id.* at 32-33.

---

[20] These discretionary factors include but are not limited to: "the circumvention of orderly refugee procedures; whether the alien passed through any other countries or arrived in the United States directly from her country; whether orderly refugee procedures were in fact available to help her in any country she passed through; whether he or she made any attempts to seek asylum before coming to the United States; the length of time the alien remained in a third country; and his or her living conditions, safety, and potential for long-term residency there." Policy Memorandum, ECF No. 100 at 10.

The government agrees that a policy which imposes a duty to delineate a particular social group at the credible fear stage would be a violation of existing law. Defs.' Reply, ECF No. 85 at 67. The government also agrees that requiring asylum officers to consider the exercise of discretion at the credible fear stage "would be inconsistent with section 1225(b)(1)(B)(v)." *Id.* at 68. The government, however, argues that no such directives exist. *Id.* at 67–69.

The Court agrees with the government. There is nothing in the credible fear policies that support plaintiffs' arguments that asylum officers are to exercise discretion at the credible fear stage. The Policy Memorandum discusses discretion only in the context of when an alien has established that he or she is eligible for asylum. Policy Memorandum, ECF No. 100 at 5 ("[I]f eligibility is established, the USCIS officer must then consider whether or not to exercise discretion to grant the application."). *Matter of A-B-* also discusses the discretionary factors in the context of granting asylum. 27 I. & N. Dec. at 345 n.12 (stating exercising discretion should not be glossed over "solely because an applicant *otherwise meets the burden of proof* for asylum eligibility under the INA")(emphasis added). Eligibility for asylum is not established, nor is an asylum application granted, at the credible fear stage. *See* 8 U.S.C. § 1225(b)(1)(B)(ii)(stating if an alien receives a positive

76

credibility determination, he or she shall be detained for "further consideration of the application of asylum"). Since the credible fear policies only direct officers to use discretion once an officer has determined that an applicant is eligible for asylum, they do not direct officers to consider discretionary factors at the credible fear stage. *See* Policy Memorandum, ECF No. 100 at 10.

The Court also agrees that, with respect to *Matter of A-B-*, the decision does not impose a delineation requirement during a credible fear determination. The decision only requires an applicant seeking asylum to clearly indicate "an exact delineation of any proposed particular social group" when the alien is "on the record and before the immigration judge." 27 I. & N. Dec. at 344. Any delineation requirement therefore would not apply to the credible fear determination which is not on the record before an immigration judge.

The Policy Memorandum, however, goes further than the decision itself and incorporates the delineation requirement into credible fear determinations. Unlike the mandate to use discretion, the Policy Memorandum does not contain a limitation that officers are to apply the delineation requirement to asylum interviews only, as opposed to credible fear interviews. In fact, it does the opposite and explicitly requires asylum officers to apply that requirement to credible fear

77

determinations. Policy Memorandum, ECF No. 100 at 12. The Policy

Memorandum makes clear that "if an applicant claims asylum based

on membership in a particular social group, then officers must

factor the [standards explained in *Matter of A-B-*] *into their*

*determination of whether an applicant has a credible fear or*

*reasonable fear of persecution.*" *Id.* at 12. In directing asylum

officers to apply *Matter of A-B-* to credible fear

determinations, the Policy Memorandum refers back to all the

requirements explained by *Matter of A-B-* including the

delineation requirement. *See id.* (referring back to section

explaining delineation requirement). In light of this clear

directive to "factor" in the standards set forth in *Matter of A-*

*B-*, into the "determination of whether an applicant has a

credible fear" and its reference to the delineation requirement,

it is clear that the Policy Memorandum incorporates that

requirement into credible fear determinations. *See id.*[21]

     The government argues, that to the extent the Policy

Memorandum is ambiguous, the Court should defer to its

_____

[21] The Policy Memorandum also reiterates that "few gang-based or
domestic-violence claims involving particular social groups
defined by the members' vulnerability to harm may . . . pass the
'significant possibility' test in credible-fear screenings."
Policy Memorandum, ECF No. 100 at 10. For this proposition, the
Policy Memorandum refers to the "standards clarified in *Matter
of A-B-*." *Id.* This requirement for an alien to explain how they
fit into a particular social group independent of the harm they
allege, further supports the fact that there is a delineation
requirement at the credible fear stage.

78

interpretation as long as it is reasonable. The government cites no authority to support its claim that deference is owed to an agency's interpretations of its policy documents like the Policy Memorandum. However, the Court acknowledges the government's interpretation is "entitled to respect . . . only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris Cnty*, 529 U.S. 576, 587 (2000)(citation omitted). For the reasons stated above, however, such a narrow reading of the Policy Memorandum is not persuasive. Because the Policy Memorandum requires an alien—at the credible fear stage— to present facts that clearly identify the alien's proposed particular social group, contrary to the INA, that policy is arbitrary and capricious.

### 6. The Policy Memorandum's Requirements Related to Asylum Officer's Application of Circuit Law are Unlawful

Plaintiffs' final argument is that the Policy Memorandum's directives instructing asylum officers to ignore applicable circuit court of appeals decisions is unlawful. Pls.' Mot., ECF No. 64-1 at 63.

The relevant section of the Policy Memorandum reads as follows:

> When conducting a credible fear or reasonable fear interview, an asylum officer must determine what law applies to the applicant's claim. The asylum officer should apply all applicable precedents of the Attorney General and the BIA, *Matter of E-L-H-*, 23 I&N Dec.

