**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| GRACE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-1853 |
| | ) | |
| MATTHEW G. WHITAKER, Acting Attorney General of the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

On December 19, 2018, the Court issued an Order vacating several policies promulgated by the Attorney General in *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), a precedential immigration decision, and subsequent guidance issued by the Department of Homeland Security. *See* Order, ECF No. 105. The vacated policies related to the expedited removal process and credible fear determinations made by asylum officers. The Court held that these policies violated the Administrative Procedure Act and the immigration laws. Accordingly, the Court vacated the unlawful policies and permanently enjoined the government from applying the policies in future cases.

The government now requests a stay, pending appeal of the Court's Order, to enable the unlawful policies to continue to apply in all expedited removal cases, except the plaintiffs. For the following reasons, defendants' motion for stay is **DENIED**.

## I. Legal Standard

A court's decision to stay its final judgment pending appeal is an extraordinary remedy that is an "intrusion into the ordinary process of . . . judicial review." *Nken v. Holder*, 556 U.S. 418, 428 (2009); *see also Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985). The issuance of a stay is a matter of judicial discretion, not a matter of right, and the "party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433-34. In exercising its discretion, a court considers the following four factors:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*Cuomo*, 772 F.2d at 974. It is "the movant's obligation to justify the court's exercise of such an extraordinary remedy." *Id.* at 978.

## II. Discussion

The Court begins with a discussion of general guidance from the Supreme Court about the four stay factors. "The first two factors of the traditional standard are the most critical. It is not enough that the chance of success on the merits be 'better than negligible.'" *Nken,* 556 U.S. at 434 (citation omitted). "By

2

the same token, simply showing some 'possibility of irreparable injury,' fails to satisfy the second factor." *Id.* at 434-35 (internal citation omitted). "Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing party." *Id.* at 435. In the context of removal proceedings, courts must be mindful that the "Government's role as the respondent in every removal proceeding does not make the public interest in each individual one negligible." *Id.* (citations omitted). With these principles in mind, the Court now turns to the four stay factors.

## A. Likelihood of Success on the Merits

In determining whether a stay should be granted, a "critical" factor is whether the moving party is likely to succeed on the merits. *Id.* at 434.

The government confines its arguments to the claim that the Court has no authority to enjoin the operation of any expedited removal policies beyond that policies' application to the plaintiffs. *See* Defs.' Mot. to Stay, ECF No. 107. The government makes three principal arguments to support its position. First, the government points to section 1252(e)(3), the provision under which the plaintiffs have brought this case. *See* 8 U.S.C. § 1252(e)(3). Next, the government looks to the legislative

history of the 1996 amendments to the Immigration and
Nationality Act ("INA"). Finally, the government argues
precedent in this Circuit "indicates" that its position is
correct. The Court considers each argument in turn.

### i. Section 1252(e)(3)

The government first argues that the Congressional scheme
precludes any injunctive relief that is not limited to the
plaintiffs in this case. Defs.' Mot. to Stay, ECF No. 107 at 2-
4. The Court has already rejected the various arguments made on
this point in its Memorandum Opinion. ECF No. 106 at 98-101.
Undaunted, the government now points to section 1252(e)(3) which
grants the Court authority for "judicial review of
determinations under section 1225(b) and its implementation."
Defs.' Mot. to Stay, ECF No. 107 at 3. The government argues
that such determinations may only be made individually and
therefore the Court only had authority to review, and provide a
remedy for, the plaintiffs' individual determinations. *Id.* The
government further argues that its position is supported by a
provision that prohibits a court from certifying a class action
in any action for which judicial review is authorized under
1252(e). *See* 8 U.S.C. § 1252(e)(1)(B).

The Court is no more persuaded by the government's
arguments here than it was when the government made nearly
identical arguments in its motion for summary judgment. *See,*

*e.g.*, Memorandum Opinion, ECF No. 106 at 100 n.30 (rejecting argument that an injunction in this case is tantamount to class-wide relief). As the Court explained in its Memorandum Opinion, the government's argument requires the Court to ignore the fact that section 1252(e)(3) authorizes a systemic legal challenge to a new expedited removal written policy directive issued under the authority of the Attorney General and contains no limitation on relief once a court makes a determination that a policy directive is unlawful. *See* 8 U.S.C. § 1252(e)(3).

Furthermore, the provision itself explicitly states that when a plaintiff brings a claim under section 1252(e)(3), the Court is "limited to determinations of . . . whether . . . a written policy directive . . . is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." 8 U.S.C. § 1252(e)(3)(A)(ii). There is no statutory requirement, as the government argues, to declare a policy in violation of the law only as applied to the individual plaintiffs. *Cf.* 8 U.S.C. § 1252(f)(limiting injunctive relief to only the plaintiff when a plaintiff challenges the legality of a provision of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")). To accept the government's position would require the Court to ignore the systemic nature of this action. It also would require the Court to ignore the general rule that "[w]hen a reviewing court

determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)(citation omitted).