79

> 814, 819 (BIA 2005), which are binding on all
> immigration judges and asylum officers
> nationwide. The asylum officer should also
> apply the case law of the relevant federal
> circuit court, to the extent that those cases
> are not inconsistent with *Matter of A-B-*. *See,*
> *e.g.*, *Matter of Fajardo Espinoza*, 26 I&N Dec.
> 603, 606 (BIA 2015). The relevant federal
> circuit court is the circuit where the removal
> proceedings will take place if the officer
> makes a positive credible fear determination.
> *See Matter of Gonzalez*, 16 I&N Dec. 134, 135–
> 36 (BIA 1977); *Matter of Waldei*, 19 I&N Dec.
> 189 (BIA 1984). But removal proceedings can
> take place in any forum selected by DHS, and
> not necessarily the forum where the intending
> asylum applicant is located during the
> credible fear or reasonable fear interview.
> Because an asylum officer cannot predict with
> certainty where DHS will file a Notice to
> appear . . . the asylum officer should
> faithfully apply precedents of the Board and,
> if necessary, the circuit where the alien is
> physically located during the credible fear
> interview.

Policy Memorandum, ECF No. 100 at 11–12. Plaintiffs make two

independent arguments regarding this policy. First, they argue

that the Policy Memorandum's directive to disregard circuit law

contrary to *Matter of A-B-*, violates the APA, INA, and the

separation of powers. Pls.' Mot., ECF No. 64-1 at 64–68. Second,

plaintiffs argue that the Policy Memorandum's directive

requiring asylum officers to apply the law of the circuit where

the alien is physically located during the credible fear

interview violates the APA and INA. *Id.* 68–71.

80

### a. The Policy Memorandum's Directive to Disregard Contrary Circuit Law Violates *Brand X*

Plaintiffs' first argument is that the Policy Memorandum's directive that asylum officers who process credible fear interviews ignore circuit law contrary to *Matter of A–B–* is unlawful. Pls.' Mot., ECF No. 64-1 at 63–68. Because the policy requires officers to disregard all circuit law regardless of whether the provision at issue is entitled to deference, plaintiffs maintain that the policy exceeds an agency's limited ability to displace circuit precedent on a specific question of law to which an agency decision is entitled to deference. *Id.*

An agency's ability to disregard a court's interpretation of an ambiguous statutory provision in favor of the agency's interpretation stems from the Supreme Court's decision in *Nat'l Cable & Telecomm's Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005). At issue in *Brand X* was the proper classification of broadband cable services under Title II of the Communications Act of 1934, as amended by the Telecommunications Act of 1996. *Id.* at 975. The Federal Communications Commission ("Commission") had issued a Declaratory Rule providing that broadband internet service was an "information service" but not a "telecommunication service" under the Act, such that certain regulations would not apply to cable companies that provided broadband service. *Id.* at 989. The circuit court vacated the

81

Declaratory Rule because a prior circuit court opinion held that a cable modem service was in fact a telecommunications service. *Id.* (citing *AT&T Corp. v. Portland*, 216 F.3d 871 (9th Cir. 2000). The Supreme Court concluded that the circuit court erred in relying on a prior court's interpretation of the statute without first determining if the Commission's contrary interpretation was reasonable. *Id.* at 982.

The Supreme Court's holding relied on the same principles underlying the *Chevron* deference cases. *Id.* at 982 (stating that the holding in *Brand X* "follows from *Chevron* itself"). The Court reasoned that Congress had delegated to the Commission the authority to enforce the Communications Act, and under the principles espoused in *Chevron*, a reasonable interpretation of an ambiguous provision of the Act is entitled to deference. *Id.* at 981. Therefore, regardless of a circuit court's prior interpretation of a provision, the agency's interpretation is entitled to deference as long as the court's prior construction of the provision does not "follow[] from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Id.* at 982. In other words, an agency's interpretation of a provision may override a prior court's interpretation if the agency is entitled to *Chevron* deference and the agency's interpretation is reasonable. If the agency is not entitled to deference or if the agency's interpretation is unreasonable, a

court's prior decision interpreting the same statutory provision controls. *See Petit v. U.S. Dep't of Educ.*, 675 F.3d 769, 789 (D.C. Cir. 2012)(citation omitted)(finding that a court decision interpreting a statute overrides the agency's interpretation only if it holds "that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion").

The government argues that the Policy Memorandum's mandate to ignore circuit law contrary to *Matter of A-B-* is rooted in statute and sanctioned by *Brand X*. Defs.' Reply, ECF No. 85 at 70. Moreover, the government contends that the requirement "simply states the truism that the INA requires all line officers to follow binding decisions of the Attorney General." *Id.* (citing 8 U.S.C. § 1103(a))("determination and ruling by the Attorney General with respect to all questions of law shall be controlling"). The government also argues that plaintiffs have failed to point to any decisions that are inconsistent with *Matter of A-B-*, and therefore any instruction for an officer to apply *Matter of A-B-* notwithstanding prior circuit precedent to the contrary is permissible. The Policy Memorandum, according to the government, "simply require[s] line officers to follow [*Matter of A-B-*] unless and until a circuit court of appeals declares some aspect of it contrary to the plain text of the INA." Defs.' Reply, ECF No. 85 at 72.

83

The government, again, minimizes the effect of the Policy Memorandum. As an initial matter, *Brand X* would only allow an agency's interpretation to override a prior judicial interpretation if the agency's interpretation is entitled to deference. *Brand X*, 545 U.S. at 982 (stating "agency construction *otherwise entitled to Chevron deference*" may override judicial construction under certain circumstances)(emphasis added). In this case, the government contends that *Matter of A-B-* only interprets one statutory provision: "particular social group." *See* Defs.' Mot., ECF No. 57-1 at 56 (stating "[t]he language that the Attorney General interpreted in [*Matter of*] *A-B-*, [is] the meaning of the phrase 'particular social group' as part of the asylum standard"). The Policy Memorandum, however, directs officers to ignore federal circuit law to the extent that the law is inconsistent with *Matter of A-B-* in *any* respect, including *Matter of A-B-*'s persecution standard. The directive requires officers performing credible fear determinations to use *Brand X* as a shield against any prior or future federal circuit court decisions inconsistent with the sweeping proclamations made in *Matter of A-B-* regardless of whether *Brand X* has any application under the circumstances of that case.