As to the prohibition on class actions, as the Court stated in its Memorandum Opinion, class-wide relief in this case would entail an order requiring new credible fear interviews for all immigrants who applied for asylum from June 11, 2018, the date of the Attorney General's decision, and for the government to return to the United States every deported individual who was affected by the policies at issue in this case. Memorandum Opinion, ECF No. 106 at 100 n.30. The Court has ordered no such relief in this case.

### ii. Legislative History

The government next points to the legislative history of the 1996 amendments to the INA. Defs.' Mot. to Stay, ECF No. 107 at 4 (citing H.R. REP. No. 104-469(I)). Noting that this Court relied extensively on the legislative history of the immigration law, the government argues the history demonstrates Congress' intent to allow policies declared to be unlawful by a court to remain in place. *Id.* The government selectively quotes the legislative history to bolster its unpersuasive argument. The relevant section, however, states as follows:

> Section 306 also limits the authority of Federal courts other than the Supreme Court to enjoin the operation of the **new removal procedures established in this legislation**. These limitations do not preclude challenges to the new procedures, but the procedures will remain in force while such lawsuits are pending. In addition, courts may issue injunctive relief pertaining to the case of an individual alien, and thus protect against any immediate violation of rights. However, single district courts or courts of appeal **do not have authority to enjoin procedures established by Congress** to reform the process of removing illegal aliens from the U.S.

H.R. REP. No. 104-469(I) at 161 (emphasis added). This argument is a repackaging of the government's argument in its motion for summary judgment that section 1252(f) precludes the court's injunction. *See* Memorandum Opinion, ECF No. 106 at 98. Again, the Court agrees with the government that the Court would not have the authority to enjoin, other than as to the plaintiffs, "new removal procedures established" by the 1996 Amendments to the INA, nor would it have "authority to enjoin procedures established by Congress to reform the process of removing illegal aliens from the U.S." *See* H.R. REP. No. 104-469(I) at 161.  The problem for the government is that this case does not concern "procedures established by Congress" or a challenge to the INA itself. *See id.* Rather, the plaintiffs have challenged "written policy directive[s] [and] written policy guideline[s]" established by the Attorney General. *See* 8 U.S.C. § 1252(e)(3)(A)(ii).

*American Immigration Lawyers Ass'n v. Reno* ("AILA"), 199 F.3d 1352, 1358 (D.C. Cir. 2000), is instructive. In *AILA* the plaintiffs challenged several provisions of IIRIRA, an Act of Congress, which established the expedited removal provisions enacted by the legislative branch. *Id.* In such a case, the Court would have been able to enjoin any unlawful provisions as to the plaintiffs in the case only because the plaintiffs challenged "removal procedures established by Congress." *See* H.R. REP. No. 104-469(I) at 161.

In contrast, the plaintiffs here have challenged the action of the Attorney General, *not legislation passed by Congress*. Moreover, the plaintiffs requested that the Attorney General conform the policies to the immigration laws. *See* Memorandum Opinion, ECF No. 106 at 101 (explaining the plaintiffs do not challenge the statute but rather seek to enjoin the government from violating the statute). The unlawful policies in this case were not the result of action by the legislature, but rather a policy directive issued by the executive branch. Again, it is the will of Congress--not the whims of the executive--that determines the standard for expedited removal. And when there is an inconsistency, the latter must accede to the former.

### iii. *AILA* and 8 U.S.C. Section 1252(f)

The government, citing *AILA*, argues that the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has "indicated" that relief in cases brought under section 1252(e)(3) should be limited to the parties before the Court, and only those parties. Defs.' Mot. to Stay, ECF No. 107 at 5. *AILA* concerned the doctrine of third-party standing, and the organizational plaintiffs in that case sought to litigate the rights of aliens who were not parties to the suit. 199 F.3d at 1357. As the D.C. Circuit explained, the organizational plaintiffs alleged that the new statutory scheme "violated not their rights or the rights of their members, but the [rights] of unnamed aliens who were or might be subject to the statute and regulations." *Id.* Because the organizational plaintiffs did not have standing, the D.C. Circuit had no occasion to discuss the limits of an appropriate remedy. *Id.* at 1364 (holding "plaintiff organizations do not have standing to raise claims, whether statutory or constitutional, on behalf of aliens subjected to IIRIRA's expedited removal system"). The D.C. Circuit simply noted that the statutory scheme supported its view that litigants could not assert the rights of others in a 1252(e)(3) action. *Id.* at 1359. In support of this view, the Court pointed to two provisions relevant to this case: section 1252(e)(1)(B) which prohibits class actions; and section 1252(f)(1) which only

authorizes injunctive relief for the parties to a case when the parties challenge the legality of an immigration statute. *Id.*