There are several problems with such a broad interpretation of *Brand X* to cover guidance from an agency when it is far from

clear that such guidance is entitled to deference. First, a
directive to ignore circuit precedent when doing so would
violate the principles of *Brand X* itself is clearly unlawful.
For example, when a court determines a provision is unambiguous,
as courts have done upon evaluating the "unwilling and unable"
definition, a court's interpretation controls when faced with a
contrary agency interpretation. *Brand X*, 545 U.S. at 982. The
Policy Memorandum directs officers as a rule not to apply
circuit law if it is inconsistent with *Matter of A-B-*, without
regard to whether a specific provision in *Matter of A-B-* is
entitled to deference in the first place. Such a rule runs
contrary to *Brand X*.

Second, the government's argument only squares with the
*Brand X* framework if every aspect of *Matter of A-B-* is both
entitled to deference and is a reasonable interpretation of a
relevant provision of the INA. Indeed, *Brand X* does not disturb
any prior judicial opinion that a statute is unambiguous because
Congress has spoken to the interpretive question at issue. *Brand
X*, 545 U.S. at 982 ("[A] judicial precedent holding that the
statute unambiguously forecloses the agency's interpretation,
and therefore contains no gap for the agency to fill, displaces
a conflicting agency construction."). If a Court does make such
a determination, the agency is not free to supplant the Court's

interpretation for its own under *Brand X*. *Id.*[22] Unless an
agency's interpretation of a statute is afforded deference, a
judicial construction of that provision binds the agency,
regardless of whether it is contrary to the agency's view. The
Policy Memorandum does not recognize this principle and
therefore, the government's reliance on *Brand X* is misplaced.
*Cf., e.g.*, *Matter of Marquez Conde*, 27 I. & N. Dec. 251, 255
(BIA 2018)(examining whether the particular statutory question
fell within *Brand X*).[23]

The government's statutory justification fares no better.
It is true that pursuant to 8 U.S.C. § 1103(a), the Attorney
General's rulings with respect to questions of law are
controlling; and they are binding on all service employees,
8 C.F.R. § 103.3(c). But plaintiffs do not dispute the fact that

---

[22] Any assumption that the entirety of *Matter of A-B-* is entitled
to deference also falters in light of the government's
characterization of most of the decision as dicta. Defs.' Reply,
ECF No. 85 at 44–47. (characterizing *Matter of A-B-*
"comment[ary] on problems typical of gang and domestic violence
related claims.") According to the government, the only legal
effect of *Matter of A-B-* is to overrule *Matter of A-R-C-G-*. Any
other self-described dicta would not be entitled to deference
under *Chevron* and therefore *Brand X* could not apply. *Brand X*,
545 U.S. at 982 (agency interpretation must at minimum be
"otherwise entitled to deference" for it to supersede judicial
construction). Simply put, *Brand X* is not a license for agencies
to rely on dicta to ignore otherwise binding circuit precedent.
[23] *Matter of A-B-* invokes *Brand X* only as to its interpretation
of particular social group. 27 I. & N. Dec. at 327. As the Court
has explained above, that interpretation is not entitled to
deference.

86

136

asylum officers must follow the Attorney General's decisions.
The issue is that the Policy Memorandum goes much further than
that. Indeed, the government's characterization of the Policy
Memorandum's directive to ignore federal law only highlights the
flaws in its argument. According to the government, the
directive at issue merely instructs officers to listen to the
Attorney General. Defs.' Reply, ECF No. 85 at 70. Such a mandate
would be consistent with section 1103 and its accompanying
regulations. In reality, however, the Policy Memorandum requires
officers conducting credible fear interviews to follow the
precedent of the relevant circuit only "to the extent that those
cases are not inconsistent with *Matter of A-B-*." Policy
Memorandum, ECF No. 100 at 11. The statutory and regulatory
provisions cited by the government do not justify a blanket
mandate to ignore circuit law.

### b. The Policy Memorandum's Relevant Circuit Law Policy Violates the APA and INA

Plaintiffs next argue that the Policy Memorandum's
directive to asylum officers to apply the law of the "circuit
where the alien is physically located during the credible fear
interview" violates the immigration laws. Pls.' Mot., ECF No.
64-1, 68–71; Policy Memorandum, ECF No. 100 at 12. Specifically,
Plaintiffs argue that this policy conflicts with the low
screening standard for credible fear determinations established

87

by Congress, and therefore violates the APA and INA. Pls.'
Reply, ECF No. 92 at 35-36. The credible fear standard,
plaintiffs argue, requires an alien to be afforded the benefit
of the circuit law most favorable to his or her claim because
there is a possibility that the eventual asylum hearing could
take place in that circuit. *Id.*

The government responds by arguing that it is hornbook law
that the law of the jurisdiction in which the parties are
located governs the proceedings. Defs.' Reply, ECF No. 85 at 73.
The government cites the standard for credible fear
determinations and argues that it contains no requirement that
an alien be given the benefit of the most favorable circuit law.
*Id.* The government also argues that, to the extent there is any
ambiguity, the government's interpretation is entitled to some
deference, even if not *Chevron* deference. *Id.* at 74.

This issue turns on an interpretation of 8 U.S.C.
§ 1225(b)(1)(B)(v), which provides the standard for credible
fear determinations. That section explicitly defines a "credible
fear of persecution" as follows:

> For purposes of this subparagraph, the term
> "credible fear of persecution" means that
> there is a significant possibility, taking
> into account the credibility of the statements
> made by the alien in support of the alien's
> claim and such other facts as are known to the
> officer, that the alien could establish
> eligibility for asylum under section 1158 of
> this title.