As explained in this Court's Memorandum opinion, section 1252(f)(1) only applies when a party is challenging the legality of a statute, and not when a party argues that the defendant's actions violate the statute. ECF No. 106 at 101. In *AILA*, the organizational plaintiffs argued that the statute itself was unconstitutional, not that defendants were not complying with the statute, therefore the D.C. Circuit's analysis of 1252(f) is wholly consistent with this Court's Memorandum Opinion. As for the bar on class certification, the Court has already ruled that the injunction is not tantamount to class-wide relief. *See supra* at 6. In any event, *AILA* was an analysis of third-party standing, and the D.C. Circuit did not address what relief would be appropriate when a plaintiff that was subject to the expedited removal process successfully challenges a policy that violates the immigration laws. The government's reliance on *AILA* is therefore misplaced.

In light of the foregoing analysis, the Court is not persuaded that the government is likely to prevail on appeal.

**B. Irreparable Injury**

The Court next considers if the government has shown it will be "irreparably injured absent a stay." *Nken*, 556 U.S. at 434. (citation omitted). The claimed irreparable injury must be

likely to occur; "simply showing some 'possibility of irreparable injury'" is insufficient. *Id.* (citation omitted).

The government briefly states it will be irreparably harmed, arguing that "[a]n[] order that enjoins a governmental entity from enforcing actions taken pursuant to statutes enacted by the duly elected representatives of the people constitutes an irreparable injury." Defs.' Mot. to Stay, ECF No. 107 at 7. There are several problems with this argument. As stated above, and at length in the Memorandum Opinion, the plaintiffs have not challenged any action taken pursuant to statutes enacted by elected representatives. Rather, the challenged action at issue in this case was taken contrary to the immigration laws. The plaintiffs have invoked those immigration laws and the Court has found that several of the policies violate those laws. Moreover, this was not an action by the legislature, but rather a policy directive issued by the executive.

The government, therefore, has not shown that a stay of the Court's order is necessary to avoid a likely irreparable injury in this case.

### C. Substantial Injury to Other Parties and the Public Interest

The Court next addresses the second two factors, which "merge when the Government is the opposing party." *Nken,* 556 U.S. at 434. The government briefly argues that no party will be

11

harmed if the Court grants the stay because the policies are
enjoined as to all the plaintiffs in this case. Defs.' Mot. to
Stay, ECF No. 107 at 6. However, the government fails to
acknowledge that the Court considers harm to non-parties. *See
Loving v. I.R.S.*, 920 F. Supp. 2d 108, 111 (D.D.C. 2013)
(considering harm to non-parties if the Court granted the stay).
In light of the Court's finding that the heightened standard
imposed by the policies is unlawful, it is clear that immigrants
who allege credible fears of domestic or gang-related violence
will be harmed by those policies.

The government does not appear to address the last factor,
i.e., whether the stay is in the public interest. The Court
recognizes that the public has an interest "in efficient
administration of the immigration laws at the border." *Landon v.
Plasencia*, 459 U.S. 21, 34 (1982). However, "there is a public
interest in preventing aliens from being wrongfully removed,
particularly to countries where they are likely to face
substantial harm," *Nken*, 556 U.S. at 436, as well as an interest
in "ensuring that 'statutes enacted by [their] representatives'
are not imperiled by executive fiat." *East Bay Sanctuary
Covenant v. Trump*, 909 F.3d 1219, 1255 (9th Cir. 2018)(citation
omitted).

The Court is also mindful that the Supreme Court has
cautioned against overbroad injunctions because, in certain

circumstances, they "may have a detrimental effect by foreclosing adjudication by a number of different courts and judges." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Other courts have highlighted concerns such as depriving non-parties the right of litigating in other forums; and the potential for forum shopping "which hinders the equitable administration of laws." *See California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018). However, because of the unique statutory scheme for systemic challenges under section 1252(e)(3), none of these concerns are relevant here. Jurisdiction to review new written policy directives that implement the fair credibility determination process is limited to the United States District Court for the District of Columbia. 8 U.S.C. § 1252(e)(3)(A). Accordingly, the concern that an injunction in this case will foreclose adjudication by other courts, or encourage forum shopping for these types of claims, simply is not present. Similarly, there is no concern that the Court's injunction will deprive non-parties "the right to litigate in other forums," *Azar*, 911 F.3d at 583, since the District of Columbia is the only forum authorized by the statute.

Having considered the stay factors, the Court concludes that the government has failed to meet its burden to justify the Court's exercise of the extraordinary remedy of staying its final judgment pending appeal. *See Cuomo*, 772 F.2d at 974.

## III. Conclusion

For the foregoing reasons, the Court **ORDERS** that

defendants' motion to stay the Court's final judgment pending

appeal is **DENIED**.

**SO ORDERED**

Signed:    Emmet G. Sullivan
           United States District Judge
           January 25, 2019