8 U.S.C. § 1225(b)(1)(B)(v). Applicable regulations further explain the manner in which the interviews are to be conducted. Interviews are to be conducted in an "nonadversarial manner" and "separate and apart from the general public." 8 C.F.R. § 208.30(d). The purpose of the interview is to "elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture[.]" *Id.*

The statute does not speak to which law should be applied during credible fear interviews. *See generally* 8 U.S.C. § 1225(b)(1)(B)(v). However, the Court is not without guidance regarding which law should be applied because Congress explained its legislative purpose in enacting the expedited removal provisions. 142 CONG. REC. S11491-02. When Congress established expedited removal proceedings in 1996, it deliberately established a low screening standard so that "there should be no danger that an alien with a genuine asylum claim will be returned to persecution." H.R. REP. No. 104-469, pt. 1, at 158. That standard "is a low screening standard for admission into the usual full asylum process" and when Congress adopted the standard it "reject[ed] the higher standard of credibility included in the House bill." 142 CONG. REC. S11491-02.

In light of the legislative history, the Court finds plaintiffs' position to be more consistent with the low screening standard that governs credible fear determinations.

89

The statute does not speak to which law should be applied during the screening, but rather focuses on eligibility at the time of the removal proceedings. 8 U.S.C. § 1225(b)(1)(B)(v). And as the government concedes, these removal proceedings could occur anywhere in the United States. Policy Memorandum, ECF No. 100 at 12. Thus, if there is a disagreement among the circuits on an issue, the alien should get the benefit of that disagreement since, if the removal proceedings are heard in the circuit favorable to the aliens' claim, there would be a significant possibility the alien would prevail on that claim. The government's reading would allow for an alien's deportation, following a negative credible fear determination, even if the alien would have a significant possibility of establishing asylum under section 1158 during his or her removal proceeding. Thus, the government's reading leads to the exact opposite result intended by Congress.[24]

The government does not contest that an alien with a possibility of prevailing on his or her asylum claim could be denied during the less stringent credible fear determination, but rather claims that this Court should defer to the

---

[24] The government relies on BIA cases to support its argument that the law of the jurisdiction where the interview takes place controls. *See* Defs.' Mot., ECF No. 57-1 at 49. These cases address the law that governs the removal proceedings, an irrelevant and undisputed issue.

government's interpretation that this policy is consistent with the statute. Defs.' Reply, ECF No. 85 at 74-75. Under *Skidmore v. Swift & Co.*, the Court will defer to the government's interpretation to the extent it has the power to persuade.[25] *See* 323 U.S. 134, 140, (1944). However, the government's arguments bolster plaintiffs' interpretation more than its own. As the government acknowledges, and the Policy Memorandum explicitly states, "removal proceedings can take place in any forum selected by DHS, and not necessarily the forum where the intending asylum applicant is located during the credible fear or reasonable fear interview." Policy Memorandum, ECF No. 100 at 12. Since the Policy Memorandum directive would lead to denial of a potentially successful asylum applicant at the credible fear determination, the Court concludes that the directive is therefore inconsistent with the statute. H.R. REP. No. 104-469 at 158 (explaining that there should be no fear that an alien with a genuine asylum claim would be returned to persecution).[26]

Because the government's reading could lead to the exact

---

[25] The government cannot claim the more deferential *Auer* deference because *Auer* applies to an agency's interpretation of its own regulations, not to interpretations of policy documents like the Policy Memorandum. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997)(holding agencies may resolve ambiguities in regulations).
[26] The policy is also a departure from prior DHS policy without a rational explanation for doing so. *See* Mujahid Decl., Ex. F (DHS training policy explaining that law most favorable to the applicant applies when there is a circuit split).

91

harm that Congress sought to avoid, it is arbitrary capricious and contrary to law.

\*   \*   \*   \*   \*

In sum, plaintiffs prevail on their APA and statutory claims with respect to the following credible fear policies, which this Court finds are arbitrary and capricious and contrary to law: (1) the general rule against credible fear claims relating to gang-related and domestic violence victims' membership in a "particular social group," as reflected in *Matter of A-B-* and the Policy Memorandum; (2) the heightened "condoned" or "complete helplessness" standard for persecution, as reflected in *Matter of A-B-* and the Policy Memorandum; (3) the circularity standard as reflected in the Policy Memorandum; (4) the delineation requirement at the credible fear stage, as reflected in the Policy Memorandum; and (5) the requirement that adjudicators disregard contrary circuit law and apply only the law of the circuit where the credible fear interview occurs, as reflected in the Policy Memorandum. The Court also finds that neither the Policy Memorandum nor *Matter of A-B-* state an unlawful nexus requirement or require asylum officers to apply discretionary factors at the credible fear stage. The Court now turns to the appropriate remedy.[27]

---

[27] Because the Court finds that the government has violated the INA and APA, it need not determine whether there was a

### D. Relief Sought

Plaintiffs seek an Order enjoining and preventing the government and its officials from applying the new credible fear policies, or any other guidance implementing *Matter of A-B-* in credible fear proceedings. Pls.' Mot., ECF No. 64-1 at 71-72. Plaintiffs also request that the Court vacate any credible fear determinations and removal orders issued to plaintiffs who have not been removed. *Id.* As for plaintiffs that have been removed, plaintiffs request a Court Order directing the government to return the removed plaintiffs to the United States. *Id.* Plaintiffs also seek an Order requiring the government to provide new credible fear proceedings in which asylum adjudicators must apply the correct legal standards for all plaintiffs. *Id.*

The government argues that because section 1252 prevents all equitable relief the Court does not have the authority to order the removed plaintiffs to be returned to the United States. Defs.' Reply, ECF No. 85 at 75-76. The Court addresses each issue in turn.

---

constitutional violation in this case. *See Am. Foreign Serv. Ass'n v. Garfinkel*, 490 U.S. 153, 161 (1989)(per curiam)(stating courts should be wary of issuing "unnecessary constitutional rulings").

93

### 1. Section 1252 Does Not Bar Equitable Relief

#### a. Section 1252(e)(1)

The government acknowledges that section 1252(e)(3) provides for review of "systemic challenges to the expedited removal system." Defs.' Mot., ECF No. 57-1 at 11. However, the government argues 1252(e)(1) limits the scope of the relief that may be granted in such cases. Defs.' Reply, ECF No. 85 at 75–76. That provision provides that "no court may . . . enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection." 8 U.S.C. § 1252(e)(1)(a). The government argues that since no other subsequent paragraph of section 1252(e) specifically authorizes equitable relief, this Court cannot issue an injunction in this case. Defs.' Reply, ECF No. 85 at 75–76.

Plaintiffs counter that section 1252(e)(1) has an exception for "any action . . . specifically authorized in a subsequent paragraph." Since section 1252(e)(3) clearly authorizes "an action" for systemic challenges, their claims fall within an exception to the proscription of equitable relief. Pls.' Reply, ECF No. 92 at 38.

This issue turns on what must be "specifically authorized in a subsequent paragraph" of section 1252(e). Plaintiffs argue

94

the "action" needs to be specifically authorized, and the government argues that it is the "relief." Section 1252(e)(1) states as follows:

> (e) Judicial review of orders under section 1225(b)(1)
>
> (1) Limitations on relief
> Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may--
>
> (A) enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection, or
>
> (B) certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under a subsequent paragraph of this subsection.

The government contends that this provision requires that any "*declaratory, injunctive, or other equitable relief*" must be "*specifically authorized in a subsequent paragraph*" of subsection 1252(e) for that relief to be available. Defs.' Reply, ECF No. 85 at 75 (emphasis in original). The more natural reading of the provision, however, is that these forms of relief are prohibited except when a plaintiff brings "any action . . . specifically authorized in a subsequent paragraph." *Id.* § 1252(e)(1)(a). The structure of the statute supports this view. For example, the very next subsection, 1252(e)(1)(b), uses

95

the same language when referring to an *action*: "[A court may not certify a class] in *any action for which judicial review is authorized under a subsequent paragraph of this subsection*." *Id.* § 1252(e)(1)(b)(emphasis added).

A later subsection lends further textual support for the view that the term "authorized" modifies the type of action, and not the type of relief. Subsection 1252(e)(4) limits the remedy a court may order when making a determination in habeas corpus proceedings challenging a credible fear determination.[28] Under section 1252(e)(2), a petitioner may challenge his or her removal under section 1225, if he or she can prove by a preponderance of the evidence that he or she is in fact in this country legally.[29] *See* 8 U.S.C. § 1252(e)(2)(c). Critically, section 1252(e)(4) limits the type of relief a court may grant if the petitioner is successful: "the court may order no remedy or relief other than to require that the petitioner be provided a hearing." *Id.* § 1252(e)(4)(B). If section 1252(e)(1)(a) precluded all injunctive and equitable relief, there would be no need for § 1252(e)(4) to specify that the court could order no

---

[28] Habeas corpus proceedings, like challenges to the validity of the system under 1252(e)(3), are "specifically authorized in a subsequent paragraph of [1252(e)]." 8 U.S.C. § 1252(e)(1)(a).
[29] To prevail on this type of claim a petitioner must establish that he or she is an "alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158." 8 U.S.C. § 1252(e)(2).

other form of relief. Furthermore, if the government's reading was correct, there should be a parallel provision in section 1252(e)(3) limiting the relief a prevailing party of a systemic challenge could obtain to only relief specifically authorized by that paragraph.

Indeed, under the government's reading of the statute there could be no remedy for a successful claim under paragraph 1252(e)(3) because that paragraph does not specifically authorize any remedy. However, it does not follow that Congress would have explicitly authorized a plaintiff to bring a suit in the United States District Court for the District of Columbia and provided this Court with exclusive jurisdiction to determine the legality of the challenged agency action, but deprived the Court of any authority to provide *any remedy* (because none are specifically authorized), effectively allowing the unlawful agency action to continue. This Court "should not assume that Congress left such a gap in its scheme." *Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167, 180 (2005)(holding Title IX protected against retaliation in part because "all manner of Title IX violations might go umremedied" if schools could retaliate freely).

An action brought pursuant to section 1252(e)(3) is an action that is "specifically authorized in a subsequent paragraph" of 1252(e). *See* 8 U.S.C. § 1252(e)(1). And 1252(e)(3)

97

clearly authorizes "an action" for systemic challenges to written expedited removal policies, including claims concerning whether the challenged policy "is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." *Id.* § 1252(e)(3). Because this case was brought under that systemic challenge provision, the limit imposed on the relief available to a court under 1252(e)(1)(a) does not apply.[30]

### b. Section 1252(f)

The government's argument that section 1252(f) bars injunctive relief fares no better. That provision states in relevant part: "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [sections 1221–1232] other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1). The Supreme Court has explained that "Section 1252(f)(1) thus 'prohibits federal courts from granting

---

[30] Plaintiffs also argue that section 1252(e)(1) does not apply to actions brought under section 1252(e)(3). Section 1252(e)(1), by its terms, only applies to an "action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)." Plaintiffs argue that the plain reading of section 1252(e)(3) shows that an action under that provision does not pertain to an individual order of exclusion, but rather "challenges the validity of the system." Pls.' Reply, ECF No. 92 at 12 (citing 8 U.S.C. § 1252(e)(3)). Having found that section 1252(e)(3) is an exception to section 1252(e)(1)'s limitation on remedies, the Court need not reach this argument.

classwide injunctive relief against the operation of §§ 1221–123[2].'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018)(citing *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999)). The Supreme Court has also noted that circuit courts have "held that this provision did not affect its jurisdiction over . . . statutory claims because those claims did not 'seek to enjoin the operation of the immigration detention statutes, but to enjoin conduct . . . not authorized by the statutes." *Id.* (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010)).

In this case, plaintiffs do not challenge any provisions found in section 1225(b). They do not seek to enjoin the operation of the expedited removal provisions or any relief declaring the statutes unlawful. Rather, they seek to enjoin the government's violation of those provisions by the implementation of the unlawful credible fear policies. An injunction in this case does not obstruct the operation of section 1225. Rather, it enjoins conduct that violates that provision. Therefore, section 1252(f) poses no bar. *See R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015)(holding section 1252(f) does not limit a court's ability to provide injunctive relief when the injunctive relief "enjoins conduct that allegedly violates [the immigration statute]"); *see also Reid v. Donelan*, 22 F. Supp. 3d 84, 90 (D. Mass. 2014)("[A]n injunction 'will not prevent the law from

operating in any way, but instead would simply force the government to *comply* with the statute.")(emphasis in original)).

Finally, during oral argument, the government argued that even if the Court has the authority to issue an injunction in this case, it can only enjoin the policies as applied in plaintiffs' cases under section 1252(f). *See* Oral Arg. Hr'g Tr., ECF No. 102 at 63. In other words, according to the government, the Court may declare the new credible fear policies unlawful, but DHS may continue to enforce the policies in all other credible fear interviews. To state this proposition is to refute it. It is the province of the Court to declare what the law is, *see Marbury v. Madison*, 5 U.S. 137, 177 (1803), and the government cites no authority to support the proposition that a Court may declare an action unlawful but have no power to prevent that action from violating the rights of the very people it affects.[31] To the contrary, such relief is supported by the APA itself. *See Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*,

---

[31] During oral argument, the government argued for the first time that an injunction in this case was tantamount to class-wide relief, which the parties agree is prohibited under the statute. *See* Oral Arg. Hr'g Tr., ECF No. 102 at 63; 8 U.S.C. § 1252(e)(1)(b)(prohibiting class certification in actions brought under section 1252(e)(3)). The Court finds this argument unpersuasive. Class-wide relief would entail an Order requiring new credible fear interviews for all similarly situated individuals, and for the government to return to the United States all deported individuals who were affected by the policies at issue in this case. Plaintiffs do not request, and the Court will not order, such relief.

145 F.3d 1399, 1409-10 (D.C. Cir. 1998)("We have made clear that '[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated – not that their application to the individual petitioners is proscribed.'"). Moreover section 1252(f) only applies when a plaintiff challenges the legality of immigration laws and not, as here, when a plaintiff seeks to enjoin conduct that violates the immigration laws. In these circumstances, section 1252(f) does not limit the Court's power.

## 2. The Court Has the Authority to Order the Return of Plaintiffs Unlawfully Removed

Despite the government's suggestion during the emergency stay hearing that the government would return removed plaintiffs should they prevail on the merits, TRO Hr'g Tr., Aug. 9, 2018, ECF No. 23 at 13-14 (explaining that the Department of Justice had previously represented to the Supreme Court that should a Court find a policy that led to a plaintiffs' deportation unlawful the government "would return [plaintiffs] to the United states at no expense to [plaintiffs]"), the government now argues that the Court may not do so, *see* Defs.' Reply, ECF No. 85 at 78–79.

In support of its argument, the government relies principally on *Kiyemba v. Obama*, 555 F.3d 1022 (D.C. Cir 2009) vacated, 130 S.Ct. 1235, reinstated in amended form, 605 F.3d

1046 (D.C. Cir. 2010). In *Kiyemba*, seventeen Chinese citizens, determined to be enemy combatants, sought habeas petitions in connection with their detention in Guantanamo Bay, Cuba. 555 F.3d at 1024. The petitioners sought release in the United States because they feared persecution if they were returned to China, but had not sought to comply with the immigration laws governing a migrant's entry into the United States. *Id.* After failed attempts to find an appropriate country in which to resettle, the petitioners moved for an order compelling their release into the United States. *Id.* The district court, citing exceptional circumstances, granted the motion. *Id.*

The United States Court of Appeals for the District of Columbia Circuit reversed. The Court began by recognizing that the power to exclude aliens remained in the exclusive power of the political branches. *Id.* at 1025 (citations omitted). As a result, the Court noted, "it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien." *Id.* at 1026 (citation and internal quotation marks omitted). The critical question was "what law expressly authorized the district court to set aside the decision of the Executive Branch and to order these aliens brought to the United States." *Id.* at 1026 (internal quotation marks omitted).

102

In this case, the answer to that question is the immigration laws. In fact, *Kiyemba* distinguished Supreme Court cases which "rested on the Supreme Court's interpretation not of the Constitution, but of a provision in the immigration laws." *Id.* at 1028. The Court further elaborated on this point with the following explanation:

> it would . . . be wrong to assert that, by ordering aliens paroled into the country . . . the Court somehow undermined the plenary authority of the political branches over the entry and admission of aliens. The point is that Congress has set up the framework under which aliens may enter the United States. The Judiciary only possesses the power Congress gives it to review Executive action taken within that framework. Since petitioners have not applied for admission, they are not entitled to invoke that judicial power.

*Id.* at 1028 n.12.

The critical difference here is that plaintiffs have availed themselves of the "framework under which aliens may enter the United States." *Id.* Because plaintiffs have done so, this Court "possesses the power Congress gives it to review Executive action taken within that framework." *Id.* Because the Court finds *Kiyemba* inapposite, the government's argument that this Court lacks authority to order plaintiffs returned to the United States is unavailing.

It is also clear that injunctive relief is necessary for the Court to fashion an effective remedy in this case. The

103

credible fear interviews of plaintiffs administered pursuant to the policies in *Matter of A-B-* and the Policy Memorandum were fundamentally flawed. A Court Order solely enjoining these policies is meaningless for the removed plaintiffs who are unable to attend the subsequent interviews to which they are entitled. *See, e.g.*, *Walters v. Reno*, 145 F.3d 1032, 1050-51 (9th Cir. 1998)("[A]llowing class members to reopen their proceedings is basically meaningless if they are unable to attend the hearings that they were earlier denied.").

### 3. Permanent Injunction Factors Require Permanent Injunctive Relief

A plaintiff seeking a permanent injunction must satisfy a four-factor test. *eBay Inc. v. MercExchange*, *L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiffs must demonstrate they have: (1) suffered an irreparable injury; (2) that traditional legal remedies, such as monetary relief, are inadequate to compensate for that injury; (3) the balance of hardships between the parties warrants equitable relief; and (4) the injunction is not contrary to the public interest. *See Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 695 (D.C. Cir. 2015).

Plaintiffs seek a permanent injunction, arguing that they have been irreparably harmed and that the equities are in their favor. Pls.' Mot., ECF No. 64-1 at 73-74. The government has not responded to these arguments on the merits, and rests on its

contention that the Court does not have the authority to order such relief. Defs.' Reply, ECF No. 85 at 75–78. Having found that the Court does have the authority to order injunctive relief, *supra,* at 93–104, the Court will explain why that relief is appropriate.

Plaintiffs claim that the credible fear policies this Court has found to be unlawful have caused them irreparable harm. It is undisputed that the unlawful policies were applied to plaintiffs' credible fear determinations and thus caused plaintiffs' applications to be denied. *See* Defs.' Mot., ECF No. 57-1 at 28 (stating an "asylum officer reviewed each of [plaintiffs] credible fear claims and found them wanting in light of Matter of A-B-"). Indeed, plaintiffs credibly alleged at their credible fear determinations that they feared rape, pervasive domestic violence, beatings, shootings, and death in their countries of origin. Based on plaintiffs' declarations attesting to such harms, they have demonstrated that they have suffered irreparable injuries.[32]

The Court need spend little time on the second factor: whether other legal remedies are inadequate. No relief short of enjoining the unlawful credible fear policies in this case could

---

[32] The country reports support the accounts of the Plaintiffs. *See* Mujahid Decl., ECF No. 10-3, Exs. K-T; Second Mujahid Decl., ECF No. 64-4 Exs. 10–13; Honduras Decl., ECF No. 64-6; Guatemala Decl., ECF No. 64-7; El Salvador Decl., ECF No. 64-8.

provide an adequate remedy. Plaintiffs do not seek monetary compensation. The harm they suffer will continue unless and until they receive a credible fear determination pursuant to the existing immigration laws. Moreover, without an injunction, the plaintiffs previously removed will continue to live in fear every day, and the remaining plaintiffs are at risk of removal.

The last two factors are also straightforward. The balance of the hardships weighs in favor of plaintiffs since the "[g]overnment 'cannot suffer harm from an injunction that merely ends an unlawful practice.'" *R.I.L-R*, 80 F. Supp. at 191 (citing *Rodriguez*, 715 F.3d at 1145). And the injunction is not contrary to the public interest because, of course, "[t]he public interest is served when administrative agencies comply with their obligations under the APA." *Id.* (citations omitted). Moreover, as the Supreme Court has stated, "there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009). No one seriously questions that plaintiffs face substantial harm if returned to their countries of origin. Under these circumstances, plaintiffs have demonstrated they are entitled to a permanent injunction in this case.

## IV. Conclusion

For the foregoing reasons, the Court holds that it has jurisdiction to hear plaintiffs' challenges to the credible fear policies, that it has the authority to order the injunctive relief, and that, with the exception of two policies, the new credible fear policies are arbitrary, capricious, and in violation of the immigration laws.

Accordingly, the Court **GRANTS in PART and DENIES in PART** plaintiffs' cross-motion for summary judgment and motion to consider evidence outside the administrative record. The Court also **GRANTS** plaintiffs' motion for a permanent injunction. The Court further **GRANTS in PART and DENIES in PART** the government's motion for summary judgment and motion to strike.

The Court will issue an appropriate Order consistent with this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **December 17, 2018**

)
GRACE, *et al.*,                          )
                                          )
                     Plaintiffs,          )
                                          )
          v.                              )
                                          )
MATTHEW G. WHITAKER, Acting               )
Attorney General of the United           )  No. 1:18-cv-01853 (EGS)
States, *et al.*,                         )
                                          )
                     Defendants.          )
                                          )

**ORDER**

The Court has considered the parties' cross-motions for
summary judgment, the memoranda and exhibits in support thereof,
and the briefs in opposition thereto; plaintiffs' motion to
consider extra-record evidence, defendants' motion to strike
plaintiffs' extra-record evidence, and the memoranda in support
or in opposition thereto; oral argument; and the entire record
in this action.

Accordingly, and consistent with the accompanying
Memorandum Opinion, the Court hereby **GRANTS IN PART** and **DENIES
IN PART** plaintiffs' cross-motion for summary judgment, and
**GRANTS IN PART** and **DENIES IN PART** defendants' motion for summary
judgment.

This Court hereby:

1. **DECLARES** that the following credible fear policies
   contained in *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G.

2018), the USCIS Policy Memorandum, Guidance for Processing Reasonable Fear, Credible Fear, Asylum, and Refugee Claims in Accordance with Matter of A-B-, July 11, 2018 (PM-602-0162) (hereinafter "Policy Memorandum"), and/or the Asylum Division Interim Guidance – Matter of A-B-, 27 I. & N. Dec. 316 (A.G. 2018) ("Interim Guidance"), and challenged by plaintiffs, are arbitrary, capricious, and in violation of the immigration laws insofar as those policies are applied in credible fear proceedings:

   a. The general rule against credible fear claims relating to domestic and gang violence. *See Matter of A-B-*, 27 I. & N. Dec. at 320 & n.1; Policy Memorandum, ECF No. 100 at 9, 12-13.

   b. The requirement that a noncitizen whose credible fear claim involves non-governmental persecutors "show the government condoned the private actions or at least demonstrated a complete helplessness to protect the victim." *Matter of A-B-*, 27 I. & N. at 337; Policy Memorandum, ECF No. 100 at 5, 9, 13; Interim Guidance.

   c. The Policy Memorandum's rule that domestic violence-based particular social group definitions that include "inability to leave" a relationship are impermissibly circular and therefore not cognizable in credible fear proceedings. Policy Memorandum, ECF No. 100 at 8.

   d. The Policy Memorandum's requirement that, during the credible fear stage, individuals claiming credible fear must delineate or identify any particular social group in order to satisfy credible fear based on the particular social group protected ground. Policy Memorandum, ECF No. 100 at 6, 12.

   e. The Policy Memorandum's directive that asylum officers conducting credible fear interviews should apply federal circuit court case law only "to the extent that those cases are not inconsistent with *Matter of A-B-*." Policy Memorandum, ECF No. 100 at 11.

   f. The Policy Memorandum's directive that asylum officers conducting credible fear interviews should

apply only the case law of "the circuit where the alien is physically located during the credible fear interview." Policy Memorandum, ECF No. 100 at 11-12.

2. **VACATES** each of the credible fear policies specified in paragraphs 1.a. through 1.f. above. Accordingly, the Court **PERMANENTLY ENJOINS** defendants and their agents from applying these policies with respect to credible fear determinations, credible fear interviews, or credible fear review hearings issued or conducted by asylum officers or immigration judges. Defendants shall provide written guidance or instructions to all asylum officers and immigration judges whose duties include issuing or conducting credible fear determinations, credible fear interviews, or credible fear review hearings, communicating that each of the credible fear policies specified in paragraphs 1.a. through 1.f. are vacated and enjoined and therefore shall not be applied to any such credible fear proceedings.

3. **VACATES** the negative credible fear determinations and any expedited removal orders issued to each plaintiff.

4. **PERMANENTLY ENJOINS** defendants from removing any plaintiffs currently in the United States without first providing each of them a new credible fear process consistent with the Court's Memorandum Opinion and free from the unlawful policies enumerated in paragraphs 1.a. through 1.f. above or, in the alternative, full immigration court removal proceedings pursuant to 8 U.S.C. § 1229a. To ensure compliance with this injunction, any new credible fear process provided pursuant to this paragraph shall be accompanied by a written record consistent with 8 U.S.C. § 1225(b)(1)(B)(iii).

5. **FURTHER ORDERS** defendants to bring back into the United States, at no expense to plaintiffs, any plaintiff who has been removed pursuant to an expedited removal order prior to this Order and parole them into the United States, and provide each of them a new credible fear process consistent with the Court's Memorandum Opinion and free from the unlawful policies enumerated in paragraphs 1.a. through 1.f. above or, in the alternative, full immigration court removal proceedings

pursuant to 8 U.S.C. § 1229a.  To facilitate such plaintiffs' return to the United States, defendants shall meet and confer with plaintiffs' counsel within 7 days to develop a schedule and plan to carry out this portion of the injunction. To ensure compliance with this injunction, any new credible fear process provided pursuant to this paragraph shall be accompanied by a written record consistent with 8 U.S.C. § 1225(b)(1)(B)(iii). Defendants shall work in good faith to carry out the relief ordered in this paragraph and shall communicate periodically with plaintiffs' counsel until the relief ordered in this paragraph is completed.

6. **FURTHER ORDERS** defendants to provide the plaintiffs, within 10 days of this Order, with a status report detailing any steps defendants have taken to comply with this injunction, including copies of all guidance and instructions sent to asylum officers and immigration judges pursuant to paragraph 2 above. Within 30 days and 60 days of this Order, defendants shall provide plaintiffs with a status report detailing any subsequent steps taken to comply with this injunction in the time period since the last report, including copies of all guidance and instructions sent to asylum officers and immigration judges pursuant to paragraph 2 above during that time frame.

The Court **GRANTS** plaintiffs' cross-motion for summary judgment as to their Administrative Procedure Act, Immigration and Nationality Act, and Refugee Act challenges concerning each of the policies enumerated in paragraphs 1.a. through 1.f. above, and defendants' motion for summary judgment is **DENIED** as to these same claims. The Court **DENIES** plaintiffs' cross-motion for summary judgment as to their challenges concerning nexus and discretion, and defendants' motion for summary judgment is **GRANTED** as to these same claims.

Furthermore, consistent with the accompanying Memorandum Opinion, the Court **GRANTS** plaintiffs' motion to consider extra record evidence with respect to evidence relevant to plaintiffs' contentions that the government deviated from prior policies, as well as evidence relevant to plaintiffs' request for injunctive relief. Accordingly, the following evidence submitted by plaintiffs is admitted into the record, and defendants' motion to strike is **DENIED** with respect to this same evidence: Decl. of Sarah Mujahid ("Mujahid Decl."), ECF No. 10-3, Exs. E-J; Second Decl. of Sarah Mujahid ("Second Mujahid Decl."), ECF No. 64-4, Exs. 1-3; ECF Nos. 12-1 to 12-9 (filed under seal); Mujahid Decl., ECF No. 10-3, Exs. K-Q; Second Mujahid Decl., ECF No. 64-4, Exs. 10-13; Joint Decl. of Shannon Drysdale Walsh, Cecilia Menjivar, and Harry Vanden ("Honduras Decl."), ECF No. 64-6; Joint Decl. of Cecilia Menjivar, Gabriela Torres, and Harry Vanden ("Guatemala Decl."), ECF No. 64-7; Joint Decl. of Cecilia Menjivar and Harry Vanden ("El Salvador Decl."), ECF No. 64-8.

Because the Court has declined to consider plaintiffs' due process claim, the Court **GRANTS** defendants' motion to strike with respect to evidence relating to plaintiffs' due process claim. Accordingly, the Court will not consider the following documents relating to plaintiffs' due process

claim: Second Mujahid Decl., ECF No. 64-4, Exs. 4-7, 8-9, 14-17, and ECF No. 64-5; and Mujahid Decl., ECF No. 10-3, Exs. R-T. Plaintiffs' motion to consider extra-record evidence as to these same documents is **DENIED** without prejudice.

The Court also **GRANTS** defendants' motion to strike with respect to the Decl. of Rebecca Jamil and Decl. of Ethan Nasr, and plaintiffs' evidence motion is **DENIED** as to these same documents.

**SO ORDERED.**

**Signed:     Emmet G. Sullivan**
**             United States District**
**             December 19, 2018**